FILED

2003 NOV 17 P 2: 03

US DISTRICT COURT
HARTFORD CT

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL. | : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | 3:03CV221 (AWT) |
| V. | : : : | |
| JOHN G. ROWLAND, ET AL., Defendants. | : : | NOVEMBER 17, 2003 |

### SUPPLEMENTAL BRIEF IN SUPPORT OF BOTH DEFENDANTS' EMERGENCY MOTION TO STAY DISCOVERY AND TO QUASH SUBPOENAS AND DEFENDANTS' MOTION TO DISMISS

As an alternative ground for the stay of discovery and quashing of the three subpoenas issued by plaintiffs, and for dismissal of plaintiffs' claims against the defendants in their official capacities, plaintiffs' claims have become moot and no longer present a justiciable controversy for this Court. Specifically, the intervening action of the Connecticut Legislature, which passed a state budget on July 31, 2003 that did not provide for employment of the laid-off plaintiffs,[1] has discontinued any alleged constitutional violation by the Governor and Secretary Ryan, related to their purported actions in late 2002. In other words, the prospective injunctive relief sought by

---

[1] The Governor signed the budget bill into law on August 16, 2003. (See Bill Status Report for HB-6802, copy attached as Exhibit A; see also Hartford Courant, *Long Budget Journey Ends*, August 17, 2003, copy attached as Exhibit B.)

-1-

plaintiffs cannot possibly be ordered because there is no allegedly ongoing constitutional violation by the defendants. Accordingly, the plaintiffs' official capacity claims must be dismissed as moot, even if they are not dismissed on the grounds previously briefed by the parties.[2]

### *Prospective Injunctive Relief Against The Defendants, Which Plaintiffs Seek On The Official Capacity Claims, Is No Longer Possible In The Absence Of An Allegedly Ongoing Constitutional Violation*

On the basis of their claims that Governor Rowland and Secretary Ryan acted unconstitutionally with regard to state employee layoffs, the plaintiffs claim entitlement to prospective injunctive relief in the form of an order prohibiting the Governor and Secretary in their official capacities from continuing to deny the plaintiffs state employment based on their union membership.[3] (See, e.g., Amended Complaint, Count Five, ¶ 56(a); Count Six, ¶ 63(a); Count

---

[2] As defendants have asserted in previously filed memoranda, the Ex Parte Young exception to the Eleventh Amendment does not apply in this case, because (1) the plaintiffs' claims implicate special sovereignty interests, and (2) on the purported individual capacity claims, the state is the real party in interest. (See Ex Parte Young, 209 U.S. 123 (1908); Defendant's February 24, 2003 Memorandum in Support of Motion to Dismiss Complaint, pp. 20-21; Defendants' May 9, 2003 Reply Brief in Support of Motion to Dismiss Complaint, pp. 11-17; Defendants' August 22, 2003 Reply Brief in Support of Motion to Dismiss Amended Complaint, pp. 6-8.) Defendants have also asserted other grounds for dismissing the Amended Complaint in its entirety.

[3] To the extent the plaintiffs purport to seek, in addition, an order enjoining the defendants from future unconstitutional conduct, the claim for such relief does not present a ripe controversy,

Nine, ¶ 62(a); Count Ten, ¶ 60(a).) A fundamental predicate to these claims – and to the plaintiffs' dogged resistance of defendants' arguments that the Eleventh Amendment bars them -- is that the plaintiffs seek only prospective injunctive relief in the official capacity claims.[4]

The plaintiffs' claims for prospective injunctive relief depend, however, on their establishment of the defendants' continuing violation of federal law. Verizon Maryland v. Public Service Comm'n of Maryland, 535 U.S. 635, 645 (2002); Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 296 (1997). Indeed, in the absence of a *continuing* violation by defendants – even, at this stage, an allegation of such violation – no prospective injunctive relief under the Eleventh Amendment is possible.

The plaintiffs have not made and cannot make such an allegation of defendants' continuing violation. On July 30 and 31, the House and the Senate passed the Connecticut 2003-2005 Biennial Budget, HB-6802, and it was signed into law by the Governor on August 16, 2003.[5] The budget adopted and in effect does not include funding for the restoration of the positions of the laid

---

as the plaintiffs have made no showing that their concern is not merely hypothetical. See, e.g., Simmonds v. INS, 326 F.3d 321, 357-59 (2d Cir. 2003).

