UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL, | : : : : | |
| V. | : : | CIV. NO. 3:03CV221 (AWT) |
| JOHN G. ROWLAND, ET AL, | : | APRIL 8, 2005 |

**PLAINTIFFS' MOTION TO SUBMIT
NEW LEGAL AUTHORITY AND RESPONSE
TO DEFENDANTS' NEW AUTHORITY**

Plaintiffs State Employees Bargaining Agent Coalition, *et al*, through counsel, respectfully seek permission to submit, in further support of their opposition to defendants' pending Motion to Dismiss Plaintiffs' Amended Complaint, a recently decided case in this District on the issue of legislative immunity, and to respond to the new authority recently submitted to the Court by defendants.

A. **For the Defense of Legislative Immunity to Apply, Defendants Must Demonstrate That the Challenged Conduct Was Implemented in Compliance with Legislative Procedures.**

On February 28, 2005, Judge Kravitz decided Lorusso, *et al.* v. Borer, (3:03 CV504 (MRK), 2005 WL 517617, __ F.Supp.2d __ (D. Conn. 2005) (copy attached). Lorusso makes clear, as plaintiffs have previously argued, that a defense of legislative immunity requires proof not only that the act was substantively legislative, but also that it was taken in compliance with legislative procedure. "It has been [ ] clearly established that in order for legislative immunity to attach, the acts complained of must not only be substantively legislative but also procedurally legislative." Lorusso at * 6, citing Gordon v. Katz, 934 F.Supp. 79, 82 (S.D.N.Y. 1995).

As the United States Court of Appeals for the Third Circuit has explained:

> We have employed a two-part test to determine whether an act is legislative:
>
> First, the act must be "substantively" legislative, i.e., legislative in character. Legislative acts are those which involve policy making decisions of a general scope .... In addition, the act must be "procedurally" legislative, that is, passed by means of established legislative procedures. This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legitimate, reasoned decision representing the will of the people which the governing body has been chosen to serve.

Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 774 (3d Cir. 2000).[1]

In moving to dismiss plaintiffs' Amended Complaint on grounds of legislative immunity, defendants assert that their actions were legislative because Public Act 02-01 (now codified at Gen. Stats. § 4-85(b)) authorizes the Governor to order budgetary cutbacks when there is a deficit in the General Fund greater than one percent of General Fund appropriations. But defendants have not asserted – in a single one of their filings with this Court – that they were *actually* acting pursuant to that statutory provision when they undertook the conduct at issue in this litigation.

Section 4-85(b) requires that a Governor invoking his authority to effectuate budget reductions under the statute file a report to the joint standing committees of the General Assembly required pursuant to that statute, and – in the case of budget cuts imposed pursuant to § 4-85(b)(2) in cases of deficits in excess of one percent of General Fund appropriations – include in that report a specific plan for implementing budget reductions. The statute also

---

[1] See, generally, plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. # 19) at 23-25.

imposes a maximum on any reductions ordered by the Governor.[2] Defendants have not contended – and have submitted no evidence to this Court – that they either invoked Gen. Stats. § 4-85(b) as justification for terminating the plaintiff employees *or that they complied with the requirement to submit the necessary reports to the General Assembly* or limited the cuts in connection with such terminations to the maximum permitted by the statute.

Plaintiffs dispute defendants' contention that the terminations at issue in this litigation were undertaken pursuant to Gen. Stats. § 4-85(b). Indeed, plaintiffs believe that it is *undisputed* that defendants *never* invoked the statute as authority for their actions and *never* submitted the reports or plan to the General Assembly required by the statute.

Plaintiffs have expressly alleged in their Amended Complaint that defendants' conduct in demanding concessions to the plaintiff unions' collective bargaining agreements and in ordering the termination of union employees when the concessions were not granted was undertaken pursuant to defendants' responsibility for collective bargaining with state employees [Amended Complaint, ¶¶ 37-38, 47-50] which, by statute, is committed *exclusively* to the executive branch. See Gen. Stats. § 5-270, *et seq*.

Thus, plaintiffs' Amended Complaint alleges:

> 37. At all times mentioned herein, defendants were, and are to the present time, members of the Executive Branch of Connecticut's state government, and have been acting in furtherance of their functions as high-ranking Executive Branch officers. As Governor and Secretary of the Office of Policy and Management ("OPM"), defendants had, at all times mentioned herein and to the present time,

---

[2] Section 4-85(b) requires that any budgetary modification pursuant to that provision not exceed three percent of the total appropriation from any fund or more than five percent of any appropriation. Plaintiffs dispute that defendants complied with this provision of the statute and, in fact, believe that several of the terminations ordered by the defendants exceeded five percent of the relevant personnel budgetary line items in several departments.

responsibility for the management of the state's work force and the negotiation of the terms of collective bargaining agreements with state employees in furtherance of their Executive Branch functions.

