# MAINTENANCE & SERVICE UNIT (NP-2) CONTRACT

*between*



## STATE OF CONNECTICUT

*and*



Affiliated Local 511
Service Employees International Union
AFL-CIO, CLC

**Effective July 1, 2002**
**Expiring June 30, 2005**

Agreement. Problems, ripe or anticipated, which impact upon philosophy and/or directives of this Section shall be subject to continuing discussions between the parties but shall not be subject to the grievance procedure.

**Section Four.** No employee shall be coerced or intimidated or suffer any reprisal, either directly or indirectly, as the result of the exercise of his/her rights under this Agreement.

**Section Five.** The Employer will comply with the provisions of the Americans with Disabilities Act, (ADA). At the request of the Union, Agency Labor Management Committees shall be formulated for the purpose of ADA issues. Such Committees (not the grievance procedure) shall be the proper forum for discussion of ADA concerns identified by the Union; however, this shall not delay any actions taken to comply with the ADA.

## Article 4

### No Strikes - No Lockouts

**Section One.** Neither the Union nor any employee shall engage in, induce, support, encourage, or condone a strike, sympathy strike, work-stoppage, slowdown, concerted withholding of service, sick-out or any interference with the mission of any State agency. This Article shall be deemed to prohibit the concerted boycott or refusal of overtime work but shall be interpreted consistent with any local unit agreements on distribution and assignments of overtime work.

**Section Two.** The Union shall exert its best efforts to prevent or terminate any violation of Section One of this Article.

**Section Three.** The employer agrees that during the life of this Agreement there shall be no lock-out.

## Article 5

### Management Rights

**Section One.** Except as otherwise limited by an express provision of this Agreement, the State reserves and retains, whether exercised or not, all the lawful and customary rights, powers and prerogatives of

3

public management. Such rights include but are not limited to establishing standards of productivity and performance of its employees; determining the mission of an agency and the methods and means necessary to fulfill that mission, including the contracting out of or the discontinuation of services, positions, or programs in whole or in part; the determination of the content of job classification; the appointment, promotion, assignment, direction and transfer of personnel; the suspension, demotion, discharge or any other appropriate action against its employees; the relief from duty of its employees because of lack of work or for other legitimate reasons; the establishment of reasonable work rules; and the taking of all necessary actions to carry out its mission in emergencies. The contracting out of services is subject to the provisions of Article 13, Section Ten.

**Section Two.** Those inherent management rights not restricted by a specific provision of this Agreement are not in any way, directly or indirectly, subject to the grievance procedure.

## Article 6

### Union Security

**Section One.** During the life of this Agreement an employee retains the freedom of choice whether or not to become or remain a member of the Union which has been designated as the exclusive bargaining agent.

**Section Two.** Union dues shall be deducted by the State employer biweekly from the paycheck of each employee who signs and remits to the State an authorization form. Such deduction shall be discontinued upon written request of an employee thirty (30) days in advance.

**Section Three.** An employee who fails to become a member of the Union or an employee whose membership is terminated for non-payment of dues or who resigns from membership shall be required to pay an agency service fee under Section Four. Dues and fees shall be calculated effective the beginning of the first full pay period following initial employment.

**Section Four.** The State shall deduct the agency service fee biweekly from the paycheck of each employee who is required under Section 5-280(a) C.G.S. to pay such a fee as a condition of employment. The amount of agency service fee shall not exceed the minimum applicable dues payable to the Union.

emergency operation or a military operation whose mission was substantially changed as a result of the attacks of September 11, 2001.
(b) Active military service in the armed forces of the United States and its allies during wartime for the above dates shall be credited to an employee's seniority upon submission of proof of such service (discharge papers), and shall be otherwise in compliance with Section 27-103 Connecticut General Statutes.

**Section Six.** To the extent contained herein, Public Act No. 87-291 is superseded.

## Article 13

### Order of Layoff or Reemployment

**Section One.** In the event of a reduction in force and subsequent recall to work, the provisions of this Article shall be controlling.

**Section Two.** For purposes of layoff selection within a classification, seniority as defined in Article 12 shall prevail. In the event of a layoff within a job classification, temporary employees, special payroll and other supplemental workers and employees who have not completed their initial working test period shall be laid off first and they shall not have bumping rights. The restrictions herein will not apply to patients who are employed as part of their therapeutic programs or to full or part time students who are employed as part of their educational activity.

