LEXSEE 1996 U.S. APP. LEXIS 28748

FIGHTING FINEST, INC.; CARL SCHROEDER, President; DANIEL O'LEARY, Director; EDWARD HERNANDEZ; RAY RIVERA; JOHN FARRELL; DAVE SIEV; DINO PEREZ; WALTER DOYLE; DERRICK HERNANDEZ; AL VALEJEO; PATRICK CULLEN; SCOTT BAKER; MICHAEL KELLY; THOMAS BYRNE; PHIL HANNAH; STEVE DAMIANI, Police Officers; JOHN McCANN; DWIGHT HOVINGTON; TONY PENA, Detectives, Plaintiffs-Appellants, v. WILLIAM BRATTON, Commissioner, New York City Police Department; RAYMOND KELLY, former Commissioner, New York City Police Department, Defendants-Appellees.

Docket No. 95-9042

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*1996 U.S. App. LEXIS 28748*

June 7, 1996, Submitted
September 9, 1996, Decided

**SUBSEQUENT HISTORY:** [*1] As Corrected.

**PRIOR HISTORY:** Appeal from the September 18, 1995, judgment of the United States District Court for the Southern District of New York (Leonard B. Sand, Judge), dismissing appellant's complaint for failure to state a claim upon which relief can be granted.

Original Opinion Previously Reported at: *1996 U.S. App. LEXIS 23448.*

**DISPOSITION:** Affirmed.

**COUNSEL:** Rosemary Carroll, Carroll & Friess, New York, N.Y., submitted a brief for plaintiffs-appellants.

Paul A. Crotty, Corporation Counsel of the City of New York, Pamela Seider Dolgow, David Drueding, John Hogrogian, New York, N.Y., submitted a brief for defendants-appellees.

**JUDGES:** Before: NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY, District Judge. *

---

* Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

**OPINIONBY:** JON O. NEWMAN

**OPINION:** JON O. NEWMAN, Chief Judge:

This appeal primarily presents the issue of whether the bulletin boards of municipal police stations are limited public forums for purposes of the First Amendment. Plaintiffs-appellants Fighting Finest, Inc. ("FFI"), Carl Schroeder, and other individuals associated with FFI appeal from the [*2] September 18, 1995, judgment of the United States District Court for the Southern District of New York (Leonard B. Sand, Judge). The District Court dismissed FFI's complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* for failure to state a claim upon which relief can be granted. FFI had challenged a prohibition imposed by defendants-appellees William Bratton and Raymond Kelly, two former Commissioners of the New York City Police Department. n1 Commissioners Bratton and Kelly had barred FFI from posting notices of its boxing matches in police precincts and facilities. FFI contended that the prohibition violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. We agree with the District Court that the complaint does not plead circumstances that would render police bulletin boards a limited public forum. We therefore affirm.

---

n1 During the pendency of this appeal, Commissioner Bratton resigned as Police Commissioner and was succeeded by Howard Safir.

Background

The following facts are [*3] set forth in the complaint and in a supporting affidavit, which the defendants have accepted, for the purposes of adjudicating their motion to dismiss. In 1983, Carl Schroeder organized a boxing team for New York City police officers. The primary purpose of this team was to conduct boxing matches with teams from other New York City agencies and with other police departments throughout the United States and Europe. In 1984, Schroeder requested the New York City Police Department ("NYPD") to recognize his team officially, and to permit it to post notices of scheduled boxing matches on police premises. These premises included the Police Headquarters building, police precincts, and police command locations. Schroeder's requests were granted by former Police Commissioners Benjamin Ward and Lee Brown. For the next several years, Schroeder's boxing team participated in matches that were publicized by notices posted in police precincts and facilities. In November 1990, the boxing team formally incorporated as a non-profit organization, adopting the name "Fighting Finest, Inc." ("FFI"). Shortly thereafter, FFI was invited to affiliate itself with the Patrolman's Benevolent Association ("PBA"), [*4] the collective bargaining agent for New York City police officers. When FFI, wishing to maintain its independence, declined PBA affiliation, the PBA organized its own boxing team.

The PBA then prevailed upon Police Commissioner Raymond Kelly to withdraw the NYPD's official recognition of FFI and to recognize the PBA team as the sole boxing team for New York City police officers. In 1994, Police Commissioner William Bratton ordered FFI to cease identifying its activities with the NYPD in any way. Commissioner Bratton also barred FFI from posting any notices of upcoming FFI events on police premises. Traditionally, the NYPD has remained neutral on the issue of whether police athletic teams should affiliate with the PBA. Numerous other athletic teams have refused PBA affiliation and, with the sole exception of FFI, have not suffered any adverse or differential treatment because of their independence. These other teams are officially recognized by the NYPD and are permitted to use police facilities to publicize and promote their activities.

