LEXSEE 1994 U.S. DIST. LEXIS 10778

**VINCENT COSTELLO, Plaintiff, v. THOMAS A. McENERY, in his official and individual capacities; LUCIUS J. RICCIO in his official capacity as Commissioner of the Department of Transportation of the City of New York; THE PARKING VIOLATIONS BUREAU OF THE CITY OF NEW YORK; THE DEPARTMENT OF TRANSPORTATION OF THE CITY OF NEW YORK, and THE CITY OF NEW YORK, Defendants.**

91 Civ. 3475 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1994 U.S. Dist. LEXIS 10778*

**August 3, 1994, Decided**
**August 3, 1994, Filed**

**COUNSEL:** [*1] JOHN MATHIAS HORAN, ESQ., PATRICIA DOBBERSTEIN, ESQ., New York, NY, Counsel for Plaintiff.

O. PETER SHERWOOD, CORPORATION COUNSEL OF THE CITY OF NEW YORK, New York, NY. Rebecca Northey, of counsel, Antonia Kousoulas, of counsel, Counsel for Defendants.

**JUDGES:** Leisure

**OPINIONBY:** PETER K. LEISURE

**OPINION:**

### OPINION AND ORDER

LEISURE, District Judge,

This is an action brought under *42 U.S.C. § 1983* arising out of the removal of plaintiff Vincent Costello from his position as Director of Operations of the Parking Violations Bureau of the City of New York. Costello contends he was retaliated against for his criticism of the Bureau, in violation of his First and Fourteenth Amendment rights. Defendants have moved for summary judgment pursuant to *Fed. R. Civ. P. 56*. For the reasons discussed below, defendants' motion is granted in its entirety.

### BACKGROUND

Vincent Costello was employed by the New York City Parking Violations Bureau (the "PVB") from 1980 to June 1, 1990. As Director of the Operations Division, Costello processed refunds, handled inquiries and complaints from the public concerning parking tickets, and performed other support functions. Costello's position [*2] was defined as an M-III level under the Department of Personnel's employment classification system. Defendant Thomas McEnery was Deputy Commissioner of the Department of Transportation and Director of the PVB from February of 1988 until July of 1991.

On April 11, 1990, at an Executive Staff meeting, Costello discussed a PVB internal report suggesting that the public had made $ 19.8 million in unrefunded overpayments for parking tickets and argued that the PVB should refund these payments. At this meeting, plaintiff also criticized the PVB's use of only two private collection agencies. In addition, on various occasions thereafter, plaintiff repeated these criticisms.

On May 24, 1990 Plaintiff was notified by McEnery and by plaintiff's immediate supervisor, Robert Alvatroni, that they wished to transfer plaintiff to the position of Director of Quality Control. Plaintiff questioned whether the title indicated a legitimate position and requested a Management Position Description ("MPD"), but declined to accept the new position. On May 29, 1990, plaintiff received a memo from McEnery dated May 25, establishing a deadline of May 29 for plaintiff to reconsider the Quality Control position. [*3] Plaintiff did not respond to this memo nor to a second memo, dated May 30, 1990, again urging plaintiff to reconsider and warning him that, regardless of his acceptance or refusal of the position, plaintiff would be replaced as Director of Operations as of June 1, 1990. Shortly thereafter, plaintiff was transferred to a position in the Department of Transportation's Legal Affairs Division. This

Case 3:03-cv-00221-AVC   Document 85-7   Filed 12/20/2005   Page 2 of 4

Page 2
1994 U.S. Dist. LEXIS 10778, *

transfer was approved by defendant Lucius Riccio, the Commissioner of the Department of Transportation. Plaintiff contends that defendants transferred him in retaliation for his criticisms of the PVB's practices, in particular his criticisms made on April 11, 1990.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993)*. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992);* [*4] accord *Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)*.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson, 477 U.S. 242, 250* (quoting *Fed. R. Civ. P. 56(e)*). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' . . . and more than 'some metaphysical doubt as to the material facts.'" *Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990)*, cert. denied, *500 U.S. 928 (1991)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*, [*5] and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986))*; accord *Borthwick v. First Georgetown Securities, Inc., 892 F.2d 178, 181 (2d Cir. 1989)* (The non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts").

