LEXSEE 2000 U.S. DIST. LEXIS 6099

**BARBARA SHEGOG, et al., Plaintiffs, vs. BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al., Defendants.**

**99 C 211**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2000 U.S. Dist. LEXIS 6099*

**May 1, 2000, Decided**
**May 4, 2000, Docketed**

**DISPOSITION:** [*1] Defendants' Board of Education of City of Chicago, et al's motion to dismiss amended complaint granted.

**COUNSEL:** For BARBARA SHEGOG, JOSEPHINE SAIEVA, LAWRENCE LINDSAY, SALLY JONES, EDWARD ZAJDA, JAMES SCHLATTER, LLOYD NORMENT, WILLIE SCOTT, plaintiffs: Gregory Nathan Freerksen, Wayne B. Giampietro, Jennifer Kae Poltrock, Witwer, Poltrock & Giampietro, Chicago, IL.

For BARBARA SHEGOG, JOSEPHINE SAIEVA, LAWRENCE LINDSAY, SALLY JONES, EDWARD ZAJDA, JAMES SCHLATTER, LLOYD NORMENT, WILLIE SCOTT, plaintiffs: Lawrence A. Poltrock, Witmer, Burlage, Poltrock & Giampietro, Chicago, IL.

For CTY OF CHGO BOARD OF EDUCATION OF THE CITY OF CHICAGO, defendant: Norman M. Hirsch, Jenner & Block, Chicago, IL.

For CTY OF CHGO BOARD OF EDUCATION OF THE CITY OF CHICAGO, GERY J CHICO, NORMAN R ROBINS, TARIQ BUTT, AVIS LAVELLE, GENE R SAFFOLD, PAUL G VALLAS, COZETTE M BUCKNEY, CARLOS C PONCE, MARILYN JOHNSON, defendants: Russ M. Strobel, Robert Steven Markin, Altheimer & Gray, Chicago, IL.

**JUDGES:** HON. RONALD A. GUZMAN, United States Judge.

**OPINIONBY:** RONALD A. GUZMAN

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, former tenured teachers and their union, have sued the Chicago Board of Education [*2] ("Board"), some of its officers, and some of the officers and representatives of the Chicago School Reform Board of Trustees claiming that they violated state law as well as *42 U.S.C. § 1983* ("section 1983") when the Board admittedly laid off without cause 138 tenured teachers on January 22, 1999. Plaintiffs' request for a TRO and preliminary injunction was denied, plaintiffs appealed, and the Seventh Circuit affirmed the denial. *See* Mem. Op. & Order of 2/17/99; *Shegog v. Board of Educ., 194 F.3d 836 (7th Cir. 1999).* The case has since been reassigned to this Court's docket. (*See* Min. Order of 12/2/99.) Defendants have moved to dismiss the Amended Complaint. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion and declines to exercise supplemental jurisdiction over any remaining state-law claims based on *28 U.S.C. 1367(c)(3).*

**DISCUSSION**

On a motion pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, the Court accepts the well-pleaded factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996).* [*3] No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).*

Section 1983 "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" *Ledford v. Sullivan,*

*105 F.3d 354, 356 (7th Cir. 1997)* (quoting *Livadas v. Bradshaw, 512 U.S. 107, 132, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994))*. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Id.* The Fourteenth Amendment of the United States Constitution proscribes state deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. We first determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, **[*4]** or property and if so, then we must determine what procedures constitute due process of law. *Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972)*.

As the Seventh Circuit has stated with regard to plaintiffs' section 1983 claim, "the plaintiffs' only bona fide claim under federal law supposes that the defendants' view of state law is correct," *i.e.*, that the statute governing layoffs modifies the tenure statute and the layoff procedure is valid. *Shegog, 194 F.3d at 840.* The Seventh Circuit has also intimated that the Court should determine whether the statute that authorizes the Board to create rules regarding layoffs, reductions in force, and recalls ("authorizing statute") or the Board's regulations regarding layoffs create a property interest without addressing the relationship between the statute that establishes tenure, *105 ILL. COMP. STAT. 5/34-85*, and the authorizing statute, *105 ILL. COMP. STAT. 5/34-18(31)*. *Id. at 838-40.* Therefore, the Court's analysis proceeds accordingly.

