LEXSEE 2005 U.S. DIST. LEXIS 3241

SANDRA LORUSSO & DEBORAH EVANGELISTA, Plaintiffs, v. H. RICHARD BORER, JR., Defendant.

No. 3:03cv504 (MRK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2005 U.S. Dist. LEXIS 3241

February 28, 2005, Decided

**DISPOSITION:** Defendant's Motion for Summary Judgment was granted in part and denied in part. Defendant's Motion to Strike was denied as moot.

**COUNSEL:** [*1] For Sandra Lorusso, Deborah Evangelista, Plaintiffs: Karen Lee Torre, New Haven, CT.

For H. Richard Borer, Jr., Defendant: Jennifer L. Schancupp, Thomas E. Katon, Susman, Duffy & Segaloff, New Haven, CT; Paul J. Dorsi, Donahue & Votto, PC, West Haven, CT.

**JUDGES:** Mark R. Kravitz, United States District Judge.

**OPINIONBY:** Mark R. Kravitz

**OPINION:**

### MEMORANDUM OF DECISION

This case arises from alleged retaliatory employment actions taken by the Mayor of the City of West Haven (the "City"), H. Richard Borer ("Mayor Borer"), against two city employees, Sandra Lorusso and Deborah Evangelista. Plaintiffs claim that they were retaliated against for backing a political opponent of Mayor Borer's, in violation of their *First Amendment* rights, as enforced by *42 U.S.C. § 1983*, and their corresponding Connecticut state constitutional rights. n1 At oral argument, Plaintiffs clarified that they are bringing their *First Amendment* political retaliation claims against Mayor Borer in his individual capacity only, and that they have abandoned their claims against Mayor Borer under *§ 31-51q of the Connecticut General Statutes. See also* Pls.' Opp'n to Def.'s Mot. for Summ. J. [*2] [doc. # 38], at 2. n2

n1 The portion of the Connecticut Constitution cited in Plaintiffs' complaint - *Article First,* *Section 8* - corresponds to the federal *Due Process Clause,* not the *First Amendment. See* Compl. [doc. # 1], at P18; *Connecticut Constitution, Article First, § 8* ("No person shall . . . be deprived of life, liberty or property without due process of law. . . . "). Citation to *Article First § 4* and/or *Article First § 14 of the Connecticut Constitution* would have been more appropriate, though the Defendant has not taken issue with Plaintiffs' citation. *See Connecticut Constitution, Article First, § 4* ("Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty"); *Article First, § 14* ("The citizens have a right . . . to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance").

n2 Though Mayor Borer's motion for summary judgment apparently seeks summary judgment on all Plaintiffs' claims, his Memorandum of Law in Support of Defendant's Motion for Summary Judgment [doc. # 26] does not address Plaintiffs' state constitutional claims. *See* Compl. [doc. # 1] at P18 ("The plaintiffs' right to support a mayoral candidate of their choice is absolutely protected by the *First Amendment to the United States Constitution* and by *Article First, Section 8* [sic] *of the Constitution of the State of Connecticut.*"). For that matter, none of the briefs submitted by either party in conjunction with Defendant's motion for summary Judgment addresses the state constitutional claims. It is conceivable that Plaintiffs intended to abandon the state constitutional claims when they dropped their claims under *§ 31-51q of the Connecticut General Statutes.* However, because neither the Defendant nor the Plaintiffs briefed the state constitutional claims, the Court will express no opinion regarding the merits, if any, of such claims, and this

Memorandum of Decision will focus only on the Plaintiffs' *First Amendment* political retaliation claims.

[*3]

Mayor Borer's alleged employment actions against Plaintiffs fall into two broad categories: (1) his conduct related to the proposal of a budget to the City Council; and (2) his conduct *after* the passage of the budget. Currently pending before the Court is Defendant's Motion for Summary Judgment [doc. # 25]. The Court concludes that Mayor Borer is entitled to absolute legislative immunity for Plaintiffs' claims related to his conduct in proposing the City's budget, and therefore, the Court will grant him summary judgment on those claims. However, Mayor Borer is entitled to only qualified immunity for his conduct following passage of the City's budget, and there are material issues of fact related to that conduct which preclude summary judgment on Plaintiffs' claims relating to this post-budget conduct. Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment [doc. # 25].

