LEXSEE 1997 U.S. DIST. LEXIS 2034

**MAUREEN McNEIL, on behalf of herself and all others similarly situated, Plaintiff, v. THE CITY OF PITTSBURGH, Defendant.**

Civil Action No. 94-1276

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

*1997 U.S. Dist. LEXIS 2034*

**February 6, 1997, Decided**

**DISPOSITION:** [*1] Plaintiff's Motion for Summary Judgment (Doc. No. 32) is DENIED; plaintiff's Motion to Proceed as a Class (Doc. No. 29) is DENIED as moot; defendant's Motion for Summary Judgment (Doc. No. 25) is GRANTED. Judgment shall be entered in favor of defendant and against plaintiff.

**COUNSEL:** For MAUREEN MCNEIL, on behalf of herself and all others similarly situated, plaintiff: Samuel J. Cordes, Ogg, Jones, Cordes & Ignelzi, Pittsburgh, PA.

For THE CITY OF PITTSBURGH, defendant: George R. Specter, Deputy Solicitor, Susan E. Malie, Jacqueline R. Morrow, City of Pittsburgh, Dept. of Law, Pittsburgh, PA. George R. Specter, Deputy Solicitor, Duffy, Israel & Specter, Pittsburgh, PA.

**JUDGES:** ROBERT J. CINDRICH, United States District Judge

**OPINIONBY:** ROBERT J. CINDRICH

**OPINION:**

MEMORANDUM OPINION

CINDRICH, District Judge

February 6, 1997

This is an action by a former City of Pittsburgh employee asserting procedural due process rights in the reduction of her pay. She seeks to represent a class and has filed a renewed motion for class certification. A previous motion for class certification and a motion to dismiss were denied in an August 1, 1995 decision. Now pending are cross-motions for summary judgment. [*2] For the reasons stated below, plaintiff's ("McNeil") motion will be denied, and defendant's ("City") motion will be granted. McNeil's motion for class certification will be denied as moot.

FACTUAL AND PROCEDURAL BACKGROUND

McNeil was employed by the City as a supervisor of investigations in the Department of Personnel and the Civil Service Commission. By letter dated June 14, 1994, Mayor Tom Murphy informed her that the salaries of all City supervisory and managerial non-union personnel would be cut three percent effective June 6, 1994. McNeil was among this group. The mayor's letter invited a response in writing in the succeeding ten days. McNeil challenges the pay cut through this action. n1

---

n1 McNeil has supplied evidence that her employment was terminated in August 1994. Appendix to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment, Doc. No. 34 ("Pl's SJ Appndx"). Her termination, however, is not part of her complaint.

---

[*3]
Her Amended Complaint contains three counts. Count One asserts that McNeil has a property interest protected by the Fourteenth Amendment in salary at a sum certain. She claims that the City has no authority to reduce the salaries of its employees without just cause. Without such authority, the City's salary reduction constitutes a deprivation of property without due process of law.

Count Two alleges that the City impaired its contractual obligations to McNeil by making the three percent wage cut retroactive for a week, in that the City unilaterally reduced the amount of money it already owed.

This action is said to violate Article I, § 10 of the United States Constitution prohibiting states from impairing their contracts.

Count Three is for breach of contract based on the same one-week retroactive three percent pay cut.

The parties have resolved Counts Two and Three. In addition, they agree that the material facts are not in dispute. We thus turn to their arguments on the law regarding Count One.

APPLICABLE LAW

The procedural aspect of the Due Process Clause of the Fourteenth Amendment exists to provide procedural safeguards against state and local government's arbitrary [*4] deprivation of certain interests. A state by statutes, rules, customs, and the like, may create interests in public employment and the incidents of employment which are protected by the Due Process Clause. From these interests arises the familiar "legitimate claim of entitlement" to a benefit by the employee. *Board of Regents v. Roth, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).* Under this analysis the right to the benefit is created by state law; the Constitution does not create property rights. *Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985).* The protection against arbitrary state deprivation without due process, however, is a question of federal constitutional law. *Id. at 541.*

In applying procedural due process analysis, we first consider whether a property interest exists in the claimed loss. If we find that it does, we must determine whether the claimant was deprived of that interest. If the answer is yes, we next examine whether the employee received the process she was due. *Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982).*

The minimum components of [*5] due process are notice and an opportunity to be heard. *Loudermill, 470 U.S. at 542.* The United States Court of Appeals for the Third Circuit has emphasized that such hearing must take place before the deprivation of the employee's interest, absent a compelling governmental interest in conducting the hearing after the deprivation. *Homar v. Gilbert, 89 F.3d 1009 (3d Cir. 1996), cert. granted, 65 U.S.L.W. 3461 (Jan. 3, 1996).*

DISCUSSION

A. Late Filing of Plaintiff's Motion for Summary Judgment

The City argues in response to McNeil's motion for summary judgment that it is untimely, and should be denied for that reason. McNeil's motion indeed was filed more than ten months after the deadline for summary judgment motions set by the court.

