UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING | : | |
| AGENT COALITION, ET AL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | CIV. NO. 3:03CV221 (AVC) |
| | : | |
| M. JODI RELL*, ET AL, | : | |
| | : | |
| Defendants. | : | FEBRUARY 23, 2006 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY PENDING APPEAL**

**I.    INTRODUCTION**

This Court denied defendants' Motion to Dismiss on legislative immunity grounds on January 18, 2006, finding there were factual disputes which prevented the Court from determining that defendants were performing a legislative function entitling them to legislative immunity from suit.  (January 18, 2006 Ruling on Motion to Dismiss ["Ruling"] at 6, 9).  On January 31, 2006, after defendants declined the Court's suggestion that initial discovery be directed to the legislative immunity issue, the Court entered an Order allowing discovery to proceed. (Order Directing the Commencement of Discovery ["Order"]).

Defendants have now filed a purported Appeal of the Court's Ruling and Order, and have moved to stay discovery pending resolution of their appeal.  Plaintiffs submit this Memorandum in Opposition to Defendants' Motion to Stay Discovery Pending Appeal.

_____

* See Fed. R. Civ. P. 25(d).

II.    **ARGUMENT**

    A.    **A STAY PENDING APPEAL IS NOT APPROPRIATE AS NEITHER THE COURT'S RULING, NOR THE COURT'S ORDER IS IMMEDIATELY APPEALABLE.**

    Defendants' Motion to Stay is premised on their contention that they are entitled to pursue immediate appeal of the Court's Ruling and Order. However, neither the Ruling, nor the Order is immediately appealable.

    "Before determining whether a stay pending appeal is appropriate, the Court must first satisfy itself that the underlying orders are appealable." First City, Texas-Houston, N.A. v. Rafidain Bank, 131 F.Supp.2d 540, 542 (S.D.N.Y. 2001) (denying motion to stay discovery pending appeal of order compelling discovery, finding order not immediately appealable); see also Connecticut Hospital Assn. v. O'Neill, 891 F.Supp. 687, 692 (D. Conn. 1994) (holding issuance of stay pending appeal was inappropriate where order was not appealable).

    1.    **The Court's Ruling Denying Defendants' Motion to Dismiss on Legislative Immunity Grounds Turned on Disputed Issues of Fact and Is Therefore Not Immediately Appealable.**

    "Denials of motions to dismiss on grounds of immunity . . . are not appealable, . . . unless the immunity defense can be decided solely as a matter of law." United States v. Yonkers Bd. of Education, 893 F.2d 498, 502 (2d Cir. 1990). "[I]nterlocutory appeal is not available where the immunity issue turns on disputed questions of fact." White v. Frank, 855 F.2d 956, 958 (2d Cir. 1988). "Where the applicability of the immunity cannot be decided from the face of the pleadings but requires some discovery, the denial of a motion to dismiss on the immunity ground is not appealable prior to discovery." Yonkers Bd. of Education, 893 F.2d at 503; see also Hill v. New York, 45 F.3d 653, 659-60 (2d Cir. 1995).

In <u>Hill</u>, the Second Circuit Court of Appeals considered an assistant district attorney's appeal from the denial of his motion to dismiss a §1983 action on absolute (prosecutorial) immunity grounds.  The prosecutor's entitlement to absolute immunity turned on whether he was acting in an advocacy or investigatory function at the time he conducted a disputed videotaped interview.  <u>Id</u>. at 656.  The district court denied the prosecutor's motion to dismiss on immunity grounds, finding it was "impossible . . . to determine from the pleadings alone what function [the prosecutor] was engaged in when he . . . videotaped the interview."  <u>Id</u>. at 663.  The court of appeals held the denial of defendant's motion to dismiss was not immediately appealable, explaining:

> when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.  Because the immunity issue respecting the videotapes raises factual issues that cannot be conclusively determined at this stage in the litigation, it is not appealable under the *Cohen* doctrine, and we therefore have no jurisdiction to entertain it.

<u>Id</u>. (internal citations omitted).

Similarly, in the case at bar, the Court denied defendants' Motion to Dismiss on legislative immunity grounds because it could not determine on the face of the pleadings (or from other official acts of record) whether the objected conduct was performed through a legislative or executive function.  Plaintiffs expressly allege in their Amended Complaint that defendants Rowland and Ryan were acting pursuant to their statutory Executive Branch authority to manage

the state's work force and negotiate the terms of collective bargaining agreements, see Conn.

