# EXHIBIT E

The Executive Office of Governor John G. Rowland



STATE OF CONNECTICUT
EXECUTIVE CHAMBERS
HARTFORD, CONNECTICUT 06106

JOHN G. ROWLAND
GOVERNOR

February 19, 2003

The Honorable Susan Bysiewicz
Secretary of the State
18-20 Trinity Street
Hartford, CT 06106

Dear Madam Secretary:

I am hereby returning without my signature House Bill 6397, *An Act Concerning State Expenditure and Revenue Adjustments*.

For more than one hundred days, I have said that both political parties, the state employees union, and all branches of government must share the burden of balancing the budget. For those of us elected by the public, this means taking decisive action to address the difficult decisions that our constituents elected us to make. We have a constitutional duty to responsibly balance the state's budget and this duty requires us to achieve a balance between tax increases and spending reductions. In fulfilling our constitutional duty, I will not sacrifice the interests of the taxpaying public to benefit special interests. The bill before me achieves no such balance.

The deficit mitigation package passed by the legislature for this fiscal year includes only $100 million in real spending reductions, while raising taxes by almost $400 million and securing no labor concessions. Tax increases outweigh spending reductions by a four to one ratio. In other words, 80 percent of the plan consists of increased taxes. Furthermore, the budget plan passed by the legislature leaves a continuing budget shortfall of almost $200 million.

For FY 2003-04, real spending reductions amount to just $150 million, while tax increases total almost $800 million. Thus, in the FY 2003-04, tax increases outweigh spending reductions by a five to one ratio. While an Early Retirement Incentive Plan is included, the budget plan assumes a total of $318 million in labor concessions, which builds a substantial hole into next fiscal year's budget. This clearly is not a fair approach to balancing the state's budget and Democrats' reliance on fictional union concessions and other budgetary gimmicks creates poor fiscal policy.

As I have said on many occasions, the legislature cannot tax its way out of this economic downturn. To do so would make a bad situation worse and would lead us down the road of the late 1980's and early 1990's when unemployment was at an all-time high and employers were leaving the state in droves. In the late 1990's, when the state coffers were filled and unemployment was low, the legislature remembered the difficult times of the past decade and chose to follow a path of reasonable tax cuts and spending increases. It is very troubling to me that in times of economic trouble the legislature does not exercise as much prudence and certainly

does not exhibit as much foresight and foresight as it once did.

For these reasons, I disapprove of HB 6397, *An Act Concerning State Expenditures and Revenue Adjustments*.

Sincerely,

*John G. Rowland*

JOHN G. ROWLAND
Governor

---



House Bill No. 6397

Public Act No. 03-1

### AN ACT CONCERNING STATE EXPENDITURE AND REVENUE ADJUSTMENTS.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. (*Effective from passage*) The Governor shall modify allotment requisitions or allotments in force as follows, provided the amount of any allotment reduction resulting from the Governor's January 24, 2003, reductions or from this section shall not exceed the larger of the January 24, 2003, reduction or the reduction in this section:

GENERAL FUND

|  | 2002-2003 |
|---|---|
|  | $ |
| **LEGISLATIVE** |  |
|  |  |
| **COMMISSION ON CHILDREN** |  |
| Social Health Index | -30,000 |
|  |  |
| TOTAL | -30,000 |
| LEGISLATIVE |  |
|  |  |
| **GENERAL GOVERNMENT** |  |
|  |  |
| **OFFICE OF POLICY AND MANAGEMENT** |  |
| Drugs Don't Work | -85,000 |
| Leadership, Education, Athletics in Partnership |  |
| (LEAP) | -450,000 |
| Children and Youth Program Development | -217,000 |
| Justice Assistance Grants | -699,000 |

---

| | |
|---|---|
| Boys and Girls Club | -87,000 |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | |
| Drug Enforcement Program | -692,000 |
| PAYMENTS TO LOCAL GOVERNMENTS | |
| Drug Enforcement Program | -1,500,000 |
| P. I. L. O. T. - New Manufacturing Machinery and Equipment | -10,000,000 |
| Waste Water Treatment Facility Host Town Grant | -118,500 |
| AGENCY TOTAL | -13,848,500 |
| | |
| **OFFICE OF WORKFORCE COMPETITIVENESS** | |
| Personal Services | -100,000 |
| CETC Workforce | -310,000 |
| AGENCY TOTAL | -410,000 |
| | |
| **DEPARTMENT OF INFORMATION TECHNOLOGY** | |
| Automated Personnel System | -250,000 |
| | |
| **DEPARTMENT OF PUBLIC WORKS** | |
| Other Expenses | -1,000,000 |
| Management Services | -500,000 |
| Facilities Design Expenses | -500,000 |
| AGENCY TOTAL | -2,000,000 |
| | |
| TOTAL | -16,508,500 |
| GENERAL GOVERNMENT | |
| | |
| **REGULATION AND PROTECTION** | |
| | |
| **DEPARTMENT OF PUBLIC SAFETY** | |
| Personal Services | -1,250,000 |
| Fleet Purchase | -1,600,000 |
| AGENCY TOTAL | -2,850,000 |
| | |
| **LABOR DEPARTMENT** | |
| Other Expenses | -100,000 |
| Vocational and Manpower Training | -250,000 |

| | |
|---|---:|
| AGENCY TOTAL | -350,000 |
| | |
| TOTAL | -3,200,000 |
| REGULATION AND PROTECTION | |
| | |
| CONSERVATION AND DEVELOPMENT | |
| | |
| DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT | |
| Other Expenses | -700,000 |
| Cluster Initiative | -250,000 |
| AGENCY TOTAL | -950,000 |
| | |
| TOTAL | -950,000 |
| CONSERVATION AND DEVELOPMENT | |
| | |
| HEALTH AND HOSPITALS | |
| | |
| DEPARTMENT OF PUBLIC HEALTH | |
| Children's Health Initiatives | -220,000 |
| Tobacco Education | -84,000 |
| AGENCY TOTAL | -304,000 |
| | |
| DEPARTMENT OF MENTAL RETARDATION | |
| Personal Services | -1,000,000 |
| Other Expenses | -500,000 |
| Early Intervention | -1,000,000 |
| AGENCY TOTAL | -2,500,000 |
| | |
| DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES | |
| General Assistance Managed Care | -1,500,000 |
| Special Populations | -2,600,000 |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | |
| Governor's Partnership to Protect Connecticut's Workforce | -164,000 |
| AGENCY TOTAL | -4,264,000 |

| | |
|---|---:|
| TOTAL | -7,068,000 |
| HEALTH AND HOSPITALS | |
| | |
| HUMAN SERVICES | |
| | |
| DEPARTMENT OF SOCIAL SERVICES | |
| Other Expenses | -1,000,000 |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | |
| Medicaid | -32,450,000 |
| Old Age Assistance | -143,378 |
| Aid to the Blind | -4,434 |
| Aid to the Disabled | -325,188 |
| Connecticut Pharmaceutical Assistance Contract to the Elderly | -2,371,000 |
| Child Care Services-TANF/CCDBG | -500,000 |
| Human Resource Development | -640,000 |
| Disproportionate Share - Medical Emergency Assistance | -5,000,000 |
| State Administered General Assistance | -1,083,333 |
| AGENCY TOTAL | -43,517,333 |
| | |
| TOTAL | -43,517,333 |
| HUMAN SERVICES | |
| | |
| EDUCATION, MUSEUMS, LIBRARIES | |
| | |
| DEPARTMENT OF EDUCATION | |
| PAYMENTS TO LOCAL GOVERNMENTS | |
| Priority School Districts | 4,053,197 |
| | |
| STATE LIBRARY | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | |
| Basic Cultural Resources Grant | -626,000 |
| Connecticut Educational Telecommunications Corporation | -217,000 |

| | |
|---|---:|
| AGENCY TOTAL | -843,000 |
| | |
| UNIVERSITY OF CONNECTICUT | |
| Operating Expenses | -1,141,000 |
| Tuition Freeze | -29,637 |
| Regional Campus Enhancement | -39,782 |
| AGENCY TOTAL | -1,210,419 |
| | |
| UNIVERSITY OF CONNECTICUT HEALTH CENTER | |
| Operating Expenses | -463,338 |
| AHEC for Bridgeport | -974 |
| AGENCY TOTAL | -464,312 |
| | |
| CHARTER OAK STATE COLLEGE | |
| Operating Expenses | -8,505 |
| Distance Learning Consortium | -6,309 |
| AGENCY TOTAL | -14,814 |
| | |
| REGIONAL COMMUNITY - TECHNICAL COLLEGES | |
| Operating Expenses | -767,543 |
| Tuition Freeze | -13,506 |
| Woodland Street Operating Expenses | -3,227 |
| AGENCY TOTAL | -784,275 |
| | |
| CONNECTICUT STATE UNIVERSITY | |
| Operating Expenses | -822,293 |
| Tuition Freeze | -41,013 |
| Waterbury-Based Degree Program | -5,117 |
| AGENCY TOTAL | -868,422 |
| | |
| TOTAL | -132,045 |
| EDUCATION, MUSEUMS, LIBRARIES | |
| | |
| CORRECTIONS | |
| | |
| DEPARTMENT OF CORRECTION | |

| | |
|---|---:|
| Personal Services | -2,442,695 |
| Other Expenses | -215,894 |
| Equipment | -121,000 |
| Workers' Compensation Claims | -366,288 |
| Inmate Medical Services | -353,293 |
| AGENCY TOTAL | -3,499,170 |
| | |
| DEPARTMENT OF CHILDREN AND FAMILIES | |
| Personal Services | -170,000 |
| Other Expenses | -191,000 |
| Short Term Residential Treatment | -77 |
| Substance Abuse Screening | -42,686 |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | |
| Health Assessment and Consultation | -3,501 |
| Grants for Psychiatric Clinics for Children | -662,176 |
| Day Treatment Centers for Children | -417,648 |
| Community Based Prevention Programs | -31,097 |
| Support for Recovering Families | -539 |
| Child Welfare Support Services | -3,531 |
| Board and Care for Children - Adoption | -351,000 |
| Community KidCare | -1,000,000 |
| AGENCY TOTAL | -2,873,255 |
| | |
| COUNCIL TO ADMINISTER THE CHILDREN'S TRUST FUND | |
| Children's Trust Fund | -285,000 |
| | |
| TOTAL | -6,657,425 |
| CORRECTIONS | |
| | |
| JUDICIAL | |
| | |
| JUDICIAL DEPARTMENT | |
| Personal Services | -845,000 |
| Other Expenses | -1,655,000 |
| AGENCY TOTAL | -2,500,000 |

| | |
|---|---:|
| TOTAL JUDICIAL | 2,500,000 |
| TOTAL GENERAL FUND | -80,563,303 |

Sec. 2. (*Effective from passage*) The Governor shall modify allotment requisitions or allotments in force as follows:

SPECIAL TRANSPORTATION FUND

2002-2003

$

TRANSPORTATION

DEPARTMENT OF TRANSPORTATION
PAYMENTS TO LOCAL GOVERNMENTS

| | |
|---|---:|
| Town Aid Road Grants | -7,500,000 |
| TOTAL TRANSPORTATION | -7,500,000 |
| TOTAL SPECIAL TRANSPORTATION FUND | -7,500,000 |

Sec. 3. (*Effective from passage*) The Governor shall modify allotment requisitions or allotments in force as follows:

MASHANTUCKET PEQUOT AND MOHEGAN FUND

2002-2003

$

NON-FUNCTIONAL

MISCELLANEOUS APPROPRIATIONS
ADMINISTERED BY THE COMPTROLLER

MASHANTUCKET PEQUOT AND MOHEGAN
FUND GRANT
PAYMENTS TO LOCAL GOVERNMENTS

| | |
|---|---:|
| Grants to Towns | -20,000,000 |
| TOTAL MISCELLANEOUS APPROPRIATIONS ADMINISTERED BY THE COMPTROLLER | -20,000,000 |
| TOTAL NON-FUNCTIONAL | -20,000,000 |
| TOTAL MASHANTUCKET PEQUOT AND MOHEGAN FUND | -20,000,000 |

Sec. 4. Section 17 of public act 02-1 of the May 9 special session, as amended by section 108 of public act 02-1 of the May 9 special session, is amended to read as follows (*Effective from passage*):

The following amounts credited to the resources of the General Fund, for the fiscal year ending June 30, 2002, pursuant to sections 1 to 18, inclusive, of public act 02-1 of the May 9 special session, shall be transferred as follows:

