**EXHIBIT E**


**EXCERPTS OF DEFENDANTS' JANUARY 5, 2006
CONSOLIDATED REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS
[DKT ENTRY 85]**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING<br>AGENT COALITION, ET AL.<br>　　　　Plaintiffs, | : <br> : <br> : <br> : | CIVIL ACTION NO. <br><br> 3:03CV221 (AVC) |
| V. | : <br> : | |
| JOHN G. ROWLAND, ET AL.,<br>　　　　Defendants. | : <br> : | JANUARY 5, 2006 |

### DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS[1]

Plaintiffs have not cited, and defendants have not found, any case in which a court has held that an employer not bound by a no-layoff clause – and indeed expressly empowered by the applicable collective bargaining agreements to conduct layoffs – is forbidden from requesting concessions from a union and backing up that request with the threat and fact of layoffs of those employees whose union refuses to make the concessions. Plaintiffs have not cited, and defendants have not found, any case in which a federal court has agreed to second-guess a Governor's conclusions that a state's fiscal health requires either union concessions or layoffs of union employees.[2] Rather, at least two cases (one is this District) have concluded exactly the opposite – that a Governor's fiscal policy decisions resulting in layoffs of state employees must not be second-guessed – and have embraced Defendants' position.

---

[1] As requested by the Court, this Reply Brief contains the arguments from Defendants' May 9, 2003 Reply Brief and their August 29, 2003 Reply Brief. The only additions contained herein are points addressing cases decided after August 29, 2003, which Plaintiffs discussed in their Consolidated Opposition.

[2] This reply brief addresses some but not all aspects of Plaintiffs' Consolidated Opposition Brief ("Pl. Br."), filed on December 29, 2005. Defendants do not waive any arguments presented in the primary brief but not raised again herein.

hope that this Court will review their claims only superficially, this Court must put aside Plaintiffs' denomination of their claims and conduct a careful analysis of whether the Eleventh Amendment bars this lawsuit.

This analysis must follow two separate, though closely related, paths within the caselaw:

A.   **The State Is The Real Party In Interest**

Despite Plaintiffs' platitudes about "individual capacity" and "official capacity" nomenclature, their claims are against the State itself. (Pl. Br. at 32.) Where the relief sought is that which is uniquely available from the state, not the individual state officials sued, the Eleventh Amendment applies to preclude the suit. See Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified, reh'g denied, 793 F.2d 457 (2d Cir. 1986); see also Lizzi v. Alexander, 255 F.3d 128, 136-37 (4th Cir. 2001) (dismissing lawsuit alleging Family and Medical Leave Act violations against, inter alia, state officials in their individual capacities, because the real party in interest is the state itself); Luder v. Endicott, 253 F.3d 1020, 1024 (7th Cir. 2001) (dismissing lawsuit alleging Fair Labor Standards Act violations against state officials in their individual capacities, because "Plaintiffs are seeking to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state"); accord United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa Health & Human Services, 269 F.3d 932, 937 (8th Cir. 2001) (affirming district court's refusal to permit Plaintiff to add individual capacity claim against state official, because the allegations in proposed new claim revealed that the same acts underlay both the official capacity claim (which had been dismissed under the Eleventh Amendment) and the proposed individual capacity claim); Hughes v. Savell, 902 F.2d 376, 377-79 (5th Cir. 1990)

(dismissing individual capacity claims against state official because state was real party in interest), cert. denied, 536 U.S. 925 (2002).[10]

The Second Circuit has recognized that when a state has not been sued in its own name, but a state official is sued instead, "the 'question arises as to whether that suit is a suit against the state itself.'" Dwyer, 777 F.2d at 835 (citations omitted). Determining whether the State is the real party in interest on Plaintiffs' claims requires an analysis of the challenged actions as well as the nature of the relief sought, which will in turn reveal whether the lawsuit "*demonstrably* has the *identical* effect as a suit against the state." Luder, 253 F.3d at 1023. Here, Plaintiffs' claims seek to reverse governmental action (the layoffs authorized by the collective bargaining agreements) and to force the State to choose other cost-cutting methods, while making Plaintiffs whole for alleged "financial losses" (see Amended Complaint ¶ 62) and other alleged damages. These allegations overwhelmingly show that this is an action against the State; the Governor and Secretary did not act as individual citizens while employing and laying off State workers, nor would the reversal of the layoff decisions and payment of lost wages relate to the Governor and Secretary as citizens.[11] It is perfectly clear, notwithstanding Plaintiffs' convoluted explanation of

