UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL. | : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | 3:03CV221 (AVC) |
| V. | : : | |
| JOHN G. ROWLAND, ET AL., | : | |
| Defendants. | : | September 14, 2007 |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' LATEST MOTION FOR RECONSIDERATION**

Plaintiffs now have asked this Court—581 days later—to reconsider its January 18, 2006 ruling on Defendants' Motion to Dismiss. This untimely request should be denied because Plaintiffs have had—and have already taken—several opportunities to seek reconsideration in this case. Moreover, Plaintiffs failed to raise these issues while discovery had been stayed and the case was pending in the Second Circuit, and are now simply rehashing the same arguments they already made to this Court.

**A.    Factual Background**

In its January 18, 2006 Ruling on Defendants' Motion to Dismiss ("January 18 Ruling"), this Court rejected Defendants' legislative immunity defense as premature, concluding that further discovery was needed before it could rule on the issue. (Exhibit A, Jan. 18 Ruling at 9.) The Court further concluded, however, that the Eleventh Amendment barred Plaintiffs' claims for money damages, including claims for back-pay or retroactive benefits, but did not bar Plaintiffs' claims to the extent Plaintiffs sought prospective injunctive relief. (Exhibit A, Jan. 18 Ruling at 13.) The Court's ruling on Eleventh Amendment immunity prompted it to conclude that Defendants' qualified immunity defense was moot. (Exhibit A, Jan. 18 Ruling at 14-15.)

On February 2, 2006, the Defendants appealed from the January 18 Ruling pursuant to the collateral order doctrine. (Dckt. No. 96.) One day later, on February 3, 2006, Defendants moved for a stay of discovery pending appeal. (Dckt. No. 97.) Opposing the motion for stay, Plaintiffs argued that a stay should not be granted because "due to [the Court's ruling on] Eleventh Amendment immunity, plaintiffs are only entitled to prospective injunctive relief in the form of reinstatement," and that "plaintiffs now have a more compelling interest in the speedy resolution of their claims as they will not be able to receive compensatory damages for the time period between the wrongful termination and their reinstatement."[1] (Exhibit B, Pls' Feb. 23, 2006 Opp. to Mot. for Stay at 13.) Before Defendants submitted their reply brief on the motion for stay, this Court denied the motion for stay, noting: "Further delay is simply too costly because, if the plaintiffs are to prevail, they cannot recover money damages for their lost time, only reinstatement to lost jobs." (Exhibit C, March 8, 2006 Order.) On March 9, 2006, Defendants submitted their Reply brief. On March 10, 2006, this Court, treating Defendants' Reply brief as a motion for reconsideration, reversed its prior ruling and granted Defendants' motion to stay discovery. (Dckt. No. 102.)

On March 15, 2006, Plaintiffs moved for reconsideration of this Court's March 10 Order staying discovery. Plaintiffs again recognized that money damages were no longer recoverable in this case, actually *quoting* the same text cited above from this Court's March 8 Order, and citing to a January 31, 2006 Order. (Exhibit D, Pl's March 15, 2006 Mot. for Reconsideration at 10.) In their reply brief in support of their motion for reconsideration, Plaintiffs acknowledged

---

[1] Plaintiffs also argued that a stay was not warranted because, even if Defendants were to prevail on appeal, legislative immunity would not bar Plaintiffs' claims seeking injunctive relief against Defendants' in their official capacities. (See Exhibit B, Pls' Feb. 23, 2006 Opp. to Mot. for Stay at 14-16; Exhibit F, Pl's April 21, 2006 Mot. to Vacate Stay at 1.) The Second Circuit rejected

that they cannot recover money damages in this case by quoting, again, from this Court's March 8 Order. (Exhibit E, Pl's Mar. 31, 2006 Reply in Supp. of Mot. for Recons. at 14.) On April 4, 2006, this Court granted Plaintiffs' motion for reconsideration but denied the relief requested. (Dckt. No. 106.)

