06-0616
State Employees Bargaining Agent Coalition v. Rowland

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: November 8, 2006)                          Decided: July 10, 2007)

Docket No. 06-0616-cv

STATE EMPLOYEES BARGAINING AGENT COALITION, individually, and on behalf of all its members, AMERICAN FEDERATION OF SCHOOL ADMINISTRATION, LOCAL 61, AFL-CIO, CONNECTICUT ASSOCIATION OF PROSECUTORS, PROTECTIVE SERVICE COALITION, IAFF, AFL-CIO, JUDICIAL MARSHALS, INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, AFL-CIO, CONNECTICUT STATE POLICE UNION, CONGRESS OF CONNECTICUT COMMUNITY COLLEGES, SEIU, AFL-CIO, CONNECTICUT STATE UNIVERSITY AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, UNIV. OF CT, AMERICAN ASSN. OF UNIV. PROF., CT EMP. UNION INDEPENDENT, SEIU, AFL-CIO, CT FEDERATION OF ED. & PROF. EMP. AFT, AFL-CIO, DISTRICT 1199, CT NEW ENGLAND HEALTH CARE EMPLOYEES UNION, SEIU, AFL-CIO, COUNCIL 4, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMP., AFL-CIO, DENISE A. BOUFFARD, GENEVA M. HEDGECOCK, DENNIS P. HEFFERMAN, WILLIAM D. HILL, and MARCELLE Y. PICHANICK,

                        *Plaintiffs-Appellees,*

               v.

JOHN G. ROWLAND, I/O as Governor of the State of Connecticut, and MARC S. RYAN, I/O as Sec. of Ofc. of Policy & Mgmt. of State of CT,

                        *Defendants-Appellants.*

Before: FEINBERG, LEVAL, and CABRANES, *Circuit Judges.*

      Interlocutory appeal from an order of the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) denying defendants' motion to dismiss plaintiffs' amended complaint pursuant to the doctrines of absolute legislative immunity and Eleventh Amendment sovereign immunity. The District Court concluded that (1) sovereign immunity

1

and (3) defendants were entitled to qualified immunity with respect to plaintiffs' claims for money damages. In November 2005, while defendants' motion to dismiss was still pending, the case was reassigned to Judge Covello, who denied defendants' long-pending motion to dismiss in an opinion dated January 18, 2006.

In its opinion, the District Court held that " discovery is required before the court can determine whether the defendants are entitled to the defense" of legislative immunity. *Dist. Ct. Op.*, 2006 WL 141645, at *3. The District Court relied on the Supreme Court' s decision in *Bogan* in concluding that, in order for absolute legislative immunity to apply to defendants' acts, the acts in question must be both " (1) substantively legislative, *i.e.*, acts that involve policy making," and " (2) procedurally legislative, *i.e.*, passed by means of established legislative procedures." *Id.*; *see also Bogan*, 523 U.S. at 49 (holding that legislative immunity applied to a city council member' s voting on an ordinance that eliminated plaintiff' s job position, mayor' s proposal of the job elimination, and the mayor' s signing the ordinance into law). Applying these requirements to the instant case, the District Court concluded that defendants' " eliminat[ion] of some 3,000 union jobs through executive order" was " substantively legislative because it reflected a discretionary, policymaking decision implicating the state' s budgetary priorities and its services to constituents." *Dist. Ct. Op.*, 2006 WL 141645, at *3. Nevertheless, the District Court concluded that before defendants could successfully invoke legislative immunity, discovery was required to determine if defendants' actions were procedurally legislative. In particular, the Court concluded that " although the record . . . supports a finding that the state faced a budget crisis in the fall of 2002, there is no evidence to support a finding that there existed a projected budget deficit of more than one percent, or that Governor

10

Rowland was acting pursuant to Conn. Gen. Stat. § 4-85(b) in ordering the layoffs." *Id.* at \*4 n.5. Accordingly, the Court was " unable to conclude that the actions complained of were legitimately legislative . . . [on the basis] of which the defendants are absolutely immune." *Id.* at \*4.

Addressing Eleventh Amendment sovereign immunity, the District Court held that plaintiffs' claims were barred insofar as they sought to recover money damages. The District Court found that plaintiffs' claims were not barred, however, insofar as they sought injunctive relief. In explaining its conclusion with respect to money damages, the District Court relied on the Supreme Court' s decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), in which the Supreme Court held that a lawsuit is " against the sovereign [and thus barred by the Eleventh Amendment] if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting, or to compel it to act." *Id.* at 102 n.11, *quoted by Dist. Ct. Op.*, 2006 WL 141645, at \*5. The District Court concluded that, although the claims for monetary relief in plaintiffs' amended complaint were nominally brought against defendants in their individual capacities, the relief sought " could hardly be accomplished in the absence of substantial interference with the public administration or the loss of substantial public resources." *Dist. Ct. Op.*, 2006 WL 141645, at \*5. Accordingly, the District Court held that " [a]ny claim for money damages," including back-pay or retroactive benefits, was barred by the Eleventh Amendment.[5] *Id.* The District Court held that, on the other hand, the Eleventh

