RECEIVED

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CONN.

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL. | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:03CV221 (AVC) |
| | : | |
| V. | : | |
| | : | |
| JOHN G. ROWLAND, ET AL., | : | |
| Defendants. | : | JANUARY 5, 2006 |

### DEFENDANTS' CONSOLIDATED REPLY
### BRIEF IN SUPPORT OF MOTION TO DISMISS[1]

Plaintiffs have not cited, and defendants have not found, any case in which a court has

held that an employer not bound by a no-layoff clause – and indeed expressly empowered by the

applicable collective bargaining agreements to conduct layoffs – is forbidden from requesting

concessions from a union and backing up that request with the threat and fact of layoffs of those

employees whose union refuses to make the concessions.  Plaintiffs have not cited, and

defendants have not found, any case in which a federal court has agreed to second-guess a

Governor's conclusions that a state's fiscal health requires either union concessions or layoffs of

union employees.[2]  Rather, at least two cases (one is this District) have concluded exactly the

opposite – that a Governor's fiscal policy decisions resulting in layoffs of state employees must

not be second-guessed – and have embraced Defendants' position.

---

[1] As requested by the Court, this Reply Brief contains the arguments from Defendants'
May 9, 2003 Reply Brief and their August 29, 2003 Reply Brief.  The only additions contained
herein are points addressing cases decided after August 29, 2003, which Plaintiffs discussed in
their Consolidated Opposition.

[2] This reply brief addresses some but not all aspects of Plaintiffs' Consolidated
Opposition Brief ("Pl. Br."), filed on December 29, 2005.  Defendants do not waive any
arguments presented in the primary brief but not raised again herein.

it has made available, and no such allegations could be made. Rather, their claims for injunctive

relief seek to challenge the discretionary decision making in which defendants have engaged and

to force them to reach a different conclusion. That is precisely the kind of harassment and

interference with the processes of self-government that the doctrine of legislative immunity is

intended to prevent.

For these reasons, this Court should dismiss the Complaint on the ground that legislative

immunity applies.

## II. ELEVENTH AMENDMENT SOVEREIGN IMMUNITY: THE EX PARTE YOUNG EXCEPTION TO THE ELEVENTH AMENDMENT DOES NOT APPLY[8]

Plaintiffs begin their discussion of Eleventh Amendment sovereign immunity by

invoking empty formalisms concerning the manner in which they have pled their claims. (Pl. Br.

at 32.) The Supreme Court has flatly rejected such simplistic arguments, cautioning that "[t]he

real interests served by the Eleventh Amendment are not to be sacrificed to elementary

mechanics of captions and pleading." Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 270 (1997);[9]

see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 n.11 (1984) ("'[A] suit is

against the sovereign if 'the judgment sought would expend itself on the public treasury or

domain, or interfere with the public administration,' or if the effect of the judgment would be to

restrain the Government from acting, or to compel it to act.'""). Accordingly, despite Plaintiffs'

---

at 25 n.19) founders on the undisputed applicability of legislative immunity to the exercise of the
power to veto.

[8] Ex parte Young, 209 U.S. 123 (1908), held that the Eleventh Amendment did not bar
suits against state officials for prospective injunctive relief.

[9] This portion of the Coeur d'Alene opinion – section IIa – is supported by a majority of
five Justices, not a mere two Justices, as the plaintiffs imply. (Pl. Br. at 37.)

hope that this Court will review their claims only superficially, this Court must put aside Plaintiffs' denomination of their claims and conduct a careful analysis of whether the Eleventh Amendment bars this lawsuit.

