UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE EMPLOYEES BARGAINING<br>AGENT COALITION, ET AL.<br>　　　　Plaintiffs, | :　CIVIL ACTION NO.<br>:<br>:　3:03CV221 (AVC)<br>: |
| V. | : |
| JOHN G. ROWLAND, ET AL.,<br>　　　　Defendants. | :<br>:　DECEMBER 20, 2005 |

### DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT WITH REQUESTED CONSOLIDATED MEMORANDUM OF LAW[1]

The fact that the plaintiffs filed an Amended Complaint -- after full briefing on the defendants' Motion to Dismiss the initial Complaint -- is a testament to the strength of the arguments that defendants asserted in support of dismissal. Moreover, the substance of the Amended Complaint reflects the plaintiffs' continued, dogged refusal to see this case as what it is: an attack on the Governor's authority to make difficult policy choices and, thus, an attack on the very sovereignty of the State. Accordingly, the defendants once again move,[2] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Rule 7 of the Local Rules of Civil Procedure, to dismiss the plaintiffs' Amended Complaint in its entirety.

---

[1] Per the Court's request on December 16, 2005, this Motion and Memorandum of Law combines the arguments presented in the defendants' February 24, 2003 Motion to Dismiss and July 7, 2003 Motion to Dismiss Amended Complaint (which referred in part back to the February 24 motion). Because over two years have elapsed since the defendants filed their second motion to dismiss, this Consolidated Memorandum contains citations to some recent cases decided after July 7, 2003.

The defendants reserve their right to file a similarly consolidated Reply Brief after they receive the plaintiffs' Consolidated Opposition, which is due to be filed on December 22, 2005.

[2] The initial Motion to Dismiss was denied as moot on July 15, 2003 because the plaintiffs amended their Complaint while the motion was pending.

If a federal action is brought against state officials alone, the court must decide whether the suit is, in fact, against a state in order to decide whether sovereign immunity applies. In such cases, the court must determine whether "the state is the real, substantial party in interest." Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945). Where a federal constitutional violation is alleged, the suit may proceed against individual state officials as long as the only relief sought is prospective injunctive relief. Edelman v. Jordan, 415 U.S. 651, 666-67 (1974); Ex parte Young, 209 U.S. 123 (1908). Moreover, although claims against state officials in their individual capacities are deemed not to be barred by the Eleventh Amendment, those claims may seek only monetary damages *other* than back pay and benefits. Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985), modified, 793 F.2d 457 (2d Cir. 1986). Indeed, requests for back pay and retroactive benefits, however they may be pled, are claims peculiarly against the state as employer because state officials do not personally have any duty to pay or provide benefits to state employees. DeLoreto v. Ment, 944 F. Supp. 1023, 1031-32 & n.5 (D. Conn. 1996).

In Counts One, Two, Three and Four, plaintiffs sue the Governor and the Secretary in their individual capacities, seeking relief including "monetary damages." To the extent plaintiffs thereby seek back pay, back benefits, or any other "monetary damages" that are a function only of their employment by the state of Connecticut, or termination thereof, those claims for relief are barred by the Eleventh Amendment. DeLoreto, 944 F. Supp. at 1031-32 & n.5.

Moreover, in Counts Five, Six, Nine and Ten, plaintiffs seek restoration of "full and uninterrupted seniority and benefits" against the defendants in their official capacities. This claim for damages, seeking an award of the lost seniority credit and other employee benefits lost after and as a result of the challenged layoffs, is in essence a request for retrospective damages against the state of Connecticut, because it seeks from the defendants in their official capacities,

recovery for benefits lost from the time of the layoff to the present. The Eleventh Amendment bars recovery for retrospective losses. Edelman, 415 U.S. at 663-64 (relief seeking "accrued" money damages is barred); see also Milliken v. Bradley, 433 U.S. 267, 289 (1977) (interpreting Edelman as permitting remedy to require payment of state funds only for *future* compliance with constitutional standard). Accordingly, Counts One, Two, Three, Four, Five, Six, Nine and Ten should be dismissed.

### D. Qualified Immunity Bars Plaintiffs' Claims Against Defendants In Their Individual Capacities

Even if the defendants' conduct is not protected from suit by an absolute immunity, Counts One, Two, Three and Four (the "individual capacity claims") are nonetheless barred by the doctrine of qualified immunity and, therefore, should be dismissed.

#### 1. *The Scope of Qualified Immunity*

In a § 1983 action, a state official sued in his individual capacity is entitled to qualified immunity if (1) his challenged conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known, or (2) even though the rights were clearly established, it was objectively reasonable for the official to believe that his acts did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 638 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002). The defense of qualified immunity prevents "bare allegations of malice [from] subject[ing] government officials [who perform discretionary functions] either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817-18. The test is an objective one; it does not require or permit any inquiry into the state official's subjective state of mind, but focuses only on the objective reasonableness of his conduct. Crawford-El v. Britton, 523 U.S. 574, 588 (1998).

-19-

2.   *The Defendants' Conduct Was Objectively Reasonable*

Qualified immunity protects the Governor and the Secretary from suit because it was objectively reasonable for them to believe that their actions, in laying off unionized state employees, were in furtherance of their constitutional and statutory duties and did not violate the First Amendment. Indeed, the defendants undertook the layoffs in compliance not only with applicable collective bargaining agreements but also with state statutes and constitutional provisions concerning fiscal control of the state government operations.

First, the Union Plaintiffs' collective bargaining agreements provide for layoffs, specifying applicable procedures, available bases for layoff, bumping and reemployment rights, and other such indicators that layoffs were contemplated as a possibility by both parties to the collective bargaining agreements. (E.g., Collective Bargaining Agreement between State and CEUI for Maintenance and Service Unit (NP-2), Art. 13, attached as Ex. C.) In light of that clear contractual authority for conducting layoffs, the defendants' actions in ordering layoffs were wholly reasonable.

Second, the constitutional and statutory provisions cited in Section B above clearly provide that the Governor, with assistance from the Secretary, in the exercise of discretion and constitutional powers may take action to reduce spending when necessary and that such reductions are to be made based on the Governor's own determination of what is reasonable and appropriate. The power -- reflected in Public Act No. 02-1, May Spec. Sess., §§52(a), (b) (attached as Ex. A) -- to "determine [whether] a fiscal exigency" exists and to take appropriate action in response thereto, makes the Governor's decision to conduct layoffs all the more objectively reasonable. Indeed, the Governor is constitutionally and statutorily invested with the power, and the obligation, to address a budget crisis in the way that he determines is appropriate, and his exercise of such power cannot be attacked as objectively unreasonable.

-20-