[4] As the plaintiffs have repeatedly acknowledged, such limited relief is all that the Ex Parte Young exception to the Eleventh Amendment permits. See Pls.' Opp'n to Defs.' Mot. Dismiss, dated Apr. 3, 2003, at 31-36 ("Plaintiffs ... assert claims for *prospective injunctive* relief against defendants.... Id. at 31) (emphasis in original); see also, Pls.' Opp'n to Defs.' Mot. Dismiss Am. Compl., dated August 8, 2003, at 10.

[5] See footnote 1 above.

off state employees. In fact, legislation that would have explicitly provided for the laid off workers' reinstatement was vetoed by the Governor on August 8, 2003.[6] The Legislature made no attempt to override this veto. Neither the budget, nor the implementation bills, make any provision for the reinstatement sought by plaintiffs.[7] Indeed, by setting appropriations levels consistent with post-layoff workforce levels, the Legislature effectively ratified and endorsed the layoffs. It is therefore the Legislature's enactment of the 2003-2005 Biennial Budget – not any action of the defendants -- that is the cause of the plaintiffs' continuing lack of state employment. Accordingly, plaintiffs' claims must be dismissed as moot.

Similarly, in Green v. Mansour, 474 U.S. 64 (1985), the Supreme Court dismissed § 1983 claims against a state officer where, during the pendency of the litigation, Congress passed new legislation that modified the statutory requirements that the defendant had allegedly unconstitutionally violated. Because the defendant state officer undisputedly complied with the new legislative requirements, there was no continuing violation of law, and there was no longer any relief available that was permitted under the Eleventh Amendment. In dismissing the claims,

---

[6] See Bill Status Report for HB-6803, "An Act Concerning State Employee Contracts", copy attached as Exhibit C. By its terms, this legislation would have explicitly required the reinstatement of the laid off state workers to the same or substantially equivalent positions they had occupied before the layoff on or before September 1, 2003.

[7] The Governor signed this budget-implementation legislation into law on August 20, 2003. (See Bill Status Report for HB-6806, "An Act Concerning General Budget and Revenue Implementation Provisions", copy attached as Exhibit D.)

the Court recognized that the Eleventh Amendment does not permit the issuance of declaratory judgments regarding purported past wrongs.

Here, the plaintiffs' alleged lack of state employment is no longer the result of any continuing action by the Governor or Secretary Ryan. Rather, the enacted State budget continues the plaintiffs' status because it does not provide for their reinstatement or for the restoration of the eliminated positions. As of no later than the enactment of the budget and the implementing legislation on August 16, 2003, therefore, plaintiffs' claims for prospective relief based on the defendants' allegedly unconstitutional actions became moot. In the absence of any claim that plaintiffs have a federal right to compel the State of Connecticut to create positions for them, and no such claim has been or can be made, there is no basis for prospective injunctive relief against the defendants.

Accordingly, the official capacity claims must be dismissed as moot.

For THE DEFENDANTS,

By: _____
Albert Zakarian (ct04201)
Allan B. Taylor (ct05332)
Victoria Woodin Chavey (ct14232)
Daniel A. Schwartz (ct15823)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
azakarian@dbh.com

Their Attorneys

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, via overnight delivery, and transmitted via electronic mail and facsimile, to:

David S. Golub, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT  06904-0389

Anthony M. Fitzgerald, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950

_____
Allan B. Taylor

A

## Bill Status Report for H.B. No. 6802

AN ACT CONCERNING EXPENDITURES AND REVENUE FOR THE BIENNIUM ENDING JUNE 30, 2005.

Introduced by: Rep. Moira K. Lyons, 146th Dist.
Sen. Kevin B. Sullivan, 5th Dist.

**Bill History**

| Date | | Action Taken |
|---|---|---|
| 8/16/2003 | | Signed by the Governor |
| 8/7/2003 | (LCO) | Public Act 03-1 |
| 7/31/2003 | | Senate Passed as Amended by House Amendment Schedule A,B |
| 7/31/2003 | | Senate Adopted House Amendment Schedule A,B |
| 7/30/2003 | | Immediate Transmittal to the Senate |
| 7/30/2003 | | House Passed as Amended by House Amendment Schedule A,B |
| 7/30/2003 | | House Adopted House Amendment Schedule B 7743 |
| 7/30/2003 | | House Adopted House Amendment Schedule A 7746 |
| 7/30/2003 | | Emergency Certification |

Co-sponsors of HB-6802
Report printed on 11/12/2003 10:20:02 AM. Please direct all inquiries regarding the status of bills to the House and Senate Clerks' Offices.

Contact WebMaster | Disclaimer | Privacy Policy | Site Map | Site Help | External Links | Cap

B

Case 3:03-cv-00221-AVC    Document 61    Filed 11/17/2003    Page 9 of 19

8/17/03 HRTFCNT A1                                                                          Page 1
8/17/03 Hartford Courant A1
2003 WL 61948016
(Publication page references are not available for this document.)