38. At all times mentioned herein and to the present time, defendant Ryan, as Secretary of OPM, has been designated, pursuant to Conn. Gen. Stat. § 4-65a(1) & (2), as the employer representative "in collective bargaining negotiations concerning changes to the employees retirement system and health and welfare benefits," and in other matters involving collective bargaining, including the negotiation, administration and changes to ("supplemental understandings") collective bargaining agreements. Defendant Ryan was appointed Secretary of OPM by defendant Rowland pursuant to Conn. Gen. Stat. §§ 4-6, 4-65a, and "acts as the executive officer of the Governor for accomplishing the purposes of his department." Conn. Gen. Stat. § 4-8.

....

47. At all times mentioned herein and to the present time, the defendant Governor and the defendant Secretary of OPM have been the decision-makers for the State of Connecticut with respect to the collective bargaining agreement demands and employee terminations at issue in this lawsuit.

48. Defendants' demands for union contract concessions, their threats of retaliatory union member terminations if their demands were not granted, and their implementation of such terminations were undertaken by defendants solely in their capacity as members of the Connecticut Executive Branch, acting solely in furtherance of their Executive Branch functions.

....

50. Defendants were not acting in a legislative capacity when they made their demands for union contract concessions, when they made their threats of retaliatory union member terminations if their demands were not granted, and when they implemented the terminations at issue in this lawsuit.

[Plaintiffs' Amended Complaint dated May 27, 2003 (Dkt. # 29) at ¶¶ 37-38, 47-50].

The parties' dispute about the nature of defendants' conduct cannot be resolved on a motion to dismiss, in which the factual allegations of plaintiffs' Amended Complaint must be

accepted as true. Bello v. Barden Corporation, 180 F. Supp.2d 300, 305 (D. Conn. 2002) (Thompson, J.).

More importantly, assuming *arguendo*, that a gubernatorial act taken pursuant to Gen. Stats. § 4-85(b) after adoption of the budget to reduce an ensuing budget deficit is deemed legislative for purposes of legislative immunity, plaintiffs dispute that defendants complied with § 4-85(b) when they terminated the employment of the plaintiff union members.  To the extent that defendants failed to file the required reports and ordered cuts in appropriations in violation of (or in excess of) the statutory maximum, defendants failed to comply with the legislative procedures mandated by statute and are not be entitled to rely on a defense of legislative immunity. Lorusso at * 6; Gordon v. Katz, 934 F.Supp. at 82;  Gallas v. Supreme Court of Pennsylvania, 211 F.3d at 774.

The burden is on a defendant asserting the defense of legislative immunity to establish the factual basis for that claim.  Harlow v. Fitzgerald, 457 U.S. 800, 808 (1982); Hill v. City of New York, 45 F.3d 653, 660 (2d Cir. 1995).  Here, even assuming that the factual issue could properly be determined on a motion to dismiss, defendants have come forward with no pleading or proof that they acted pursuant to – or in compliance with – Gen. Stats. § 4-85(b), and plaintiffs vigorously dispute that they did.   At a minimum, that dispute is not amenable to resolution on a motion to dismiss.

 To the extent that Judge Squatrito cited Gen. Stats. § 4-85(b) in his decision in Abbey v. Rowland, 2005 WL 464939 (D. Conn. 2005), Judge Squatrito never considered whether defendants had *actually* invoked the statute or were *actually* acting pursuant to and *in compliance with* the statute when they ordered the terminations at issue in that litigation.  While it may be

that the plaintiffs in Abbey did not properly raise the issue, Judge Squatrito's *factual* finding, on a motion to dismiss, that Governor Rowland "was acting pursuant to the mandate of § 4-85(b)" – notwithstanding defendants' failure to demonstrate Rowland's compliance with the statutory mandate – was mistaken.

Plaintiffs submit that the statutory basis for defendants' conduct and – assuming that defendants acted "legislatively" pursuant to Gen. Stats. § 4-85(b) – defendants compliance with required legislative procedures involve disputed issues of fact that cannot properly be resolved on a motion to dismiss. Indeed, plaintiffs note that the legislative immunity defense in Lorusso was litigated on a Motion for Summary Judgment, and Judge Kravitz's decision in that case specifically cites deposition evidence as well as the parties' Local Rule 9(c)(2) submissions.