**Section Three.** When the employer determines that a reduction in force may be necessary, the employer shall notify the Union and shall meet to discuss the possible alternative proposals (1) to avoid the layoff and/or (2) to mitigate the impact on the employee(s) at least ten (10) days before taking any steps to implement the decision. Additionally, the employer and the Union shall cooperate to gather whatever information is deemed necessary to facilitate the transfer, bumping and reemployment processes.

**Section Four.** (a) The employer shall give an employee not less than six (6) weeks written notice of layoff, stating the reason for such action. During the six (6) week period the employer shall offer on a seniority basis, a transfer to a vacancy in the same or comparable class or in any other position in the same or lower salary grade the employee is

18

qualified to fill within the Department.

To facilitate this process an employee shall receive together with the written notice of layoff a list of Department vacancies in the same or comparable classes and a list of all vacancies in the same or comparable classes in all other State Departments within a fifty (50) mile radius. The Union shall receive a copy of all material supplied by the employee.

(b) If there are no positions to which an eligible employee can bump or transfer within the Department within twenty-five (25) mile radius, the employee shall be offered, on a seniority basis, a transfer to a vacancy in the same or comparable classification at any State facility within the fifty (50) mile radius provided that the employee meets the minimum requirements of the job. If the employee refuses to accept or if there are no transfer opportunities available, an eligible employee may exercise bumping rights as specified in Section Five.

**Section Five.** In lieu of layoff when there is no vacancy, or when the employee does not accept a vacancy, an employee may bump a less senior employee as follows: (a) The least senior employee in the same classification in the Department.

(b) If the employee does not exercise Department-wide bumping as in (a), then the employee may bump the least senior Department employee in the same classification or in a lower classification in the same classification series, at any facility of the Department within a twenty-five (25) mile radius.

(c) A permanent employee who is bumped shall have the same rights as an employee who is laid off, except that a bumpee shall receive only three (3) weeks notice; however, a bumpee shall not be terminated during the initial six (6) week period required by Section Four (a).

**Section Six.** Within one week of the availability of the list of vacancies referenced in Section Four (a) above, an employee shall provide written notice of whether he/she elects to transfer or exercise bumping rights. If such election results in a lower paying position, the employee will be placed on the appropriate reemployment lists effective the date of such election.

The effective date of an election to transfer or bump will be at the sole discretion of the State. However, the exercise of this discretion shall not impair or jeopardize the employee's election.

**Section Seven.** Reemployment. (a) The names of permanent employees who are eligible for reemployment from layoff shall be arranged on appropriate reemployment lists in order of seniority and

19

**Section Three.** Selection of transfer applicants shall be governed by the provisions of Article 14, Vacancies.

**Section Four.** Involuntary transfers shall not be made without first exhausting the voluntary transfer list. Exceptions may be made to meet exceptional operational needs of an agency, such as in order to meet special skills requirements, adjustments of staffing requirements or in lieu of layoff. When it becomes necessary to involuntarily transfer an employee, the employer shall select on the basis of inverse seniority, unless, in his/her judgment, there is a significant difference in the qualifications or work records of those employees who could be affected.

An Appointing authority wishing to transfer an employee who has not volunteered for such transfer shall notify the employee in writing, and except in a genuine emergency situation, shall provide at least three (3) weeks advance notice unless the transfer is within the same State facility. In the event of a garage or facility closing involving relocation of bargaining unit employees, the employer shall notify the Union prior to initiating any transfers.

**Section Five.** This Article does not pertain to shifts, change of shift or so-called "transfer of shift", or the like, except as provided in Article 14, Vacancies. Other such changes are governed by Article 18, Hours of Work.

**Section Six.** Effective July 1, 2002 to June 30, 2005, a temporary assignment is defined as a change in the employee's job location or job assignment of less than twenty-one (21) calendar days on the same campus at the Connecticut State Universities and/or the University of Connecticut campuses. An assignment may be made to meet operational needs. A temporary assignment shall not be deemed a transfer. No temporary assignment shall be made for the primary purpose of avoiding the payment of overtime. No employees shall be involuntarily assigned more than three (3) times in a calendar year.