In February 1995, FFI brought suit against former Commissioners Bratton and Kelly, alleging that their actions violated the First Amendment and the [*5] Equal Protection Clause of the Fourteenth Amendment. The District Court dismissed FFI's complaint sua sponte as to Commissioner Kelly for failure to effect personal service. That ruling is not challenged on appeal. On a motion pursuant to *Fed. R. Civ. P. 12(b)(6)*, the District Court also dismissed FFI's complaint as to Commissioner Bratton for failure to state a claim upon which relief can be granted. The Court first held that Commissioner Bratton's actions did not impermissibly infringe upon FFI's First Amendment freedom of association. Second, after determining that NYPD precincts and facilities do not constitute a public forum, the District Court held that the prohibition against FFI postings on police premises was reasonable. The District Court found that the State had a legitimate interest in accommodating the PBA in order to maintain harmonious labor relations. Finally, the District Court held that, since the case did not involve the deprivation of a fundamental right, those same labor-related considerations were sufficient to satisfy the rational basis test under the Equal Protection Clause of the Fourteenth Amendment. The Court dismissed FFI's complaint, and this appeal [*6] followed.

Discussion

I. First Amendment

Although FFI is somewhat unclear in both its complaint and its appellate brief, it appears to allege two distinct violations of the First Amendment: (1) a violation of its freedom of association, and (2) a violation of its freedom of speech. We consider each claim separately.

A. Freedom of Association

FFI contends that the actions of Commissioner Bratton impermissibly infringed upon the rights of its members to engage in expressive association. FFI relies on the Supreme Court's decision in *Roberts v. United States Jaycees, 468 U.S. 609, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984)*, which held that "implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id. at 622*.

Initially, the District Court was skeptical as to whether the right to associate in a boxing club was a form of expressive association protected by the First Amendment. See *City of Dallas v. Stanglin, 490 U.S. 19, 25, 104 L. Ed. 2d 18, 109 S. Ct. 1591 (1989)* (freedom of association does not extend to "generalized right of 'social association' that [*7] includes chance encounters in dance halls"). It is true that FFI does not engage in the kinds of activities that are traditionally associated with the First Amendment (e.g., civic, charitable, lobbying, or fundraising activities), see *Roberts, 468 U.S. at 622, 626-27;* however, FFI arguably benefits some public interest. FFI claims that its activities serve to enhance the public image of police officers and of the police profession. See *id. at 622* (freedom of association attaches to pursuit of "wide variety of . . . social . . . and cultural ends"). In addition, the proceeds from FFI boxing events are donated to the Police Widows and Orphans Fund. Thus,

this case is distinguishable from Stanglin, which involved the association of persons solely for recreational pursuits. See *Stanglin, 490 U.S. at 25* ("The activities of these dance-hall patrons -- coming together to engage in recreational dancing -- is not protected by the First Amendment.").

In any event, even if the right to associate in FFI is constitutionally protected, the District Court was correct in holding that the actions of Commissioner Bratton do not rise to the level of a First Amendment violation. The [*8] Supreme Court has held that, consonant with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association. See, e.g., *Lyng v. UAW, 485 U.S. 360, 366, 108 S. Ct. 1184, 99 L. Ed. 2d 380 (1988)* (government may refuse to provide food stamp benefits to striking workers); *Lincoln Federal Labor Union v. Northwestern Iron & Metal Co., 335 U.S. 525, 530-31, 93 L. Ed. 212, 69 S. Ct. 251 (1949)* (state may enforce open-shop law, even though union asserted that closed shop was indispensable to right of self-organization); see also *Connecticut State Federation of Teachers v. Board of Education Members, 538 F.2d 471, 481 (2d Cir. 1976)* (state may deny teachers' union right of access to school mailboxes, bulletin boards, and meeting rooms). Though such inhibiting conduct might make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment. To be cognizable, the interference with associational rights must be "direct and substantial" or "significant." *Lyng, 485 U.S. at 366, 367 & n.5;* see also *Younger v. Harris, 401 U.S. 37, 51, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971)* ("The existence of a 'chilling effect,' even in the [*9] area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action.").

In this case, the decision of Commissioner Bratton to withdraw official NYPD recognition from FFI and to prohibit FFI from posting its notices on police premises does not "directly and substantially interfere" with the rights of its members to exercise their freedom of association. See *Lyng, 485 U.S. at 366.* Commissioner Bratton did not "prevent" the members of FFI from associating together nor burden in any significant manner their ability to do so. Compare *NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958)* (disclosure of membership lists, which led to harassment, physical threats, and economic reprisals against individual members, worked "substantial restraint upon the exercise . . . of their right to freedom of association."). Importantly, FFI has not alleged that the actions of Commissioner Bratton have caused its members to suspend or even curtail their associational activities. Perhaps FFI would be better off if it received official NYPD recognition, but the First Amendment does not compel government to facilitate the ease with which [*10] an individual may exercise associational rights. See *Lyng, 485 U.S. at 368* ("Strikers' right of association does not require the Government to furnish funds to maximize the exercise of that right."); *Connecticut State Federation of Teachers, 538 F.2d at 481 & n.6* (although school premises were most effective place for teachers to communicate, denial of access to school mailboxes, bulletin boards, and meeting rooms did not violate associational rights of teachers' union). Thus, the District Court was correct in dismissing FFI's claim based on an alleged violation of its First Amendment freedom of association.