### II. PLAINTIFF'S FIRST AMENDMENT CLAIM

A public employee claiming that he has been discharged for exercising his First Amendment speech rights must first establish that his speech addressed "a matter of public concern" and was thus protected by the First Amendment. *Waters v. Churchill,    U.S.   , 114 S. Ct. 1878, 1884 (1994)*. The Court has little difficulty in concluding that plaintiff's remarks concerning the Bureau's allegedly unjustified retention of over $ 19 million worth of parking fines touched on a matter of serious public concern. See *Vasbinder v. Ambach, 926 F.2d 1333, 1340 (2d Cir. 1991)* (state department employee's remarks concerning misallocation of public funds is a [*6] matter of serious public concern); *Rookard v. Health and Hospitals Corp., 710 F.2d 41, 46 (2d Cir. 1983)* (complaint of fraudulent and corrupt practices constitutes matter of public concern).

Plaintiff must next prove that his speech was a substantial or motivating factor in the defendants' adverse employment decision. See *Piesco v. Koch, 12 F.3d 332, 342 (2d Cir. 1993)* (citing *Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1984))*; *Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)* (plaintiff must show that "defendants' conduct was motivated by or substantially caused by his exercise of free speech"); *Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994)* ("causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action").

In the instant case, plaintiff contends that the timing of his removal supports the inference that he was removed [*7] from his position in retaliation for his speech. However, the defendants have provided evidence, including contemporaneous documentation, that McEnery made the decision to remove Costello from his position by April 2, 1994, before Costello's criticisms on April 11, although Costello was not informed of the decision until May 24. Affidavit of Antonia Kousoulas, dated July 16, 1993, Exhibit A at 220-221 (draft memo concerning PVB reorganization); id., Exhibit B at 912-16, 1074-75 (Deposition of McEnery). Costello has not presented any evidence rebutting this chronology, nor has Costello made any specific allegations that he engaged in speech prior to April 11 that motivated his removal. Rather, plaintiff observes that the decision to transfer him out of the PVB entirely, rather than appoint him to the Quality Control position within the PVB, as was initially suggested, was made subsequent to April 11. Plaintiff contends this decision gives rise to an inference of retaliatory intent. However, it is undisputed that plaintiff himself declined the position offered to him within the PVB. The Court finds nothing suspect in an employer's reluctance to assign an employee to a position that [*8] he has declined to accept. Certainly nothing in such a decision gives rise to an inference of retaliatory intent.

The Court also finds unpersuasive plaintiff's argument that the Court should draw an inference of retaliatory intent because the decision to transfer plaintiff was approved by defendant Lucius Riccio, Commissioner of the Department of Transportation, subsequent to plaintiff's criticisms. This inference, however, is simply too

tenuous to bear the weight that plaintiff seeks to place on it. At least one court has observed that mere "temporal proximity . . . is simply too slender a reed on which to rest a Section 1983 retaliatory discharge claim." *Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993)*. Whether or not this Court agrees with that view, it is at least clear that when a plaintiff relies upon a sequence of events to demonstrate a retaliatory motive, that sequence should clearly support his contention that his speech was a "substantial motivating factor" in the defendant's adverse employment decision. See generally *Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir. 1991)* (noting that, on a motion [*9] for summary judgment, proof of state of mind requires "solid circumstantial evidence") (citations and quotations omitted). Here, the chronology of events does not clearly support the inference that Costello was fired in retaliation for his speech. Riccio testified at his deposition that he routinely ratifies McEnery's employment decisions. Thus, the fact that Riccio approved his deputy's decision hardly gives rise to an inference that he did so in retaliation for plaintiff's criticisms. Even if the Court did draw this inference, it would not support the conclusion that plaintiff's criticisms were a "substantial motivating factor" in plaintiff's transfer. See *Wagner, 13 F.3d at 91* (quoting *Mt. Healthy, 429 U.S. at 286*) (a "first amendment violation does not result 'simply because the protected conduct makes the employer more certain of the correctness' of the decision" to remove an employee).