"[A] person has a property interest in his job where he has a legitimate expectation of continued **[*5]** employment . . . based on a legitimate claim of entitlement." *Draghi v. County of Cook, 184 F.3d 689, 692 (7th Cir. 1999).* A legitimate claim of entitlement is one that is "securely and durably yours . . . as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Reed v. Village of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983).* Most importantly, "there must be 'explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion.'" *Wallace v. Robinson, 940 F.2d 243, 247 (7th Cir. 1991)* (quoting *Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 104 L. Ed. 2d 506, 109 S. Ct. 1904 (1989))* (internal quotations omitted).

The authorizing statute, *105 ILL. COMP. STAT. 5/34-18(31)* empowers the Board:

> to promulgate rules establishing procedures governing the layoff or reduction in force of employees and the recall of such employees, including, but not limited to,

criteria for such layoffs, reduction in force or recall rights of such employees and the weight to be given to any particular criterion. **[*6]** Such criteria shall take into account factors including, but not limited to, qualifications, certifications, experience, performance ratings or evaluations, and any other factors relating to an employee's job performance.

This provision not only grants the Board the plenary power to create rules regarding layoffs, reductions in force, and recalls, it gives the Board broad discretion to determine the weight assigned to the listed criteria and any other criteria the Board deems proper. As such, the statute does not limit in any meaningful way the Board's decision-making process related to layoffs, reductions in force, or recalls. Any expectation of continued employment based solely on the language of this layoff provision could hardly be called a legitimate, or even a reasonable, one. Accordingly, the Court concludes that *105 ILL. COMP. STAT. 5/34-18(31)* does not establish specified substantive predicates to limit discretion and thus does not create a property interest.

However, this does not end the Court's analysis. A regulation or rule promulgated pursuant to state statute, such as a public school board policy, may create a legitimate expectation of continued employment even **[*7]** where the authorizing statute does not. *Hohmeier v. Leyden Community High Sch. Dist. 212, 954 F.2d 461, 464 (7th Cir. 1992).* Thus, the Court must examine the Board's new layoff policy. Specifically, the Seventh Circuit in *Shegog* instructed us to inquire whether the propriety of a layoff pursuant to the Board's new policy depends on "person-specific issues affecting 'property' interests (that is, legitimate claims of entitlement based on contestable factual propositions) to be resolved at hearings." *194 F.3d at 838* (citation omitted).

After examining the four events that may properly trigger a layoff, the Court answers this inquiry in the negative. The policy in question, 97-0723-PO2 Policy Regarding Reassignment and Layoff of Regularly Certified & Appointed Teachers ("Layoff Policy") provides in part:

> Whenever an attendance center or a program is closed, there is a drop in enrollment, the educational focus of the attendance center is changed such that available teaching positions cannot accommodate some or all current regularly certified and appointed teaching staff, or when an

attendance center is subject to actions taken as a result of remediation, [*8] probation, reconstitution, or educational crisis, such staff will be reassigned or laid off in accordance with this policy.

Layoff Policy § 1.

First, whether the Board may close an attendance center or program depends not on person-specific issues but on factors such as the availability of relocation space, efficient utilization of available space, the physical condition of the building, and school-wide performance. (*See* Defs.' Supp. Mem. Resp. Court's 2/1/00 Order, Ex. 6, Closing & Consolidation Policy, at 2-3.) Second, whether there is a drop in enrollment is a matter mainly controlled by population and enrollment trends and does not implicate issues specific to the individual teachers to be laid off. Third, whether an attendance center is subject to actions taken as a result of remediation, probation, reconstitution, or educational crisis is not dependent on person-specific issues because the implementation of these corrective actions does not reflect the individual conduct or qualifications of any particular teacher. Instead, these actions reflect nonperformance on a school-wide basis regardless of an individual teacher's competency or merit. (*See id.*, Ex. 3, [*9] Remediation & Probation Policy; Ex. 4, Educ. Crisis Policy.) Fourth, a change in the educational focus of an attendance center or program may occur for an apparently limitless number reasons, n1 none of which pertain to person-specific issues. Thus, the propriety of a layoff under the Layoff Policy does not concern a contestable factual proposition specific to an individual teacher, such as whether a particular teacher was laid off for particular misconduct or whether he or she could meet the qualifications of the position. *Cf. Riggs v. Kentucky, 734 F.2d 262, 265 (6th Cir. 1984)* (no property interest where statute permits layoffs due to "reorganization, lack of funds, or work, or the abolishment of positions" because "it is the cause element which confers upon the property right the imprimatur of constitutionality"). Further, after the Layoff Policy has been properly triggered, it is a matter of state law as to whether the board has violated its own policies. *See Shegog, 194 F.3d at 838* ("People who contend that a state actor has violated state law or broken a contract must present their claims to state court.")

n1 With regard to the Board's discretion to change the educational focus of an attendance center or program, apparently there are no constraints. Neither party has mentioned any substantive guideline that limits the Board's discretion to change educational focus, despite the Court's request for such information.