I.

The basic facts underlying this dispute may be briefly stated. During the November 2001 election, Plaintiffs, who are City employees, chose not to support the incumbent, Mayor Borer, and instead supported his challenger. *See* Def.'s Local Rule 9(c)(1) Statement [*4] [doc. # 27], at PP24-25; *see also* Compl. [doc. # 1], at PP10-14, 17. When Plaintiffs' chosen candidate lost and Mayor Borer was reelected, Plaintiffs allege that Mayor Borer began a course of action designed to retaliate against them for supporting his opponent. *See* Compl. [doc. # 1] at PP15-16. The alleged retaliatory conduct can be divided into two categories.

First, among other changes to the employment structure of City government, Mayor Borer proposed a budget for the fiscal year 2002-2003 that eliminated funding for the position of Risk Manager, the position then held by Ms. Lorusso. *See* Def.'s Local Rule 9(c)(1) Statement [doc. # 27], at P5. Mayor Borer presented this budget to the City Council on March 21, 2002, and after hearings on the Mayor's budget proposal in which the budget was amended, the City Council passed the budget on May 2, 2002, thereby effectively eliminating Ms. Lorusso's job. *See id.* at PP15 & 20-22. Furthermore, that same budget proposed by Mayor Borer and adopted by the City Council reduced funding for the positions of Administrative Assistant to the Democratic and Republican Registrars of Voters, ultimately resulting in a reduction [*5] of the hours for those positions to 19 hours per week, from the 35 hours per week that was provided in prior budgets. *See id.* at P16. Ms. Evangelista has served as Administrative Assistant to the Democratic Registrar of Voters since 1991, and as a result of Mayor Borer's budgetary proposals, and the Council's adoption of them, her work hours were reduced to 19 hours per week. *See id.* at PP3 & 25.

Second, Ms. Lorusso also alleges that *after* the City Council passed the budget that eliminated her job as Risk Manager, Mayor Borer repeatedly denied her opportunities to remain in City employ by preventing her from moving into three other positions within the City's government for which she claims she was qualified - Risk/Procurement Manager; Zoning Enforcement Officer, and Assistant to the Commissioner of Public Works. *See* Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 38], at 9-12; Pls.' Supplemental Mem. of L. in Opp'n to Defendant's Mot. for Summ. J. [doc. # 59], at 1-8; *see also* Compl. [doc. # 1], at P15. Having been denied opportunities to continue as a City employee, and concerned about the loss of her health insurance, Ms. Lorusso claims that [*6] she was forced to seek early retirement effective June 30, 2002. *See* Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 38], at 9-10; *see also* Letter from Ms. Lorusso to Mr. Ralph DeLucca dated June 28, 2002, Pls.' Exs. Submitted in Opp'n to Def.'s Mot. for Summ. J. [doc. # 39], at Ex. 21. Ms. Evangelista also alleges that *after* the budget that reduced her work hours passed, Mayor Borer denied her the opportunity to avoid losing her health benefits, a matter over which she alleges Mayor Borer exercised considerable discretion. *See* Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 38], at 23-26; *see also* Compl. [doc. # 1], at P16. Ms. Evangelista is still employed by the City as the Administrative Assistant to the Democratic Registrar of Voters.

II.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(b)*. A genuine issue of fact exists when "a reasonable jury could return [*7] a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. The Court

must draw all ambiguities and inferences in favor of the plaintiffs. *See Anderson, 477 U.S. at 255*. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson, 477 U.S. at 249-50*. [*8]

### III.

#### A.

In his motion for summary judgment, Mayor Borer argues that he is entitled to absolute legislative immunity for his conduct in proposing a budget to the City Council that ultimately affected Plaintiffs' employment with the City. The Court agrees.