It is legitimate to question the unexplained appearance of pleadings so far beyond the deadline. Under the circumstances, a motion for leave to file out of time would be the appropriate mechanism to accompany the late filing, so that the court is at least informed of the reasons therefor. This approach is not taken to exercise control for its own sake. Rather, we take these matters seriously because of the effect that casual [*6] regard for the court's orders has on the case in question, on the other cases on our docket, and on the court's ability to afford all parties the same treatment where only some of the parties follow the rules.

However, given (1) the strong policy in favor of deciding cases on their merits, *Hritz v. Woma Corp, 732 F.2d 1178, 1181 (3d Cir. 1984),* (2) the actual suitability of this case for summary judgment, and (3) the City's demonstration of only minimal prejudice from our consideration of McNeil's motion, we will exercise our discretion over our docket and overlook the delay. The City's argument on this point therefore will be denied.

B. Existence of McNeil's Property Interest

The first question to resolve on the merits is whether McNeil had a property interest in her salary at a sum certain before the mayor implemented the three percent reduction. McNeil relies on a state statute, *53 Pa. Stat. Ann. § 23453 (Purdon's 1957).* Section 23453 provides:

> No officer, clerk, or employe, in the competitive class or in the noncompetitive class of the classified civil service of any city of the second class, who shall have been appointed under the provisions of this act, or [*7] of the rules made pursuant thereto, shall be removed, discharged, or reduced in pay or position except for just cause, which shall not be religious or political. Further, no such officer, clerk, or employee shall be removed, discharged, or reduced, except as provided in section eight of this act, until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction a copy of the statement of reasons therefore, and of the written answer thereto, shall be furnished to the Civil Service Commission and entered upon its records.

1997 U.S. Dist. LEXIS 2034, *

The next section provides the procedure for layoffs "if for reasons of economy, lack of funds, abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employees ...." Id. § 23454.

Rule XI, section 1 of the Rules of the Civil Service Commission City of Pittsburgh n2 states that:

> Persons in the competitive or non-competitive classification of the Civil Service may be reduced in rank or [*8] dismissed from their positions for just cause. "Just cause" may be, but is not limited to:
>
> A. Physical or mental disability;
>
> B. Absenteeism, delinquency, misconduct, incompetence, inefficiency, or failure to maintain City domicile.
>
> C. Economy reduction, lack of work, abolition of position, or failure of City to provide salary therefore.

Section 2 of Rule XI provides for the detailed, notice-and-answer "Method of Disciplinary Reduction or Dismissal . . . In all cases included in Section 1 A and B of this rule . . . ."

    n2 The court obtained a copy of these rules through the circuit law librarian, who obtained them from the Pittsburgh Civil Service Commission. The rules have no citation to another source of publication, nor have the parties identified one. We quote the rules at length as background which the parties have not provided.

Section 3A of Rule XI continues that "if for reasons of economy, a lack of funds, abolition or position(s), or for any other reason it becomes necessary for [*9] the City to reduce the number of employees, the responsible officer shall follow the procedures set forth in within Section 20.1 of the General Civil Service Statute . . . ." Section 20.1 of the General Civil Service Statute is 53 Pa. Stat. Ann. § 23454.

Section 4B(1) of Rule XI states:

> Any employee reduced or dismissed under Section 1C of this rule [economy reduction, etc.] . . . may file with the Secretary of the [Civil Service] Commission an affidavit of appeal alleging a) that he/she was not the proper person to be reduced or dismissed under the economy reduction provisions of the applicable Civil Service Statute, or b) that his/her reduction or dismissal was for reasons other than economy or efficiency.

Finally, section 5 of Rule XI grants the Civil Service Commission discretion in deciding whether a hearing is warranted in any case before it.