Gen. Stats. §§ 4-65a,[1] 5-278[2], when they took the conduct at issue in this lawsuit:

> 1.  Defendants had responsibility, in furtherance of their Executive
> Branch functions, for management of the state's work force and
> negotiation of the terms of collective bargaining agreements with
> state employees.  (Amended Complaint, First Claim for Relief,
> ¶¶ 37 & 38).

---

[1]Conn. Gen. Stats. § 4-65a provides in relevant part:

> (a) There shall be an Office of Policy and Management which shall be responsible for all
> aspects of state staff planning and analysis in the areas of budgeting, management,
> planning, energy policy determination and evaluation, intergovernmental policy, criminal
> and juvenile justice planning and program evaluation. The department head shall be the
> Secretary of the Office of Policy and Management, who shall be appointed by the
> Governor in accordance with the provisions of sections 4-5, 4-6, 4-7 and 4-8, with all the
> powers and duties therein prescribed. The Secretary of the Office of Policy and
> Management shall be the employer representative (1) in collective bargaining
> negotiations concerning changes to the state employees retirement system and health and
> welfare benefits, and (2) in all other matters involving collective bargaining, including
> negotiation and administration of all collective bargaining agreements and supplemental
> understandings between the state and the state employee unions concerning all executive
> branch employees except (A) employees of the Division of Criminal Justice, and (B)
> faculty and professional employees of boards of trustees of constituent units of the state
> system of higher education. The secretary may designate a member of the secretary's
> staff to act as the employer representative in the secretary's place.

[2]Conn. Gen. Stats. § 5-278 provides in relevant part:

> (a) When an employee organization has been designated, in accordance with the
> provisions of sections 5-270 to 5-280, inclusive, as the exclusive representative of
> employees in an appropriate unit, the employer shall be represented in collective
> bargaining with such employee organization in the following manner: (1) In the case of
> an executive branch employer, including the Division of Criminal Justice, by the chief
> executive officer whether elected or appointed, or his designated representative; who
> shall maintain a close liaison with the legislature relative to the negotiations and the
> potential fiscal ramifications of any proposed settlement; (2) in the case of a judicial
> branch employer, by the Chief Court Administrator or his designated representative; and
> (3) in the case of each segment of the system of higher education, the faculty and
> professional employees shall negotiate with their own board of trustees or its designated
> representative.

2.    Defendants' responsibility for managing the state's work force and negotiation of the terms of collective bargaining agreements is statutorily codified in Conn. Gen. Stats. §§ 4-65a, 5-278. (Id. at ¶¶ 37-38).

3.    In November 2002, defendants sought changes to plaintiff SEBAC's and the plaintiff Unions' collective bargaining agreements.  (Id. at ¶ 39).

4.    Defendants threatened to terminate union (and only union) workers if the unions refused to grant the demanded concessions. (Id. at ¶ 41).

5.    When the unions refused to grant the demanded concessions, defendants implemented the threatened terminations.  (Id. at ¶ 42).

6.    Defendants were the decision-makers for the State of Connecticut with respect to the demand for concessions, the threats of termination and the terminations at issue in this lawsuit. (Id. at ¶ 47).

7.    The Connecticut General Assembly did not participate in demanding the collective bargaining agreement concessions, did not participate in threatening terminations of union members if the demands were not granted, and was not involved in determining whether any (and, if so, which) state union employees would be terminated when the demands were not granted. (Id. at ¶ 49).

8.    Defendants were acting as members of the Executive Branch when they demanded the concessions, made the threats, and implemented the terminations at issue in this lawsuit.  (Id. at ¶ 48).

9.    Defendants' actions were taken solely in furtherance of their Executive Branch functions.   (Id.).

Defendants deny that they were acting pursuant to their Executive Branch authority to

manage the state's work force and negotiate the terms of collective bargaining agreements.

According to defendants, their actions were undertaken as part of a legislative Budget process

authorized by Conn. Gen. Stats. § 4-85(b).[3]  Plaintiffs dispute that the terminations at issue were

made pursuant to § 4-85(b), and neither plaintiff's Amended Complaint, nor any other official

acts of record of which this Court could take judicial notice on defendants' Motion to Dismiss

provide support for defendants' contentions.