$

LEGISLATIVE MANAGEMENT

| | | |
|---|---:|---:|
| CTN | | 1,500,000 |
| OFFICE OF POLICY AND MANAGEMENT | | |
| Amistad | [75,000] | 50,000 |
| [Adopt-a-House in Stamford | 10,000] | |
| Waterbury Youth Net | [200,000] | 150,000 |
| Library Improvements | | 36,000 |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Arts Grants | | 1,100,000 |
| PAYMENTS TO LOCAL GOVERNMENTS | | |
| Local Aid Adjustment | | 3,000,000 |

| | | |
|---|---:|---:|
| AGENCY TOTAL | [4,421,000] | 4,336,000 |
| [DEPARTMENT OF VETERANS AFFAIRS] | | |
| [Transitional Living Services for Veterans | 400,000] | |
| OFFICE OF WORKFORCE COMPETITIVENESS | | |
| Workforce Development Boards | | 350,000 |
| LABOR DEPARTMENT | | |
| Opportunity Industrial Centers - Bridgeport | | 100,000 |
| Individual Development Accounts | | 325,000 |
| AGENCY TOTAL | | 425,000 |
| DEPARTMENT OF AGRICULTURE | | |
| CT Seafood Advisory Council | | 50,000 |
| Food Council | | 25,000 |
| Wine Council | [25,000] | 2,765 |
| AGENCY TOTAL | [100,000] | 77,765 |
| [DEPARTMENT OF ENVIRONMENTAL PROTECTION] | | |
| [Grants for Water programs | 75,000] | |
| [Recreational Fishing Programs | 1,000,000] | |
| [AGENCY TOTAL | 1,075,000] | |
| DEPARTMENT OF ECONOMIC AND COMMUNITY DEVELOPMENT | | |
| [Women's Business Development Center | 10,000] | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Entrepreneurial Centers | [200,000] | 150,000 |
| PAYMENTS TO LOCAL GOVERNMENTS | | |
| Tax Abatement | [2,243,276] | 2,178,276 |
| Payment in Lieu of Taxes | 2,900,000 | |
| AGENCY TOTAL | [5,353,276] | 5,228,276 |

| | | |
|---|---:|---:|
| DEPARTMENT OF PUBLIC HEALTH | | |
| [Tobacco Education | 361,208] | |
| Biomedical Research | [500,000] | 300,000 |
| PAYMENTS TO LOCAL GOVERNMENTS | | |
| School Based Health Clinics | | 145,000 |
| AGENCY TOTAL | [1,006,208] | 445,000 |
| DEPARTMENT OF MENTAL RETARDATION | | |
| New Family Center | | 12,000 |
| DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES | | |
| Institute for Municipal and Regional Policy | | 100,000 |
| Connecticut Mental Health Center | [450,000] | 350,000 |
| [Regional Action Councils | 200,000] | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Grants for Mental Health Services | [375,000] | 275,000 |
| AGENCY TOTAL | [1,125,000] | 725,000 |
| DEPARTMENT OF SOCIAL SERVICES | | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| School Readiness | | 200,000 |
| Community Services | | 150,000 |
| Enhanced Funding for Griffin Hospital | | 200,000 |
| Stamford Hospital | [2,500,000] | 2,250,000 |
| Yale-New Haven Hospital | [3,300,000] | 2,920,000 |
| Legal Immigrants | | 1,200,000 |
| Nursing Home Staffing | | 2,000,000 |
| Epilepsy Project | | 50,000 |
| Elderly Health Screening | | 100,000 |
| Elderly Express | [80,000] | 30,000 |
| Geriatric Assessment | | 30,000 |
| Human Resource Development | | 400,000 |
| [PAYMENTS TO LOCAL GOVERNMENTS] | | |
| [Teen Pregnancy Prevention | 25,000] | |

| | | |
|---|---:|---:|
| AGENCY TOTAL | [10,235,000] | 9,580,000 |
| **DEPARTMENT OF EDUCATION** | | |
| Jason Project | 150,000 | |
| Connecticut Writing Project | 75,000 | |
| PAYMENTS TO LOCAL GOVERNMENTS | | |
| Youth Service Bureau | 15,000 | |
| Magnet Schools | 912,000 | |
| Young Parents Program - The Bridge | 25,000 | |
| AGENCY TOTAL | 1,177,000 | |
| **STATE LIBRARY** | | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Basic Cultural Resources Grant | [130,000] | 65,000 |
| Grants - Local Institutions in Humanities | [205,000] | 155,000 |
| AGENCY TOTAL | [335,000] | 220,000 |
| **DEPARTMENT OF HIGHER EDUCATION** | | |
| Minority Advancement Program | 207,029 | |
| Saturday Academy | 100,000 | |
| New England Board of Higher Education | 250,000 | |
| AGENCY TOTAL | 557,029 | |
| **UNIVERSITY OF CONNECTICUT** | | |
| Veterinary Diagnostic Laboratory | 50,000 | |
| **DEPARTMENT OF CORRECTION** | | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Community Residential Services | 240,000 | |
| **BOARD OF PAROLE** | | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Community Residential Services | 40,000 | |
| **DEPARTMENT OF CHILDREN AND FAMILIES** | | |
| OTHER THAN PAYMENTS TO LOCAL GOVERNMENTS | | |
| Stamford Child Guidance Clinic | 10,000 | |
| Fund Covenant to Care | 150,000 | |
| Fund Neighborhood Center | [90,000] | 77,500 |
| AGENCY TOTAL | [250,000] | 237,500 |
| **JUDICIAL DEPARTMENT** | | |
| Alternative Incarceration Program | [400,000] | 200,000 |
| TOTAL | [29,051,513] | 25,400,570 |

Sec. 5. (*Effective from passage*) The Governor shall effect economies in order to modify allotment requisitions or allotments in force as follows:

GENERAL FUND

| | 2002-2003 |
|---|---:|
| | $ |
| ERIP Savings Attributable to Managers | -4,500,000 |
| Fleet Reduction | -2,250,000 |
| Additional Allotment Reduction Not Exceeding 1.75% in any Appropriated Account | -12,750,000 |
| Corrections Initiative | -10,000,000 |
| Executive and Judicial Branch Travel | -1,000,000 |
| Energy Costs Reduction due to Transfer from Energy Conservation and Load Management Fund | -6,000,000 |
| TOTAL GENERAL FUND | -36,500,000 |

Sec. 6. (*Effective from passage*) (a) Notwithstanding any provision of the general statutes or any provision of any public or special act, any revision to allotment requisitions or allotments in force made pursuant to sections 1 to 5, inclusive, of this act affecting (1) grants to municipalities, or (2) appropriated accounts with more than one grantee, shall be made

proportionately to remain within the revised allotment.

(b) There shall be an Early Retirement Incentive Program (ERIP) offered to full-time and part-time state employees, as described below, in addition to the normal retirement program.

A. Eligibility Rules.

The following members of the State Employees Retirement System (SERS) shall be eligible to participate in the program:

1. All state employees who will be at least fifty-two years of age on or before May 31, 2003, and who retire directly from employment and begin immediately receiving normal or early retirement benefits under Tier I, Tier II or Tier IIA and whose effective date of retirement is from March 1, 2003, to June 1, 2003, inclusive;

2. Who have at least ten years of actual state service in the SERS; and

3. In the case of hazardous duty employees, a minimum of twenty years of actual state service in the SERS.

B. Effective Date of Retirement.

All retirements under the program shall be effective March 1, 2003, April 1, 2003, May 1, 2003, or June 1, 2003. At the state's option, the effective date of any retirement may be deferred on a case by case basis to not later than June 1, 2004, for hazardous duty members, employees of the retirement division of the Office of the State Comptroller, and employees of the budget division of the Office of Policy and Management. Requests to defer retirement shall be made in writing to the member with copies to the appropriate bargaining unit representative. If the state requests any such member or employee to stay beyond May 31, 2003, and the employee refuses to do so, the employee shall continue to be eligible for the ERIP.

C. Incentive.

An individual who is eligible for the ERIP shall be permitted to add up to three years to age or up to three years to service, or any combination not to exceed three years in total. The credit shall first be added to age until it reaches age fifty-five. Hazardous duty members shall have the credit added to their service. Incentive years shall only be used in whole units of one month.

D. Restrictions.

1. For purposes of this program, a full-time employee is one who works thirty-five or more hours per week.

2. Actual age shall be used in calculation of all related benefits including, but not limited to, Plan B reductions and Group Life Insurance. Actual paid wages, not projected wages, shall be used in all benefit calculations. Accrued vacation days at the date of retirement shall be credited as increased service time.

3. Disability retirement and employees eligible for terminated vested retirement benefits are excluded from this program.

E. Payment for Unused Sick and Vacation Days.

1. Any employee participating in the incentive program shall be eligible for payment of accrued sick days and for the balance of vacation leave in accordance with existing rules, modified as follows: One-third of the amount owed such employee on July 1, 2005; one-third of such amount on July 1, 2006, and one-third of such amount on July 1, 2007.

2. The state may, at its option, make the payment in one installment on or before July 2005, if the amount of the payment is less than $ 2,000.

F. Applicability to Former Employees.

An employee who was laid off or whose position was abolished between November 1, 2002, and May 31, 2003, who would otherwise have been eligible for the Early Retirement Incentive Program shall be eligible to receive the benefits of the plan beginning March 1, 2003, if such employee is at least fifty-two years of age. If an employee who was laid off or whose position was abolished attains the age of fifty-two prior to May 31, 2003, such employee shall be eligible for the ERIP on the first day of the month following the month of such employee's birthday. Any such employee who retires shall not be rehired. If such employee has received payment for accrued vacation and sick leave, such employee shall not be required to repay such amount in order to be eligible for ERIP.

(c) The additional allotment reduction not exceeding 1.75% of any appropriated account required pursuant to section 5 of this act shall not affect allotments for: Aid to municipalities; personal services; higher education operating expenses; or entitlements.

(d) The Department of Correction shall open a facility located in Suffield on or after July 1, 2003.

(e) Notwithstanding any provision of the general statutes or any provision of any public or special act, (1) for the fiscal year ending June 30, 2003, the sum of $ 8,900,000 shall be transferred from the principal of the Soldiers, Sailors and Marines' Fund to the resources of the General Fund, and (2) for the fiscal years ending June 30, 2004, and June 30, 2005, amounts necessary for payments pursuant to the provisions of section 12-81g of the general statutes shall be appropriated to the Office of Policy and Management from the principal of said fund.

(f) The sum of $ 21,000,000 shall be transferred from the Special Transportation Fund to the resources of the General Fund.

(g) The sum of $ 10,000,000 shall be transferred from the Probate Court Administration Fund

to the resources of the General Fund.

(h) The sum of $ 2,500,000 shall be transferred from the commercial recording account established pursuant to section 3-99c of the general statutes to the resources of the General Fund.

(i) There is established the "Nonprofit Nursing Home Incentive Account". The sum of $ 1,000,000 transferred to the Department of Social Services, for Nursing Home Staffing, by section 17 of public act 02-1 of the May 9 special session, as amended by section 108 of public act 02-1 of the May 9 special session and this act, shall be transferred to said account. The funds in the account shall be used by the Department of Social Services, during the fiscal year ending June 30, 2003, to provide a supplemental incentive grant to each nonprofit nursing home which had 225 or more licensed beds for the fiscal year ending June 30, 2002. The purpose of such grant shall be to improve patient care and direct care staffing levels in such homes. Funds shall be distributed based on the following formula: One million dollars multiplied by a fraction, the numerator of which shall be the total number of licensed nursing home beds in such nursing home for such fiscal year, and the denominator of which shall be the total number of licensed beds in all such nursing homes for such fiscal year.

(j) The sum of $ 1,000,000 transferred to the Department of Social Services, for Nursing Home Staffing, by section 17 of public act 02-1 of the May 9 special session, as amended by section 108 of public act 02-1 of the May 9 special session and this act, shall be transferred to the DSH-Urban Hospitals in Distressed Municipalities account in said department.

(k) The Retirement Commission shall request an actuarial interim valuation to take into account the Early Retirement Incentive Program established by this section and shall certify revised contribution amounts to the General Assembly for the biennium ending June 30, 2005.

(l) Subject to state personnel policy and the terms of any collective bargaining agreement in effect on the effective date of this act, the Secretary of the Office of Policy and Management shall ensure that, on or before March 1, 2003, any employee who received notice of layoff from the state on or after November 1, 2002, shall be offered the opportunity to be reinstated in the position which such employee held on the date that the employee received notice of such layoff. The provisions of this subsection shall not apply to layoffs occurring as a result of the termination of grant-funded or durational positions, failure to renew appointment for performance reasons, or denial of tenure for performance reasons. Each person laid off but returned to employment with the state pursuant to this section shall be deemed to have been continuously employed by the state, with no interruption in service or pension credit, during any period that such person was laid off on or after November 1, 2002, to June 30, 2003.

(m) During the fiscal year ending June 30, 2003, no further modifications to allotment requisitions or allotments in force shall be made to payments pursuant to section 10-266p of the general statutes.

Sec. 7. Section 17b-292 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

to the commissioner for determination of eligibility of a child who resides in a household with a family income of one hundred eighty-five per cent or less of the federal poverty level. The servicer shall enroll eligible beneficiaries in the applicant's choice of managed care plan.

[(k)] (j) Not more than twelve months after the determination of eligibility for benefits under the HUSKY Plan, Part A and Part B and annually thereafter, the commissioner or the servicer, as the case may be, shall determine if the child continues to be eligible for the plan. The commissioner or the servicer shall mail an application form to each participant in the plan for the purposes of obtaining information to make a determination on eligibility. To the extent permitted by federal law, in determining eligibility for benefits under the HUSKY Plan, Part A and Part B with respect to family income, the commissioner or the servicer shall rely upon information provided in such form by the participant unless the commissioner or the servicer has reason to believe that such information is inaccurate or incomplete. The determination of eligibility shall be coordinated with health plan open enrollment periods.

[(l)] (k) The commissioner shall implement the HUSKY Plan, Part B while in the process of adopting necessary policies and procedures in regulation form in accordance with the provisions of section 17b-10.

[(m)] (l) The commissioner shall adopt regulations, in accordance with chapter 54, to establish residency requirements and income eligibility for participation in the HUSKY Plan, Part B and procedures for a simplified mail-in application process. Notwithstanding the provisions of section 17b-257b, such regulations shall provide that any child adopted from another country by an individual who is a citizen of the United States and a resident of this state shall be eligible for benefits under the HUSKY Plan, Part B upon arrival in this state.

Sec. 8. Section 17b-242 of the general statutes is amended by adding subsection (c) as follows (*Effective from passage*):

(NEW) (c) The home health services fee schedule shall include a fee for the administration of medication, which shall apply when the purpose of a nurse's visit is limited to the administration of medication. Administration of medication may include, but is not limited to, blood pressure checks, glucometer readings, pulse rate checks and similar indicators of health status. The fee for medication administration shall include administration of medications while the nurse is present, the pre-pouring of additional doses that the client will self-administer at a later time and the teaching of self-administration. The department shall not pay for medication administration in addition to any other nursing service at the same visit. The department may establish prior authorization requirements for this service. Before implementing such change, the Commissioner of Social Services shall consult with the chairpersons of the joint standing committees of the General Assembly having cognizance of matters relating to public health and human services.