---

[10] Cases holding that the Eleventh Amendment is not a bar to individual capacity claims against state officials merely because the state would indemnify the official against any monetary judgment are of no consequence here. See, e.g., Ashker v. California Dep't of Corrections, 112 F.3d 392 (9th Cir. 1997). Here, the defendants' Eleventh Amendment argument is not based primarily, or even partially, on the likelihood of indemnification of them by the State. Rather, the defendants' Eleventh Amendment argument is founded on the nature of the challenged actions and the nature of the relief sought, as set forth herein and in the defendants' primary brief in support of dismissal.

[11] The Connecticut Legislature's recently passed budget, signed by the Governor on August 16, 2003, does not provide for re-creation of the positions eliminated in the layoffs that this lawsuit challenges. At this point, therefore, the plaintiffs' continued unemployment is the result of the Legislature's action in failing to provide for re-creation of those positions, not the result of any action by the defendants. Accordingly, no prospective injunctive relief (even if it were otherwise warranted) is possible, as it would have to be directed toward the Legislature.

why "back pay and benefits" are not "actual economic loss" (Pl. Br. at 34-35), that Plaintiffs seek to force the State to change its chosen means of dealing with the budget crisis and that the State is the real party in interest. See Dwyer, 777 F.2d at 835-36.[12]

**B.   Special Sovereignty Interests Are Implicated By Plaintiffs' Claims**

In Coeur d'Alene, the Supreme Court enunciated an exception to Ex parte Young for lawsuits that implicate "special sovereignty interests" of the state. 521 U.S. at 281. To determine whether special sovereignty interests were at stake, the Supreme Court looked to the importance of the matter to state sovereignty and the potential for diminishing the state's sovereignty in the course of resolving the dispute. 521 U.S. at 283-87. The Courts of Appeals have also recognized this Coeur d'Alene exception to Ex parte Young, though they have construed the exception narrowly. See, e.g., Cardenas v. Anzai, 311 F.3d 929, 938 (9th Cir. 2002); Barton v. Summers, 293 F.3d 944, 951 (6th Cir. 2002); In re Ellett, 2001 U.S. App.

---

[12] The plaintiffs' argument that, in the individual capacity claims, they may seek their lost wages, or back pay, and benefits as necessary part of their alleged compensatory damages is ill-founded and misleading. (Pl. Br. at 30.) The Second Circuit's decision in Dwyer, which itself relies on Edelman v. Jordan, 415 U.S. 651 (1974), makes crystal clear that the Eleventh Amendment bars claims for money that the state as employer was responsible for paying but did not: "[w]hile [the defendant] had no duty in his individual capacity to pay [the plaintiff's] salary, he did have a duty not to deny [the plaintiff] his federally protected right[s] ... [and] there would be no Eleventh Amendment impediment to his recovering damages for that denial." Dwyer, 777 F.2d at 836-37.

Moreover, the First Circuit decision in Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1043 n. 7 (1st Cir. 1988), is quoted incompletely, and misleadingly, by plaintiffs. As the First Circuit explicitly held, "The [backpay] order should not have run against Aquino [the defendant]." The missing phrase that follows the plaintiffs' quotation ("To say that an 'individual capacity' defendant is liable for 'back pay' is a misnomer; he may be liable for compensatory damages in the same amount (plaintiff's lost wages)") is significant: "but such liability must first hurdle any applicable immunity defense." Id. This passage from Figueroa-Rodriguez, therefore, poses, rather than answers, the very question presented by defendants' motion: are defendants immune from the plaintiffs' claims?

-11-

For THE DEFENDANTS,

By: _____
    Albert Zakarian (ct04201)
    Allan B. Taylor (ct05332)
    Victoria Woodin Chavey (ct14232)
    Douglas W. Bartinik (ct26196)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    (860) 275-0343 (fax)
    *dwbartinik@dbh.com*

Their Attorneys

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing was mailed this date, postage prepaid, to:

David S. Golub
Jonathan M. Levine
Silver, Golub & Teitell, LLP
184 Atlantic Street
P.O. Box 389
Stamford, CT 06904-0389

Ann H. Rubin
Carmody and Torrance
50 Leavenworth Street
Waterbury, CT 06721-1110

_____
Douglas W. Bartinik