Still unsatisfied with this Court's rulings but having already moved for reconsideration, on April 21, 2006, Plaintiffs filed a motion to vacate the stay. In that motion once again Plainitffs acknowledged that they cannot recover money damages in this case by quoting from this Court's March 8 Order. (Exhibit F, Pl's April 21, 2006 Mot. to Vacate Stay at 2 n.1.)

On August 2, 2006, Plaintiffs filed their opposition brief in the Second Circuit. While discussing Eleventh Amendment immunity, Plaintiffs asserted that this Court's January 18 Ruling was "unclear" as to whether Plaintiffs could recover monetary damages. (Exhibit G, Pls' 2d. Cir. Br. at 50-51.) In its July 10, 2007 Decision, the Second Circuit "reject[ed] plaintiffs' assertion that the District Court's ruling was unclear" on the issue of monetary damages.[2] (Exhibit H, 2d Cir. Decision at 11-12 n.5.)

**B.    Argument**

    1.    *Plaintiffs' Request Should be Denied Because it is Untimely, Should and Could Have Been Raised Earlier, and Seeks Solely to Relitigate An Issue Already Decided*

"[M]otions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought." D. Conn. L. Civ. R. 7(c)(1); see Palmer v. Sena, 474 F. Supp. 2d 353, 355 (D. Conn. 2007); see Chambers v. Principi, 2004 U.S.

---

that argument, holding that legislative immunity applies to both individual and official capacity claims. (Exhibit H, 2d Cir. Decision at 24.)

    [2] The Second Circuit also noted that, "because Plaintiffs' claims were precluded on Eleventh Amendment grounds, it was not necessary to address defendants' qualified immunity arguments." (Exhibit H, 2d Cir. Decision at 12 n.6.)

Dist. LEXIS 5562, 3-4 (D. Conn. 2004).[3]  A failure to file a timely motion for reconsideration is sufficient grounds to deny the motion.  Palmer, 474 F. Supp. 2d at 355.  The standard for granting a motion for reconsideration is strict, and a motion "should not be granted where the moving party seeks solely to relitigate an issue already decided."  Id.; see Williams v. Quebecor World Infiniti Graphics, Inc., 2007 U.S. Dist. LEXIS 21194 (D. Conn. 2007).

As discussed above, this Court decided Defendants' Motion to Dismiss on January 18, 2006—approximately one year and eight months before Plaintiffs' instant motion, or exactly 581 days ago.  Thus, calling Plaintiffs' motion—which should have been filed no later than February 1, *2006*—untimely is an understatement.  Plaintiffs have offered no excuse for this twenty-month delay.[4]

Plaintiffs had ample opportunity to raise this issue sooner, either during the extensive briefing in early 2006 regarding the status of discovery, or through a timely motion for reconsideration or interlocutory appeal.  Indeed, not only did Plaintiffs fail to raise this issue with the Court in early 2006, but—in arguing why a stay of discovery was inappropriate—they affirmatively represented on several occasions that they cannot recover compensatory damages

---

[3] Copies of unreported cases are attached hereto as Exhibit L.

[4] The type of relief available to Plaintiffs after this Court's January 18 Ruling could not have been clearer.  First, the Court explicitly stated that money damages, including back-pay and retroactive benefits, were barred by the Eleventh Amendment.  (January 18 Ruling at 13.)  Second, the Court explicitly denied Defendants' qualified immunity defense as moot because such a defense is available only for claims seeking money damages.  (January 18 Ruling at 14-15.)  Third, this Courts' March 8, 2006 Order explicitly stated that "if the plaintiffs are to prevail, they cannot recover money damages for their lost time, only reinstatement to lost jobs."  Thus, as the Second Circuit recognized, Plaintiffs cannot realistically argue that they failed to move for reconsideration sooner because they misunderstood the Court's ruling.  (See 2d Cir. Decision at 11-12 n.5.)