---

[5] Plaintiffs argue that it is unclear whether the District Court intended to dismiss all of their claims for money damages. *See* Appellees' Br. at 51 n.15 (contending that " [t]he precise meaning of this aspect of the District Court' s ruling is unclear" and that the District Court might have intended not to bar claims for " other

Amendment presented no bar to the claims for prospective injunctive relief against defendants in their official capacities.[6] *Id.*

On April 5, 2006, the District Court entered an order amending its earlier opinion (the "April 5 Order"). In particular, the District Court revised its earlier statement, in footnote 5 of the prior opinion, that "there is no evidence to support a finding that there existed a projected budget deficit of more than one percent, or . . . that [the governor filed a] report or plan, or even an affirmation that the governor had invoked his authority under § 4-85(b)." April 5 Order at 2, Joint Appendix ("J.A.") 90. The Court noted that, following its earlier ruling, "defendants filed for the first time a copy of an April 1, 2003 letter from the Office of the Comptroller to Governor Rowland stating that in September of 2002, there existed a deficit exceeding one percent and that on December 6, 2002, the governor furnished a deficit reduction plan." On the basis of that letter, the District Court concluded:

> Because the statute does not require the legislature to approve the governor's [budget] plan, or even for the governor to follow his own plan when making deficit reduction decisions, a court could reasonably conclude that the defendants complied with Gen. Stat. § 4-85(b)(2) when ordering the job terminations at issue, and hence, are entitled to legislative immunity. However, in this Court's view, before the defendants can cloak their actions with immunity, they must make out a good faith claim to it, that is, they must show that they ordered the layoffs to achieve budgetary savings under Conn. Gen.

---

aspects of compensatory damages" such as "emotional distress" and for "punitive damages"). We find no ambiguity in the District Court's statement that "[a]ny claim for money damages. . . is barred," *Dist. Ct. Op.*, 2006 WL 141645, at *5 (emphasis added), and we therefore reject plaintiffs' assertion that the District Court's ruling was unclear. We express no opinion on the merits of the District Court's ruling on the claims for money damages, which is not at issue in the instant appeal. *See* Appellees' Br. at 51 (acknowledging that the dismissal of plaintiffs' claims for money damages is not before the Court on this interlocutory appeal).

[6] The District Court also denied as "moot" defendants' claim that qualified immunity shielded them from liability. In particular, the District Court concluded that because qualified immunity is a defense against suits for money damages, and because plaintiffs' claims for money damages were precluded on Eleventh Amendment grounds, it was not necessary to address defendants' qualified immunity arguments. *Dist. Ct. Op.*, 2006 WL 141645, at *5.

Stat. § 4-85(b)(2), and not for other reasons.

*Id.* The Court then concluded that " because this remains a disputed issue of fact, . . . defendants are not entitled to legislative immunity at this juncture." *Id.* at 2-3, J.A. 90-91. The District Court therefore reiterated its earlier denial of defendants' motion to dismiss plaintiffs' claims for injunctive relief on the basis of legislative immunity.

This appeal followed.

## II. DISCUSSION

### A. Appellate Jurisdiction

Defendants seek to establish appellate jurisdiction over this interlocutory appeal under the collateral order doctrine, which permits interlocutory appellate review of certain non-final District Court decisions. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993) (interlocutory review of an Eleventh Amendment claim); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003) (interlocutory review of a legislative immunity claim).

" Under the collateral order doctrine, . . . [a]n order denying a motion to dismiss a complaint against a[n] . . . official when the dismissal motion is based on the official' s assertion of absolute or qualified immunity is immediately reviewable, to the extent that the denial turns on issues of law." *Almonte*, 478 F.3d at 105 (internal quotation marks omitted). However, " if a factual determination is a necessary predicate to the resolution of whether . . . immunity is a bar, review is postponed" and we dismiss the appeal. *Id.* (quoting *Parkinson v. Cozzolino*, 238 F.3d 145, 149 (2d Cir. 2001)).

13

## B. Legislative Immunity

We first address defendants' argument that legislative immunity bars plaintiffs' entire complaint and that the District Court therefore erred in concluding that discovery was necessary to determine whether legislative immunity applies to the instant claims.

### 1. Standard of Review and Governing Law

When a district court denies absolute or qualified immunity in response to a motion to dismiss, we review the district court's denial *de novo*. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (reviewing claim of qualified immunity).

Under the Supreme Court's functional test for determining the applicability of absolute legislative immunity, " whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question." *Almonte*, 478 F.3d at 106; *see also Harhay*, 323 F.3d at 210 (citing *Bogan*, 523 U.S. at 54). In particular, " [a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.' " *Bogan*, 523 U.S. at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Legislative immunity shields from suit not only legislators, but also officials in the executive and judicial branches when they are acting " in a legislative capacity." *Bogan*, 523 U.S. at 55 (holding that a mayor was entitled to legislative immunity for acts taken that were " integral steps in the legislative process"); *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734 (1980) (holding that Virginia Supreme Court justices were entitled to legislative immunity for acts taken in their legislative capacities).