This analysis must follow two separate, though closely related, paths within the caselaw:

**A.    The State Is The Real Party In Interest**

Despite Plaintiffs' platitudes about "individual capacity" and "official capacity" nomenclature, their claims are against the State itself. (Pl. Br. at 32.) Where the relief sought is that which is uniquely available from the state, not the individual state officials sued, the Eleventh Amendment applies to preclude the suit. See Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified, reh'g denied, 793 F.2d 457 (2d Cir. 1986); see also Lizzi v. Alexander, 255 F.3d 128, 136-37 (4th Cir. 2001) (dismissing lawsuit alleging Family and Medical Leave Act violations against, inter alia, state officials in their individual capacities, because the real party in interest is the state itself); Luder v. Endicott, 253 F.3d 1020, 1024 (7th Cir. 2001) (dismissing lawsuit alleging Fair Labor Standards Act violations against state officials in their individual capacities, because "Plaintiffs are seeking to accomplish exactly what they would accomplish were they allowed to maintain this suit against the state"); accord United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa Health & Human Services, 269 F.3d 932, 937 (8th Cir. 2001) (affirming district court's refusal to permit Plaintiff to add individual capacity claim against state official, because the allegations in proposed new claim revealed that the same acts underlay both the official capacity claim (which had been dismissed under the Eleventh Amendment) and the proposed individual capacity claim); Hughes v. Savell, 902 F.2d 376, 377-79 (5th Cir. 1990)

(dismissing individual capacity claims against state official because state was real party in interest), cert. denied, 536 U.S. 925 (2002).[10]

The Second Circuit has recognized that when a state has not been sued in its own name, but a state official is sued instead, "the 'question arises as to whether that suit is a suit against the state itself.'" Dwyer, 777 F.2d at 835 (citations omitted). Determining whether the State is the real party in interest on Plaintiffs' claims requires an analysis of the challenged actions as well as the nature of the relief sought, which will in turn reveal whether the lawsuit *"demonstrably has the identical effect as a suit against the state."* Luder, 253 F.3d at 1023. Here, Plaintiffs' claims seek to reverse governmental action (the layoffs authorized by the collective bargaining agreements) and to force the State to choose other cost-cutting methods, while making Plaintiffs whole for alleged "financial losses" (see Amended Complaint ¶ 62) and other alleged damages. These allegations overwhelmingly show that this is an action against the State; the Governor and Secretary did not act as individual citizens while employing and laying off State workers, nor would the reversal of the layoff decisions and payment of lost wages relate to the Governor and Secretary as citizens.[11] It is perfectly clear, notwithstanding Plaintiffs' convoluted explanation of

---

[10] Cases holding that the Eleventh Amendment is not a bar to individual capacity claims against state officials merely because the state would indemnify the official against any monetary judgment are of no consequence here. See, e.g., Ashker v. California Dep't of Corrections, 112 F.3d 392 (9th Cir. 1997). Here, the defendants' Eleventh Amendment argument is not based primarily, or even partially, on the likelihood of indemnification of them by the State. Rather, the defendants' Eleventh Amendment argument is founded on the nature of the challenged actions and the nature of the relief sought, as set forth herein and in the defendants' primary brief in support of dismissal.

[11] The Connecticut Legislature's recently passed budget, signed by the Governor on August 16, 2003, does not provide for re-creation of the positions eliminated in the layoffs that this lawsuit challenges. At this point, therefore, the plaintiffs' continued unemployment is the result of the Legislature's action in failing to provide for re-creation of those positions, not the result of any action by the defendants. Accordingly, no prospective injunctive relief (even if it were otherwise warranted) is possible, as it would have to be directed toward the Legislature.

why "back pay and benefits" are not "actual economic loss" (Pl. Br. at 34-35), that Plaintiffs

seek to force the State to change its chosen means of dealing with the budget crisis and that the

State is the real party in interest. See Dwyer, 777 F.2d at 835-36. [12]

## B.    Special Sovereignty Interests Are Implicated By Plaintiffs' Claims

In Coeur d'Alene, the Supreme Court enunciated an exception to Ex parte Young for

lawsuits that implicate "special sovereignty interests" of the state. 521 U.S. at 281. To

determine whether special sovereignty interests were at stake, the Supreme Court looked to the

importance of the matter to state sovereignty and the potential for diminishing the state's

sovereignty in the course of resolving the dispute. 521 U.S. at 283-87. The Courts of Appeals

have also recognized this Coeur d'Alene exception to Ex parte Young, though they have

construed the exception narrowly. See, e.g., Cardenas v. Anzai, 311 F.3d 929, 938 (9th Cir.