The Hartford Courant
Copyright 2003, The Hartford Courant. All Rights Reserved.

Sunday, August 17, 2003

MAIN

LONG BUDGET JOURNEY ENDS ROWLAND SIGNS PLAN INTO LAW AFTER CLIFFHANGER
LEGISLATIVE EVENING
ELIZABETH HAMILTON And MARYELLEN FILLO; Courant Staff Writers

It's over. After eight months of legislative bickering, hair-pulling, number-crunching, lobbying and even bullying, Gov. John G. Rowland signed into law late Saturday night the two-year, $27.5 billion budget lawmakers approved last month.

The state, which had been operating without a budget since July 1, was being run by executive order. Although the legislature approved the budget July 31, it went without the governor's signature until lawmakers could approve several bills implementing details of the budget bill. That work was completed early this morning.

Rowland, who monitored the debate from his vacation home in Bantam Saturday night, released a statement shortly before midnight announcing that he had signed the budget at 11 p.m.

By law, Rowland had to sign the budget within five days of receiving it from the General Assembly or it would have passed automatically into law. Rowland said he would either sign or veto the bill before the deadline of midnight Saturday, but was waiting to see what the legislature did with bills implementing key pieces of the budget.

"This has been an extremely long and arduous budget process," said Rowland in a prepared statement read by his spokesman. "It is my hope this is the last time in our state's history that the citizens' constitutional right to a balanced budget is delayed. Although this has not been the state's finest hour, we must resolve to come together next year in a truly bipartisan spirit to tackle the serious responsibilities ahead of us."

It was by no means a smooth ending.

As they have done throughout the process, Democrats in the House of Representatives pushed against the deadline, debating bill after bill as the night wore on, despite the threat of a gubernatorial veto and the potential loss of months of work.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

8/17/03 HRTFCNT A1
8/17/03 Hartford Courant A1
2003 WL 61948016
(Publication page references are not available for this document.)

Page 2

The Senate approved all four bills before 11 p.m., but at midnight lawmakers in the House were still debating the final bill. Several Democrats appeared to be delaying the vote intentionally by raising amendments and asking painfully detailed questions about relatively small amounts of money in the final bill before them.

But as it became clear the ordeal was nearly over, lawmakers in both chambers expressed weary relief.

"Praise the Lord," said House Speaker Moira K. Lyons, D-Stamford. "It's been a long day's journey into night, as they say."

The bills approved by the House and Senate Saturday were by no means minor. One made fundamental changes in services for the poor and elderly, while another set aside millions of dollars from raised motor vehicle fees to ease traffic problems on the state's clogged highways.

The first bill approved by both chambers Saturday, for example, makes nearly 100 separate changes to public health and human services laws, including some that will scale back programs for the poor significantly.

The Senate approved it rather quickly, 24-8, but it received a stony reception in the House, where Democrats spent more than an hour railing against many aspects of the bill.

Majority Leader James Amann, D-Milford, quickly conferred with Minority Leader Robert Ward, R-Branford, who was able to gather enough Republican votes to assure passage.

With Republican support, the bill passed, 73-47, but a narrow majority of the Democratic House members present voted against the bill.

"It simply shows that Republicans came here to govern, and Democrats came here to play politics," said Ward after the vote was cast. Ward said he and his caucus felt an obligation to support what had been approved as part of the budget, including the distasteful general assistance changes.

House Democrats weren't the only people in the building opposed to the bill, however.

"I remain troubled by a great deal that is in this bill," said Sen. Mary Ann

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

8/17/03 HRTFCNT A1                                                                                                  Page 3
8/17/03 Hartford Courant A1
2003 WL 61948016
(Publication page references are not available for this document.)

Handley, D-Manchester, co-chairwoman of the human services committee. Handley cast a "no" vote.

Most troubling to Democrats are provisions that lower cash benefits for welfare recipients and limit the amount of money the state spends on their medical care. The eligibility requirements for these programs are strict, and people who receive the benefits are considered among the poorest of the poor.

Although the bill approved by the legislature Saturday contains language stating that everyone eligible for medical treatment is "entitled" to receive it, the state is capping the amount of money it pays to health centers and hospitals. This means providers will assume the costs if clients need treatment after the state money runs out.

Lawmakers expect these changes to save the state roughly $64 million over the next two years.