      B.      **Plaintiffs' Claims Are Not Barred by the Eleventh Amendment**

To the extent that Judge Squatrito held in Abbey that ordering prospective injunctive relief against the lay-offs challenged in that litigation did not fit within the scope of Ex parte Young because it would interfere with state sovereignty to resolve budget crises, that decision was plainly erroneous. Indeed, the Second Circuit has, on at least three separate occasions, sustained claims for injunctive relief against state officials for unconstitutional conduct impairing state employee rights in the face of a budget crisis. See Condell v. Bress, 983 F.2d 415 (2d Cir.), cert. denied, 507 U.S. 1032 (1993) (enjoining state officials from impairing collective bargaining agreement rights notwithstanding state budget crisis); Association of Surrogates and Supreme Court Reporters v. State of New York, 940 F.2d 766 (2d Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (same); Haley v. Pataki, 106 F.3d 478 (2d Cir. 1997) (affirming award of attorneys' fees

6

against New York Governor for successful action seeking injunction ordering Governor to pay state employees during budget crisis).

Judge Squatrito's conclusion that the litigation in Abbey fell outside the scope of Ex parte Young because the relief requested would not be merely prohibitive but would require reinstatement and, thus, new spending to restore plaintiffs to their jobs was, likewise, erroneous. The law is well established in the Second Circuit that a complaint seeking the remedy of reinstatement constitutes a request for prospective injunctive relief permitted under the Eleventh Amendment. Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified 793 F.2d 457 (2d Cir. 1986); Russell v. Dunston, 896 F.2d 664, 667-68 (2d Cir.), cert. denied, 498 U.S. 813 (1990); Shane v. State of Connecticut, 821 F.Supp. 829, 832 (D. Conn. 1993) (Eginton, J.).

To the extent that Judge Squatrito denied injunctive relief in Abbey because the lay-offs at issue had taken place nearly two years ago, such passage of time is not a proper basis to deny relief in this case. This action was promptly filed in January 2003, even before all of the terminations at issue had been effectuated. At a status conference in April 2003, plaintiffs' counsel brought to the Court's attention that the principal relief sought in this action is an injunctive order of reinstatement and urged expeditious resolution of the case so that meaningful relief could be provided:

> MR. GOLUB: I have a concern about how the case progresses because of the procedural posture of a case against a state official [since] the State can't be liable for money damages. ... So that the practical relief for the plaintiffs, the plaintiffs who have been terminated, is some kind of injunctive order of reinstatements or something to that effect. [Transcript of April 24, 2003 Status Conference (attached as Exhibit A) at 6].

At the status conference, the Court specifically recognized plaintiffs' concern, stating:

> THE COURT: .... I will do my best to move this along for you. I think it is a helpful point that you mentioned about your perspective on what the practical relief is going to be, and I'll try to be sensitive to that. [Id. at 17].

Defendants' motion to dismiss has been *sub judice* since August 2003. Plaintiffs should not be prejudiced because of the judicial system's backlog and the resulting delay in resolving this Motion.

Finally, the Eleventh Amendment is inapplicable to plaintiffs' claims against the defendants in their *individual* capacity – an issue which Judge Squatrito did not reach in Abbey. See Hafer v. Melo, 502 U.S. 21, 25-31 (1991); Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003).

```
                                        PLAINTIFFS STATE EMPLOYEES
                                        BARGAINING AGENT COALITION,
                                        ET AL,



                                        BY_____
                                            DAVID S. GOLUB  ct 00145
                                            JONATHAN M. LEVINE ct 07584
                                            MARILYN J. RAMOS ct 11433
                                            SILVER GOLUB & TEITELL LLP
                                            184 ATLANTIC STREET
                                            P.O. BOX 389
                                            STAMFORD, CONNECTICUT  06904
                                            (203) 325-4491
```

**CERTIFICATION**

  This is to certify that a copy of the foregoing has been served, this 8th day of April, 2005, by overnight delivery to:

Albert Zakarian, Esq.
Allan B. Taylor, Esq.
Victoria Woodin Chavey, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Anthony M. Fitzgerald, Esq.
Ann H. Rubin, Esq.
Carmody and Torrance
50 Leavenworth Street
Waterbury, CT 06721-1110.

                _____
                DAVID S. GOLUB