## Article 16

### Grievance Procedure

**Section One.** Definition. Grievance. A grievance is defined as, and limited to, a written complaint involving an alleged violation of or a dispute involving the application or interpretation of a specific provision of this Agreement or of any provision incorporated by reference.

25

**Section Two.** Format. Grievances shall be filed on mutually agreed upon forms which specify: a) the facts; b) the issue; c) the date of the violation alleged; d) the contract section alleged to have been violated; e) the remedy or relief sought.

In the event a grievance filed is unclear or incomplete and not in compliance with this Section, the State Employer shall make its best effort to handle the grievance as the employer understands it.

A grievance may be amended up to and including Step II of the procedure as long as the factual basis of the complaint is not materially altered. In the event that no Step II conference is held, the grievance may be so amended at Step III.

**Section Three.** A Union representative, with or without the aggrieved employee, may submit a grievance and the Union may in appropriate cases submit an "institutional" or "general" grievance on its own behalf. When individual employee(s) or group of employees elect(s) to submit a grievance without Union representation, the Union's representative or steward shall be notified of the pending grievance, shall be provided a copy thereof, and shall have the right to be present at any discussions of the grievance, except that if the employee does not wish to have the steward present, the steward shall not attend the meeting but shall be provided with a copy of the written response to the grievance. The steward shall be entitled to receive from the employer all documents pertinent to the disposition of the grievance and to file statements of position.

**Section Four.** The grievance procedure outlined herein is designed to facilitate resolution of disputes at the lowest possible level of the procedure. It is therefore urged that the parties attempt informal resolution of all disputes and to avoid the formal procedures.

**Section Five.** A grievance shall be deemed waived unless submitted at Step I within (30) days from the date of the cause of the grievance or within (30) days from the date the grievant or any Union representative or steward knew or through reasonable diligence should have known of the cause of the grievance.

**Section Six.** The Grievance Procedure

Step I. A grievance may be submitted within the thirty (30) day period specified in Section Five to the employee's first supervisor in the chain of command who is outside the bargaining unit. Such supervisor shall meet with the Union representative and or the grievant and issue a written response within five (5) days after such conference, but not

26

later than ten (10) days after the submission of the grievance.

Step II. Agency Head or Designee. When the answer at Step I does not resolve the grievance, the grievance shall be submitted by the Union representative and/or the grievant to the Agency Head or his/her Designee within seven (7) days of the previous response. Within fourteen (14) days after receipt of the grievance, a conference will be held with the employee and a written response issued within five (5) days thereafter.

Step III. Office of Labor Relations. An unresolved grievance may be appealed to the Director of Labor Relations or his/her Designee within seven (7) days of the date of the Step II response. Said Director or his/her designated representative shall hold a conference within thirty (30) days of receipt of the grievance and issue a written response within fifteen (15) days of the conference.

Step IV. Arbitration. Within thirty (30) days after the State's answer is due at Step III, or if no conference is held within forty-five (45) days, within thirty (30) days after the expiration of the forty-five (45) day period, an unresolved grievance may be submitted to arbitration by the Union, but not by an individual employee(s), except that individual employees may submit to arbitration in cases of dismissal, demotion or suspension of five (5) working days or greater.

**Section Seven.** For the purpose of the time limits hereunder, "days" shall mean calendar days unless otherwise specified. The parties by mutual agreement may extend time limits or waive any or all the steps hereinbefore cited. The State Employer may waive any or all steps herein except Step III and Step IV.

**Section Eight.** In the event that the State Employer fails to answer a grievance within the time specified, the grievance may be processed to the next higher level and the same time limits therefore shall apply as if the State Employer's answer had been timely filed on the last day.

The grievant assents to the last attempted resolution by failing timely to appeal said decision, or by accepting said decision in writing.

**Section Nine.** Arbitration (a) The parties shall establish a panel of mutually acceptable arbitrators. Unless the parties agree to the contrary for a particular case, the arbitrator shall be selected by rotation in alphabetical order from the panel of arbitrators. Appeals involving dismissal, layoff, disciplinary transfer and any issue the parties mutually agree to shall be expedited using the above-described rotational system.