B. Freedom of Speech

FFI also challenges the actions of Commissioner Bratton as a violation of its First Amendment freedom of speech. This claim stands on a somewhat different footing than the previous claim, since the explicit prohibition on FFI postings in police precincts and facilities is a "direct and substantial" infringement on the promotional activities of FFI.

In analyzing the freedom of speech claim, our threshold inquiry is whether FFI's posting of notices constitutes a form of protected speech. See *Cornelius v. NAACP Legal Defense and Educational Fund,* [*11] *473 U.S. 788, 797, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985)* (if speech at issue is unprotected then reviewing court "need go no further"). n2 On the one hand, FFI's promotional activities appear to be only tenuously related to traditional First Amendment concerns. On the other hand, the Supreme Court has recently declared that even purely commercial speech enjoys a significant degree of First Amendment protection. See *44 Liquormart, Inc. v. Rhode Island, 134 L. Ed. 2d 711, 116 S. Ct. 1495 (1996).* Moreover, the charitable nature of FFI somewhat renders the postings a form of charitable solicitation. See *Cornelius, 473 U.S. at 797-99* (charitable solicitation through Combined Federal Campaign is form of protected speech). We will assume, for purposes of this appeal, that the posting of FFI's notices is within the category of "expression" that, in some circumstances, is entitled to First Amendment protection.

---

n2 The District Court did not resolve this issue, though it expressed "grave doubts" as to whether the sport of boxing is a form of protected expression similar to the activity of live nude dancing. Cf. *Barnes v. Glen Theatre, Inc., 501 U.S. 560, 565-66, 115 L. Ed. 2d 504, 111 S. Ct. 2456 (1991).* Yet the pending lawsuit does not concern the right of FFI to engage in boxing

matches, but rather its right to communicate by posting notices of those matches.

[*12]

Proceeding on that assumption, we face the second inquiry of whether a direct restraint on FFI's freedom of speech is constitutionally permissible. This issue depends in large part on the nature of the forum to which access is being sought. The Supreme Court has generally recognized three different types of forums: the traditional public forum, the designated public forum, sometimes known as the "limited" public forum, n3 and the non-public forum. See *Cornelius, 473 U.S. at 802-03; Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 45-46 & n.7, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983);* see also *Calash v. City of Bridgeport, 788 F.2d 80, 82 (2d Cir. 1986).*

n3 See *Travis v. Owego-Apalachin School District, 927 F.2d 688, 692 (2d Cir. 1991)* (category of designated public forum also contains sub-category styled "limited public forum" open only "to certain kinds of speakers or to the discussion of certain subjects")

An individual's freedom of speech is at its zenith when sought to be exercised in a traditional [*13] public forum, and at its nadir when sought to be exercised in a non-public forum. With a traditional public forum, the exclusion of a speaker must be narrowly tailored to achieve a compelling state interest. See *Cornelius, 473 U.S. at 800*. Conversely, with a non-public forum, the exclusion of a speaker need only be reasonable and not based on opposition to the speaker's viewpoint. See id.; see also *Perry, 460 U.S. at 49* (stating that, with non-public forum, State has right "to make distinctions in access on the basis of subject matter and speaker identity").

Between those extremes is the "designated" or "limited" public forum, *Cornelius, 473 U.S. at 802-04*, a forum that government has intentionally opened to some degree of public access. With a designated public forum, the deference accorded to an individual's freedom of speech depends on the purpose for which the forum was created. Where a speaker comes within that purpose, the State is generally subject to the same strict scrutiny that applies to traditional public forums, see *Widmar v. Vincent, 454 U.S. 263, 70 L. Ed. 2d 440, 102 S. Ct. 269 (1981)* (university meeting facilities were designated public forum for student groups). Where the speaker [*14] does not come within that purpose, however, the State is subject to only minimal constitutional scrutiny.

The Supreme Court has sent somewhat mixed signals as to the criteria for identifying a "limited" public forum. In Perry, the Court stated that a "public forum may be created for a limited purpose such as use by certain groups." *Perry, 460 U.S. at 46 n.7*. This view was reiterated in Cornelius, where the Court, explicitly citing the Perry footnote, stated:

> In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects. *Perry Education Assn., supra, at 45 and 46, n.7.*

*Cornelius, 473 U.S. at 802* (emphasis added). Perry illustrated what might constitute a "limited" public forum by stating that "even if we assume that by granting access to the Cub Scouts, YMCA's, and parochial schools, the School District has created a 'limited' public forum, the constitutional right of access would in any event extend only to other entities of similar [*15] character." *Perry, 460 U.S. at 48*.