Finally, the deposition testimony of Costello's colleagues lends no support to plaintiff in making out his prima facie case. To the contrary, this testimony suggests that plaintiff's behavior was disruptive [*10] and hindered the PVB's ability to provide efficient services. See Affidavit of Antonia Kousoulas, dated July 16, 1993, Exhibit B at 30-31 (sworn testimony of Robert Alvatroni before Department of Investigation) (Costello "would exercise his right to carry on, get into confrontations with peers, superiors, be quite obnoxious and downgrading to individuals"); id. at 57 (deposition of Seryl Ritter) (Costello's demeanor was "very accusatory--sometimes almost a personalized attack on the individual who was presenting the information. . ."); id. at 147-48 (deposition of Joseph Fama) (referring to Costello's remarks about staff members as disparaging and concluding that there were probably many employees offended by his remarks); id. at 104-05 (deposition of Elizabeth Brickfield) (stating that executive staff meetings had "gone from being informational to meetings where you simply wanted to go through with the least amount of stepping on as gingerly as possible"); id. at 222, 231 (deposition of Jonathan Silverberg) (describing Costello as an "extremely unprofessional manager" and noting that his "need to denigrate the work of the information systems people was almost [*11] a standing joke.").

Thus, Costello has failed to point either to direct or indirect evidence supporting his contention that he was fired in retaliation for his criticisms of the PVB. Accordingly, Costello has failed to make a prima facie case that defendants violated his First Amendment rights.

### III. PLAINTIFF'S DUE PROCESS CLAIM

Plaintiff's second claim is that he was deprived of a property interest without due process of law. To establish a due process violation under § 1983, plaintiff must first prove that a liberty or property interest was at stake. See *Mathews v. Eldridge, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976); Ezekwo v. N.Y.C. Health & Hosp. Corp., 940 F.2d 775, 781-82 (2d Cir.), cert. denied, 116 L. Ed. 2d 749, 112 S. Ct. 657 (1991)*. Employment does not create a property interest in the absence of a statutory or contractual provision or a "de facto" tenure program. *Perry v. Sindermann, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972)*; see also [*12] *Ezekwo, 940 F.2d at 781-82*. Thus, an employee "must have more than a unilateral expectation" of continued employment to create a property entitlement. *White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1062 (2d Cir. 1993)*.

Plaintiff contends that he had a property interest because New York Civil Service Law provides that civil servants "shall not be removed or subject to a disciplinary penalty provided in this section" without a hearing. Civ. Serv. § 75 (McKinney 1994). However, while plaintiff was removed from one position, he was offered another at equal pay and rank. As plaintiff concedes, a reassignment to a different position at equal pay and rank is not a removal or disciplinary penalty requiring a hearing. *Galatti v. County of Dutchess, 64 N.Y.2d 1163, 1165, 491 N.Y.S.2d 89, 89-90, 480 N.E.2d 678, 679 (1985)*. This Court can imagine no less appropriate exercise of its powers than, under the guise of the due process clause, to meddle in a municipality's assignment of responsibilities and functions to its employees that have no effect upon those employees' [*13] rank or pay.

Of course, plaintiff did eventually suffer a demotion in rank when he declined to accept the position of Director of Quality Control. However, plaintiff's unilateral act in refusing this new position can hardly be characterized as a due process violation attributable to defendants. Plaintiff objects that the defendants failed to give him adequate information about the responsibilities and duties he would have held in his new position. However, this allegation is irrelevant since plaintiff had no property interest in the responsibilities that he held in his previous position. Plaintiff's only property interest, if any, was in holding a position with equal rank and pay, and it was plaintiff's decision not to accept such a position that resulted in the deprivation of this property interest.

1994 U.S. Dist. LEXIS 10778, *

Accordingly, plaintiff has not set forth any evidence that defendants deprived him of a property interest without due process of law.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are hereby granted in their entirety.

**SO ORDERED**

Dated: August 3, 1994
New York, New York

Peter K. Leisure

U.S.D.J.