[*10]

In this regard, the cases on which plaintiffs rely in their analysis are distinguishable because the statutes in those cases provided for the denial of the benefit based on person-specific reasons. *See Cleveland v. Loudermill, 470 U.S. 532, 544, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985)* (school district employees could not be dismissed except for "misfeasance, malfeasance, or nonfeasance in office"); *Fleury v. Clayton, 847 F.2d 1229, 1230 (7th Cir. 1988)* (physician censure contingent on "gross or repeated malpractice resulting in serious injury or death of a patient[,] . . . dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public[,] . . . [or] professional incompetence as manifested by poor standards of care"); *Knudson v. City of Ellensburg, 832 F.2d 1142, 1145 (9th Cir. 1987)* (medical benefit dependent on "past service, sickness, or disability"); *see also Mims v. Board of Educ., 523 F.2d 711, 715 (7th Cir. 1975)* (layoff reliant on whether employees could perform work of heavy lifting).

If, as in this case, the contested facts upon which a layoff is based [*11] are not person-specific, what exactly would be at issue in a teacher's individual hearing? After all, none of the plaintiffs face person-specific charges that need to be individually refuted. Factual findings at such a hearing regarding a teacher's tenure, qualifications, conduct, and competency would not entitle a teacher to be ineligible for removal from his or her position. *Cf. Eidson v. Pierce, 745 F.2d 453, 461 (7th Cir. 1984)* (finding no property interest in Section 8 benefits where factual findings at hearing regarding whether applicants met person-specific eligibility criteria for Section 8 housing would not entitle them to such benefits). A determination of whether an attendance center or a program was closed, the enrollment dropped, the educational focus was changed, or actions were taken due to remediation, probation, reconstitution, or educational crisis does not require individual hearings that plaintiffs seek. n2 Because these issues are not person-specific, they are not of the type that "plaintiffs might have been able to contribute information and valid persuasion . . . possibly resulting in a temporary continuation of employment." *Mims, 523 F.2d at 715.* [*12] Because the Court finds the propriety of a layoff pursuant to the Board's new policy does not depend on person-specific issues that affect property interests to be resolved at hearings, the Court holds that plaintiffs have no property interest in continued employment in the context of a layoff.

n2 Further, Plaintiffs apparently argue in the eleventh hour that no layoff took place in an effort to obtain a hearing on the issue of whether a layoff actually occurred. (*See* Pls.' Suppl. Mem. at 12.) The Court rejects this argument. The Amended Complaint is devoid of any allegation that no layoff was occurring. Moreover, throughout the Amended Complaint, plaintiffs complain that a layoff was occurring pursuant to the authorizing statute and the Board's new Layoff Policy. At most, plaintiffs allege that the layoff was taking place pursuant to the Layoff Policy and that the Layoff Policy was applied arbitrarily and capriciously as to plaintiffs Shegog, Jones, and Saieva. (*See* Am. Compl. at PP 41-43, 45.)

## CONCLUSION [*13]

For the foregoing reasons, the Court grants defendants' motion to dismiss the Amended Complaint. Pursuant to *28 U.S.C. § 1367*(c)(3), the Court in its discretion, having dismissed all claims over which it has original jurisdiction, declines to exercise supplemental jurisdiction over plaintiffs' state law claims and hereby terminates this case. This is a final and appealable order.

**SO ORDERED**

**ENTERED:** 5/1/00

**HON. RONALD A. GUZMAN**

**United States Judge**

**JUDGMENT IN A CIVIL CASE**

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendants' Board of Education of the City of Chicago, et al's motion to dismiss the amended complaint is granted. Pursuant to *28 U.S.C. Section 1367*(c)(3), the Court in it discretion, having dismissed all claims over which it has original jurisdiction, declines to exercise supplemental jurisdiction over plaintiffs' state law claims and hereby terminates this case. This is a final and appealable order.

Date: 5/3/2000