The Second Circuit in *Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206 (2d Cir. 2003)* summarized the basic principles of absolute legislative immunity that govern this case. Legislators, even local legislators, are entitled to absolute immunity from § 1983 civil liability for their "legislative activities." *Id. at 210*. "The test for determining whether activities are legislative 'turns on the nature of the act, rather than on the motive or intent of the official performing it.'" *Id.* (quoting *Bogan v. Scott-Harris, 523 U.S. 44, 54, 140 L. Ed. 2d 79, 118 S. Ct. 966 (1998))*. Under this functional test, immunity depends upon the nature of the act itself, not the identity or the motives of the actor performing it. Even executive officials can be entitled to absolute legislative immunity when they perform legislative functions. However, "discretionary personnel decisions, even [*9] if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors." *Harhay, 323 F.3d at 210-11* (internal citations omitted). Nevertheless, in so holding, the Court made it clear that it did "not mean to suggest that decisions regarding the elimination of a class of jobs for budgetary or policy reasons would not be legislative in nature simply because they relate to employment." *Id. at 211*.

In the context of employment decisions that are implemented through a local government's budgeting process, relevant case law places heavy emphasis on whether an entire class of employees, or just a single employee, is affected by a mayor's budget proposals and a town council's budget decisions. On the one hand, when a mayor (or other town executive with budgetary authority), in accordance with the local rules or statutes governing budget proposals, presents a budget to a town council (or other local legislative body) that recommends elimination of multiple employees or an entire job title or class of jobs, generally courts have [*10] found that such conduct is entitled to absolute legislative immunity, even if the mayor is alleged to have been motivated by political or other retaliatory reasons. On the other hand, decisions by a local legislative body that eliminate a single job - or target a single, specific employee - are generally not entitled to absolute legislative immunity.

The reason for this distinction in the case law is that absolute legislative immunity is reserved for "legitimate legislative activity" and not for other functions such as administrative or executive decisionmaking. *Bogan, 523 U.S. at 54*. Local legislative bodies often perform all of those functions (consider, for example, a board of education), and therefore, the breadth of a body's action and whether that action has prospective effect beyond a particular occupant of a position can often be useful in classifying the nature of the conduct involved. *See id. at 56; see also Ryan v. Burlington County, 889 F.2d 1286, 1290 (3d Cir. 1989)* ("It is generally understood that local governmental bodies . . . are given a combination of proprietary, managerial and legislative powers. It is only with [*11] respect to the legislative powers delegated to them by the state legislatures that the members of local governing boards are entitled to absolute immunity.").

*Bogan*, for example, involved a budgetary decision to eliminate 135 jobs in town government, including elimination of a department where the respondent was the sole employee. *Bogan, 523 U.S. at 47*. The Supreme Court held that regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability, and that absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Id. at 54*. Turning to the proper characterization of the conduct involved, the Supreme Court held that the "acts of introducing, voting for, and signing an ordinance eliminating the government office held by the Respondent constituted legislative action." *Id.* In form, voting for an ordinance was "quintessentially legislative." Furthermore, and as is particularly relevant here, the Court held that the mayor's introduction of a budget and signing into law an ordinance also were [*12] formally legislative, even though the mayor was an executive official, because "they were integral steps in the legislative process." *Id. at 55*. In substance, as well, the Court found that the conduct involved had all the hallmarks of traditional legislation, stating:

> The ordinance reflected a discretionary, policymaking decision implicating budgetary priorities of the city and the services the city provides its constituents. More-

Case 3:03-cv-00221-AVC    Document 85-12    Filed 12/20/2005    Page 4 of 8

Page 4
2005 U.S. Dist. LEXIS 3241, *

over, it involved the termination of a position, which, unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office.

*Id.* at 55-56.