Attempting to combine what McNeil says in her Amended Complaint with the brief on her motion for summary judgment, she claims that the City has no authority to reduce the salaries of current employees. Instead, if it makes an economy reduction, it must lay off employees. The City's decision to cut salaries of current [*10] employees rather than lay off employees deprived McNeil of a protected property interest in the three percent of her salary thereby eliminated. The City failed to afford McNeil due process in carrying out this deprivation because she received no public hearing on her attempts to protest the mayor's salary reduction. Pl's SJ Appndx, Doc. No. 34, Exh. 2.

McNeil urges that her case is like *Sanchez v. City of Santa Ana, 915 F.2d 424 (9th Cir. 1990),* cert. denied, *502 U.S. 815, 116 L. Ed. 2d 41, 112 S. Ct. 66 (1991).* In Sanchez, a police officer had his merit pay removed by the police chief, allegedly for poor performance, without an opportunity to be heard at any time. The court of appeals found that the officer had a property interest in his merit pay because, under the earlier version of the city charter that applied to him, a reduction in pay was considered a demotion. Demotions could be instituted only for specified reasons. *Id. at 429.* Thus, absent the occurrence of one of the specified reasons, the officer had a state-created expectation that he would continue to receive merit pay.

McNeil asserts that "Sanchez, in relevant part, is factually identical to this [*11] case." Brief in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment, Doc. No. 33, at 8. Acknowledging the similarities in pay reduction and property-interest-creating job legislation, the cases are not properly described as factually identical. Indeed, the court rejects any attempt to compare this case to any of the hundreds of reported cases involving the due process rights of individual public employees (or specific, personal action taken against more

Case 3:03-cv-00221-AVC    Document 91-2    Filed 01/05/2006    Page 4 of 6

Page 4
1997 U.S. Dist. LEXIS 2034, *

than one individual). The key fact of this case is that the action taken against McNeil was part of an across-the-board reduction, as evidenced by the number of persons she seeks to make part of the class. There is neither evidence nor allegation that action was taken against McNeil or any employee on a personal basis.

That a property interest may attach to a government worker's employment -- having a job at all -- needs no extended discussion. Sanchez is a decision that affords due process protection to a portion of salary, though we ultimately find it distinguishable because the deprivation was aimed at the claimant personally. Where the only alleged taking is [*12] a small salary reduction, the traditional application of the Due Process Clause is something of an open question in our circuit. On one hand, there is the language of section 23543 facially prohibiting all reductions in pay except for just cause. "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982) (emphasis added).

On the other hand, Logan, like the great majority of due process cases regarding employment, involves termination. The Third Circuit through 1994 had not decided whether adverse employment action short of termination could deprive an employee of a property interest. *Ferraro v. City of Long Branch*, 23 F.3d 803, 807 n.3 (3d Cir. 1994). After all, the Supreme Court's analysis has focused on due process in "depriving a person of the means of livelihood." *Loudermill*, 470 U.S. at 543. Our review of the case law shows that, where the Due Process Clause is invoked with relation to an adverse job action, terminations form the vast bulk of such cases. A much smaller deprivation [*13] arguably could call for a more relaxed process, or no process. See *Ferraro*, 23 F.3d at 807 (citing *Wargat v. Long*, 590 F. Supp. 1213, 1215 (D. Conn. 1984)). Actions having the effect of deprivations but which are not targeted at individuals may not implicate due process at all.

There is support in Pennsylvania law for the latter view where the type of employment action taken is not enumerated as requiring a hearing under the Civil Service Act, and such action arises out of budget reductions. In *Kusza v. Maximonis*, 363 Pa. 479, 70 A.2d 329 (1950), two police officers who were furloughed claimed they were entitled to a hearing under the applicable Civil Service Act provisions. The Pennsylvania Supreme Court disagreed:

> The Act specifically provides for hearing before the Civil Service Commission in three situations only, namely, suspension, removal and reduction in rank, and the reason for omitting so to provide in cases of employees furloughed to accomplish a reduction in the total number of employees, made necessary by economic reasons, is obvious. In such cases, since there are no charges against the employee or employees involved, there would be no occasion for [*14] a hearing, and it would be idle to hold one.