Nowhere in the Amended Complaint do plaintiffs allege that defendants' actions were

taken in connection with the consideration or adoption of the State's biennial Budget or other

legislation, to effectuate broad Budget policy, or that the Connecticut Legislature was in any way

involved in defendants' conduct.  Nor is there any official act of record that establishes that

defendants acted pursuant to or complied with the requirements of § 4-85(b).  Indeed, as

plaintiffs argued to the Court in opposition to defendants' Motion to Dismiss, the only official act

of record – defendant Rowland's February 19, 2003 veto of Public Act 03-1 – asserts that the

Connecticut legislature acted unconstitutionally in ordering the reinstatement of the workers

---

[3]Conn. Gen. Stats. § 4-85(b) provides in relevant part:

(1) If the Governor determines that due to a change in circumstances since the budget
was adopted certain reductions should be made in allotment requisitions or allotments in
force or that estimated budget resources during the fiscal year will be insufficient to
finance all appropriations in full, the Governor may modify such allotment requisitions
or allotments in force to the extent the Governor deems necessary.  Before any such
modifications are effected the Governor shall file a report with the joint standing
committee having cognizance of matters relating to appropriations and the budgets of
state agencies and the joint standing committee having cognizance of matters relating to
state finance, revenue and bonding describing the change in circumstances which makes
it necessary that certain reductions should be made or the basis for his determination that
estimated budget resources will be insufficient to finance all appropriations in full.  (2) If
the cumulative monthly financial statement issued by the Comptroller pursuant to section
3-115 includes a projected General Fund deficit greater than one per cent of the total
General Fund appropriations, the Governor, within thirty days following the issuance of
such statement, shall file a report with such joint standing committees, including a plan
which he shall implement to modify such allotments to the extent necessary to prevent a
deficit.

terminated by defendants because the proposed reinstatement interfered with Executive Branch
authority.

In denying defendants' Motion to Dismiss on legislative immunity grounds, the Court
took note of this factual dispute between the parties and recognized that the dispute could not be
resolved on a Motion to Dismiss.  As the court reasoned: "the loss of jobs came about through
executive order – a quintessentially executive function.  For that executive function to be entitled
to legislative immunity, it must have been authorized by some legislative scheme."  Ruling at 8.
As the Court found "the record is devoid of any evidence that the governor invoked that
[statutory] authority when ordering the job terminations here."  Ruling at 9.  Specifically, the
Court noted that there was no evidence of a projected budget deficit greater than one percent, or
that defendant governor furnished a report or plan, as required under § 4-85(b).  Id.

Thus, the court denied defendants' Motion to Dismiss because it was "unable to conclude
that the actions complained of were legitimately legislative," explaining "discovery is required
before the court can determine whether the defendants are entitled to the [absolute immunity]
defense."  Id. at 6, 9.  As the Court's Ruling denying dismissal on the basis of legislative
immunity turned on disputed issues of fact, which the Court could not resolve on a Motion to
Dismiss, the ruling is not immediately appealable.  Hill v. New York, 45 F.3d at 659-60; United
States v. Yonkers Bd. of Education, 893 F.2d at 503.

The Second Circuit has recognized a limited exception to the general rule that an
immediate appeal is not available where the denial of an immunity defense turns on disputed
issues of fact when a defendant contends that, accepting all of the plaintiff's disputed facts as
true, he is still entitled to immunity as a matter of law:

7

> Even when a district court rejects a[n] . . . immunity defense due to a
> perceived need for further discovery, an appellate court may exercise
> jurisdiction to review an interlocutory appeal that questions whether – on
> the plaintiff's version of the facts – defendant [is entitled to immunity] as a
> matter of law."

Locurto v. Safir, 264 F.3d 154, 164-65 (2d Cir. 2001) (dismissing appeal where district court

found qualified immunity turned on disputed facts and "defendants ha[d] not conceded plaintiff's

version of the facts for purposes of their summary judgment motion").

Defendants' appeal does not fall within this exception since, as discussed above,

defendants do not concede that defendants' actions were undertaken pursuant to their statutory

Executive Branch authority to manage the state's work force and negotiate the terms of collective

bargaining agreements.  Indeed, defendants cannot concede that they were so acting since under

that version of the facts, defendants would plainly not be acting in a legislative function.