Sec. 9. Section 17b-259a of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

The Commissioner of Social Services may impose cost sharing requirements on recipients of

(a) A child who resides in a household with a family income which exceeds one hundred eighty-five per cent of the federal poverty level and does not exceed three hundred per cent of the federal poverty level may be eligible for subsidized benefits under the HUSKY Plan, Part B.

(b) A child who resides in a household with a family income over three hundred per cent of the federal poverty level may be eligible for unsubsidized benefits under the HUSKY Plan, Part B.

(c) Whenever a court or family support magistrate orders a noncustodial parent to provide health insurance for a child, such parent may provide for coverage under the HUSKY Plan, Part B.

[(d) A child who has been determined to be eligible for benefits under either the HUSKY Plan, Part A or Part B shall remain eligible for said plan for a period of twelve months from such child's determination of eligibility unless the child attains the age of nineteen years or is no longer a resident of the state.]

[(e)] (d) To the extent allowed under federal law, the commissioner shall not pay for services or durable medical equipment under the HUSKY Plan, Part B if the enrollee has other insurance coverage for the services or such equipment.

[(f)] (e) A newborn child who otherwise meets the eligibility criteria for the HUSKY Plan, Part B shall be eligible for benefits retroactive to his date of birth, provided an application is filed on behalf of the child within thirty days of such date.

[(g)] (f) The commissioner shall implement presumptive eligibility for children applying for Medicaid. Such presumptive eligibility determinations shall be in accordance with applicable federal law and regulations. The commissioner shall adopt regulations, in accordance with chapter 54, to establish standards and procedures for the designation of organizations as qualified entities to grant presumptive eligibility. In establishing such regulations, the commissioner shall ensure the representation of state-wide and local organizations that provide services to children of all ages in each region of the state.

[(h)] (g) The commissioner shall enter into a contract with an entity to be a single point of entry servicer for applicants and enrollees under the HUSKY Plan, Part A and Part B. The servicer shall jointly market both Part A and Part B together as the HUSKY Plan. Such servicer shall develop and implement public information and outreach activities with community programs. Such servicer shall electronically transmit data with respect to enrollment and disenrollment in the HUSKY Plan, Part B to the commissioner who may transmit such data to the Children's Health Council.

[(i)] (h) To the extent permitted by federal law, the single point of entry servicer may be one of the entities authorized to grant presumptive eligibility under the HUSKY Plan, Part A.

[(j)] (i) The single point of entry servicer shall send an application and supporting documents

medical assistance, including a deductible, coinsurance, [copayment] or similar charge up to the maximum permitted under 42 CFR 447. 54. [, except that no copayment may be imposed for prescription drugs.] The Commissioner of Social Services shall impose cost sharing requirements on recipients of medical assistance, as follows: (1) A one dollar copayment for each outpatient medical service delivered by an enrolled Medicaid provider to a medical assistance recipient not enrolled in a managed care plan as permitted under federal law, and (2) a one dollar copayment for each drug prescription at the time the prescription is filled, except that to the degree permitted under federal law, the commissioner may make modifications to the prescription cost sharing requirement for certain individuals who have drugs dispensed in less than a thirty-day supply and may exempt residents in certain institutional settings from such requirement. Such cost sharing requirements shall be implemented in accordance with the conditions specified in federal regulations.

Sec. 10. Section 17b-261 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Medical assistance shall be provided for any otherwise eligible person whose income, including any available support from legally liable relatives and the income of the person's spouse or dependent child, is not more than one hundred forty-three per cent, pending approval of a federal waiver applied for pursuant to subsection (d) of this section, of the benefit amount paid to a person with no income under the temporary family assistance program in the appropriate region of residence and if such person is an institutionalized individual as defined in Section 1917(c) of the Social Security Act, 42 USC 1396p(c), and has not made an assignment or transfer or other disposition of property for less than fair market value for the purpose of establishing eligibility for benefits or assistance under this section. Any such disposition shall be treated in accordance with Section 1917(c) of the Social Security Act, 42 USC 1396p(c). Any disposition of property made on behalf of an applicant or recipient or the spouse of an applicant or recipient by a guardian, conservator, person authorized to make such disposition pursuant to a power of attorney or other person so authorized by law shall be attributed to such applicant, recipient or spouse. A disposition of property ordered by a court shall be evaluated in accordance with the standards applied to any other such disposition for the purpose of determining eligibility. The commissioner shall establish the standards for eligibility for medical assistance at one hundred forty-three per cent of the benefit amount paid to a family unit of equal size with no income under the temporary family assistance program in the appropriate region of residence, pending federal approval, except that the medical assistance program shall provide coverage to persons under the age of nineteen up to one hundred eighty-five per cent of the federal poverty level without an asset limit. [On and after January 1, 2001, said] Said medical assistance program shall also provide coverage to persons under the age of nineteen and their parents and needy caretaker relatives who qualify for coverage under Section 1931 of the Social Security Act with family income up to one hundred [fifty] per cent of the federal poverty level without an asset limit, upon the request of such a person or upon a redetermination of eligibility. Such levels shall be based on the regional differences in such benefit amount, if applicable, unless such levels based on regional differences are not in conformance with federal law. Any income in excess of the applicable amounts shall be applied as may be required by said federal law, and assistance

shall be granted for the balance of the cost of authorized medical assistance. All contracts entered into on and after July 1, 1997, pursuant to this section shall include provisions for collaboration of managed care organizations with the Healthy Families Connecticut Program established pursuant to section 17a-56. The Commissioner of Social Services shall provide applicants for assistance under this section, at the time of application, with a written statement advising them of the effect of an assignment or transfer or other disposition of property on eligibility for benefits or assistance.

(b) For the purposes of the Medicaid program, the Commissioner of Social Services shall consider parental income and resources as available to a child under eighteen years of age who is living with his or her parents and is blind or disabled for purposes of the Medicaid program, or to any other child under twenty-one years of age who is living with his or her parents.

(c) For the purposes of determining eligibility for the Medicaid program, an available asset is one that is actually available to the applicant or one that the applicant has the legal right, authority or power to obtain or to have applied for the applicant's general or medical support. If the terms of a trust provide for the support of an applicant, the refusal of a trustee to make a distribution from the trust does not render the trust an unavailable asset. Notwithstanding the provisions of this subsection, the availability of funds in a trust or similar instrument funded in whole or in part by the applicant or the applicant's spouse shall be determined pursuant to the Omnibus Budget Reconciliation Act of 1993, 42 USC 1396p. The provisions of this subsection shall not apply to special needs trust, as defined in 42 USC 1396p(d)(4)(A).

(d) The transfer of an asset in exchange for other valuable consideration shall be allowable to the extent the value of the other valuable consideration is equal to or greater than the value of the asset transferred.

(e) On or before January 15, 1994, and annually thereafter, the Department of Social Services shall submit a report to the General Assembly in accordance with section 11-4a which sets forth the following: The number of children receiving Medicaid services; the number of children receiving medical treatment at any state or municipal health care facility; the number of doctors and dentists participating in state or municipally-funded programs; and the percentage of children treated in medical programs whose family income is less than one hundred thirty-three per cent of the federal poverty level and the number whose family income is greater than one hundred thirty-three per cent but not more than one hundred eighty-five per cent of the federal poverty level. On and after October 1, 1996, the report shall be submitted to the joint standing committee of the General Assembly having cognizance of matters relating to human services and, upon request, to any member of the General Assembly. A summary of the report shall be submitted to each member of the General Assembly. If the summary is two pages or less and a notification of the report shall be submitted to each member if the summary is more than two pages. Submission shall be by mailing, the report, summary or notification to the legislative address of each member of the committee or the General Assembly, as applicable.

(f) The Commissioner of Social Services shall seek a waiver from federal law to permit federal financial participation for Medicaid expenditures for families with incomes of one hundred

forty-three per cent of the temporary family assistance program payment standard.

(g) Notwithstanding the provisions of subsection (a) of this section, on or after March 15, 2003, all parent and needy caretaker relatives with incomes exceeding one hundred per cent of the federal poverty level, who are receiving medical assistance pursuant to this section, shall be ineligible for such medical assistance. Upon passage of this act, the Department of Social Services shall not accept applications for medical assistance program coverage under Section 1931 of the Social Security Act from parent and needy caretaker relatives with incomes exceeding one hundred per cent of the federal poverty level until on or after July 1, 2005.

Sec. 11. Section 17b-280 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

[Notwithstanding any provision of the regulations of Connecticut state agencies concerning payment for drugs provided to Medicaid recipients (1) effective July 1, 1989, the]

The state shall reimburse for all legend drugs provided under the Medicaid, state-administered general assistance, general assistance, ConnPACE and Connecticut AIDS drug assistance programs at the rate established by the Health Care Finance Administration as the federal acquisition cost, or, if no such rate is established, the commissioner shall establish and periodically revise the estimated acquisition cost in accordance with federal regulations. Effective [September 1, 2002] February 15, 2003, the commissioner shall also establish a professional fee of three dollars and [eighty-five] sixty cents for each prescription to be paid to licensed pharmacies for dispensing drugs to Medicaid, state-administered general assistance, general assistance, ConnPACE and Connecticut AIDS drug assistance recipients in accordance with federal regulations; and [(2)] on and after September 4, 1991, payment for legend and nonlegend drugs provided to Medicaid recipients shall be based upon the actual package size dispensed. Effective October 1, 1991, reimbursement for over-the-counter drugs for such recipients shall be limited to those over-the-counter drugs and products published in the Connecticut Formulary, or the cross reference list, issued by the commissioner. The cost of all over-the-counter drugs and products provided to residents of nursing facilities, chronic disease hospitals, and intermediate care facilities for the mentally retarded shall be included in the facilities' per diem rate.

Sec. 12 (NEW) (*Effective from passage*) In no event shall an individual eligible for medical assistance under section 17b-261 of the general statutes, as amended, be guaranteed eligible for such assistance for six consecutive months without regard to changes in certain circumstances that would otherwise cause the individual to become ineligible for assistance.

Sec. 13. Subsection (c) of section 17b-112 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective July 1, 2003*):

(c) A family who is subject to time-limited benefits may petition the Commissioner of Social Services for six-month extensions of such benefits. The commissioner shall grant not more than [three] two extensions to such family who has made a good faith effort to comply with the

requirements of the program and despite such effort has a total family income at a level below the payment standard, or has encountered circumstances preventing employment including, but not limited to: (1) Domestic violence or physical harm to such family's children; or (2) other circumstances beyond such family's control. The commissioner shall disregard ninety dollars of earned income in determining applicable family income. The commissioner may grant [a fourth or] a subsequent six-month extension if each adult in the family meets one or more of the following criteria: (A) The adult is precluded from engaging in employment activities due to domestic violence or another reason beyond the adult's control; (B) the adult has two or more substantiated barriers to employment including, but not limited to, the lack of available child care, substance abuse or addiction, severe mental or physical health problems, one or more severe learning disabilities, domestic violence or a child who has a serious physical or behavioral health problem; (C) the adult is working thirty-five or more hours per week, is earning at least the minimum wage and continues to earn less than the family's temporary family assistance payment standard; or (D) the adult is employed and works less than thirty-five hours per week due to (i) a documented medical impairment that limits the adult's hours of employment, provided the adult works the maximum number of hours that the medical condition permits, or (ii) the need to care for a disabled member of the adult's household, provided the adult works the maximum number of hours the adult's caregiving responsibilities permit. Families receiving temporary family assistance shall be notified by the department of the right to petition for such extensions. Notwithstanding the provisions of this section, the commissioner shall not provide benefits under the state's temporary family assistance program to a family that is subject to the twenty-one month benefit limit and has received benefits beginning on or after October 1, 1996, if such benefits result in that family's receiving more than sixty months of time-limited benefits unless that family experiences domestic violence, as defined in Section 402(a)(7)(B), P. L. 104-193. For the purpose of calculating said sixty-month limit: (I) A month shall count toward the limit if the family receives assistance for any day of the month, and (II) a month in which a family receives temporary family assistance benefits that are issued from a jurisdiction other than Connecticut shall count toward the limit.

Sec. 14. Section 17b-491 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) There shall be a "Connecticut Pharmaceutical Assistance Contract to the Elderly and the Disabled Program" which shall be within the Department of Social Services. The program shall consist of payments by the state to pharmacies for the reasonable cost of prescription drugs dispensed to eligible persons minus a copayment charge. The pharmacy shall collect the copayment charge from the eligible person at the time of each purchase of prescription drugs, and shall not waive, discount or rebate in whole or in part such amount. [For an individual who is determined eligible to participate in the program on or after September 1, 2002, said] The copayment for each prescription shall be as follows:

(1) [Twelve] Sixteen dollars and twenty-five cents if the participant is (A) not married and has an annual income of less than [fifteen thousand nine hundred] twenty thousand three hundred dollars, or (B) is married and has an annual income that, when combined with the participant's

spouse, is less than [twenty-one thousand five] twenty-seven thousand five hundred dollars.

[(2) Fifteen dollars if the participant is (A) not married and has an annual income that (i) equals or exceeds fifteen thousand nine hundred dollars, and (ii) equals or is less than twenty thousand dollars, or (B) married and has an annual income that, when combined with the participant's spouse (i) equals or exceeds twenty-one thousand five hundred dollars, and (ii) equals or is less than twenty-seven thousand one hundred dollars. ]

[(3)] (2) Upon the granting of a federal waiver to expand the program in accordance with section 17b-492, the copayment shall be twenty dollars for a participant who is (A) not married and has an annual income that equals or exceeds twenty thousand three hundred dollars, or (B) married and has an annual income that, when combined with the participant's spouse, equals or exceeds twenty-seven thousand [one] five hundred dollars.