Case 3:03-cv-00221-AVC   Document 129   Filed 09/14/2007   Page 5 of 12

but may seek only reinstatement.[5]  (See Exhibit B, Pls' Feb. 23, 2006 Opp. to Mot. for Stay at 13; Exhibit D, Pl's March 15, 2006 Mot. for Reconsideration at 10; Exhibit E, Pl's Mar. 31, 2006 Reply in Supp. of Mot. for Recons. at 14; Exhibit F, Pl's April 21, 2006 Mot. to Vacate Stay at 2 n.1.)

Plaintiffs also could have raised this issue in the Second Circuit concurrently with Defendants' appeal.  Although the January 18 Ruling was not a "final judgment" for purposes of appeal (Plaintiffs' Memorandum in Support of August 22, 2007 Motion for Reconsideration ("Pl's Memo") at 13, n.11), Plaintiffs easily could have sought certification to file an interlocutory appeal pursuant to 28 U.S.C. § 1292.  See Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003) (interlocutory appeal from this Court's granting of a partial motion of dismiss); Sprint PCS L.P. v. Connecticut Siting Council, 222 F.3d 113 (2d Cir. 2000) (interlocutory appeal from this Court's denial of summary judgment).  Because the case was already on appeal—with a stay of discovery in place—it would have been judicially efficient to certify an interlocutory appeal to address, once and for all, the breadth of Eleventh Amendment immunity in this case (particularly since Eleventh Amendment immunity was already an issue in Defendants' appeal).

Finally, as will be discussed below, Plaintiffs are merely renewing the same arguments they made in opposition to Defendants' Motion to Dismiss.  Indeed, Plaintiffs already argued their illusory distinction between "back pay" and "financial losses in the form of lost wages" (compare Exhibit I, Pl's Dec. 29, 2005 Cons. Opp. to Mot. to Dismiss at 35 with Pl's Memo at 7-8), and it was Defendants (not Plaintiffs) who noted that indemnification by the State was not

---

[5] The incongruity between Plaintiffs' argument then and Plaintiffs' argument now is bewildering: if either Plaintiffs' March 15, 2006 Motion for Reconsideration or April 21, 2006 Motion to Vacate (both pertaining to the stay of discovery) had been granted, what were Plaintiffs planning to do next?—immediately file another motion for reconsideration saying they *can* recover back-pay?

-5-

relevant to Eleventh Amendment immunity.  (Exhibit J,  Def's Jan. 5, 2006 Cons. Reply Br. at 10 n.10.)  Accordingly, because Plaintiffs are merely requesting review of the same issues that they could have raised a great deal earlier, their request for reconsideration should be denied.

### 2. *Granting Late Reconsideration Would Prejudice Defendants Because They Were Precluded from Appealing on Qualified Immunity Grounds*

As discussed above, in its January 18, Ruling, this Court concluded that the Eleventh Amendment barred Plaintiffs' claims for money damages, including claims for back-pay or retroactive benefits, but did not bar Plaintiffs' claims to the extent they sought prospective injunctive relief.  (Exhibit A, Jan. 18 Ruling at 13; Exhibit H, Second Circuit Decision at 11 n.5.)  Accordingly, with injunctive relief being Plaintiffs' only available remedy, the Court also denied Defendants' qualified immunity defense as moot.  (Exhibit A, Jan. 18 Ruling at 14-15.)

Pursuant to the collateral order doctrine, Defendants immediately appealed from the January 18 Ruling, on Eleventh Amendment immunity and legislative immunity grounds.  (See Exhibit H, Second Circuit Decision at 13.)  Because Plaintiffs' claims for damages had been eliminated, Defendants' appeal necessarily was aimed at dismissing Plaintiffs' remaining claims for injunctive relief, including reinstatement.  Defendants did not, therefore, have any occasion to argue on appeal that qualified immunity would also bar Plaintiffs' claims for damages.