### 2. Analysis

### (a) Whether Legislative Immunity May Bar Claims for Injunctive Relief

14

immunities applicable to the government as an entity, *see Graham*, 473 U.S. at 166-67, with the Supreme Court's decision in *Consumers Union*. The Eleventh Circuit began by explaining that the reason "personal" defenses such as legislative immunity "are generally unavailable in official capacity suits [is] because such suits are treated as suits against the underlying entity [*i.e.*, the state]," and not against the individual. *Scott*, 405 F.3d at 1255. The Eleventh Circuit then noted that under *Ex parte Young*, "official-capacity actions for prospective relief are *not* treated as actions against the state." *Id.* at 1255 (emphasis added). This led the Eleventh Circuit to conclude that the plaintiff's action seeking "prospective injunctive relief against [defendants] in their official capacities" was "not to be treated as a[n] action against the entity," but rather, as an action against the individual legislators. *Id.* The Eleventh Circuit therefore held that the individual defense of legislative immunity *was* available for the same reason that the official defense of Eleventh Amendment immunity *was not* available—namely, because the suit in question was not considered to be a suit against the state itself. *Id.*

In *Larsen*, 152 F.3d at 240, the Third Circuit held that legislative immunity barred claims for injunctive relief in a suit brought by a former Pennsylvania Supreme Court justice. The plaintiff sought reinstatement to judicial office following his impeachment and removal by the State Senate. The Third Circuit relied on the Supreme Court's opinion in *Consumers Union*, and on the principles embodied by the Speech or Debate Clause, to conclude that "*at least in appropriate cases*, legislators are entitled to immunity from claims for injunctive and/or declaratory relief." *Larsen*, 152 F.3d at 253 (emphasis added).

"Without attempting to draw a line for all cases," the Third Circuit determined that the relevant question in *Larsen* was "whether [plaintiff's] request for prospective relief from the

Senators could be accorded consistent with the policies underlying legislative immunity." *Id.*

The Third Circuit then concluded that legislative immunity applied because the plaintiff " seeks

reinstatement—nothing less than that the individual Senators rescind their guilty vote on his

impeachment." *Id.* at 254. It noted that " [i]t is difficult to imagine a remedy that would more

directly interfere with the role assigned exclusively to the Senators by the Pennsylvania

Constitution." *Id.*[10]

        Accordingly, we adhere to our holding in *Star Distributors*, 613 F.2d at 8-9, and reaffirm

the vitality of its teaching that claims for injunctive relief against defendant state officials, sued in

their official capacities, may be barred by the doctrine of legislative immunity, notwithstanding

arguably contradictory *dicta* in *Graham* and *Umbehr*.

        **(b) Effect of Legislative Immunity on Plaintiffs' Claims**

        A defendant' s entitlement to legislative immunity from claims for injunctive relief does

not depend solely on whether the defendant' s *acts* giving rise to the alleged violation were

" taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (internal quotation

marks omitted). We agree with the Third Circuit that, in considering whether the doctrine of

legislative immunity is available to foreclose claims for injunctive relief in official-capacity suits,

we must also look more specifically to whether granting the particular *relief sought* would enjoin

defendants in their legislative capacities. *See Larsen*, 152 F.3d at 253 (requiring consideration of

" the policies underlying legislative immunity" and of " the extent to which a court could order

---

[10] The Third Circuit recently reaffirmed its conclusion that legislative immunity may, in appropriate cases, bar claims for injunctive relief against state officials sued in their official capacity in *Baraka v. McGreevey*, 481 F.3d 187, 202-03 (3d Cir. 2007) (holding that claim for reinstatement by former poet laureate of New Jersey, whose position was eliminated by the state legislature, was barred by legislative immunity).

[the desired] relief"). This is so because, unlike a court's award of compensatory damages, which remedies discrete injuries caused by a defendant's prior acts, a court's grant of injunctive relief seeks to shape and direct future acts potentially different in nature and scope from those giving rise to the litigation. Therefore, even where a defendant's prior conduct giving rise to the cause of action consists of legislative acts for which the defendant is immune, the same may not be true of the future acts that would be compelled or prohibited by a grant of injunctive relief.

The case of *Consumers Union* is illustrative. In that case, the Supreme Court applied legislative immunity to bar plaintiff's claims for injunctive relief insofar as the relief sought would compel the defendants to perform a legislative act—the repeal or amendment of the state's bar code to conform with constitutional requirements. *See Consumers Union*, 446 U.S. at 733-34 (holding that court and its members were absolutely immune from suit for failure to amend bar code). The Court concluded, however, that legislative immunity did not bar claims for injunctive relief that would enjoin the defendant justices from committing a distinctly non-legislative act—independent enforcement of the unconstitutional provisions of the bar code against particular individuals. *Id.* at 734-36.

Other cases have illustrated that even where a defendant commits allegedly unlawful acts in a legislative capacity, the desired injunctive order might act upon the defendant (or another defendant) in a purely non-legislative capacity. In such cases, we see no reason why a defendant should be entitled to legislative immunity simply because the harm alleged originated, in some sense, with a legislative act. *See, e.g., Kilbourn v. Thompson*, 103 U.S. 168, 196-205 (1880) (in case involving Speech or Debate Clause, members of House of Representatives were immune for

25