2002); Barton v. Summers, 293 F.3d 944, 951 (6th Cir. 2002); In re Ellett, 2001 U.S. App.

---

[12] The plaintiffs' argument that, in the individual capacity claims, they may seek their lost wages, or back pay, and benefits as necessary part of their alleged compensatory damages is ill-founded and misleading. (Pl. Br. at 30.) The Second Circuit's decision in Dwyer, which itself relies on Edelman v. Jordan, 415 U.S. 651 (1974), makes crystal clear that the Eleventh Amendment bars claims for money that the state as employer was responsible for paying but did not: "[w]hile [the defendant] had no duty in his individual capacity to pay [the plaintiff's] salary, he did have a duty not to deny [the plaintiff] his federally protected right[s] … [and] there would be no Eleventh Amendment impediment to his recovering damages for that denial." Dwyer, 777 F.2d at 836-37.

Moreover, the First Circuit decision in Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1043 n. 7 (1st Cir. 1988), is quoted incompletely, and misleadingly, by plaintiffs. As the First Circuit explicitly held, "The [backpay] order should not have run against Aquino [the defendant]." The missing phrase that follows the plaintiffs' quotation ("To say that an 'individual capacity' defendant is liable for 'back pay' is a misnomer; he may be liable for compensatory damages in the same amount (plaintiff's lost wages)") is significant: "but such liability must first hurdle any applicable immunity defense." Id. This passage from Figueroa-Rodriguez, therefore, poses, rather than answers, the very question presented by defendants' motion: are defendants immune from the plaintiffs' claims?

LEXIS 19184, *19-24 (9th Cir. 2001).[13] The Ninth Circuit has articulated the Coeur d'Alene

exception to Ex parte Young by saying that it applies only when the relief sought "would be so

much of a divestiture of the state's sovereignty as to render the suit one against the state itself."

In re Ellett, 2001 U.S. App. LEXIS 19184, at *19-20 (quoting Agua Caliente Band of Cahuilla

Indians v. Hardin, 223 F.3d 1041, 1048-49 (9th Cir. 2000)).

Unlike Plaintiffs, these Courts of Appeals have not declared Coeur d'Alene a dead letter

in light of Verizon Maryland v. Public Service Comm'n of Maryland, 535 U.S. 635 (2002). (Pl.

Br. at 37-38.)[14] Both Barton and Cardenas were decided after Verizon Maryland, yet

nonetheless recognized the vitality of the "special sovereignty interests" exception to Ex parte

Young. More specifically, in Barton, the court held that an attempt to force the allocation of

state funds did indeed implicate special sovereignty interests, and it held that the Eleventh

Amendment barred the lawsuit. 293 F.3d at 951.[15]

Here, even applying a narrow interpretation of the Coeur d'Alene exception to Ex parte

Young, this case should be dismissed on the basis of Eleventh Amendment immunity. As in

Barton, the relief sought here strikes at the very core of the State's sovereignty, insofar as it asks

---

[13] Copies of unreported cases are attached hereto as Exhibit A.

[14] Contrary to plaintiffs' implication, the Second Circuit has not embraced Verizon
Maryland to the exclusion of Coeur d'Alene. Although the plaintiffs correctly state that the
Second Circuit has twice cited Verizon Maryland, neither of those cases involved a claimed
"special sovereignty interest" such that the Coeur d'Alene exception was even mentioned. Ford
v. Reynolds, 316 F.3d 351, 255 (2d Cir. 2003) (dismissing plaintiffs' claims under Eleventh
Amendment because plaintiffs made no valid claim for prospective injunctive relief); CSX
Transp., Inc. v. N.Y.S. Office of Real Prop. Servs., 306 F.3d 87, 98-99 (2d Cir. 2002) (citing
both Verizon Maryland and Coeur d'Alene in complementary fashion).