The bill also requires poor families who qualify for the state's subsidized HUSKY health insurance program to pay premiums and co-payments for the first time. For example, a family within 50 percent of the federal poverty level -- making $9,000 a year -- will now be required to pay as much as $25 a month in premiums, $3 co-pays for every doctor's visit and $1.50 co-pays for prescription drugs.

The state expects to save $38 million in the current budget year from these modifications to the program.

A controversial transportation bill proposed by Lyons passed both the House and Senate.

The bill, calling for an increase in an assortment of motor vehicle and registration fees, will raise an estimated $265 million over the next 10 years.

The money is earmarked for a variety of transportation projects -- new rail cars for Metro-North; new and expanded rail stations in hub cities; express bus service to Bradley Airport; completion of the New Britain-Hartford busway; commuter rail service from New Haven to Hartford and Springfield; expanded bus service in and around Norwich and New London; resumed work on the completion of Route 11; and improvements to enhance the flow of traffic on I-95 and I-395.

The House approved the bill early in the evening, 86-33. It was passed in the Senate, 23-8, at about 10:20 p.m.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

8/17/03 HRTFCNT A1                                                                                          Page 4
8/17/03 Hartford Courant A1
2003 WL 61948016
(Publication page references are not available for this document.)

"I am against this because it is doing nothing but adding another layer of bureaucracy," argued Rep. Richard Belden, R-Shelton. "All the things this bill promises to do should be done through the existing process."

After approval by the House shortly after 7:30 p.m., the transportation bill was sent to the Senate for consideration.

"Do not chicken and cheap out" urged Senate President Pro Temp Kevin Sullivan, D-West Hartford. "It is time to make transportation a priority."

House members this morning approved a catch-all budget implementation bill that specifies how the state will pay for a variety of programs, such as state education grants to cities and towns and a reconfiguration of tourism districts.

The bill also will:

Expand the powers of the Capital City Economic Development Authority to acquire land or rights to land in connection with improvements related to the Adriaen's Landing project in Hartford. It also will allow the Office of Policy and Management secretary to waive some bid award practices if it is in the state's best interest;

Create a commission to resolve a dispute regarding the boundary line between Connecticut and Rhode Island;

Increase a variety of Department of Environmental Protection fees in areas such as hazardous waste remediation, golf course applications, underground storage tanks, hazardous waste landfills, and dredging permits;

Suspend for two years funding for the Neighborhood Youth Grant Program for children aged 12 to 17 in Bridgeport, Hartford, New Haven, New Britain, Norwalk, Stamford and Waterbury, and;

Reconfigure the state's tourism districts, reducing the number from 11 to five.

As the evening wore on, lawmakers from both sides of the aisle ruminated about why this year's budget deliberations were so fraught with problems and confrontations. Most agreed they needed time away from each other and the building before they return the first week of September to tackle bonding bills.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

8/17/03 HRTFCNT A1  
8/17/03 Hartford Courant A1  
2003 WL 61948016  
(Publication page references are not available for this document.)

Page 5

"I think most people need some distance to reach any conclusion on why this was so tedious," said Senate Minority Leader William Aniskovich, R-Branford. "I think the rank-and-file had an unusual amount of control over the process and special interest groups co-oped small blocks of votes. I think the process has broken down."

Lawmakers admitted the tone of the debate disintegrated considerably in the past several weeks as the pressure to adopt a budget grew.

"This is the worst legislative process I have seen," said Senate President Kevin Sullivan.

Rowland's budget director, Marc Ryan, said he was satisfied with the end result, despite the difficult process.

"I think we ended on a better note than we started," said Ryan. "The governor always taught me that a good compromise is often one where nobody is happy, and that's this budget to a T."

Members of both chambers began straggling in to the Capitol shortly after noon Saturday, eager to see the final version of the bills that were being passed out hurriedly by staff. Many lawmakers were clearly not happy with various portions of the four bills waiting to be presented, but seemed equally weary of the budget session that has dragged on for eight months.

"I think there are a lot of areas of contention in these bills," said Reginald G. Beamon, D-Waterbury, one of the first legislators to make his way into the building for the weekend session. "I question why we have all the meetings and public hearings we do as a legislature, adopt legislation, and then find things we didn't consider, or took out, back in these implementation bills again."

Beamon was one of several members of the House who criticized Lyons' proposed transportation bill, saying that while it addressed transportation issues in the southern part of the state, it overlooked other areas, including Waterbury, where rail transportation has recently been cut back.