Submission to arbitration shall be by certified letter, postage prepaid to the Director of Labor Relations. The expenses for the arbitrator's

27

services and for the hearing shall be shared equally by the State and the Union or in dismissal, demotion or suspension cases when the Union is not a party, one-half the cost shall be borne by the State and the other half by the party submitting to arbitration.

On grievances when the question of arbitrability has been raised by either party as an issue prior to the actual appointment of an arbitrator a separate arbitrator shall be appointed at the request of either party to determine the issue of arbitrability.

(b) The arbitration hearing shall not follow the formal rules of evidence unless the parties agree in advance, with the concurrence of the arbitrator at or prior to the time of his/her appointment.

In cases of dismissals, demotions or suspensions in excess of five (5) days, the parties may request the arbitrator to maintain a cassette recording of the hearing testimony. Costs of transcription shall be borne by the requesting party. A party requesting a stenographic transcript shall arrange for the stenographer and pay the cost thereof. The State will continue its practice of paid leave time for witnesses either party.

(c) The arbitrator shall have no power to add to, subtract from, alter, modify this Agreement, nor to grant to either party matters which were not obtained in the bargaining process, nor to impose any remedy right of relief for any period of time prior to the effective date of this Agreement, nor to grant pay retroactivity for more than thirty (30) calendar days prior to the date a grievance was submitted at Step The arbitrator shall render his/her decision in writing no later than thirty (30) calendar days after the conclusion of the hearing unless the parties jointly agree otherwise.

The arbitrator's decision shall be final and binding on the parties in accordance with the Connecticut General Statutes Section 52-418, provided, however, neither the submission of a question arbitrability to any arbitrator in the first instance nor any voluntary submission shall be deemed to diminish the scope of judicial review over arbitral awards, including awards on arbitrability, nor to restrict the authority of a court of competent jurisdiction to construe any such award as contravening the public interest.

**Section Ten.** Disputes over an employee's job classification shall processed through Step III of the grievance procedure. Unresolved classification grievances may be submitted through the Commissioner of Administrative Services to a panel of three (3) Personnel Officers selected from agencies of one hundred (100) or more employees. The Union shall be entitled to have a representative attend all deliberations of the panel and to offer input during the deliberations. The decision said panel shall be final.

28

**Section Eleven.** Notwithstanding any contrary provisions of the Agreement, the following matters shall not be subject to the grievance or arbitration procedure: (a) appeal of rejection from admission to an examination; (b) disputes over claimed unlawful discrimination in violation of Article III (Non-Discrimination and Affirmative Action), Section One, shall be subject to the grievance procedure but shall not be arbitrable in any case where the Commission on Human Rights and Opportunities has asserted jurisdiction; (c) the decision to layoff employees; (d) non-disciplinary termination of employees (e.g. Federal Grant Participant, etc.); (e) classification and pay grade for newly created jobs, however, this clause shall not diminish the Union's right to negotiate on pay grades; (f) *written affirmation of oral warning(s) whether placed in the personnel file or not shall be subject to the grievance procedure but shall not be arbitrable;* (g) any incident which occurred prior to this Agreement, with the understanding grievances filed which outdate this Agreement shall not be deemed to have been waived by reasons of execution of this Agreement.

**Section Twelve.** The Union shall be entitled to have present at any grievance meeting (except as provided in Section Three, above) one steward designated to appear on behalf of aggrieved employee(s). Additionally, the Union may bring a reasonable number of witnesses to grievance meetings, who shall be released from work with no loss of pay or benefits. The Union agrees to limit the number of witnesses to those reasonably necessary to present the facts of the case avoiding repetition and minimizing the impact on the Employer's productivity.

### Article 17

### Dismissal, Suspension, Demotion and Other Discipline

**Section One.** No permanent employee who has completed the working test period shall be demoted, transferred for disciplinary reasons, suspended, discharged or otherwise disciplined except for just cause.

**Section Two.** The employer shall notify the Union in writing of all discipline inclusive of any reprimand, demotion, disciplinary transfer, suspension (including the docking of pay for disciplinary reasons), or discharge concurrent with the written notice to the employee. Such written notice shall cite the reasons for the discipline, effective date of discipline, and the notice of right of appeal. If the Union or the

29