However, the Court has also indicated that the granting of access to selected speakers or groups does not necessarily establish a "limited" public forum. In Perry, the Court stated that "selective access does not transform government property into a public forum." *Id. at 47*. The Court gives the example of Fort Dix, where access by some speakers did not result in a "limited" public forum available to other speakers. See *Greer v. Spock, 424 U.S. 828, 47 L. Ed. 2d 505, 96 S. Ct. 1211 (1976)*. Similarly in Cornelius, though the Court says that a public forum may be created by government designation of a channel of communication "for use by certain speakers," *Cornelius, 473 U.S. at 802*, it then says that "selective access, unsupported by evidence of a purposeful designation for public use, does not create a public forum," *id. at 805*. Indeed, Cornelius makes the point that if permission for use is required and is not freely given, that in itself shows that a public forum has not been created. n4 *Id. at 803-04*.

n4 That view elicited a strong dissent from Justice Blackmun:

> The Court's analysis empties the limited-public-forum concept of meaning and collapses the three categories of public forum, limited

> public forum, and nonpublic forum into two. The Court makes it virtually impossible to prove that a forum restricted to a particular class of speakers is a limited public forum. . . . The very fact that the Government denied access to the speaker indicates that the Government did not intend to provide an open forum for expressive activity . . . .

*Cornelius*, 473 U.S. at 825 (Blackmun, J., with whom Brennan, J., joins, dissenting).

[*16]

What *Cornelius* leaves uncertain is what it means by "public use" for which access has been granted to limited groups or speakers. It is arguable that "such use" means that a channel of communication is open to the public at large -- either for speaking or for listening -- or open at least to a class of groups whose meetings or memberships are open to the public at large. This view is held by Judge Jacobs. n5 Alternatively, it is also arguable that the Court has in mind a use that is "public" to some degree, but not necessarily extending to the public at large. This view is held by the writer. n6

> n5 Judge Jacobs finds support for his view in the principle that a designated public forum -- including one that is a limited public forum -- is "public property which the State has opened for use by the public as a place for expressive activity." *Perry*, 460 U.S. at 45 (emphasis added); see also id. at 46 n.7; *Cornelius*, 473 U.S. at 802 ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." (emphasis added).

[*17]

> n6 The writer's view gains support from the fact that Cornelius contrasted "use by the public at large" with "use by certain speakers," *Cornelius*, 473 U.S. at 802, and from the unlikelihood that the Court's example in Perry of Cub Scout meetings involved an invitation to the public at large, either to speak at such meetings or to attend them.

However that interpretive issue might be resolved, the Supreme Court has made it sufficiently clear that whether a "limited" public forum has been created depends on several factors, in addition to the identity of those invited. The Court has examined, among other things, the nature of the property or means of communication, the Government's purpose in permitting whatever limited access it has allowed, and the conditions of access (e.g., whether permission is required).

In the pending case, the means of communication is posting on the bulletin boards of police precincts, n7 the police purpose in permitting access is to promote its own internal objectives, and permission is required and is selectively granted. The bulletin boards of a police [*18] station are much more analogous to the grounds of Fort Dix, in Greer, the interior of a prison, *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977), the internal mail system in Perry, and the Government charity drive in Cornelius, to all of which access was denied, than to the university meeting facilities in Widmar, or the municipal theater in *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239 (1975), to which access was required. Thus, wherever the line might ultimately be drawn between circumstances where invitations to speakers establish a "limited" public forum and those that do not, the NYPD's decision to let some groups use its precinct bulletin boards is safely on the non-public forum side of the line.

> n7 If the complaint is to be understood as also claiming access to the NYPD's internal telecommunications systems, the argument for a "limited" public forum would be equally unavailing.

The complaint lacks allegations that would satisfy even an expansive view of [*19] a "limited" public forum. Plaintiffs' First Amendment claims were properly rejected.

II. Equal Protection

In dismissing FFI's claim under the Equal Protection Clause, the District Court held that, since FFI failed to allege a violation of the First Amendment, this case did not involve the deprivation of a fundamental right. Therefore, the Court concluded, strict scrutiny was inapplicable, and under the rational basis test, the State had shown a legitimate reason for discriminating against FFI, namely, accommodating the preference of the PBA. As the Court noted, the plaintiffs allege only that other police teams unaffiliated with the PBA may use police bul-

1996 U.S. App. LEXIS 28748, *

letin boards, but make no claim that any rival team in a sport in which a PBA team exists has been granted such access. The equal protection claim was properly rejected.

The judgment of the District Court is affirmed.