A handful of district court decisions throughout the Second Circuit echo the logic and holding of *Bogan*. For instance, *Gordon v. Katz, 934 F. Supp. 79 (S.D.N.Y. 1995)*, involved a Town Justice who proposed a budget that eliminated the positions of Court Assistant and Court Attendant, an action that consequently eliminated the jobs of the plaintiffs in this case. *See id. at 81-82.* Though the plaintiffs in *Gordon* alleged that their jobs were written [*13] out of the budget in retaliation for their public statements about the necessity for a full time town justice, the district court characterized the acts of proposing, voting on, and adopting the budget as purely legislative acts, entitled to absolute immunity. *See id.*

Similarly, *Berlickij v. Town of Castleton, 248 F. Supp. 2d 335 (D. Vt. 2003)*, involved a Town Selectboard that voted to terminate the town assessor position and combine the duties of town manager and zoning administrator. *Id. at 337-38.* Though the plaintiff in *Berlickij* alleged that these actions were done to retaliate against her, the district court stated that "any evidence of improper motive or intent of certain members of the Selectboard or the Planning Commission is legally irrelevant; the Planning Commission's recommendation and the Selectboard's vote was to shrink the size of town government by combining the offices of town manager and zoning administrator." *Id. at 343.* These actions, the court held, were legislative in nature, reflecting the budgetary and policymaking functions of the Town Selectboard, which were entitled to absolute legislative immunity. [*14] *See id. See also Zdziebloski v. Town of East Greenbush, 336 F. Supp. 2d 194, 203 (N.D.N.Y. 2004)* (a town board's decision to pass a resolution eliminating seven employees in various departments of town government was entitled to legislative immunity). Contrast the foregoing cases with *Harhay*. There, the Second Circuit held that a Board of Education's decision not to appoint a specific teacher to fill a particular vacancy was administrative in nature, and thus was not entitled to absolute legislative immunity. *Harhay, 323 F.3d at 209, 211.* The court was influenced by the fact that the Board "did not engage in the kind of broad, prospective policymaking that is characteristic of legislative action" but instead took action that was directed solely at the plaintiff's situation and did not implicate Board policy. *Id.* Similarly, in *Zdziebloski*, the district court held that while a town board's decision to pass a resolution eliminating seven positions from town government was entitled to absolute legislative immunity, the board's "failure to rehire [the plaintiff] and their requirement that a release be signed prior to disbursing accrued benefits [*15] is not protected by legislative immunity because those are not legislative activities, even when such actions are taken by a vote of legislators." *Zdziebloski, 336 F. Supp. 2d at 203. See also Brennan v. Straub, 246 F. Supp. 2d 360, 365 (S.D.N.Y. 2003)* ("The action complained of was the elimination of a single position and as such was more administrative in nature than legislative, and thus immunity will not attach.").

B.

As is apparent from the foregoing discussion, this Court's task is to decide whether Mayor Borer's budget conduct was legislative or administrative in nature. The Court concludes that it was legislative.

Pursuant to the City Charter, the Mayor is charged with presenting a recommended annual operating budget covering all City agencies, departments, and City expenditures to the City Council no later than the third Thursday of March of each year. *See* Def.'s Local Rule 9(c)(1) Statement [doc. # 27], at P8; *see also id.* at Ex. 4 at 34 (West Haven City Charter, Ch. XIX - Budget, Part A, § 3). The proposed budget includes a budget message outlining the financial policy of the City, describing the important features of [*16] the proposed budget, and estimating revenues and expenditures for the upcoming year. *Id.* Mayor Borer's budget message opened with a statement that the City, like cities "throughout Connecticut" had to "respond to new fiscal realities" due to "declining revenues and unexpected expenses." Def.'s Local Rule 9(c)(1) Statement [doc. # 27], at Ex. 3A at 1-2. Among other proposals to help the City "tighten[] [its] belt," Mayor Borer's budget proposal for fiscal year 2002-2003 as a whole proposed personnel reductions affecting approximately 20 positions throughout city government. *Id.* Mayor Borer's recommended budget also proposed reducing three positions from full-time to part-time. Def.'s Supplemental Local Rule 9(c)(1) Statement [doc. # 50], at P33.