*Kusza*, 70 A.2d at 331. *Camaione v. Borough of Latrobe*, 523 Pa. 363, 567 A.2d 638 (Pa. 1989), cert. denied, 498 U.S. 921, 112 L. Ed. 2d 251, 111 S. Ct. 298 (1990), involved a police officer who was involuntarily retired under 53 Pa. Stat. § 46190, and thereupon lost disability benefits that depended on his status as a temporarily disabled but active member of the police rolls. He argued that he was entitled to a hearing before the borough retired him and foreclosed his opportunity to retain these benefits. Citing the Borough Code that authorizes reductions for reasons of economy and several cases, including Kusza, the Pennsylvania Supreme Court found that

> municipalities must have the power to control the orderly and proper functioning of their retirement funds and to react in a responsible manner to economic developments because they and they alone are required to raise tax revenues to fund the programs which are determined to be necessary.

*Camaione*, 567 A.2d at 641. While the case at hand is not a retirement fund case, neither is Kusza. We thus take the cited principle as having broader application. [*15]

The position taken by the Pennsylvania Supreme Court has appeared in other federal and state decisions as a principle known as the reorganization exception to the Due Process Clause. This exception holds that no hearing is required when a public employee's position is abolished -- or in our case, her pay reduced -- despite the applicability of a "just cause" rule, when the action is taken pursuant to a bona fide government reorganization or cost-cutting action. See, e.g., *Hartman v. City of Providence*, 636 F. Supp. 1395, 1410 (D.R.I. 1986). Hartman is one of the most quoted cases on the subject. The authority collected and the analysis applied there are persuasive, and are adopted here.

Several circuits have also recognized this rule. *Mandel v. Allen,* 81 F.3d 478, 482 (4th Cir. 1996) (not unconstitutional for state "to subsequently alter or abolish [a] position without an individualized hearing"); *Duffy v. Sarault,* 892 F.2d 139, 147 (1st Cir. 1989) ("because the appellants' jobs were lost subject to a valid reorganization they were not entitled to due process prior to that reorganization taking effect"); *Misek v. City of Chicago,* 783 F.2d 98 (7th Cir. 1986); [*16] *Dwyer v. Regan,* 777 F.2d 825, 833 (2d Cir. 1985) (dictum in case involving individual employee), modified, 793 F.2d 457 (2d Cir. 1986). The parties have cited no authority from the Third Circuit on the issue, and we have found none.

Federal district courts and state courts appear to have written more frequently about the reorganization exception. The most helpful recent opinion is from the district court in *Mandel v. Allen,* 889 F. Supp. 857, 866 (E.D. Va. 1995), aff'd, 81 F.3d 478 (4th Cir. 1996). There the court collects cases and addresses the rationale behind the rule. In sum, as the Fourth Circuit likewise found, state or local power to create a position must carry with it the power to abolish the position -- or less drastically, to alter the pay or working conditions. An expectation that all aspects of a government job will continue unchanged in perpetuity is not legitimate. Due process provides a guarantee that such changes will not occur without notice and an opportunity to be heard where a specific employee is affected for reasons peculiar to her. However, "if an employee is losing her job not because of allegedly deficient performance but for extraneous reasons [*17] relating to fiscal and operational concerns, a hearing regarding the quality of the employee's performance would serve no useful purpose." *DiGiacinto v. Harford County, Md.,* 818 F. Supp. 903, 906 (D. Md. 1993).

It would indeed be an odd situation if the chief executive of a government body could not cut the budget in a way that affected salaries without giving each of the affected employees a hearing before doing so. It is important to distinguish the type of governmental action in question from every-day decisions directed toward an individual employee. We are troubled by the implications of a decision that would afford protected property status and due process protection to all persons affected by broad fiscal initiatives of elected government. The decision of which McNeil complains is quintessentially a political and not an individual one. It was grounded upon the obvious public good to be accomplished through maintenance of the City's financial health. Undoubtedly, there were alternative routes to fiscal salvation, but in the judgment of the elected officials, none as politically palatable as the one selected.

The point is that the same procedural due process requirements [*18] so exquisitely fit to provide justice in cases involving wrongs against individuals are ill-suited as substitutes for political judgment, which, after all, reflects the will of the people through their elected representatives. Who better than they to decide that the burden of cost reduction could best be borne by higher paid salaried employees than some other group? Who better than they to interpret the will of the electorate in making difficult, but necessary decisions about the expenditure of public funds? The time and place for an accounting for such actions is at the ballot box, not in the courts.