As defendants' claimed entitlement to legislative immunity requires resolution of

disputed facts, defendants are not permitted to pursue an immediate appeal of the Court's Ruling

denying their Motion to Dismiss, and there is no basis for a stay of discovery.  First City v.

Rafidain Bank, 131 F.Supp.2d at 542; see also Connecticut Hospital Assn. v. O'Neill, 891

F.Supp. at 692.

**2.     The Court's Order Directing the Commencement of Discovery is a Pre-trial
        Discovery Order and is Therefore Not Immediately Appealable.**

Defendants also purport to appeal from the Court's January 31, 2006 Order Directing the

Commencement of Discovery.  Defendants offer no authority to support an immediate

interlocutory appeal of that Order, and the law is clear that no immediate appeal lies.  Garret v.

Stratman, 254 F.3d 946, 956 (10th Cir. 2001) (where a district court had already ruled denying

defendants' motion for summary judgment on qualified immunity grounds, a subsequent

discovery order was not immediately appealable); <u>Lugo v. Alvarado</u>, 819 F.2d 5, 8 (1st Cir.

1987)(finding pre-trial discovery order not immediately appealable despite defendant's claim of

qualified immunity); <u>see generally Weisman v. Weisman</u>, 835 F.2d 23, 25 (2d Cir. 1987) (pretrial

discovery order not immediately appealable).

As neither the Court's Ruling denying defendants' Motion to Dismiss on legislative

immunity grounds, nor the Court's Order Directing the Commencement of Discovery is

immediately appealable, defendants' Motion to Stay Discovery should be denied.


**B**.     **THE MERE FILING OF A NOTICE OF APPEAL DOES NOT DIVEST
THIS COURT OF JURISDICTION TO PROCEED WITH DISCOVERY.**

Citing <u>United States v. Rodgers</u>, 101 F.3d 247, 251 (2d Cir. 1996), defendants argue that

the Court may not permit discovery to proceed because the filing of their notice of appeal

divested the Court of jurisdiction over aspects of the case involved in the appeal,  (Def. Mem. at

3).  But, in <u>Rodgers</u>, the Second Circuit rejected adopting a per se rule and held that a notice of

appeal from a non-appealable order, or an otherwise frivolous appeal, does **not** divest the district

court of jurisdiction.  As the court explained in <u>Rodgers</u>:

> [The divestiture of jurisdiction rule] is a judicially crafted rule rooted
> in the interest of judicial economy . . . Hence, its application is guided
> by concerns of efficiency and is not automatic.
>
> Whatever the superficial attractiveness of a per se rule that filing of
> a notice of appeal automatically divests the district court of
> jurisdiction as to matters covered by the notice, such a rule is subject
> to abuse, and our application of the divestiture rule must be faithful
> to the principle of judicial economy from which it springs.  We fail
> to see any efficiency in allowing a party to halt district court
> proceedings arbitrarily by filing a plainly unauthorized notice of

> appeal which confers on this court the power to do nothing but
> dismiss the appeal.

Rodgers, 101 F.3d at 251-52 (internal citations and quotation marks omitted).

In the context of appeals from a district court's denial of an immunity defense, the district court maintains jurisdiction despite the filing of a notice of appeal where immunity turns on a disputed issue of fact, or when the legal issue raised on appeal is frivolous. See Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 96 (1st Cir. 2003) (finding defendants' interlocutory appeal was based on an unappealable order because the denial of immunity turned on an issue of fact, thus defendants' notice of appeal failed to divest the district court of jurisdiction); Bean v. Buffalo, 822 F.Supp. 1016, 1019 (W.D.N.Y. 1993) ("Because defendants' entitlement to the defense of qualified immunity so clearly depends upon the resolution of material issues of fact, and because the municipal defendants have no cognizable basis for an appeal, this Court holds that the notices of appeal are frivolous, and that they do not invoke appellate jurisdiction."); Palmer v. Goss, 2003 WL 22519454 (S.D.N.Y. Nov. 5, 2003)[4] (denying defendant's motion to stay proceedings pending appeal of denial of qualified immunity on summary judgment, where immunity depended on a disputed issue of fact); Ruffino v. Sheahan, 61 F.Supp.2d 767, 769-70 (N.D.Ill. 1999) (denying defendant's motion to stay, where immunity turned on disputed facts and was thus not appealable, explaining "the baselessness of the appeal does not invoke appellate jurisdiction") (internal quotation marks omitted); Heller v. Woodward; 735 F.Supp. 996, 999 (D.N.M. 1990) (denying defendant's motion for stay explaining, "in light of . . . facts clearly in dispute which are material to defendant's claim of immunity, I find that an appeal of the denial of

---

[4]Unreported decisions cited herein are attached hereto.

the defendant's summary judgment motion on the issue of qualified immunity is baseless and

frivolous").