[(b) Notwithstanding subsection (a) of this section, an individual who is determined eligible to participate in the program prior to September 1, 2002, shall be responsible for a copayment of twelve dollars for each prescription except that such participant shall pay a copayment of twenty dollars per prescription if the participant has an annual income that exceeds (1) twenty thousand dollars if not married, or (2) if married, when combined with the participant's spouse, twenty-seven thousand one hundred dollars. This subsection shall not apply to an individual who was determined eligible to participate in the program prior to September 1, 2002, and who subsequently reapplies for benefits for any reason after any period of any eligibility. Such individual shall be determined to be responsible for a copayment in accordance with subsection (a) of this section. For purposes of this subsection a redetermination by the Department of Social Services shall not be considered a reapplication for benefits. ]

[(c)] (b) On January 1, 2002, and annually thereafter, the commissioner shall increase the income limits established in [subsections (a) and (b)] subsection (a) of this section that set the appropriate participant copayment by the increase in the annual inflation adjustment in Social Security income, if any. Each such adjustment shall be determined to the nearest one hundred dollars.

[(d)] (c) Notwithstanding the provisions of subsection (a), effective September 15, 1991, payment by the state to a pharmacy under the program may be based on the price paid directly by a pharmacy to a pharmaceutical manufacturer for drugs dispensed under the program minus the copayment charge, plus the dispensing fee, if the direct price paid by the pharmacy is lower than the reasonable cost of such drugs.

[(e)] (d) Effective September 15, 1991, reimbursement to a pharmacy for prescription drugs dispensed under the program shall be based upon actual package size costs of drugs purchased by the pharmacy in units larger than or smaller than one hundred.

[(f)] (e) The commissioner shall establish an application form whereby a pharmaceutical manufacturer may apply to participate in the program. Upon receipt of a completed application, the department shall issue a certificate of participation to the manufacturer.

Participation by a pharmaceutical manufacturer shall require that the department receive a rebate from the pharmaceutical manufacturer. Rebate amounts for brand name prescription drugs shall be equal to those under the Medicaid program. Rebate amounts for generic prescription drugs shall be established by the commissioner, provided such amounts may not be less than those under the Medicaid program. A participating pharmaceutical manufacturer shall make quarterly rebate payments to the department for the total number of dosage units of each form and strength of a prescription drug which the department reports as reimbursed to providers of prescription drugs, provided such payments shall not be due until thirty days following the manufacturer's receipt of utilization data from the department including the number of dosage units reimbursed to providers of prescription drugs during the quarter for which payment is due.

[(g)] (f) All prescription drugs of a pharmaceutical manufacturer that participates in the program pursuant to subsection [(f)] (e) of this section shall be subject to prospective drug utilization review. Any prescription drug of a manufacturer that does not participate in the program shall not be reimbursable, unless the department determines the prescription drug is essential to program participants.

Sec. 15. Subsection (a) of section 17b-492 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Eligibility for participation in the program shall be limited to any resident (1) who is sixty-five years of age or older or who is disabled, (2) (A) whose annual income, if unmarried, is less than thirteen thousand eight hundred dollars, except after April 1, 2002, such annual income is less than twenty thousand dollars, or whose annual income, if married, when combined with that of the resident's spouse is less than sixteen thousand six hundred dollars, except after April 1, 2002, such combined annual income is less than twenty-seven thousand one hundred dollars, or (B) in the event the program is granted a waiver to be eligible for federal financial participation, then, after July 1, 2002, whose annual income, if unmarried, is less than twenty-five thousand eight hundred dollars, or whose annual income, if married, when combined with that of the resident's spouse is less than thirty-four thousand eight hundred dollars, (3) who is not insured under a policy which provides full or partial coverage for prescription drugs once a deductible amount is met, and (4) on and after September 15, 1991, who pays an annual [twenty-five-dollar] thirty-dollar registration fee to the Department of Social Services. Effective January 1, 2002, the commissioner shall commence accepting applications from individuals who will become eligible to participate in the program as of April 1, 2002. On January 1, 1998, and annually thereafter, the commissioner shall increase the income limits established under this subsection over those of the previous fiscal year to reflect the annual inflation adjustment in Social Security income, if any. Each such adjustment shall be determined to the nearest one hundred dollars.

Sec. 16. Subsection (b) of section 17b-749 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(b) The commissioner shall establish income standards for applicants and recipients at a level to include a family with gross income up to fifty per cent of the state-wide median income,

except the commissioner (1) may increase the income level up to seventy-five per cent of the state-wide median income, [and] (2) upon the request of the Commissioner of Children and Families, may waive the income standards for adoptive families so that children adopted on or after October 1, 1999, from the Department of Children and Families are eligible for the child care subsidy program, and (3) on and after February 15, 2003, the commissioner shall reduce the income eligibility level to up to fifty-five per cent of the state-wide median income for applicants and recipients who qualify based on their loss of eligibility for temporary family assistance. The commissioner may adopt regulations in accordance with chapter 54 to establish income criteria and durational requirements for such waiver of income standards.

Sec. 17. Subdivision (4) of subsection (f) of section 17b-340 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(4) For the fiscal year ending June 30, 1992, (A) no facility shall receive a rate that is less than the rate it received for the rate year ending June 30, 1991; (B) no facility whose rate, if determined pursuant to this subsection, would exceed one hundred twenty per cent of the state-wide median rate, as determined pursuant to this subsection, shall receive a rate which is five and one-half per cent more than the rate it received for the rate year ending June 30, 1991; and (C) no facility whose rate, if determined pursuant to this subsection, would be less than one hundred twenty per cent of the state-wide median rate, as determined pursuant to this subsection, shall receive a rate which is six and one-half per cent more than the rate it received for the rate year ending June 30, 1991. For the fiscal year ending June 30, 1993, no facility shall receive a rate that is less than the rate it received for the rate year ending June 30, 1992, or six per cent more than the rate it received for the rate year ending June 30, 1992. For the fiscal year ending June 30, 1994, no facility shall receive a rate that is less than the rate it received for the rate year ending June 30, 1993, or six per cent more than the rate it received for the rate year ending June 30, 1993. For the fiscal year ending June 30, 1995, no facility shall receive a rate that is more than five per cent less than the rate it received for the rate year ending June 30, 1994, or six per cent more than the rate it received for the rate year ending June 30, 1994. For the fiscal years ending June 30, 1996, and June 30, 1997, no facility shall receive a rate that is more than three per cent more than the rate it received for the prior rate year. For the fiscal year ending June 30, 1998, a facility shall receive a rate increase that is not more than two per cent more than the rate that the facility received in the prior year. For the fiscal year ending June 30, 1999, a facility shall receive a rate increase that is not more than three per cent more than the rate that the facility received in the prior year and that is not less than one per cent more than the rate that the facility received in the prior year, exclusive of rate increases associated with a wage, benefit and staffing enhancement rate adjustment added for the period from April 1, 1999, to June 30, 1999, inclusive. For the fiscal year ending June 30, 2000, each facility, except a facility with an interim rate or replaced interim rate for the fiscal year ending June 30, 1999, and a facility having a certificate of need or other agreement specifying rate adjustments for the fiscal year ending June 30, 2000, shall receive a rate increase equal to one per cent applied to the rate the facility received for the fiscal year ending June 30, 1999, exclusive of the facility's wage, benefit and staffing enhancement rate adjustment. For the fiscal year ending June 30, 2000, no facility with an interim rate, replaced interim rate or scheduled rate adjustment specified in a certificate of need or other agreement for the fiscal year ending

June 30, 2000, shall receive a rate increase that is more than one per cent more than the rate the facility received in the fiscal year ending June 30, 1999. For the fiscal year ending June 30, 2001, each facility, except a facility with an interim rate or replaced interim rate for the fiscal year ending June 30, 2000, and a facility having a certificate of need or other agreement specifying rate adjustments for the fiscal year ending June 30, 2001, shall receive a rate increase equal to two per cent applied to the rate the facility received for the fiscal year ending June 30, 2000, subject to verification of wage enhancement adjustments pursuant to subdivision (15) of this subsection. For the fiscal year ending June 30, 2001, no facility with an interim rate, replaced interim rate or scheduled rate adjustment specified in a certificate of need or other agreement for the fiscal year ending June 30, 2001, shall receive a rate increase that is more than two per cent more than the rate the facility received for the fiscal year ending June 30, 2000. For the fiscal year ending June 30, 2002, each facility shall receive a rate that is two and one-half per cent more than the rate the facility received in the prior fiscal year. For the fiscal year ending June 30, 2003, each facility shall receive a rate that is two per cent more than the rate the facility received in the prior fiscal year, except that such increase shall be effective January 1, 2003, and such facility rate in effect for the fiscal year ending June 30, 2002, shall be paid for services provided until December 31, 2002, except any facility that would have been issued a lower rate effective July 1, 2002, than for the fiscal year ending June 30, 2002, due to interim rate status or agreement with the department shall be issued such lower rate effective July 1, 2002, and have such rate increased two per cent effective [January] June 1, 2003. The Commissioner of Social Services shall add fair rent increases to any other rate increases established pursuant to this subdivision for a facility which has undergone a material change in circumstances related to fair rent.

Sec. 18. Section 17b-257 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) [On and after July 1, 1998, the] The Commissioner of Social Services shall implement a state medical assistance program for persons ineligible for Medicaid and on or before April 1, 1997, the commissioner shall implement said program in the towns in which the fourteen regional or district offices of the Department of Social Services are located. The commissioner shall establish a schedule for the transfer of recipients of medical assistance administered by towns under the general assistance program to the state program. To the extent possible, the administration of the state medical assistance program shall parallel that of the Medicaid program as it is administered to recipients of temporary family assistance, including eligibility criteria concerning income and assets. Payment for medical services shall be made only for individuals determined eligible. The rates of payment for medical services shall be those of the Medicaid program. Medical services covered under the program shall be those covered under the Medicaid program, except that nonemergency medical transportation, eye care, optical hardware and optometry care, podiatry, chiropractic, naturopathy, home health care and long-term care and services available pursuant to a home and community-based services waiver under Section 1915 of the Social Security Act shall not be covered. On or after April 1, 1997, the commissioner shall implement a managed care program for medical services provided under this program, except services provided pursuant to section 17a-453a. Notwithstanding the provisions of sections 4a-51 and 4a-57, the commissioner may enter into

contracts, including, but not limited to, purchase of service agreements to implement the provisions of this section.

(b) The Commissioner of Social Services shall impose cost sharing requirements on recipients of medical assistance under this section and section 17b-259 as follows: (1) A one dollar copayment for each outpatient medical service delivered by a state medical assistance program provider to a medical assistance recipient, and (2) a one dollar copayment for each drug prescription at the time the prescription is filled, provided the commissioner may make modifications to the prescription cost-sharing requirement for certain individuals who have drugs dispensed in less than a thirty-day supply and may exempt residents in certain institutional settings from such requirement.

Sec. 19. Section 17b-274d of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Pursuant to 42 USC 1396r-8, there is established a Medicaid Pharmaceutical and Therapeutics Committee within the Department of Social Services. Said committee shall convene on or before March 31, 2003.

(b) The Medicaid Pharmaceutical and Therapeutics Committee shall be comprised as specified in 42 USC 1396r-8 and shall consist of eleven members appointed by the Governor. Five members shall be physicians licensed pursuant to chapter 370, five members shall be pharmacists licensed pursuant to chapter 400j, and one member shall be a consumer representative. The members shall serve for terms of two years from the date of their appointment. Members may be appointed to more than one term. The administrative staff of the Department of Social Services shall serve as staff for said committee and assist with all ministerial duties. The Governor shall ensure that the committee membership includes Medicaid participating physicians and pharmacists, with experience serving all segments of the Medicaid population. Not less than one of the committee members shall be a representative of the pharmaceutical manufacturers.

(c) Committee members shall select a chairperson and vice-chairperson from the committee membership on an annual basis.

(d) The committee shall meet at least quarterly, and may meet at other times at the discretion of the chairperson and committee membership. The committee shall comply with all regulations adopted by the department, including notice of any meeting of the committee, pursuant to the requirements of chapter 54.

(e) [Upon recommendation of the Medicaid Pharmaceutical and Therapeutics Committee] On or before July 1, 2003, the Department of Social Services, in consultation with the Medicaid and Pharmaceutical Therapeutics Committee, shall adopt a preferred drug list. To the extent feasible, the [committee] department shall review all drugs included in the preferred drug list at least every twelve months, and may recommend additions to, and deletions from, the preferred drug list, to ensure that the preferred drug list provides for medically appropriate drug therapies for Medicaid patients.

(f) Except for mental health drugs and antiretroviral drugs, reimbursement for a drug not included in the preferred drug list is subject to prior authorization.

(g) The Department of Social Services shall publish and disseminate the preferred drug list to all Medicaid providers in the state.

(h) The committee shall ensure that the pharmaceutical manufacturers agreeing to provide a supplemental rebate pursuant to 42 USC 1396r-8(c) have an opportunity to present evidence supporting inclusion of a product on the preferred drug list unless a court of competent jurisdiction, in a final decision, determines that the Secretary of Health and Human Services does not have authority to allow such supplemental rebates; provided the inability to utilize supplemental rebates pursuant to this subsection shall not impair the committee's authority to maintain a preferred drug list. Upon timely notice, the department shall ensure that any drug that has been approved or had any of its particular uses approved by the United States Food and Drug Administration under a priority review classification, will be reviewed by the Medicaid Pharmaceutical and Therapeutics Committee at the next regularly scheduled meeting. To the extent feasible, upon notice by a pharmaceutical manufacturer, the department shall also schedule a product review for any new product at the next regularly scheduled meeting of the Medicaid Pharmaceutical and Therapeutics Committee.