Qualified immunity, like Eleventh Amendment immunity and legislative immunity, entitles a state actor to be free from the burdens of litigation, including discovery, until the immunity issue is resolved.  See Locurto v. Safir, 264 F.3d 154, 164 (2d Cir. 2001) (qualified immunity provides "the right not only to avoid trial, but also to avoid pre-trial burdens like discovery that can be disruptive of government effectiveness").  Whether qualified immunity

applies in a given case involves a three-step, sequential inquiry.[6] Scott v. Harris, 127 S. Ct. 1769, 1774 (2007); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999). The initial inquiry is whether the plaintiff has alleged the violation of a constitutional right. Scott, 127 S. Ct. at 1774; Saucier v. Katz, 533 U.S. 194, 201 (2001); X-Men Sec., Inc., 196 F.3d at 65-67. "If, and only if, the court finds a violation of a constitutional right," the next inquiry is whether that constitutional right was "clearly established" at the time of the challenged action. Scott v. Harris, 127 S. Ct. at 1774 (citing Saucier); Curley v. Klem, 2007 U.S. App. LEXIS 20213, *19-20 (2007); see X-Men Sec., Inc., 196 F.3d at 66. The final inquiry is whether "the defendant's action was objectively reasonable in light of the legal rules that were clearly established at the time it was taken." (Internal quotation marks omitted.) X-Men Sec., Inc., 196 F.3d at 66; see Saucier, 533 U.S. at 201; Curley, 2007 U.S. App. LEXIS 20213 at *19-20. Because each step of the qualified immunity analysis is a pure question of law, government officials may immediately "appeal from an order denying qualified immunity where the facts as alleged by plaintiff are assumed to be true, and the only question for appellate review is the *legal determination* whether the defendant official's conduct violated a clearly established constitutional right."[7] (Emphasis added.) X-Men Sec., Inc., 196 F.3d at 66; see Locurto, 264 F.3d at 164.

Defendants argued in this Court that they were entitled to qualified immunity because their conduct in instituting budgetary layoffs was objectively reasonable and/or did not violate

---

[6] "These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third." X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999); see Scott v. Harris, 127 S. Ct. 1769, 1774 (2007).

[7] "A district court's perceived need for discovery does not impede immediate appellate review of the legal questions of whether there is a constitutional right at all and, if so, whether it was clearly established at the time of the alleged conduct, for until 'these threshold immunity question[s are] resolved, discovery should not be allowed.'" X-Men Sec., Inc., 196 F.3d at 67.

clearly established constitutional rights.  (See Exhibit K, Defs' December 20, 2005 Cons. Mot. to Dismiss at 19; Exhibit J, Def's Jan. 5, 2006 Cons. Reply Brief at 13.)  This Court did not fully answer that contention because, due to its ruling that the Eleventh Amendment barred Plaintiffs' claims for money damages, it denied the qualified immunity defense as moot.[8]  (Exhibit A, January 18 Ruling at 14-15; see footnote 2, supra.)  Had damages still been an issue in this case, however, Defendants were entitled immediately to appeal the "purely legal" questions of (i) whether Plaintiffs had alleged a constitutional violation; (ii) if so, whether the constitutional right at issue was "clearly established"  at the time the layoffs took effect; and (iii) if so, whether Defendants' actions were "objectively reasonable" in light of the clearly established constitutional right.  See X-Men Sec., 196 F.3d at 65-67.

As Defendants pointed out in their motion to dismiss briefing, there are no cases or rules of law holding that the First Amendment prohibits an employer from laying off union workers because the workers' representative unions would not agree to collective bargaining concessions.[9]  Thus, taking Plaintiff's allegations as true, this Court or a reviewing court could

---

[8] In considering Defendants' contention that Governor Rowland and Secretary Ryan's decision to enact budgetary layoffs was "objectively reasonable," this Court noted "that an issue of fact existed as to whether the [decision] was objectively reasonable."  (January 18 Ruling at 14.)  As discussed above, however, this was a purely legal question that could have been resolved, either in this Court or on immediate appeal.  See X-Men Sec., 196 F.3d at 66; footnote 7, supra.