[15] In Cardenas, the court determined that providing for the health and welfare of its
residents was not a unique and important aspect of state sovereignty, and, therefore, the lawsuit
was not barred by the Eleventh Amendment. 311 F.3d at 938.

this Court to evaluate the State's attempt to resolve its severe budget crisis and to direct its fiscal,

programmatic, and operational choices. Even more so than the allocation of state funds in

Barton, the relief sought here would intrude profoundly on the State's sovereignty. Indeed,

making decisions about the level and nature of state services and programs is fundamental to

self-government, inherent in "[t]he dignity and status of . . . statehood." Coeur d'Alene, 521

U.S. at 287. Accordingly, Plaintiffs' claims fall squarely within the Coeur d'Alene exception to

Ex parte Young, even if narrowly circumscribed, and must be dismissed.

## III. QUALIFIED IMMUNITY:
## DEFENDANTS' ALLEGED CONDUCT WAS OBJECTIVELY REASONABLE

In asserting the qualified immunity defense, defendants do not, contrary to Plaintiffs'

bald assertions, simply seek to substitute their version of the facts for Plaintiffs' version. (Pl. Br.

at 42.) Rather, defendants argue that it was objectively reasonable, as a matter of law, for them

to believe that their conduct, now challenged by Plaintiffs, was not violative of constitutional

rights.

Plaintiffs' argument is conspicuous in its failure to cite even one case in which a

Governor was found to have acted unconstitutionally when addressing a budget crisis by

conducting layoffs that were expressly authorized by the applicable bargaining agreements.

Their failure to cite, and presumably to find, such a case reveals the fundamental weakness in

their argument that it was not objectively reasonable for the defendants to act as they allegedly

did. The key question is "whether the state of the law [at the time of the alleged violations] gave

[defendants] fair warning that their alleged [conduct] was unconstitutional." Hope v. Pelzer, 536

U.S. 730, 741 (2002). Here, in the absence of any case law that gives notice that the defendants'

alleged conduct may be unconstitutional, their alleged conduct must be considered objectively

reasonable.

-13-

Moreover, Plaintiffs' individual capacity claims, which will ultimately require a showing of retaliatory motive if permitted to proceed, cannot survive a motion to dismiss on so slender a reed as their circular allegations of the defendants' anti-union animus. Although Plaintiffs assert that the Governor and Secretary were motivated by anti-union animus, the only allegations they have pled in support of this purported motivation go to the basic fact that the State laid off union members. (E.g., Complaint, ¶¶ 43-46.) It is inconceivable that layoffs of union members could be considered, in and of themselves, proof of animus against union members. Moreover, Plaintiffs have not alleged any comments made or documents created by either the Governor or the Secretary during the bargaining process that suggest that either person intended to use layoffs for an improper purpose. The emptiness of Plaintiffs' allegations concerning the defendants' anti-union animus, together with the objective reasonableness of the defendants' invocation of the layoff provisions in the applicable bargaining agreements, renders the doctrine of qualified immunity applicable to the individual capacity claims, which must therefore be dismissed.

## IV.  FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED: COUNTS SECOND, SIXTH, NINTH AND TENTH

Even putting aside the immunity issues, the underlying constitutional claims of Plaintiffs are, themselves, deficient and must still be dismissed.

### A.    Counts Two and Six Do Not State Viable Causes of Action

Plaintiffs[16] claim that Counts Two and Six, purporting to state claims of a violation of freedom of speech under the First Amendment, should not be dismissed because Plaintiffs allege that they are members of an organization – a union – that supported Governor Rowland's

---

[16] The plaintiffs in Counts Two and Six are the Named Plaintiffs and a purported class of members of unions that supported the Governor's opponent in the 2002 election. Complaint Count Two ¶ 66-67, Count Six ¶¶ 62-63.

-14-