Details from the bills became known as the evening wore on. One example of this was language that would allow New Britain to reduce the number of moderate- income units at Corbin Heights, Corbin Heights Extension, Pinnacle Heights and Pinnacle Heights Extension and turn over that portion of the land to the city, or to a profit or nonprofit developer.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

8/17/03 HRTFCNT A1
8/17/03 Hartford Courant A1
2003 WL 61948016
(Publication page references are not available for this document.)

Page 6

"It's not as strong as the Senate bill that didn't make it during the session, but I'm glad at least something is being done," said Tim O'Brien, D-New Britain, one of the lawmakers who has been fighting for the bill this year.

---- INDEX REFERENCES ----

NEWS SUBJECT:       (Government Finance (E21); Government Taxation/Revenue  (E211);
Domestic Politics (GPOL); Lower House (GVLWH); Upper House (GVUPH); Page-One Story
(NPAG); Economic News (ECAT); Political/General News (GCAT); Government Bodies
(GVBOD); Legislative Branch (GVCNG); Content Types (NCAT))


INDUSTRY:           (Electricity/Gas Utilities (I16); Energy (I1))


REGION:             (United States (USA); North American Countries (NAMZ))


EDITION:            1N/5/6/7 SPORTS FINAL


Word Count: 1773

8/17/03 HRTFCNT A1

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# Bill Status Report for H.B. No. 6803

AN ACT CONCERNING STATE EMPLOYEE CONTRACTS.

Introduced by: Rep. Moira K. Lyons, 146th Dist.
Sen. Kevin B. Sullivan, 5th Dist.

## Bill History

| Date | | Action Taken |
|---|---|---|
| 8/26/2003 | | Transmitted to the Secretary of State |
| 8/25/2003 | (LCO) | Special Act 03-1 |
| 8/8/2003 | | Vetoed by the Governor |
| 8/8/2003 | | Rules Suspended, Transmitted to the Governor |
| 8/8/2003 | | Senate Passed |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule L 7868 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule K 7854 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule J 7862 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule I 7872 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule H 7871 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule G 7870 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule F 7867 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule E 7865 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule D 7864 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule C 7861 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule B 7855 |
| 8/8/2003 | | Senate Rejected Senate Amendment Schedule A 7858 |
| 8/7/2003 | | Immediate Transmittal to the Senate |
| 8/7/2003 | | House Passed |
| 8/7/2003 | | House Rejected House Amendment Schedule C 7818 |
| 8/7/2003 | | House Ruled House Amendment Not Germane, House Amendment Schedule B 7835 |
| 8/7/2003 | | House Rejected House Amendment Schedule A 7822 |
| 8/6/2003 | | Emergency Certification |

Co-sponsors of HB-6803

Report printed on 11/12/2003 11:04:38 AM. Please direct all inquiries regarding the status of bills to the House and Senate Clerks' Offices.

Contact WebMaster | Disclaimer | Privacy Policy | Site Map | Site Help | External Links | Cap

D

Case 3:03-cv-00221-AVC    Document 61    Filed 11/17/2003    Page 18 of 19

## Bill Status Report for H.B. No. 6806

AN ACT CONCERNING GENERAL BUDGET AND REVENUE IMPLEMENTATION PROVISIONS.

Introduced by: Rep. Moira K. Lyons, 146th Dist.
Sen. Kevin B. Sullivan, 5th Dist.

### Bill History

| Date | | Action Taken |
| --- | --- | --- |
| 9/10/2003 | | Transmitted to the Secretary of State |
| 8/27/2003 | (LCO) | Public Act 03-6 |
| 8/20/2003 | | Signed by Governor in Original |
| 8/16/2003 | | Rules Suspended, Transmitted to the Governor A,B,C 8083 |
| 8/16/2003 | | House Passed as Amended by Senate Amendment Schedule A,B,C |
| 8/16/2003 | | House Rejected House Amendment Schedule A 8083 |
| 8/16/2003 | | House Adopted Senate Amendment Schedule A,B,C |
| 8/16/2003 | | Immediate Transmittal to the House |
| 8/16/2003 | | Senate Passed as Amended by Senate Amendment Schedule A,B,C |
| 8/16/2003 | | Senate Adopted Senate Amendment Schedule C 8114 |
| 8/16/2003 | | Senate Adopted Senate Amendment Schedule B 8113 |
| 8/16/2003 | | Senate Adopted Senate Amendment Schedule A 8086 |
| 8/16/2003 | | Emergency Certification |

Co-sponsors of HB-6806

Report printed on 11/12/2003 11:48:10 AM. Please direct all inquiries regarding the status of bills to the House and Senate Clerks' Offices.

Contact WebMaster | Disclaimer | Privacy Policy | Site Map | Site Help | External Links | Cap