In accordance with the City Charter, a public hearing on the Mayor's recommended budget for fiscal year 2002-2003 was held on April 3, 2002. Def.'s Local Rule 9(c)(1) Statement [doc. # 27], at P17. At a special meeting for the purpose of approving the Mayor's operating budget, held on May 2, 2002, the City Council amended certain aspects of the Mayor's recommended budget (unrelated to the facts and issues of this case) and [*17] adopted the Mayor's operating budget as amended by a vote of 9 to 3. *Id.* at PP20-21. Plaintiffs' counsel confirmed at oral argument that the operating budget ultimately adopted by the City Council eliminated funding

Case 3:03-cv-00221-AVC   Document 85-12   Filed 12/20/2005   Page 5 of 8

Page 5
2005 U.S. Dist. LEXIS 3241, *

or resulted in the layoff of thirteen full-time positions and the reduction of four full-time positions to part-time. *See also* Def.'s Supplemental Local Rule 9(c)(1) Statement [doc. # 50], at P6.

Plaintiffs do not claim that the foregoing sequence of events was procedurally faulty so as to not be legislative in nature. *See, e.g., Gordon, 934 F. Supp. at 82* ("It has [] been clearly established that in order for legislative immunity to attach, the acts complained of must not only be substantively legislative but also procedurally legislative."). Furthermore, Plaintiffs rightly conceded at oral argument that Mayor Borer is entitled to absolute legislative immunity for his conduct in proposing the elimination of the Risk Manager position in the budget, which was held by Ms. Lorusso. Plaintiffs' concession in this regard is appropriate because Mayor Borer's elimination of this position in the City's budget is a classic example of a budget decision [*18] that eliminates an entire class of job and job title, which has consistently been afforded absolute legislative immunity. *See Bogan, 523 U.S. at 54; Berlickij, 248 F. Supp. 2d at 343; Gordon, 934 F. Supp. at 83*.

However, Plaintiffs continue to insist that Mayor Borer is not entitled to legislative immunity in proposing to reduce the hours of the positions of Administrative Assistant to the Registrar of Voters, the position held by Ms. Evangelista. The Court disagrees.

Plaintiffs' argument appears to be that as a result of Mayor Borer's budget proposal, Ms. Evangelista was the only City employee to lose her health benefits. Plaintiffs' argument is based on the following additional facts. The City's agreement with the union governing its management employees grants part-time city employees working more than twenty hours per week all the benefits of full-time employees, including health benefits. *See* Def.'s Index of Exs. [doc. # 46], at Ex. 2B at Art. 3 § 5; Art. 6 § 3; Art. 21. At oral argument, the parties confirmed that of the four employees who had their hours reduced through the fiscal year 2002-2003 budget, only the Administrative [*19] Assistant to the Democratic Registrar of Voters (Ms. Evangelista) and the Administrative Assistant to the Republican Registrar of Voters (Ms. JoAnn Mapes) had their hours reduced to less than twenty hours per week. *See also* Def.'s Local Rule 9(c)(1) Statement [doc. # 27], at P5. Mayor Borer admitted in his deposition that in proposing the budget, he knew that reducing the hours for the Administrative Assistant to the Registrar of Voters position to nineteen hours per week would result in Ms. Evangelista losing her health benefits. *See* Dep. of H. Richard Borer (May 25, 2004), Pls.' Exs. Submitted in Opp'n to Def.'s Mot. for Summ. J. [doc. # 39], at Ex. 7 at 134 ln. 9-20.