So long as the employment action is directed at the position -- or as here, at the salary -- rather than at the person, there is reason to question whether Pennsylvania would apply the "just cause" standard to a slight salary reduction. The purpose of requiring strict adherence to the Due Process Clause is entirely understandable where a particular employee or employees are identified for adverse action in a way personal to her. n3 This much can be gleaned from the Supreme Court's view of the purpose of the hearing requirement: it is an opportunity for "a determination of whether there [*19] are reasonable grounds to believe the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 569-570 (emphasis added).

---

n3 An exception to the reorganization exception is recognized where an employee alleges that the reorganization or adverse action was a pretext to target her individually. See, e.g., *Misek,* 783 F.2d at 101. There is no such allegation or evidence of any kind in this case that the three percent pay cut was an attempt to punish or discriminate against McNeil. Indeed, any such claim would be belied by McNeil's efforts to act as representative of a class of 214 employees who, she has argued for class certification purposes, are in same position as she.

---

But where the adverse action is aimed at no particular employee, and the deprivation is purely a matter of saving a large sum of money through an across-the-board salary reduction for a large number of employees who are generally among the higher paid of the City, and thus might be deemed better [*20] able to weather a pay cut, what would be the purpose of giving each of the affected employees a hearing? What facts would the hearing officer be seeking? That the pay cut was harmful? There is no dispute that the pay cut was unwelcome and financially injurious to the employees affected. That someone else should bear the burden? Assuming always that the adverse action was not a subterfuge for punishing specific employees, that cannot be within the province of the individual employee to require of the mayor as a poten-

tial remedy arising out of a hearing preceding a salary cut. Thus, a hearing for individual employees to urge that the cut should be made elsewhere again would yield nothing that is not already known. Perhaps McNeil would have argued that the mayor had no authority to make the pay cut. But that inquiry is not part of this case, where the first task is to identify some state act which affirmatively creates a right. McNeil has not alleged what she would have sought to demonstrate at a hearing conducted before the three percent cut was implemented.

On the strength of the guidance cited above we find that the state did not create a property interest for McNeil in a salary [*21] at a sum certain such that she was entitled to the hearing she seeks. The language of section 23453 on its face appears to impose a "just cause" protection on literally any reduction in pay. Taking the authority cited above as a whole, however, we interpret the "just cause" standard that triggers the civil service hearing requirements as applying to reductions in pay personal to the individual concerned -- as a disciplinary measure, for example. Thus, the City did not violate the Due Process Clause in failing to conduct the public hearing sought by McNeil.

There is an alternative view. In *UDC Chairs v. Board of Trustees, 56 F.3d 1469 (D.C. Cir. 1995)*, the chairs of the academic departments at the University of the District of Columbia lost contracts for summer employment with the university as a cost-saving measure. They received no hearing before the decision was made. They challenged the decision as a deprivation of property without due process. The United States Court of Appeals for the District of Columbia Circuit went through the customary due process analysis and did not discuss the reorganization exception. The court ultimately applied the balancing test of *Mathews v.* [*22] *Eldridge, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)*, in finding that (1) the plaintiffs' interest was purely financial and redressable by post-deprivation process; (2) the risk of erroneous deprivation was negligible because "the deprivation turns on a policy decision and not on an individual's characteristics," *56 F.3d at 1474;* and (3) the university's interest in solvency was strong. Id. The court concluded that the university's grievance procedures, which the plaintiffs never used, offered adequate due process protection.

Were we to conclude that McNeil had a property interest in the lost three percent of her salary, we would find due process requirements met. She personally received notice of the salary reduction by letter. She was afforded the opportunity to respond in writing to the mayor. Given the modest interest in a three percent salary reduction, relative to her salary as a whole; the low risk of an erroneous decision in a policy applied City-wide; and the City's significant interest in its fiscal health, this process was sufficient to satisfy minimum due process standards.

An order consistent with this memorandum opinion will be entered.

ORDER

In [*23] accordance with the accompanying memorandum opinion, plaintiff's Motion for Summary Judgment (Doc. No. 32) is DENIED; plaintiff's Motion to Proceed as a Class (Doc. No. 29) is DENIED as moot; defendant's Motion for Summary Judgment (Doc. No. 25) is GRANTED. Judgment shall be entered in favor of defendant and against plaintiff.

The Clerk is directed to mark this case closed.

SO ORDERED this 6th day of February, 1997.

ROBERT J. CINDRICH

United States District Judge