       As discussed above, the Court's denial of defendants' Motion to Dismiss on legislative

immunity grounds was based on issues of disputed fact and is therefore, a non-appealable order.

Thus the Court is not divested of jurisdiction, and may properly order discovery to proceed.

       **C.     IT IS APPROPRIATE FOR DISCOVERY TO PROCEED DESPITE
              DEFENDANTS' APPEAL.**

       Even if the Court's Ruling and Order did qualify for immediate appeal, a stay of

discovery pending appeal is not required.  McSurely v. McClellan, 697 F.2d 309, 318 n. 17 (D.C.

Cir. 1982) (explaining "a petitioner's claims [of immunity] may qualify under the collateral order

doctrine but not meet the standards for a stay"); see Cole v. Ruidoso Municipal Schools, 43 F.3d

1373, 1386 (10th Cir. 1994) (rejecting defendants' claim of an absolute right to stay of discovery

until the resolution of motion for qualified immunity); Del v. Edwards, 1988 WL 24143, *1

(E.D. La. Mar. 4, 1988) ("Although the Supreme Court has taught that discovery should not be

allowed until the threshold immunity question is resolved, it does not appear necessary that a stay

must be imposed until a Circuit Court has had an opportunity to pass on the issue.").

       As the Court of Appeals for the D.C. Circuit explained in McSurely, the test for granting

a stay is different from the test for assuming jurisdiction under the collateral order doctrine.  697

F.2d at 318, n. 17.  Therefore, it is possible for an appeal from a denial of immunity to qualify for

appeal, but not meet the standards for a stay.  Id. (denying petitioner's request for stay of trial

pending appeal while finding court had jurisdiction over interlocutory appeal from denial of

immunity).

11

"The issuance of a stay pending appeal lies within the discretion of the court."

Connecticut Hospital Assn. v. O'Neill, 891 F.Supp. at 692.  In determining whether to issue a

stay pending appeal, a court should consider: "the likelihood of success on the merits, irreparable

injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the

public interest."  Mohammed v. Reno, 309 F.3d 95, 100 (2d Cir. 2002), citing Hilton v.

Braunskill, 481 U.S. 770, 776 (1987).  "The necessary level of degree of possibility of success

[on appeal] will vary according to the court's assessment of the other stay factors."  Mohammed,

309 F.3d 95, 101; accord McSurely, 697 F.2d at 317 (holding defendants to heavy burden of

demonstrating substantial case on merits where interest of public and plaintiffs disfavored stay

pending appeal of denial of immunity defense).  The party seeking a stay bears the burden of

proof.  Connecticut Hospital Assn. v. O'Neill, 891 F.Supp. at 692.

While defendants' motion for stay pending appeal should be denied as defendants seek to

appeal a non-appealable Ruling and Order, even if the Court's Ruling and Order were

immediately appealable, defendants' Motion to Stay Discovery should be denied as the equitable

factors – the likelihood of success on the merits, irreparable injury if a stay is denied, substantial

injury to the party opposing a stay if one is issued, and the public interest – weigh against

granting a stay.

## 1.    Plaintiffs and the Public have an Interest in the Speedy Resolution of this Case.

This case has been pending for over three years without any discovery.  Both plaintiffs

and the public have an interest in the speedy resolution of this case.  "Plaintiffs in federal court

have the right to pursue their cases, and to expeditiously vindicate their claims.  Stays in

12

proceedings may result in prejudice to plaintiffs because witnesses relocate, memories fade, and

persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of

time on end." Connecticut v. BPS Petroleum Distributors, Inc., 1991 WL 177657 at * 2 (D.

Conn. Jul. 16, 1991) (Eginton, J.) (internal citations and quotation marks omitted); see McSurely,

697 F.2d at 317 (finding public and plaintiffs had substantial interest in avoiding further delay of

proceedings).