(i) Factors considered by the department and the Medicaid Pharmaceutical and Therapeutics Committee in developing the preferred drug list shall include, but not be limited to, clinical efficacy, safety and cost effectiveness of a product.

(j) The Medicaid Pharmaceutical and Therapeutics Committee may also make recommendations to the department regarding the prior authorization of any prescribed drug covered by Medicaid.

(k) Medicaid recipients may appeal any department preferred drug list determinations utilizing the Medicaid fair hearing process administered by the Department of Social Services established pursuant to chapter 54.

Sec. 20. (NEW) (*Effective from passage*) Notwithstanding the provisions of section 16-245m of the general statutes, the Department of Public Utility Control shall authorize the disbursement of a total of one million dollars in each month, commencing with February, 2003, and ending with July, 2005, from the Energy Conservation and Load Management Funds established pursuant to said section 16-245m. The amount disbursed from each Energy Conservation and Load Management Fund shall be proportionately based on the receipts received by each fund. Such disbursements shall be deposited in a nonlapsing account within the General Fund to be used by state agencies for electrical utility costs, including conservation projects.

Sec. 21. (NEW) (*Effective from passage*) At the end of each fiscal year commencing with the fiscal year ending on June 30, 2003, the Comptroller is authorized to record as revenue for such fiscal year the amount of any payments from the Energy Conservation and Load Management Funds which are deposited into the General Fund pursuant to section 20 of this act no later than (1) the last day of July immediately following the end of such fiscal year, or (2) if such last

day of July is a Saturday, Sunday or legal holiday, as defined in section 12-39a of the general statutes, the next succeeding day which is not a Saturday, Sunday or legal holiday.

Sec. 22. Subdivisions (5) and (6) of subsection (a) of section 12-700 of the general statutes are repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to taxable years commencing on or after January 1, 2003*):

(5) For taxable years commencing on or after January 1, 1999, but prior to January 1, 2003, in accordance with the following schedule:

(A) For any person who files a return under the federal income tax for such taxable year as an unmarried individual or as a married individual filing separately:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $10,000 | 3.0% |
| Over $10,000 | $300.00, plus 4.5% of the excess over $10,000 |

(B) For any person who files a return under the federal income tax for such taxable year as a head of household, as defined in Section 2(b) of the Internal Revenue Code:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $16,000 | 3.0% |
| Over $16,000 | $480.00, plus 4.5% of the excess over $16,000 |

(C) For any husband and wife who file a return under the federal income tax for such taxable year as married individuals filing jointly or any person who files a return under the federal income tax for such taxable year as a surviving spouse, as defined in Section 2(a) of the Internal Revenue Code:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $20,000 | 3.0% |
| Over $20,000 | $600.00, plus 4.5% of the excess over $20,000 |

(D) For trusts or estates, the rate of tax shall be 4.5% of their Connecticut taxable income.

(6) For taxable years commencing on or after January 1, 2003, in accordance with the following schedule:

(A) For any person who files a return under the federal income tax for such taxable year as an unmarried individual and for any trust or estate.

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $10,000 | 3.0% |
| Over $10,000 but not over $53,125 | $300.00, plus 4.5% of the excess over $10,000 |
| Over $53,125 but not over $106,500 | $2,240.63, plus 5.0% of the excess over $53,125 |
| Over $106,500 but not over $265,500 | $4,909.38, plus 5.5% of the excess over $106,500 |
| Over $265,500 | $13,654.38, plus 5.75% of the excess over $265,500 |

(B) For any person who files a return under the federal income tax for such taxable year as a married individual filing separately:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $10,000 | 3.0% |
| Over $10,000 but not over $50,000 | $300.00, plus 4.5% of the excess over $10,000 |
| Over $50,000 but not over $100,000 | $2,100.00, plus 5.0% of the excess over $50,000 |
| Over $100,000 but not over $250,000 | $4,600.00, plus 5.5% of the excess over $100,000 |
| Over $250,000 | $12,850.00, plus 5.75% of the excess over $250,000 |

(C) For any person who files a return under the federal income tax for such taxable year as a head of household, as defined in Section 2(b) of the Internal Revenue Code:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $16,000 | 3.0% |
| Over $16,000 but not over $80,000 | $480.00, plus 4.5% of the excess over $16,000 |
| Over $80,000 but not over $156,000 | $3,360, plus 5.0% of the excess over $80,000 |
| Over $156,000 but not over $396,000 | $7,260, plus 5.5% of the excess over $156,000 |
| Over $396,000 | $20,350, plus 5.75% of the excess over $396,000 |

(D) For any husband and wife who file a return under the federal income tax for such taxable year as married individuals filing jointly or any person who files a return under the federal income tax for such taxable year as a surviving spouse, as defined in Section 2(a) of the Internal Revenue Code:

| Connecticut Taxable Income | Rate of Tax |
|---|---|
| Not over $20,000 | 3.0% |
| Over $20,000 but not over $100,000 | $600.00, plus 4.5% of the excess over $20,000 |
| Over $100,000 but not over $200,000 | $4,200, plus 5.0% of the excess over $100,000 |
| Over $200,000 but not over $500,000 | $9,200, plus 5.5% of the excess over $200,000 |
| Over $500,000 | $25,700, plus 5.75% of the excess over $500,000 |

[(6)] (7) The provisions of this subsection shall apply to resident trusts and estates and, wherever reference is made in this subsection to residents of this state, such reference shall be construed to include resident trusts and estates, provided any reference to a resident's Connecticut adjusted gross income derived from sources without this state or to a resident's Connecticut adjusted gross income shall be construed, in the case of a resident trust or estate, to mean the resident trust or estate's Connecticut taxable income derived from sources without this state and the resident trust or estate's Connecticut taxable income, respectively.

Sec. 23. (*Effective from passage*) The Commissioner of Revenue Services shall adjust the withholding tables issued for purposes of administering the personal income tax imposed under chapter 229 of the general statutes to take account of any changes in such tax made by this act and, on or before March 1, 2003, shall issue new withholding tables applicable to taxable years commencing on or after January 1, 2003, provided the tables applicable to the period from March 1, 2003, to June 30, 2003, shall provide for the collection of a tax computed in such manner as to result, so far as practicable, in withholding from the employee's wages during such period an amount substantially equivalent to the tax reasonably estimated to be due from the employee under said chapter 229 with respect to the amount of such wages during a six-month period and further provided the tables applicable to any period after June 30, 2003, shall be prepared as provided in section 12-705 of the general statutes.

Sec. 24. (NEW) (*Effective from passage*) Notwithstanding the provisions of section 12-722 of the general statutes, any taxpayer required to make an estimated payment in June, 2003, for the tax due under chapter 229 of the general statutes shall make such payment in an amount which is adjusted for any change in the rate applicable to the current taxable year, as provided in section 12-700 of the general statutes, as amended by this act.

Sec. 25. Subsection (c) of section 12-704c of the general statutes is repealed and the following is

substituted in lieu thereof (*Effective from passage and applicable to taxable years commencing on or after January 1, 2003*):

(c) (1) (A) For taxable years commencing prior to January 1, 2000, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-two thousand five hundred dollars, the amount of the credit that exceeds one hundred dollars shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(B) For taxable years commencing on or after January 1, 2000, but prior to January 1, 2001, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-three thousand five hundred dollars, the amount of the credit that exceeds one hundred dollars shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(C) For taxable years commencing on or after January 1, 2001, but prior to January 1, 2004, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-four thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(D) For taxable years commencing on or after January 1, 2004, but prior to January 1, 2005, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-five thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(E) For taxable years commencing on or after January 1, 2005, but prior to January 1, 2006, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-six thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(F) For taxable years commencing on or after January 1, 2006, but prior to January 1, 2007, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds fifty-eight thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(G) For taxable years commencing on or after January 1, 2007, but prior to January 1, 2008, in

the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds sixty thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(H) For taxable years commencing on or after January 1, 2008, but prior to January 1, 2009, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds sixty-two thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(I) For taxable years commencing on or after January 1, 2009, in the case of any such taxpayer who files under the federal income tax for such taxable year as an unmarried individual whose Connecticut adjusted gross income exceeds sixty-four thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(2) In the case of any such taxpayer who files under the federal income tax for such taxable year as a married individual filing separately whose Connecticut adjusted gross income exceeds fifty thousand two hundred fifty dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each five thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(3) In the case of a taxpayer who files under the federal income tax for such taxable year as a head of household whose Connecticut adjusted gross income exceeds seventy-eight thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

(4) In the case of a taxpayer who files under federal income tax for such taxable year as married individuals filing jointly whose Connecticut adjusted gross income exceeds one hundred thousand five hundred dollars, the amount of the credit [that exceeds one hundred dollars] shall be reduced by ten per cent for each ten thousand dollars, or fraction thereof, by which the taxpayer's Connecticut adjusted gross income exceeds said amount.

Sec. 26. Subdivision (1) of section 12-408 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to sales occurring on or after March 1, 2003*):

(1) For the privilege of making any sales, as defined in subdivision (2) of subsection (a) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of six per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale in

accordance with subdivision (2) of subsection (a) of section 12-407, except, in lieu of said rate of six per cent, (A) at a rate of twelve per cent with respect to each transfer of occupancy, from the total amount of rent received for such occupancy of any room or rooms in a hotel or lodging house for the first period not exceeding thirty consecutive calendar days, (B) with respect to the sale of a motor vehicle to any individual who is a member of the armed forces of the United States and is on full-time active duty in Connecticut and who is considered, under 50 App USC 574, a resident of another state, or to any such individual and the spouse thereof, at a rate of four and one-half per cent of the gross receipts of any retailer from such sales, provided such retailer requires and maintains a declaration by such individual, prescribed as to form by the commissioner and bearing notice to the effect that false statements made in such declaration are punishable, or other evidence, satisfactory to the commissioner, concerning the purchaser's state of residence under 50 App USC 574, (C) (i) with respect to the sales of computer and data processing services occurring on or after July 1, 1997, and prior to July 1, 1998, at the rate of five per cent, on or after July 1, 1998, and prior to July 1, 1999, at the rate of four per cent, on or after July 1, 1999, and prior to July 1, 2000, at the rate of three per cent, on or after July 1, 2000, and prior to July 1, 2001, at the rate of two per cent, on or after July 1, 2001, and prior to [July 1, 2004] March 1, 2003, at the rate of one per cent and on and after [July 1, 2004, such services shall be exempt from such tax] March 1, 2003, at the rate of three per cent, (ii) with respect to sales of Internet access services, on and after July 1, 2001, such services shall be exempt from such tax, (D) with respect to the sales of labor that is otherwise taxable under subparagraph (C) or (G) of subdivision (2) of subsection (a) of section 12-407 on existing vessels and repair or maintenance services on vessels occurring on and after July 1, 1999, such services shall be exempt from such tax, and (E) with respect to patient care services for which payment is received by the hospital on or after July 1, 1999, and prior to July 1, 2003, at the rate of five and three-fourths per cent. The rate of tax imposed by this chapter shall be applicable to all retail sales upon the effective date of such rate, except that a new rate which represents an increase in the rate applicable to the sale shall not apply to any sales transaction wherein a binding sales contract without an escalator clause has been entered into prior to the effective date of the new rate and delivery is made within ninety days after the effective date of the new rate. For the purposes of payment of the tax imposed under this section, any retailer of services taxable under subparagraph (I) of subdivision (2) of subsection (a) of section 12-407, who computes taxable income, for purposes of taxation under the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended, on an accounting basis which recognizes only cash or other valuable consideration actually received as income and who is liable for such tax only due to the rendering of such services may make payments related to such tax for the period during which such income is received, without penalty or interest, without regard to when such service is rendered.

Sec. 27. Subdivision (1) of section 12-411 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to sales occurring on or after March 1, 2003*):

(1) An excise tax is hereby imposed on the storage, acceptance, consumption or any other use

in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state, the acceptance or receipt of any services constituting a sale in accordance with subdivision (2) of subsection (a) of section 12-407, purchased from any retailer for consumption or use in this state, or the storage, acceptance, consumption or any other use in this state of tangible personal property which has been manufactured, fabricated, assembled or processed from materials by a person, either within or without this state, for storage, acceptance, consumption or any other use by such person in this state, to be measured by the sales price of materials, at the rate of six per cent of the sales price of such property or services, except, in lieu of said rate of six per cent, (A) at a rate of twelve per cent of the rent paid for occupancy of any room or rooms in a hotel or lodging house for the first period of not exceeding thirty consecutive calendar days, (B) with respect to the storage, acceptance, consumption or use in this state of a motor vehicle purchased from any retailer for storage, acceptance, consumption or use in this state by any individual who is a member of the armed forces of the United States and is on full-time active duty in Connecticut and who is considered, under 50 App USC 574, a resident of another state, or to any such individual and the spouse of such individual at a rate of four and one-half per cent of the sales price of such vehicle, provided such retailer requires and maintains a declaration by such individual, prescribed as to form by the commissioner and bearing notice to the effect that false statements made in such declaration are punishable, or other evidence, satisfactory to the commissioner, concerning the purchaser's state of residence under 50 App USC 574, (C) with respect to the acceptance or receipt in this state of labor that is otherwise taxable under subparagraph (C) or (G) of subdivision (2) of subsection (a) of section 12-407 on existing vessels and repair or maintenance services on vessels occurring on and after July 1, 1999, such services shall be exempt from such tax, (D) (i) with respect to the acceptance or receipt in this state of computer and data processing services purchased from any retailer for consumption or use in this state occurring on or after July 1, 1997, and prior to July 1, 1998, at the rate of five per cent of such services, on or after July 1, 1998, and prior to July 1, 1999, at the rate of four per cent of such services, on or after July 1, 1999, and prior to July 1, 2000, at the rate of three per cent of such services, on or after July 1, 2000, and prior to July 1, 2001, at the rate of two per cent of such services, on or after July 1, 2001, and prior to [July 1, 2004] March 1, 2003, at the rate of one per cent of such services and on and after [July 1, 2004, such services shall be exempt from such tax] March 1, 2003, at the rate of three per cent, and (ii) with respect to the acceptance or receipt in this state of Internet access services, on or after July 1, 2001, such services shall be exempt from tax, and (E) with respect to the acceptance or receipt in this state of patient care services purchased from any retailer for consumption or use in this state for which payment is received by the hospital on or after July 1, 1999, and prior to July 1, 2001, and with respect to acceptance or receipt in this state of such services for which payment is received by the hospital on or after July 1, 2003, at the rate of five and three-fourths per cent.