[9] Defendants noted in their January 5, 2006 Consolidated Reply Brief at 13 (see Exhibit J):

> Plaintiffs' argument is conspicuous in its failure to cite even one case in which a Governor was found to have acted unconstitutionally when addressing a budget crisis by conducting layoffs that were expressly authorized by the applicable bargaining agreements.  Their failure to cite, and presumably to find, such a case reveals the fundamental weakness in their argument that it was not objectively reasonable for the defendants to act as they allegedly did.  The key question is "whether the state of the law [at the time of the alleged violations] gave [defendants] fair warning that their alleged [conduct] was unconstitutional."

conclude that Plaintiffs' constitutional rights were not sufficiently "clearly established" to defeat Defendants' qualified immunity. C.f., Whalen v. Mass. Trial Court, 397 F.3d 19, 27-28 (1st Cir. 2005) ("an objectively reasonable Massachusetts official could have drawn the conclusion - albeit incorrectly - that a budget-driven layoff effectuated by reference to performance is nonetheless a budget-driven layoff, and thus exempt from the procedural requirements applicable to terminations for cause"). Defendants would be severely prejudiced if this Court reconsiders its prior rulings on damages because they were precluded from seeking appellate review of their qualified immunity defense while discovery was stayed and the case was pending in the Second Circuit.[10] See X-Men Sec., Inc., 196 F.3d at 66 ("when the district court has denied a qualified-immunity motion, its rulings that the plaintiff has sufficiently alleged the violation of a constitutional right and that that right was clearly established at the time of the alleged conduct are immediately reviewable").

### 3.    *This Court's Previous Ruling Was Correct Because the Eleventh Amendment Bars Plaintiffs' Claims for Back-pay*

Even if this Court grants Plaintiff's motion for reconsideration, it should deny the relief requested because it correctly ruled, the first time, that the Eleventh Amendment bars monetary remedies that are uniquely available from the state as an employer. Plaintiffs' brief identifies two main arguments in support of reconsideration (see Pl's Memo at 1), but neither is persuasive.

First, Plaintiffs' discussion of Huang v. Johnson, 251 F.3d 65, 70 (2d Cir. 2001) and Berman Enters. v. Jorling, 3 F.3d. 602, 606 (2d Cir. 1993)—both standing for the proposition

---

Hope v. Pelzer, 536 U.S. 730, 741 (2002). Here, in the absence of any case law that gives notice that the defendants' alleged conduct may be unconstitutional, their alleged conduct must be considered objectively reasonable.

[10] If this Court chooses to reconsider its previous ruling on damages, Defendants respectfully request the opportunity to submit supplemental briefing on qualified immunity.

that indemnification by the State is not relevant to Eleventh Amendment immunity—does not support their position because: (i) Defendants have never argued to the contrary (and in fact acknowledged this point already, see Exhibit J, Def's Jan. 5, 2006 Cons. Reply Br. at 10 n.10; and (ii) neither Huang nor Berman involved claims for lost wages.  Indeed, Luder v. Endicott, 253 F.3d 1020, 1023 (7th Cir. 2001), which forms the basis for much of Plaintiffs' motion, cited Huang with approval.[11]

Plaintiffs' second argument, namely, that the Eleventh Amendment permits the recovery of back-pay, is essentially a rehash of the arguments made to this Court in the motion to dismiss briefing.  The law is clear, however, that the Eleventh Amendment bars an award of back-pay or retroactive benefits because such an award "would necessarily have to be satisfied from State funds."  Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified, reh'g denied, 793 F.2d 457 (2d Cir. 1986) ("If these sums should have been paid, they should have been paid by the State, not by Regan in his individual capacity . . . ."); see Dotson v. Griesa, 398 F.3d 156, 178 (2d Cir. 2005) ("this court in Dwyer v. Regan concluded that a state employee's constitutional challenge to his termination, see 42 U.S.C. § 1983, was barred by the Eleventh Amendment to the extent he sought a retroactive award of backpay"); Duncan v. Nighbert, 2007 U.S. Dist. LEXIS 65157, 10-11 (E.D. Ky. 2007) ("Duncan alleges that Defendants engaged in conduct that violated federal law when they terminated his employment.  He requests as relief that he be reinstated and awarded all back pay and benefits.  Duncan's request for monetary relief is clearly