Furthermore, during his deposition, Mayor Borer confirmed Plaintiffs' claim that when Ms. Mapes' hours were reduced to 19 hours per week, she was (by virtue of her prior service to the City) eligible to retire with full health benefits, she chose to do so, and thus she retained her health benefits by retiring. *See* Dep. of H. Richard Borer (May 28, 2004), Pls.' Exs. Submitted in Opp'n to Def.'s Mot. for Summ. J. [doc. # 39], at Ex. 7 at 6 ln. 16-23 & at 7 ln. 2-7. Mayor Borer also confirmed that immediately [*20] after Ms. Mapes retired, she was re-hired by the City in the same position. *Id.* at Ex. 7 at 7 ln. 8-16. Because of this arrangement, Ms. Mapes apparently retained her health benefits through her "retirement" and also retained her job. *Id.* at Ex. 7 at 7 ln. 17-21. *See generally* Aff. of Ralph De Lucca, Jr., Def.'s Index of Exs. [doc. # 46], at Ex. 2 PP8-9 (stating that Ms. Mapes retired effective April 30, 2002, then was appointed the Deputy Registrar of Voters effective May 1, 2002, then was re-appointed Administrative Assistant to the Republican Registrar of Voters effective May 13, 2002).

Though Ms. Evangelista certainly highlights an interesting sequence of events that led to her being the only City employee to lose health benefits, she cannot escape the fact that her argument is based on events that occurred *after* Mayor Borer proposed his budget and the City Council passed it. Therefore, while Ms. Evangelista's argument may be relevant to an analysis of Mayor Borer's post-budget conduct (which is discussed in Part III.B *infra*), it is largely irrelevant to the question of whether Mayor Borer is entitled to absolute immunity for his conduct in proposing a budget [*21] to the City Council.

Thus, this case presents a situation very similar to that faced by the Supreme Court in *Bogan*, where a mayor's proposed budget *as a whole* affected a large number of positions throughout town government. The mayor in *Bogan* was accorded absolute legislative immunity for his conduct in proposing the budget, even though a single employee perceived that she was acutely and unfairly affected by the budget and even though she was the only person in her one-person department to lose her job as a result of the budget. *See Bogan, 523 U.S. at 46-48.* As in *Bogan*, because Mayor Borer's budget proposal with respect to the Assistant to the Registrar of Voters position was part of a larger budget proposal that involved the reduction of hours and elimination of quite a number of other jobs, and was prospectively directed at a class of positions, not just a single occupant, Mayor Borer's conduct in proposing the budget is entitled to absolute immunity and his alleged motives for doing so are legally irrelevant. Therefore, the Court GRANTS Defendant's Motion for Summary Judgement [doc. # 25]

Case 3:03-cv-00221-AVC   Document 85-12   Filed 12/20/2005   Page 6 of 8

Page 6
2005 U.S. Dist. LEXIS 3241, *

on Plaintiffs' claims as they pertain to Mayor Borer's [*22] conduct in proposing the City's budget.

**IV.**

As clarified at oral argument, Mayor Borer does not claim absolute immunity for any conduct other than his budgetary conduct, because none of the other actions challenged in this case could properly be characterized as legislative in nature. Even though they are not entitled to absolute immunity for non-legislative conduct, public officials, like Mayor Borer, still enjoy qualified immunity from damage actions under *§ 1983* for "acts undertaken in their official capacity, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known." *Harhay, 323 F.3d at 211*. Because there are material issues of disputed fact surrounding the objective reasonableness of Mayor Borer's actions, the Court denies Mayor Borer's motion for summary judgement on qualified immunity grounds.

According to the Second Circuit, a defendant's claim of qualified immunity requires the court to engage in a three-step inquiry: (1) Has the plaintiff alleged a violation of a constitutional right?; (2) Was the violated right clearly established at the time of the conduct?; and (3) If [*23] the plaintiff had a clearly established constitutional right that was violated, did the plaintiff show that defendant's actions were not objectively reasonable? *See Harhay, 323 F.3d at 211-12*. As the parties acknowledged at oral argument, if, as Plaintiffs allege, Mayor Borer did in fact retaliate against Plaintiffs because of their support for another political candidate, such retaliatory conduct would have violated their clearly established constitutional rights. *See, e.g., Connick v. Myers, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); Cobb v. Pozzi, 363 F.3d 89 (2d Cir. 2004); Mandell v. County of Suffolk, 316 F.3d 368 (2d Cir. 2003)*. Thus, Mayor Borer's motion for summary judgment on qualified immunity grounds is based solely on his assertion that his actions were objectively reasonable as a matter of law.