  The injury to plaintiffs by further delay is great as plaintiffs may only be able to obtain

prospective injunctive relief in the form of reinstatement.  While plaintiffs originally brought

claims for both monetary damages and injunctive relief, the Court ruled that due to Eleventh

Amendment immunity, plaintiffs are only entitled to prospective injunctive relief in the form of

reinstatement.  Ruling at 13.  Because of the Court's recent ruling, plaintiffs now have a more

compelling interest in the speedy resolution of their claims as they will not be able to receive

compensatory money damages for the time period between the wrongful termination and their

reinstatement.  See United States v. New York, 708 F.2d 92, 93 (2d Cir. 1983)(upholding district

court finding of irreparable harm to plaintiffs because Eleventh Amendment barred recovery of

damages); Kansas v. Health Care Ass., Inc., 31 F.3d 1536, 1543 (10th Cir. 1994) (holding

Eleventh Amendment bar to retrospective monetary damages indicates irreparability of harm to

plaintiffs).   Thus any added delay in obtaining the prospective injunctive relief is an added injury

to the plaintiffs, for which they will never be compensated.

2.     **Defendants Will Not Suffer Irreparable Injury as They Will Have to Face Discovery as to Claims for Injunctive Relief Regardless of the Outcome of Their Appeal.**

Defendants assert that a stay must be granted in order to protect their rights to be free from discovery under absolute legislative immunity.  However, even if defendants Rowland and Ryan are successful on their appeal as to absolute legislative immunity for their roles in causing the terminations at issue, they will nonetheless be properly required to participate in discovery in connection with plaintiffs' claims for injunctive relief against the current Governor and current Secretary of the Office of Policy and Management ("OPM").

While a legislator (or one acting in a legislative function) cannot be held liable for his legislative acts, a party subjected to unconstitutional deprivation through "legislation" may seek to enjoin the appropriate state official from enforcing the "legislation."  Supreme Court of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 719, 736 (1980); Lajoie v. Connecticut Board of Labor Relations, 837 F. Supp. 34, 39 n. 9 (D. Conn. 1993) (Cabranes, J.).

In Consumers Union, the Court ruled that although the Supreme Court of Virginia was acting in a legislative capacity – and thus protected by legislative immunity – when it adopted disciplinary rules governing the conduct of attorneys pursuant to statutory authorization "to promulgate and amend [such] rules and regulations," such immunity did not extend to its independent authority to *enforce* the rules.  In its enforcement capacity, "immunity [did] not shield the Virginia court and its chief justice," who "were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were."  Id. at 736-37; accord Gravel v. United States, 408 U.S. 606, 618-19 (1972), discussing Kilbourn v. Thompson, 103 U.S. 168 (1880) (while House Members had legislative immunity under Speech

14

or Debate Clause for adoption of resolution authorizing illegal arrest, those who made the arrest

could be held liable).

The same reasoning was applied by Judge Cabranes, while a district judge in this District,

in an action involving the constitutionality of a Connecticut statute barring special deputy sheriffs

from forming a labor union.  See Lajoie, 837 F. Supp. 34, 39 n. 9.  Plaintiffs sought a declaration

that the statute was unconstitutional (Count Four) and an injunction against its enforcement

(Count Nine), as well as money damages from the Governor for signing the legislation (Count

Eight).  The court dismissed the count against the Governor on grounds of legislative immunity[5]

and dismissed the counts challenging the constitutionality of the statute without prejudice,

pending renewal after clarification of the statute's scope by the Connecticut Labor Board.  The

court noted that "any [subsequent] claim for injunctive relief ... must be directed *solely* at the

state official charged with enforcement of the statute in conformity with Ex parte Young ...."  837

F. Supp. at 39 n. 9.

Indeed, that is precisely what occurred in Condell v. Bress, 983 F.2d 415 (2d Cir.), cert.

denied, 507 U.S. 1032 (1993), a case where "legislative acts" and "legislation" were actually

involved in causing a deprivation of state union employees' rights.  In Condell, the Second

Circuit held that the legislation impairing union collective bargaining rights was unconstitutional

and upheld an injunction enjoining the defendant Governor and Comptroller – in their official

capacities – from enforcing the legislation.

---

[5]  A governor's act of signing (or vetoing) a bill is part of the legislative process and, thus, is
protected by legislative immunity.  Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998).  Thus, plaintiffs could
not – and do not – claim that defendant Rowland can be held liable for his veto of Public Act 03-1.