Sec. 28. Subdivision (37) of subsection (a) of section 12-407 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective March 1, 2003, and applicable to sales occurring on or after March 1, 2003*):

(37) "Services" for purposes of subdivision (2) of this subsection, means:

(A) Computer and data processing services, including, but not limited to, time, programming, code writing, modification of existing programs, feasibility studies and installation and implementation of software programs and systems even where such services are rendered in connection with the development, creation or production of canned or custom software or the license of custom software, and exclusive of services rendered in connection with the creation, development hosting or maintenance of all or part of a web site which is part of the graphical, hypertext portion of the Internet, commonly referred to as the World Wide Web;

(B) Credit information and reporting services;

(C) Services by employment agencies and agencies providing personnel services;

(D) Private investigation, protection, patrol work, watchman and armored car services, exclusive of services of off-duty police officers and off-duty firefighters;

(E) Painting and lettering services;

(F) Photographic studio services;

(G) Telephone answering services;

(H) Stenographic services;

(I) Services to industrial, commercial or income-producing real property, including, but not limited to, such services as management, electrical, plumbing, painting and carpentry and excluding any such services rendered in the voluntary evaluation, prevention, treatment, containment or removal of hazardous waste, as defined in section 22a-115, or other contaminants of air, water or soil, provided income-producing property shall not include property used exclusively for residential purposes in which the owner resides and which contains no more than three dwelling units, or a housing facility for low and moderate income families and persons owned or operated by a nonprofit housing organization, as defined in subdivision (29) of section 12-412;

(J) Business analysis, management, management consulting and public relations services, excluding (i) any environmental consulting services, (ii) any training services provided by an institution of higher education licensed or accredited by the Board of Governors of Higher Education pursuant to section 10a-34, and (iii) on and after January 1, 1994, any business analysis, management, management consulting and public relations services when such services are rendered in connection with an aircraft leased or owned by a certificated air carrier or in connection with an aircraft which has a maximum certificated take-off weight of six thousand pounds or more;

(K) Services providing "piped-in" music to business or professional establishments;

(L) Flight instruction and chartering services by a certificated air carrier on an aircraft, the use of which for such purposes, but for the provisions of subdivision (4) of section 12-410 and

subdivision (12) of section 12-411, would be deemed a retail sale and a taxable storage or use, respectively, of such aircraft by such carrier;

(M) Motor vehicle repair services, including any type of repair, painting or replacement related to the body or any of the operating parts of a motor vehicle;

(N) Motor vehicle parking, including the provision of space, other than metered space, in a lot having thirty or more spaces, excluding (i) space in a seasonal parking lot provided by a person who is exempt from taxation under this chapter pursuant to subdivision (1), (5) or (8) of section 12-412, (ii) space in a parking lot owned or leased under the terms of a lease of not less than ten years' duration and operated by an employer for the exclusive use of its employees, (iii) valet parking provided at any airport, and (iv) space in municipally-operated railroad parking facilities in municipalities located within an area of the state designated as a severe nonattainment area for ozone under the federal Clean Air Act or space in a railroad parking facility in a municipality located within an area of the state designated as a severe nonattainment area for ozone under the federal Clean Air Act owned or operated by the state on or after April 1, 2000;

(O) Radio or television repair services;

(P) Furniture reupholstering and repair services;

(Q) Repair services to any electrical or electronic device, including, but not limited to, equipment used for purposes of refrigeration or air-conditioning;

(R) Lobbying or consulting services for purposes of representing the interests of a client in relation to the functions of any governmental entity or instrumentality;

(S) Services of the agent of any person in relation to the sale of any item of tangible personal property for such person, exclusive of the services of a consignee selling works of art, as defined in subsection (b) of section 12-376c, or articles of clothing or footwear intended to be worn on or about the human body other than (i) any special clothing or footwear primarily designed for athletic activity or protective use and which is not normally worn except when used for the athletic activity or protective use for which it was designed, and (ii) jewelry, handbags, luggage, umbrellas, wallets, watches and similar items carried on or about the human body but not worn on the body in the manner characteristic of clothing intended for exemption under subdivision (47) of section 12-412, as amended by this act, under consignment, exclusive of services provided by an auctioneer;

(T) Locksmith services;

(U) Advertising or public relations services, including layout, art direction, graphic design, mechanical preparation or production supervision; [ not related to the development of media advertising or cooperative direct mail advertising; ]

(V) Landscaping and horticulture services;

(W) Window cleaning services;

(X) Maintenance services;

(Y) Janitorial services;

(Z) Exterminating services;

(AA) Swimming pool cleaning and maintenance services;

(BB) Miscellaneous personal services included in industry group 729 in the Standard Industrial Classification Manual, United States Office of Management and Budget, 1987 edition, or U. S. industry 532220, 812191, 812199 or 812990 in the North American Industrial Classification System United States Manual, United States Office of Management and Budget, 1997 edition, exclusive of (i) services rendered by massage therapists licensed pursuant to chapter 384a, and (ii) services rendered by an electrologist licensed pursuant to chapter 388;

(CC) Any repair or maintenance service to any item of tangible personal property including any contract of warranty or service related to any such item;

(DD) Business analysis, management or managing consulting services rendered by a general partner, or an affiliate thereof, to a limited partnership, provided (i) the general partner, or an affiliate thereof, is compensated for the rendition of such services other than through a distributive share of partnership profits or an annual percentage of partnership capital or assets established in the limited partnership's offering statement, and (ii) the general partner, or an affiliate thereof, offers such services to others, including any other partnership. As used in this subparagraph "an affiliate of a general partner" means an entity which is directly or indirectly owned fifty per cent or more in common with a general partner; [and]

(EE) Notwithstanding the provisions of section 12-412, as amended by this act, except subdivision (87) of said section 12-412, patient care services, as defined in subdivision (29) of this subsection by a hospital, except that "sale" and "selling" does not include such patient care services for which payment is received by the hospital during the period commencing July 1, 2001, and ending June 30, 2003;

(FF) Health and athletic club services, exclusive of (i) any such services provided without any additional charge which are included in any dues or initiation fees paid to any such club, which dues or fees are subject to tax under section 12-543, and (ii) any such services provided by a municipality or an organization that is described in Section 501(c) of the Internal Revenue Code of 1986, or any subsequent corresponding internal revenue code of the United States, as from time to time amended.

Sec. 29. Subdivision (47) of section 12-412 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective March 1, 2003, and applicable to sales occurring on or after March 1, 2003*):

(47) Sales of any article of clothing or footwear intended to be worn on or about the human body the cost of which to the purchaser is less than [seventy-five] fifty dollars. For purposes of this subdivision clothing or footwear shall not include (A) any special clothing or footwear primarily designed for athletic activity or protective use that is not normally worn except when used for the athletic activity or protective use for which it was designed, and (B) jewelry, handbags, luggage, umbrellas, wallets, watches and similar items carried on or about the human body but not worn on the body in the manner characteristic of clothing intended for exemption under this subdivision.

Sec. 30. Section 12-642 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to calendar years commencing on or after January 1, 2003*):

(a) (1) With respect to calendar years commencing prior to January 1, 2001, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Not over $ 25,000 | 1% |
| Over $ 25,000 but not over $ 50,000 | $ 250, plus 2% of the excess over $ 25,000 |
| Over $ 50,000 but not over $ 75,000 | $ 750, plus 3% of the excess over $ 50,000 |
| Over $ 75,000 but not over $ 100,000 | $ 1,500, plus 4% of the excess over $ 75,000 |
| Over $ 100,000 but not over $ 200,000 | $ 2,500, plus 5% of the excess over $ 100,000 |
| Over $ 200,000 | $ 7,500, plus 6% of the excess over $ 200,000 |

(2) With respect to the calendar years commencing January 1, 2001, January 1, 2002, [and] January 1, 2003, and January 1, 2004, the tax imposed by section 12-640 for each such calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 25,000 but not over $ 50,000 | $ 250, plus 2% of the excess over $ 25,000 |
| Over $ 50,000 but not over $ 75,000 | $ 750, plus 3% of the excess over $ 50,000 |
| Over $ 75,000 but not over $ 100,000 | $ 1,500, plus 4% of the excess over $ 75,000 |

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 100,000 but not over $ 675,000 | $ 2,500, plus 5% of the excess over $ 100,000 |
| Over $ 675,000 | $ 31,250, plus 6% of the excess over $ 675,000 |

(3) With respect to the calendar year commencing January 1, [2004] 2005, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 50,000 but not over $ 75,000 | $ 750, plus 3% of the excess over $ 50,000 |
| Over $ 75,000 but not over $ 100,000 | $ 1,500, plus 4% of the excess over $ 75,000 |
| Over $ 100,000 but not over $ 700,000 | $ 2,500, plus 5% of the excess over $ 100,000 |
| Over $ 700,000 | $ 32,500, plus 6% of the excess over $ 700,000 |

(4) With respect to the calendar year commencing January 1, [2005] 2006, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 75,000 but not over $ 100,000 | $ 1,500, plus 4% of the excess over $ 75,000 |
| Over $ 100,000 but not over $ 700,000 | $ 2,500, plus 5% of the excess over $ 100,000 |
| Over $ 700,000 | $ 32,500, plus 6% of the excess over $ 700,000 |

(5) With respect to the calendar year commencing January 1, [2006] 2007, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 100,000 but not over $ 850,000 | $ 2,500, plus 5% of the excess over $ 100,000 |
| Over $ 850,000 | $ 40,000, plus 6% of the excess over $ 850,000 |

(6) With respect to the calendar year commencing January 1, [2007] 2008, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 950,000 | $ 45,000, plus 6% of the excess over $ 950,000 |

(7) With respect to the calendar year commencing January 1, [2008] 2009, and each calendar year thereafter, the tax imposed by section 12-640 for the calendar year shall be at a rate of the taxable gifts made by the donor during the calendar year set forth in the following schedule:

| Amount of Taxable Gifts | Rate of Tax |
|---|---|
| Over $ 1,000,000 | $ 47,500, plus 6% of the excess over $ 1,000,000 |

(b) The tax imposed by section 12-640 shall be paid by the donor. If the gift tax is not paid when due the donee of any gift shall be personally liable for the tax to the extent of the value of the gift.

Sec. 31. Section 12-296 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to sales occurring on or after March 1, 2003*):

A tax is imposed on all cigarettes held in this state by any person for sale, said tax to be at the rate of [fifty-five] seventy-five and one-half mills for each cigarette and the payment thereof shall be by the purchaser or consumer of such cigarettes and shall be evidenced by the affixing of stamps to the packages containing the cigarettes as provided in this chapter.

Sec. 32. Section 12-316 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to sales occurring on or after March 1, 2003*):

A tax is hereby imposed at the rate of [fifty-five] seventy-five and one-half mills for each cigarette upon the storage or use within this state of any unstamped cigarettes in the possession of any person other than a licensed distributor or dealer, or a carrier for transit from without this state to a licensed distributor or dealer within this state. Any person, including distributors, dealers, carriers, warehousemen and consumers, last having possession of unstamped cigarettes in this state shall be liable for the tax on such cigarettes if such cigarettes are unaccounted for in transit, storage or otherwise, and in such event a presumption shall exist for the purpose of taxation that such cigarettes were used and consumed in Connecticut.

Sec. 33. (NEW) (*Effective from passage*) (a) An excise tax is hereby imposed upon each distributor, as defined in section 12-285 of the general statutes, licensed under the provisions of chapter 214 of the general statutes and each dealer, as defined in said section 12-285,

licensed under the provisions of said chapter 214 in the amount of twenty mills per cigarette, as defined in said section 12-285, in such distributor's or such dealer's inventory as of the close of business on February 28, 2003, or, if the business closes after eleven fifty-nine p. m. on such date, at eleven fifty-nine p. m. on such date.

(b) Each such licensed distributor and dealer shall, not later than April 1, 2003, file with the Commissioner of Revenue Services, on forms prescribed by said commissioner, a report which shall show the number of cigarettes in inventory as of the close of business on February 28, 2003, or, if the business closes after eleven fifty-nine p. m. on such date, at eleven fifty-nine p. m. on such date, upon which inventory the tax under subsection (a) of this section shall be imposed. Failure to file such report when due shall be sufficient reason to revoke the license of the distributor or dealer, as the case may be, and shall be treated as a failure to file a report required to be filed under the provisions of chapter 214 of the general statutes. The filing of an incorrect report shall be treated as the filing of an incorrect report under the provisions of chapter 214 of the general statutes.

Sec. 34. Subsection (b) of section 12-214 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to income years commencing on or after January 1, 2003*):

(b) (1) With respect to income years commencing on or after January 1, 1989, and prior to January 1, 1992, any company subject to the tax imposed in accordance with subsection (a) of this section shall pay, for each such income year, an additional tax in an amount equal to twenty per cent of the tax calculated under said subsection (a) for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The additional amount of tax determined under this subsection for any income year shall constitute a part of the tax imposed by the provisions of said subsection (a) and shall become due and be paid, collected and enforced as provided in this chapter.