---

[11] Plaintiffs' suggestion that Defendants somehow improperly cited Luder v. Endicott, 253 F.3d 1020, 1024 (7th Cir. 2001) in their Jan. 5, 2006 Reply Brief is ridiculous.  (Pl's Memo at 8.)  Defendants cited Luder in a string citation with a detailed parenthetical explaining that it was a lawsuit brought under the Fair Labor Standards Act, not 42 U.S.C. § 1983.  (Exhibit J, Defs' Jan. 5, 2006 Cons. Reply Brief at 9.)  Luder accurately stands for the proposition that a suit, nominally against an individual, is in reality against the state if the relief requested must be paid by the state as an employer.

barred because remitting back pay and benefits to Duncan would require the payment of funds from the state treasury, not from the personal resources of Defendants, which is precluded by the Eleventh Amendment."); DeLoreto v, Ment, 944 F. Supp. 1023, 1031 (D. Conn. 1996) (back-pay is "clearly a claim for money damages that would be barred by the Eleventh Amendment"); see also Lizzi v. Alexander, 255 F.3d 128, 136-37 (4th Cir. 2001) (dismissing lawsuit alleging Family and Medical Leave Act violations against state officials in their individual capacities because the real party in interest is the state itself).[12]

---

[12] The First Circuit's decision in Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1043 n.7 (1st Cir. 1988) is not to the contrary, as Plaintiffs' suggest. The Court in Figueroa-Rodriguez expressly *reversed* the district court's back-pay award because it should not have run against the defendant Acquino individually. Indeed, Acquino, who was no longer working for the defendant and not authorized to order a payment of wages, could not be ordered to pay back-pay in his *individual* capacity because (i) he was entitled to qualified immunity, and (ii) back-pay "must be paid by or on behalf of the employer by definition." Id. Cases citing Figueroa-Rodriguez agree that the Eleventh Amendment bars an award of back-pay. E.g., Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993) ("Gibson cannot recover back pay from the individual defendants in this case. . . ."). Similarly, this Court cannot order Defendants Rowland and Ryan, as individuals, to pay back-pay or lost wages because that relief can only come from the Plaintiffs' employer, i.e., the state of Connecticut.

Moreover, Plaintiffs' purported distinction between "back-pay" and "compensatory damages for their financial losses in the form of lost wages" (Pl's Memo at 7-8) is the sort of "formal distinction" that the Supreme Court has long rejected in determining which remedies the Eleventh Amendment allows. Papasan v. Allain, 478 U.S. 265, 280 (1986); see Edelman v. Jordan, 415 U.S. 651, 665 (1974) (Eleventh Amendment bars payment for "benefits wrongfully withheld"). Whether called "back pay" or "financial losses in the form of lost wages," Plaintiffs seek from the individual defendants the salary that the state would have owed them had they not been laid off. The Eleventh Amendment precludes that claim. See Dwyer, 777 F.2d at 836 (quoting Edelman, and noting that "Dwyer's claim for backpay seeks 'the payment of . . . money which [he contends] should have been paid, but was not'").

**Conclusion**

For the reasons explained above, this Court should deny Plaintiffs Motion for Reconsideration.

>DEFENDANTS,
>JOHN G. ROWLAND AND
>MARC S. RYAN,
>
>By: /s/ Douglas W. Bartinik
>Allan B. Taylor (ct05332)
>Douglas W. Bartinik (ct26196)
>Day Pitney LLP
>242 Trumbull Street
>Hartford, Connecticut 06103-1212
>(860) 275-0100
>(860) 275-0343 (fax)
>*dwbartinik@dbh.com*
>Their Attorneys.

**CERTIFICATION**

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

>/s/ Douglas W. Bartinik
>Douglas W. Bartinik