Where, as here, "specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law." *Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001)*. Furthermore, [*24] where a "plaintiff has adduced sufficient evidence of that [specific] intent to defeat summary judgment, summary judgment on qualified immunity grounds is inappropriate." *Mandell, 316 F.3d at 385* (internal quotations and citations omitted); *see also Sheppard v. Beerman, 94 F.3d 823, 828 (2d Cir. 1996)* ("The employer's actual (subjective) motive is *not* irrelevant in a qualified immunity inquiry" on a First *Amendment* retaliation claim.) (emphasis in original). As will be explained in greater detail below, the Court concludes that Plaintiffs have raised disputed issues of material fact regarding their underlying *First Amendment* political retaliation claim and Mayor Borer's alleged actions against them, and thus summary judgment on qualified immunity grounds is not appropriate.

Plaintiffs' political retaliation claims are analyzed in the same manner as all *First Amendment* retaliation claims. n3 Plaintiffs bear the burden of demonstrating that: (1) their speech addressed a matter of public concern; (2) they suffered an adverse employment action; and (3) a causal connection existed between the speech and the adverse employment action, so that it can [*25] be said that their speech was a motivating factor in the determination. *See Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 124 (2d Cir. 2005)*.

n3 One possible caveat would be the situation - unique to political retaliation claims - where there is a "showing that 'party affiliation is an appropriate requirement for the effective performance of the public office involved.' " *Coogan v. Smyers, 134 F.3d 479, 483-84 (2d Cir. 1998)* (quoting *Branti v. Finkel, 445 U.S. 507, 518, 63 L. Ed. 2d 574, 100 S. Ct. 1287 (1980))*. Here, neither Ms. Lorusso nor Ms. Evangelista served the City in positions where party affiliation was an appropriate requirement, and Mayro Borer does not contend otherwise.

Addressing the first element, the standard "public concern" inquiry applies to all *First Amendment* rights - not merely speech. *See Cobb, 363 F.3d at 104* ("We see nothing in [*Connick v. Myers, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)*] that would limit [*26] the public concern requirement to *First Amendment* claims based on free speech, as opposed to claims premised on other forms of *First Amendment* expression."). "While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve." *Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir. 2003)*. Plaintiffs' political retaliation claims clearly meet the "public concern" requirement, because the right to vote for candidate of your choosing without fear of reprisal is a protected *First Amendment* right that implicates fundamental freedoms. *See, e.g., Elrod v. Burns, 427 U.S. 347, 356-58, 49 L. Ed. 2d 547, 96 S. Ct. 2673 (1976)* ("Political belief and association constitute the core of those activities protected by the *First Amendment*. . . . The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. . . . These protections reflect our profound national com-

Case 3:03-cv-00221-AVC   Document 85-12   Filed 12/20/2005   Page 7 of 8

Page 7
2005 U.S. Dist. LEXIS 3241, *

mitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.") (internal quotations and citations omitted).

As to the second element - adverse employment action - the Court concludes that [*27] Plaintiffs have presented sufficient evidence to survive summary judgment. Ms. Lorusso claims that she was blocked at every turn by Mayor Borer from seeking alternative positions within City government and that she was effectively forced into retirement. *See* Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 38], at 9-12; Pls.' Supplemental Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 59], at 1-8; *see also* Compl. [doc. # 1], at P15. Ms. Evangelista asserts that after her hours were reduced through the budget process, Mayor Borer thwarted her efforts to have her health-care benefits continued or reinstated, even though the Mayor, using his executive powers, approved creative or alternative ways for other City employees to receive health care benefits that were not otherwise available to them. *See* Pls.' Mem. of L. in Opp'n to Def.'s Mot. for Summ. J. [doc. # 38], at 23-26; Compl. [doc. # 1], at P16; *see also* Part III.B *supra*.