Defendants Rell and Genuario are responsible for administering the State's work force as part of their executive functions as Connecticut's current Governor and current Secretary of OPM.  Conn. Gen. Stats. § 4-65a.[6]  Thus, even were defendants Rowland and Ryan acting in a "legislative" function (and immune) when they caused the terminations at issue, they would nonetheless be properly subject – in their official capacities – to injunctive relief to bar the ongoing unconstitutional effects of their "legislative" conduct.  Consumer Union, 446 U.S. at 736-37; Lajoie, 837 F. Supp. at 39 n. 9.

Suspending discovery pending appeal of a denial of immunity, where equitable claims are brought which will survive regardless of the outcome of the appeal, "only delays the case unnecessarily, because sooner or later the parties will have the right to engage in discovery as to the equitable claims."  Lugo v. Alvarado, 819 F.2d 5, 7 (1st Cir. 1987).  Thus, defendants do not face irreparable injury by being compelled to proceed with discovery while their appeal is pending.

### 3.     Defendants have Failed to Make the Required Showing of Likelihood of Success on Appeal to Merit Staying Discovery.

"The necessary level of degree of possibility of success [on appeal] will vary according to the court's assessment of the other stay factors."  Mohammed, 309 F.3d 95, 101; accord McSurely, 697 F.2d at 317.  Where the other relevant competing interests disfavor granting a stay, defendants bear a heavy burden to establish a high possibility of success on appeal, which they have not met. McSurely, 697 F.2d at 317 (given that the interest to the public and the

---

[6]  As defendants Rowland are Ryan no longer hold office, Governor Rell and OPM Secretary Genuario are automatically substituted for defendants Rowland and Ryan with respect to plaintiffs' claims against Rowland and Ryan in their official capacity.  Fed. R. Civ. P. 25(d).

16

plaintiffs weighed heavily against granting a stay, defendant's "burden of demonstrating a substantial case on the merits is heavy").

Defendants have failed to meet their burden of establishing a substantial possibility of success on appeal. As discussed above, plaintiffs have alleged facts to support that defendants were not acting in a legislative function, and the Court ruled that on the face of the Amended Complaint, it could not conclude that defendants had complied with Conn. Gen. Stats. § 5-85(b). In support of their Motion to Stay, defendants offer no new legal or factual arguments, but simply reiterate the grounds this Court rejected in reaching its Ruling.[7] Indeed, defendants do not even *contend* that they ever complied with § 5-85(b), nor explain how they can expect to convince the Court of Appeals to resolve the disputed facts necessary to support their claim of legislative immunity. "Mere repetition of arguments previously considered and rejected cannot be characterized as a strong showing" of possibility of success on appeal necessary to warrant a stay. Schwartz v. Dolan, 159 F.R.D. 380, 384 (N.D.N.Y. 1995).

Thus, even if defendants have a right to pursue an immediate appeal from the Court's Ruling and Order, they have failed to meet their burden that a stay of discovery is equitably warranted.

---

[7] In support of their argument that their appeal has a substantial possibility of success on appeal, defendants merely refer to the *factual* finding of Judge Squaritro in Abbey v. Rowland, 359 F.Supp.2d 94 (D.Conn. 2005), which this Court already considered and distinguished, and the arguments already raised in their Motion to Dismiss and Memorandum and Reply Brief. (Def. Mem. at 4).

III.     **CONCLUSION**

For the foregoing reasons, defendants' Motion to Stay Discovery Pending Appeal should

be denied.

                                        PLAINTIFFS STATE EMPLOYEES
                                        BARGAINING AGENT COALITION,
                                        ET AL,


                                        BY_____
                                           DAVID S. GOLUB  ct 00145
                                           JONATHAN M. LEVINE ct 07584
                                           SILVER GOLUB & TEITELL LLP
                                           184 ATLANTIC STREET
                                           P.O. BOX 389
                                           STAMFORD, CONNECTICUT  06904
                                           (203) 325-4491


On the Brief:

AMANDA R. WHITMAN

18

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been electronically transmitted and

mailed, postage prepaid,  this 23rd day of February, 2006 to:

Albert Zakarian, Esq.
Allan B. Taylor, Esq.
Victoria Woodin Chavey, Esq.
Douglas W. Bartinik, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Ann H. Rubin, Esq.
Carmody and Torrance
50 Leavenworth Street
Waterbury, CT 06721-1110.


_____
DAVID S. GOLUB

19