(2) With respect to income years commencing on or after January 1, 1992, and prior to January 1, 1993, any company subject to the tax imposed in accordance with subsection (a) of this section shall pay, for each such income year, an additional tax in an amount equal to ten per cent of the tax calculated under said subsection (a) for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The additional amount of tax determined under this subsection for any income year shall constitute a part of the tax imposed by the provisions of said subsection (a) and shall become due and be paid, collected and enforced as provided in this chapter.

(3) With respect to income years commencing on or after January 1, 2003, and prior to January 1, 2004, any company subject to the tax imposed in accordance with subsection (a) of this section shall pay, for each such income year, an additional tax in an amount equal to twenty per cent of the tax calculated under said subsection (a) for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The additional amount of tax determined under this subsection for any income year shall constitute a part of the tax imposed by the provisions of said subsection (a) and shall become due and be paid, collected and enforced as provided in this chapter.

(4) With respect to income years commencing on or after January 1, 2004, and prior to January 1, 2005, any company subject to the tax imposed in accordance with subsection (a) of this section shall pay, for each such income year, an additional tax in an amount equal to ten per cent of the tax calculated under said subsection (a) for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The additional amount of tax determined under this subsection for any income year shall constitute a part of the tax imposed by the provisions of said subsection (a) and shall become due and be paid, collected and enforced as provided in this chapter.

Sec. 35. Subsection (b) of section 12-284b of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to taxable years commencing on or after January 1, 2003*):

(b) Each limited liability company, limited liability partnership, limited partnership and S corporation shall annually, on or before the fifteenth day of the fourth month following the close of its taxable year, pay to the Commissioner of Revenue Services a tax in the amount of two hundred fifty dollars. With respect to taxable years commencing on or after January 1, 2003, and prior to January 1, 2004, any company subject to the tax imposed in accordance with this subsection shall pay, for each such taxable year, an additional tax in an amount equal to twenty per cent of the tax imposed under this subsection for such taxable year. With respect to taxable years commencing on or after January 1, 2004, and prior to January 1, 2005, any company subject to the tax imposed in accordance with this subsection shall pay, for each such taxable year, an additional tax in an amount equal to ten per cent of the tax imposed under this subsection for such taxable year. The additional amount of tax for taxable years commencing on or after January 1, 2003, and prior to January 1, 2005, shall constitute a part of the tax imposed by the provisions of this subsection and shall become due and be paid, collected and enforced as provided by in this section.

Sec. 36. Subsection (b) of section 12-219 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to income years commencing on or after January 1, 2003*):

(b) (1) With respect to income years commencing on or after January 1, 1989, and prior to January 1, 1992, the additional tax imposed on any company and calculated in accordance with subsection (a) of this section shall, for each such income year, except when the tax so calculated is equal to two hundred fifty dollars, be increased by adding thereto an amount equal to twenty per cent of the additional tax so calculated for such income year, without reduction of the additional tax so calculated by the amount of any credit against such tax. The increased amount of tax payable by any company under this section, as determined in accordance with this subsection, shall become due and be paid, collected and enforced as provided in this chapter.

(2) With respect to income years commencing on or after January 1, 1992, and prior to January 1, 1993, the additional tax imposed on any company and calculated in accordance with subsection (a) of this section shall, for each such income year, except when the tax so calculated is equal to two hundred fifty dollars, be increased by adding thereto an amount

equal to ten per cent of the additional tax so calculated for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The increased amount of tax payable by any company under this section, as determined in accordance with this subsection, shall become due and be paid, collected and enforced as provided in this chapter.

(3) With respect to income years commencing on or after January 1, 2003, and prior to January 1, 2004, the additional tax imposed on any company and calculated in accordance with subsection (a) of this section shall, for each such income year, be increased by adding thereto an amount equal to twenty per cent of the additional tax so calculated for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The increased amount of tax payable by any company under this section, as determined in accordance with this subsection, shall become due and be paid, collected and enforced as provided in this chapter.

(4) With respect to income years commencing on or after January 1, 2004, and prior to January 1, 2005, the additional tax imposed on any company and calculated in accordance with subsection (a) of this section shall, for each such income year, be increased by adding thereto an amount equal to ten per cent of the additional tax so calculated for such income year, without reduction of the tax so calculated by the amount of any credit against such tax. The increased amount of tax payable by any company under this section, as determined in accordance with this subsection, shall become due and be paid, collected and enforced as provided in this chapter.

Sec. 37. (NEW) (*Effective from passage*) Notwithstanding the provisions of section 12-242d of the general statutes, any taxpayer required to make an estimated payment in June, 2003, for the tax due under chapter 208 of the general statutes shall make such payment in an amount which is adjusted for any change in the amount of tax due for the current income year including any additional tax imposed under sections 12-214 or 12-219 of the general statutes, as amended by this act.

Sec. 38. (*Effective from passage*) Notwithstanding the provisions of section 13b-61a of the general statutes, for the fiscal year ending June 30, 2003, no funds received by the state from the tax imposed under section 12-587 of the general statutes on the gross earnings from the sales of petroleum products attributable to sales of motor vehicle fuel shall be transferred to the Special Transportation Fund.

Sec. 39. Section 3-114g of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

At the end of each fiscal year, commencing with the fiscal year ending on June 30, 1990, the Comptroller is authorized to record as revenue for such fiscal year, the amount of revenue related to the tax imposed under chapter 208 for such fiscal year which is received by the Commissioner of Revenue Services or is delivered by United States mail to said commissioner in an envelope bearing a United States post office cancellation mark no later than (1) the [last day of July] fifteenth day of August immediately following the end of such fiscal year, or (2) if

such [last day of July] fifteenth day of August is a Saturday, Sunday or legal holiday, as defined in section 12-39a, the next succeeding day which is not a Saturday, Sunday or legal holiday.

Sec. 40. Section 3-114h of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

At the end of each fiscal year commencing with the fiscal year ending on June 30, 1992, the Comptroller is authorized to record as revenue for such fiscal year the amount of tax that is required to be [deducted and withheld from employee wages and to be paid over] paid to the Commissioner of Revenue Services under [section 12-707] chapter 229 and that is received by the Commissioner of Revenue Services or is delivered by United States mail to said commissioner in an envelope bearing a United States post office cancellation mark no later than (1) the last day of July immediately following the end of such fiscal year, or (2) if such last day of July is a Saturday, Sunday or legal holiday, as defined in section 12-39a, the next succeeding day which is not a Saturday, Sunday or legal holiday.

Sec. 41. (NEW) (*Effective from passage*) At the end of each fiscal year commencing with the fiscal year ending on June 30, 2003, the Comptroller is authorized to record as revenue for such fiscal year the amount of tax that is required to be paid to the Commissioner of Revenue Services under section 12-494 of the general statutes, as amended by this act, and that is received by the Commissioner of Revenue Services or is delivered by United States mail to said commissioner in an envelope bearing a United States post office cancellation mark no later than (1) the last day of July immediately following the end of such fiscal year, or (2) if such last day of July is a Saturday, Sunday or legal holiday, as defined in section 12-39a, the next succeeding day which is not a Saturday, Sunday or legal holiday.

Sec. 42. Section 12-494 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective March 1, 2003*):

(a) There is imposed a tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, (1) subject to the provisions of subsection (b) of this section, at the rate of three-fourths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of five-tenths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, the revenue from which shall be remitted by the town clerk of the municipality in which such tax is paid, not later than ten days following receipt thereof, to the Commissioner of Revenue Services for deposit to the credit of the state General Fund, and (2) at the rate of one-fourth of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of eleven one-hundredths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, [which amount] provided the amount imposed under this subdivision shall become part of the general revenue of the municipality in accordance with section 12-499.

(b) The rate of tax imposed under subdivision (1) of subsection (a) of this section shall, in lieu of the rate under said subdivision (1), be imposed on certain conveyances as follows: (1) In the case of any conveyance of real property which at the time of such conveyance is used for any purpose other than residential use, except unimproved land, the tax under said subdivision (1) shall be imposed at the rate of one and one-fourth per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of one per cent of the consideration for the interest in real property conveyed; and (2) in the case of any conveyance in which the real property conveyed is a residential estate, including a primary dwelling and any auxiliary housing or structures, for which the consideration in such conveyance is eight hundred thousand dollars or more, the tax under said subdivision (1) shall be imposed (A) at the rate of three-fourths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of one-half of one per cent on that portion of such consideration up to and including the amount of eight hundred thousand dollars, and (B) at the rate of one and one-fourth per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of one per cent on that portion of such consideration in excess of eight hundred thousand dollars, and (3) in the case of any conveyance in which real property on which mortgage payments have been delinquent for not less than six months is conveyed to a financial institution or its subsidiary which holds such a delinquent mortgage on such property, the tax under said subdivision (1) shall be imposed at the rate of three-fourths of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing, and on and after July 1, 2004, at the rate of one-half of one per cent of the consideration for the interest in real property conveyed.

(c) In addition to the tax imposed under subsection (a) of this section, any targeted investment community, as defined in section 32-222, or any municipality in which properties designated as manufacturing plants under section 32-75c are located, may, on or after March 1, 2003, but prior to July 1, 2004, impose an additional tax on each deed, instrument or writing, whereby any lands, tenements or other realty is granted, assigned, transferred or otherwise conveyed to, or vested in, the purchaser, or any other person by his direction, when the consideration for the interest or property conveyed equals or exceeds two thousand dollars, which additional tax shall be at the rate of one-fourth of one per cent of the consideration for the interest in real property conveyed by such deed, instrument or writing. The revenue from such additional tax shall become part of the general revenue of the municipality in accordance with section 12-499.

Sec. 43. Subsections (d) and (e) of section 12-344 of the general statutes are repealed and the following is substituted in lieu thereof (*Effective from passage and applicable to transfers from estates of decedents who die on or after January 1, 2003*):

(d) The tax under this section applicable to the net taxable estate of any transferor, whose death occurs on or after January 1, 1999, passing to a class B beneficiary shall be imposed as follows: (1) If the death of the transferor occurs on or after January 1, 1999, but prior to January 1, 2000, at the rate of (A) six per cent on the amount in excess of two hundred thousand dollars in value to and including two hundred fifty thousand dollars, (B) seven per cent on the

amount in excess of two hundred fifty thousand dollars in value to and including four hundred thousand dollars, (C) eight per cent on the amount in excess of four hundred thousand dollars in value to and including six hundred thousand dollars, (D) nine per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (E) ten per cent on the amount in excess of one million dollars in value, (2) if the death of the transferor occurs on or after January 1, 2000, but prior to January 1, 2001, at the rate of (A) eight per cent on the amount in excess of four hundred thousand dollars in value to and including six hundred thousand dollars, (B) nine per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (C) ten per cent on the amount in excess of one million dollars in value, (3) if the death of the transferor occurs on or after January 1, 2001, but prior to January 1, [2003] 2005, at the rate of (A) nine per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (B) ten per cent on the amount in excess of one million dollars in value, (4) if the death of the transferor occurs on or after January 1, [2003] 2005, but prior to January 1, [2004] 2006, at the rate of eight per cent on the amount in excess of one million five hundred thousand dollars in value, and (5) if the death of the transferor occurs on or after January 1, [2004] 2006, the net taxable estate passing to a class B beneficiary shall not be subject to tax under this chapter.

(e) The tax under this section applicable to the net taxable estate of any transferor, whose death occurs on or after January 1, 2001, passing to a class C beneficiary shall be imposed as follows: (1) If the death of the transferor occurs on or after January 1, 2001, but prior to January 1, [2003] 2005, at the rate of (A) ten per cent on the amount in excess of two hundred thousand dollars in value to and including two hundred fifty thousand dollars, (B) eleven per cent on the amount in excess of two hundred fifty thousand dollars in value to and including four hundred thousand dollars, (C) twelve per cent on the amount in excess of four hundred thousand dollars in value to and including six hundred thousand dollars, (D) thirteen per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (E) fourteen per cent on the amount in excess of one million dollars in value, (2) if the death of the transferor occurs on or after January 1, [2003] 2005, but prior to January 1, [2004] 2006, at the rate of (A) twelve per cent on the amount in excess of four hundred thousand dollars in value to and including six hundred thousand dollars, (B) thirteen per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (C) fourteen per cent on the amount in excess of one million dollars in value, (3) if the death of the transferor occurs on or after January 1, [2004] 2006, but prior to January 1, [2005] 2007, at the rate of (A) thirteen per cent on the amount in excess of six hundred thousand dollars in value to and including one million dollars, and (B) fourteen per cent on the amount in excess of one million dollars in value, (4) if the death of the transferor occurs on or after January 1, [2005] 2007, but prior to January 1, [2006] 2008, at the rate of fourteen per cent on the amount in excess of one million five hundred thousand dollars in value, and (5) if the death of the transferor occurs on or after January 1, [2006] 2008, the net taxable estate passing to a class C beneficiary shall not be subject to tax under this chapter.

Sec. 44. (*Effective from passage*) Notwithstanding the provisions of section 32-305 of the general statutes, for the fiscal years ending June 30, 2003, June 30, 2004, and June 30, 2005, the

Commissioner of Revenue Services shall return to the General Fund one million dollars from the aggregate amount to be allocated to the tourism districts under said section 32-305 and shall reduce the allocation to each district proportionately provided the amounts allocated pursuant to subparagraphs (A) to (E), inclusive, of subdivision (1) of subsection (b) of said section 32-305 shall continue to be so allocated in accordance with said subdivision (1) regardless of any limitations imposed by this section.

Sec. 45. Subsection (a) of section 51-81b of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Any person who has been admitted as an attorney by the judges of the Superior Court shall annually on or before January fifteenth file an annual return prescribed or furnished by the Commissioner of Revenue Services. If any such person was engaged in the practice of law in the year preceding the year in which an occupational tax is due hereunder, such person, unless exempted under this section, shall annually on or before January fifteenth pay to the Commissioner of Revenue Services a tax in the amount of four hundred fifty dollars. Any person who has been admitted as an attorney pro hac vice in accordance with the rules of court shall file such return and pay such tax as provided in this subsection with respect to any year in which such person was admitted pro hac vice and engaged in the practice of law in this state.