Mayor Borer disputes Plaintiffs' factual assertions. The Mayor may well be right. However, on a motion for summary judgment, the Court cannot resolve disputed issues of material fact. That task is reserved to [*28] the jury. And while neither Plaintiff was, strictly speaking, fired by Mayor Borer, deprivations "less harsh than dismissal" can be considered adverse employment actions. *Rutan v. Republican Party*, 497 U.S. 62, 75, 111 L. Ed. 2d 52, 110 S. Ct. 2729 (1990); *see also Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions [in the *First Amendment* retaliation context] include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."); *Coogan, 134 F.3d at 483-84* (Adverse employment action in political patronage *First Amendment* retaliation cases has been extended to "promotion, transfer, recall, and hiring decisions based on party affiliation, demotion, and protection of independent contractors.") (internal citations omitted).

Finally, the Court concludes that Plaintiffs have also created issues of material fact regarding the third element of a *First Amendment* retaliation claim - that is, whether there is a causal connection between protected *First Amendment* activity and an adverse employment action. As the Second Circuit has stated, "summary judgment is precluded where questions regarding [*29] an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." *Morris, 196 F.3d at 110* (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977))*. Indeed, as the Second Circuit observed in *Piesco v. City of New York, 933 F.2d 1149 (2d Cir. 1991)*, *abrogation on other grounds recognized by Jeffries v. Harleston, 52 F.3d 9, 12 (2d Cir. 1995)*, "without a searching inquiry into these motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of *post hoc* rationalizations." *Piesco, 933 F.2d at 1155*. In short, summary judgment is inappropriate where, as here, "questions of motive predominate in the inquiry about how big a role the protected behavior played in the employment decision." *Id.* (internal quotations and citations omitted). *See, e.g., Ganim, 342 F.3d at 117* ("Though the qualified immunity inquiry is generally an objective one, a defendant's subjective intent is indeed relevant [*30] in motive-based constitutional torts. . . . Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail.").

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment [doc. # 25] on Plaintiffs' claims as they pertain to Mayor Borer's conduct after the passage of the budget.

V.

One other issue remains for decision. Defendant moved to strike certain of Plaintiffs' submissions to the Court in connection with Defendant's motion for summary judgment for failure to comply with *Rule 56(e) of the Federal Rules of Civil Procedure*. *Rule 56(e)* states in relevant part that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Fed. R. Civ. P. 56(e)*. While one might legitimately question the propriety of certain of Plaintiffs' summary judgment submissions, in reaching its decision on Defendant's motion for summary judgment, the Court did not rely on any of the allegedly inadmissible evidence [*31] proffered by the Plaintiffs. Therefore, Defendant's Motion to Strike [doc. # 47] is DENIED AS MOOT.

VI.

In summary, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment [doc. # 25]. The Court grants summary judgment to Mayor Borer on the portion of Plaintiff's complaint that seeks damages for Mayor Borer's conduct related to his budget proposal, because Mayor Borer is entitled to absolute legislative immunity for that legislative conduct. However, the Court denies summary judgment on the portion of Plaintiffs' claims that seeks damages for Mayor Borer's conduct after passage of the budget, because there are material issues of fact that preclude the Court from ruling as a matter of law on Mayor Borer's qualified immunity defense. Finally, the Court

2005 U.S. Dist. LEXIS 3241, *

DENIES Defendant's Motion to Strike [doc. # 47] as moot. The Court will issue a scheduling order forthwith setting dates for the submission of a Joint Trial Memorandum, the final pretrial conference, and for trial on the remaining claims in this case.

IT IS SO ORDERED.

/s/ Mark R. Kravitz

United States District Judge

**Dated at New Haven, Connecticut: February 28, 2005.**