Sec. 46. Section 52-259 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

There shall be paid to the clerks for entering each appeal or writ of error to the Supreme Court, or entering each appeal to the Appellate Court, as the case may be, two hundred fifty dollars, and for each civil cause in the Superior Court, [one hundred eighty-five] two hundred twenty dollars; except (1) [seventy-five] one hundred twenty dollars for entering each case in the Superior Court in which the sole claim for relief is damages and the amount, legal interest or property in demand is less than two thousand five hundred dollars and for summary process, landlord and tenant and paternity actions, and (2) there shall be no entry fee for making an application to the Superior Court for relief under section 46b-15 or for making an application to modify or extend an order issued pursuant to section 46b-15. If the amount, legal interest or property in demand by the plaintiff is alleged to be less than two thousand five hundred dollars, a new entry fee of seventy-five dollars shall be charged if the plaintiff amends his complaint to state that such demand is not less than two thousand five hundred dollars. The fee for the entry of a small claims case shall be thirty-five dollars. If a motion is filed to transfer a small claims case to the regular docket, the moving party shall pay a fee of seventy-five dollars. There shall be paid to the clerk of the Superior Court by any party who requests that a matter be designated a complex litigation case the sum of two hundred fifty dollars, to be paid at the time the request is filed. There shall be paid to the clerk of the Superior Court by any party who requests a finding of fact by a judge of such court to be used on appeal the sum of twenty-five dollars, to be paid at the time the request is filed. There shall be paid to the clerk of the Superior Court a fee of seventy-five dollars for a petition for certification to the Supreme Court and Appellate Court. Such clerks shall also receive for receiving and filing an assessment of damages by appraisers of land taken for public use or the appointment of a

commissioner of the Superior Court, two dollars; for recording the commission and oath of a notary public or certifying under seal to the official character of any magistrate, ten dollars; for certifying under seal, two dollars; for exemplifying, twenty dollars; for making all necessary records and certificates of naturalization, the fees allowed under the provisions of the United States statutes for such services; and for making copies, one dollar a page. There shall be paid to the clerk of the Superior Court for a copy of a judgment file a fee of [fifteen] twenty-five dollars, inclusive of the fees for certification and copying, for a certified copy and a fee of [ten] fifteen dollars, inclusive of the fee for copying, for a copy which is not certified; for a copy of a certificate of judgment in a foreclosure action, as provided by the rules of practice and procedure, [twenty] twenty-five dollars, inclusive of the fees for certification and copying. There shall be paid to the clerk of the court a fee of [fifty] one hundred dollars at the time any application for a prejudgment remedy is filed. A fee of twenty dollars for any check issued to the court in payment of any fee which is returned as uncollectible by the bank on which it is drawn may be imposed. The tax imposed under chapter 219 shall not be imposed upon any fee charged under the provisions of this section.

Sec. 47. Subsection (a) of section 52-259a of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) Any member of the Division of Criminal Justice or the Division of Public Defender Services, any employee of the Judicial Department, acting in the performance of such employee's duties, the Attorney General, an assistant attorney general, the Consumer Counsel, any attorney employed by the Office of Consumer Counsel within the Department of Public Utility Control, the Department of Revenue Services, the Commission on Human Rights and Opportunities, the Freedom of Information Commission, the Board of Labor Relations, the Office of Protection and Advocacy for Persons with Disabilities, [or] the Office of the Victim Advocate or the Department of Social Services, or any attorney appointed by the court to assist any of them or to act for any of them in a special case or cases, while acting in such attorney's official capacity or in the capacity for which such attorney was appointed, shall not be required to pay the fees specified in sections 52-258, 52-259, as amended by this act, 52-259c, as amended by this act, and 52-259d, subsection (a) of section 52-356a, as amended by this act, subsection (a) of section 52-361a, as amended by this act, section 52-367a, as amended by this act, subsection (b) of section 52-367b, as amended by this act, and subsection (n) of section 46b-231.

Sec. 48. Subsection (a) of section 52-259c of the general statutes is repealed and substituted in lieu thereof (*Effective from passage*):

(a) There shall be paid to the clerk of the Superior Court upon the filing of any motion to open, set aside, modify or extend any civil judgment rendered in Superior Court a fee of thirty-five dollars in any housing matter, a fee of twenty-five dollars for any small claims matter and a fee of seventy dollars for any other matter, except no fee shall be paid upon the filing of any motion to open, set aside, modify or extend judgments in [small claims and] juvenile matters or orders issued pursuant to section 46b-15. Such fee may be waived by the court.

Sec. 49. Subdivision (1) of subsection (a) of section 52-356a of the general statutes is repealed

and the following is substituted in lieu thereof (*Effective from passage*):

(1) On application of a judgment creditor or his attorney, stating that a judgment remains unsatisfied and the amount due thereon, and subject to the expiration of any stay of enforcement and expiration of any right of appeal, the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the nonexempt personal property of the judgment debtor other than debts due from a banking institution or earnings. The application shall be accompanied by a fee of [twenty] thirty-five dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action. In the case of a consumer judgment, the application shall indicate whether, pursuant to an installment payment order under subsection (b) of section 52-356d, the court has entered a stay of execution and, if such stay was entered, shall contain a statement of the judgment creditor or his attorney as to the debtor's default on payments. The execution shall be directed to any levying officer.

Sec. 50. Subsection (a) of section 52-361a of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(a) If a judgment debtor fails to comply with an installment payment order, the judgment creditor may apply to the court for a wage execution. The application shall contain the judgment creditor's or his attorney's statement setting forth the particulars of the installment payment order and of the judgment debtor's failure to comply. The application shall be accompanied by a fee of [twenty] thirty-five dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action.

Sec. 51. Section 52-367a of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

As used in this section and section 52-367b, as amended by this act, the term "banking institution" means any bank, savings bank, savings and loan association or credit union organized, chartered or licensed under the laws of this state or the United States and having its main office in this state, or any similar out-of-state institution having a branch office in this state. Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor which is not a natural person. If execution is desired against any such debt, the plaintiff requesting the execution shall [notify] make application to the clerk [, and the] of the court. The application shall be accompanied by a fee of thirty-five dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action. The clerk shall issue such execution containing a direction that the officer serving the same shall make demand (1) upon the main office of any banking institution having its main office within the county of such officer, or (2) if such main office is not within such officer's county and such banking institution has one or more branch offices within such county, upon an employee of such a branch office, such employee and branch office having been designated by the banking institution in accordance with regulations adopted by the

Commissioner of Banking, in accordance with chapter 54, for the payment of any debt due to the judgment debtor, and, after having made such demand, shall serve a true and attested copy thereof, with his actions thereon endorsed, with the banking institution officer upon whom such demand is made. If any such banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall pay to such officer, in the manner and at the time hereinafter described, the amount of such indebtedness not exceeding the amount due on such execution, to be received and applied on such execution by such officer. Such banking institution shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104. If such banking institution fails or refuses to pay over to such officer the amount of such debt, not exceeding the amount due on such execution, such banking institution shall be liable in an action therefor to the judgment creditor named in such execution, and the amount so recovered by such judgment creditor shall be applied toward the payment of the amount due on such execution.

Sec. 52. Subsection (b) of section 52-367b of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(b) If execution is desired against any such debt, the plaintiff requesting the execution shall [notify] make application to the clerk of the court. The application shall be accompanied by a fee of thirty-five dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action. In a IV-D case, the request for execution shall be accompanied by an affidavit signed by the serving officer attesting to an overdue support amount of five hundred dollars or more which accrued after the entry of an initial family support judgment. If the papers are in order, the clerk shall issue such execution containing a direction that the officer serving such execution shall, within seven days from the receipt by the serving officer of such execution, make demand (1) upon the main office of any banking institution having its main office within the county of the serving officer, or (2) if such main office is not within the serving officer's county and such banking institution has one or more branch offices within such county, upon an employee of such a branch office, such employee and branch office having been designated by the banking institution in accordance with regulations adopted by the Commissioner of Banking, in accordance with chapter 54, for payment of any such nonexempt debt due to the judgment debtor, and, after having made such demand, shall serve a true and attested copy of the execution, together with the affidavit and exemption claim form prescribed by subsection (k) of this section, with the serving officer's actions endorsed thereon, with the banking institution officer upon whom such demand is made. If the officer serving such execution has made an initial demand pursuant to this subsection within such seven-day period, the serving officer may make additional demands upon the main office of other banking institutions or employees of other branch offices pursuant to subdivision (1) or (2) of this subsection, provided any such additional demand is made not later than forty-five days from the receipt by the serving officer of such execution.

Sec. 53. Section 53a-39c of the general statutes is repealed and the following is substituted in lieu thereof (*Effective July 1, 2003*):

Case 3:03-cv-00221-AVC     Document 109-6     Filed 04/10/2006     Page 15 of 15

(a) There is established, within available appropriations, a community service labor program for persons charged with a violation of section 21a-267 or 21a-279 who have not previously been convicted of a violation of section 21a-267, 21a-277, 21a-278 or 21a-279. Upon application by any such person for participation in such program the court may grant such application and (1) if such person has not previously been placed in the community service labor program, the court may either suspend prosecution and place such person in such program or, upon a plea of guilty without trial where a term of imprisonment is part of a stated plea agreement, suspend any sentence of imprisonment and make participation in such program a condition of probation or conditional discharge in accordance with section 53a-30; or (2) if such person has previously been placed in such program, the court may, upon a plea of guilty without trial where a term of imprisonment is part of a stated plea agreement, suspend any sentence of imprisonment and make participation in such program a condition of probation or conditional discharge in accordance with said section 53a-30. No person may be placed in such program who has twice previously been placed in such program.

(b) Any person who enters such program shall pay to the court a participation fee of two hundred five dollars, except that no person may be excluded from such program for inability to pay such fee, provided (1) such person files with the court an affidavit of indigency or inability to pay, (2) such indigency is confirmed by the Court Support Services Division, and (3) the court enters a finding thereof. All program fees collected shall be deposited into the alternative incarceration program account.

[(b)] (c) Any person for whom prosecution is suspended and who is placed in the community service labor program pursuant to subsection (a) of this section shall agree to the tolling of the statute of limitations with respect to such crime and to a waiver of such person's right to a speedy trial. A pretrial community service labor program established under this section for persons for whom prosecution is suspended shall include a drug education component. If such person satisfactorily completes the program of community service labor to which such person was assigned, such person may apply for dismissal of the charges against such person and the court, on reviewing the record of such person's participation in such program and on finding such satisfactory completion, shall dismiss the charges. If the program provider certifies to the court that such person did not successfully complete the program of community service labor to which such person was assigned or is no longer amenable to participation in such program, the court shall enter a plea of not guilty for such person and immediately place the case on the trial list.

[(c)] (d) The period of participation in a community service labor program shall be a minimum of fourteen days for a first violation and thirty days for a second violation involving a plea of guilty and conviction.

Sec. 54. (NEW) (*Effective from passage*) On and after the effective date of this section, the amount of any fee or tax received by the state which is attributable to the establishment of a new fee or tax or the increase of an existing fee or tax pursuant to the provisions of sections 51-81b, 52-259, 52-259c, 52-356a, 52-361a, 52-367a and 52-367b of the general statutes, as amended by this act, not to exceed an aggregate of one million five hundred thousand dollars in the fiscal year ending June 30, 2003, and not to exceed four million nine hundred thousand dollars in each fiscal year thereafter, shall be credited to the Other Expense account of the Judicial Department. The Judicial Department shall certify to the Treasurer, with respect to each such fee or tax received on and after the effective date of this act, the amount of such fee or tax which shall be credited to the General Fund and the amount of such fee or tax which shall be credited to said account.

Sec. 55. Subsection (c) of section 17b-274 of the general statutes is repealed and the following is substituted in lieu thereof (*Effective from passage*):

(c) The Commissioner of Social Services shall implement a procedure by which a pharmacist shall obtain approval from an independent pharmacy consultant acting on behalf of the Department of Social Services, under an administrative services only contract, whenever the pharmacist dispenses a brand name drug product to a Medicaid, state-administered general assistance, general assistance or ConnPACE recipient and a chemically equivalent generic drug product substitution is available at a lower cost, provided such procedure shall not require approval for other than initial prescriptions for such drug product. If such approval is not granted or denied within two hours of receipt by the commissioner of the request for approval, it shall be deemed granted. Notwithstanding any provision of this section, a pharmacist shall not dispense any initial maintenance drug prescription for which there is a chemically equivalent generic substitution that is for less than fifteen days without the department's granting of prior authorization, provided prior authorization shall not otherwise be required for atypical antipsychotic drugs if the individual is currently taking such drug at the time the pharmacist receives the prescription. The pharmacist may appeal a denial of reimbursement to the department based on the failure of such pharmacist to substitute a generic drug product in accordance with this section.

Sec. 56. (*Effective from passage*) Notwithstanding the provisions of subdivisions (72) and (74) of section 12-81 of the general statutes, with respect to property approved for exemption under said provisions for assessment years commencing October 1, 2002, and October 1, 2003, the exemption shall be for an amount equal to seventy-five per cent of such property's valuation for purposes of assessment. The balance of twenty-five per cent of such property's valuation shall be subject to taxation as provided in chapter 203 of the general statutes. Any assessor or board of assessors who approved any claim for such exemption for the assessment year commencing October 1, 2002, shall revise their records accordingly and shall give notice to the owner of any such property of the tax due under this section.

Sec. 57. (*Effective from passage*) Sections 12-399 and 17b-106a of the general statutes are repealed.

Sec. 58. (*Effective March 1, 2003*) Subdivisions (6) and (90) of section 12-412 of the general statutes are repealed.

Vetoed February 19, 2003