LEXSEE 2007 U.S. DIST. LEXIS 65157


MICHAEL DUNCAN, Plaintiff, v. WILLIAM NIGHBERT, et al., Defendants.

Civil Action No. 3:06-34-JMH

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY, CENTRAL DIVISION

*2007 U.S. Dist. LEXIS 65157*

August 31, 2007, Decided
August 31, 2007, Filed

**COUNSEL:** [*1] For Michael Duncan, Plaintiff: Paul F. Fauri, LEAD ATTORNEY, Frankfort, KY; Thomas E. Clay, Clay, Kenealy, Wagner & Adams PLLC, Louisville, KY.

For William Nighbert, Individually, Defendant: Donald M. Wakefield, Spencer D. Noe, LEAD ATTORNEYS, Bowles Rice McDavid Graff & Love, LLP - Lexington, Lexington, KY; Howard O. Mann, LEAD ATTORNEY, Corbin, KY.

For Ernie Fletcher, Individually, Defendant: Christopher Wilson Brooker, M. Stephen Pitt, LEAD ATTORNEYS, Rania Marie Basha, Wyatt, Tarrant & Combs, LLP - Louisville, Louisville, KY.

For Jim Adams, Individually, Defendant: Mark D. Chandler, LEAD ATTORNEY, Interchange Law Offices, Louisville, KY; Beth A. Bowell, Walther, Roark & Gay, P.L.C., Lexington, KY.

For Commonwealth of Kentucky, Transportation Cabinet, Defendant: Jeffrey J. Chapuran, LEAD ATTORNEY, Stoll Keenon Ogden, PLLC - Lexington, Lexington, KY; Paul Christopher Harnice, LEAD ATTORNEY, Stoll, Keenon & Park, LLP - Frankfort, Frankfort, KY.

For William Nighbert, In his Official Capacity as Secretary of Transportation, Official Defendant: Donald M. Wakefield, Spencer D. Noe, LEAD ATTORNEYS, Bowles Rice McDavid Graff & Love, LLP - Lexington, Lexington, KY; Howard O. Mann, LEAD ATTORNEY, [*2] Corbin, KY.

For Ernie Fletcher, In his Official Capacity as Governor of the Commonwealth of Kentucky, Official Defendant:

Christopher Wilson Brooker, M. Stephen Pitt, LEAD ATTORNEYS, Rania Marie Basha, Wyatt, Tarrant & Combs, LLP - Louisville, Louisville, KY.

For Jim Adams, In his Official Capacity as Deputy Secretary of Transportation, Official Defendant: Beth A. Bowell, Robert L. Roark, LEAD ATTORNEYS, Walther, Roark & Gay, P.L.C., Lexington, KY.

For Kentucky Unemployment Commission, Commonwealth of Kentucky, Education Cabinet, Unemployment Insurance Commission, Movant: Amy O'Nan Peabody, LEAD ATTORNEY, Office of Legal Services-Education Cabinet, Frankfort, KY.

**JUDGES:** Joseph M. Hood, United States District Judge.

**OPINION BY:** Joseph M. Hood

**OPINION**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions for summary judgment by Defendants Fletcher [Record No. 31], Nighbert [Record No. 41], and Adams [Record No. 58]. The issues have been fully briefed and the matter is now ripe for review. The defendants having raised similar issues in their motions, the Court will address the motions simultaneously.

### I. Background

Plaintiff Michael Duncan ("Plaintiff" or "Duncan") is a Democrat who supported Ben Chandler's [*3] unsuccessful campaign for Governor in 2003 against Defendant Governor Ernie Fletcher. Duncan worked in the

Office of the Attorney General while Chandler served in such position. Duncan was employed as an investigator in the Office of the Attorney General from 1996-2003, and had previously been employed as an officer with the Kentucky State Police for approximately twenty-five years. On December 16, 2004, approximately one year into Fletcher's term as Governor, Duncan became employed as a Staff Assistant [1] in the Office of the Inspector General of the Transportation Cabinet of the Commonwealth of Kentucky (the "OIG"). The OIG is responsible for conducting audits and investigations into reports of waste, fraud, or abuse within the Transportation Cabinet. Pursuant to his request, prior to his employment with the OIG, Duncan was "cleared" for employment despite his connections to Chandler. In his position with the OIG, Duncan assisted in drafting policies for the accessing of intelligence and information, and for the reporting and writing of investigatory cases. Duncan also directed and advised OIG personnel in the conduct of investigations, and supervised up to twenty-two subordinate [*4] staff in the OIG.

1    Plaintiff referred to his position as that of Chief Deputy Inspector General.

Duncan's position with the OIG was considered a classified position within Kentucky's merit system of employment. *See KRS §§ 18A.111* and *18A.140*. Pursuant to *KRS §§ 18A.111* and *18A.140*, a classified employee must complete a six-month probationary period before attaining "status," which protects the employee from demotion, discipline, dismissal, or other penalties as a result of political considerations. The decision as to whether or not a classified employee has successfully completed the initial probationary period is vested in the employee's appointing authority, which in Plaintiff's case was the Secretary of the Transportation Cabinet, Defendant William Nighbert.

Duncan's employment with the OIG was terminated approximately one month before his probationary period was completed; therefore, he had not yet attained merit status. The parties dispute the reasons for Duncan's termination. Relying on a memorandum regarding personnel actions which lists Duncan as a Democrat who gave $ 2,000 to Ben Chandler's campaign and recommends that Duncan be terminated [2], Duncan claims he was terminated because [*5] of his association with the Democratic party. Nighbert maintains that he terminated Duncan because he failed to satisfactorily complete his probationary period of employment. In May of 2005, following his termination and prior to the filing of this lawsuit, Duncan filed an appeal of his termination with the Commonwealth of Kentucky Personnel Board. Evidentiary hearings were held and the Recommended Order of Personnel Board Hearing Officer John C. Ryan was is-

sued on March 28, 2007. On May 16, 2007, the Personnel Board accepted the hearing officer's recommendation that Plaintiff be reinstated to his position as Staff Assistant to the OIG.

2    Said memorandum has been referred to as the "hit list."

By this action, Plaintiff asserts claims against Defendants Adams, Fletcher, and Nighbert, in their official and individual capacities, for wrongfully terminating his employment, in violation of *KRS §18A.140*, and for violating his rights to freedom to speech, freedom of association, due process, and equal protection, as guaranteed by *Sections 1, 2,* and *3* of the Kentucky Constitution and the *First* and *Fourteenth Amendments to the United States Constitution.* Plaintiff also asserts claims against Fletcher [*6] for defamation and false light. Plaintiff seeks compensatory damages for the violations of his rights, injunctive relief in the form of reinstatement to his former position, and back pay.

**II. Standard of Review**

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c).*

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id. at 325.* The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).* A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex, 477 U.S. at 325.*

When determining if summary judgment [*7] is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Multimedia 2000, Inc. v. Attard, 374 F.3d 377, 380 (6th Cir. 2004).* A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248; Summers v. Leis, 368 F.3d 881, 885 (6th Cir. 2004).* The evidence should be construed in the light most favorable to the

nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson, 477 U.S. at 255*; *Summers, 368 F.3d at 885*. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express, 341 F.3d 554, 557 (6th Cir. 2003)* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*.

The Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails [*8] to respond, by affidavits or as otherwise provided in Rule 56, "its opportunity is waived and its case wagered." *Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992)*. "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Id.* The court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id. at 407*. Thus, if the defendant meets its burden in moving for summary judgment on the unopposed issues, then summary judgment would be proper. *Cacevic v. City of Hazel Park, 226 F.3d 483, 492 (6th Cir. 2000); Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991)*.

## III. ANALYSIS

### A. Official Capacity Claims

#### 1. Monetary Relief

In *Will v. Michigan Department of State Police, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*, the Supreme Court, evaluating whether state agents could be sued under § *1983*, held "that neither a State nor its officials acting in their official capacities are 'persons' under § *1983*." *Id. at 71*. The Court concluded that "a suit against a state official in his or her official capacity [*9] is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.; see also Matthews v. Jones, 35 F.3d 1046, 1049 n.14 (6th Cir. 1994)* ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.").

Duncan's claims against Defendants in their official capacities are the equivalent of a suit against the Commonwealth. The *Eleventh Amendment to the United States Constitution* preserves the sovereign immunity of the states and bars all claims against them in federal court absent their consent, but does not preclude suits seeking prospective injunctive relief against state officials. *Thiokol v. Dept. of Treasury, Revenue Div., 987 F.2d 376 (6th Cir. 1993)* (citing *Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)*). Therefore, any claims for monetary damages against Defendants in their official capacities will be dismissed.

#### 2. Injunctive Relief

In his complaint, Duncan seeks an injunction mandating that he be reinstated to his position as Staff Assistant to the OIG with all back pay and benefits. Relying on *Ex parte Young*, Duncan asserts that the *Eleventh Amendment* [*10] does not prevent suits for prospective injunctive relief against state officials who violate federal law.

*Young* carved out an exception to *Eleventh Amendment* immunity, holding that "the *Eleventh Amendment* does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985)* (citing *Young, 209 U.S. at 155-56*). In *Green*, the Court explained that it has "refused to extend the reasoning of *Young*, however, to claims for retrospective relief." *Id.* "[T]he *Young* exception is limited to the award of prospective nonmonetary relief, [and] any claim for retroactive relief or damages is barred under the *Eleventh Amendment*." *Lawson v. Shelby County, 211 F.3d 331, 335 (6th Cir. 2000)*.

Duncan alleges that Defendants engaged in conduct that violated federal law when they terminated his employment. He requests as relief that he be reinstated and awarded all back pay and benefits. Duncan's request for monetary relief is clearly barred because remitting back pay and benefits to Duncan would require the payment of funds from the state treasury, not from the personal resources of Defendants, which is precluded [*11] by the *Eleventh Amendment*. Duncan's request for reinstatement, however, is a request for prospective injunctive relief that is not barred by the *Eleventh Amendment*. See *Rogers v. Haley, 421 F. Supp. 2d 1361, 1369-70 (M.D. Ala. 2006)*; see also *Dotson v. Griesa, 398 F.3d 156, 178 (2d Cir. 2005)* (concluding that claim for equitable reinstatement was not barred by sovereign immunity); *Williams v. Kentucky, 24 F.3d 1526, 1544 (6th Cir. 1994)* (holding that reinstatement claim was not barred by *Eleventh Amendment*); *Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985)* (finding that claim for reinstatement was not barred because "[r]einstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll").

The Court was recently informed that on May 16, 2007, the Kentucky Personnel Board accepted the hearing officer's recommendation to reinstate Plaintiff. Plaintiff argues in his supplement response brief [Record No.

64] that the issue of injunctive relief/reinstatement is now moot. The Kentucky Transportation Cabinet has appealed the Personnel Board's ruling to Franklin Circuit Court; therefore, the ruling on Plaintiff's reinstatement [*12] is not final and the issue is not moot.

Duncan's official capacity claims against Governor Fletcher and Jim Adams for the injunctive relief of reinstatement must fail. Pursuant to *KRS 18A.005(1)*, William Nighbert, as Secretary of the Transportation Cabinet, was Duncan's appointing authority while he was employed as a Staff Assistant in the OIG. Defendants Fletcher and Adams do not have the authority to reinstate Plaintiff to his previous position as Staff Assistant; therefore, Plaintiff's claims for injunctive relief against Defendants Adams and Fletcher fail, as they cannot provide the relief requested.

## B. Individual Capacity Claims

Defendants Adams, Fletcher, and Nighbert all contend that the claims against them in their individual capacities should be dismissed because they are shielded from suit by the doctrine of qualified immunity. This Court has previously set forth the applicable law on qualified immunity as follows:

> Generally, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. [*13] In determining whether this standard is met, this Court must engage in a three-step analysis. First, it must determine whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court must consider whether the violation was of a "clearly established right." Finally, the Court must assess whether the defendant's alleged conduct was objectively unreasonable in light of clearly established law. *Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003)*.

*Gritton v. Disponette, No. 05cv75, 2006 U.S. Dist. LEXIS 63611, at *6 (E.D. Ky. Sept. 6, 2006).*

## Due Process

Plaintiff claims he was denied his constitutional right to due process. The *Due Process Clause of the Fourteenth Amendment* provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." *U.S. Const. Amend. XIV*. When analyzing a due process claim, the court undertakes a two-step analysis. First, the court must determine whether the plaintiff has a liberty or property interest that is entitled to due process protection. *Bd. of Curators v. Horowitz, 435 U.S. 78, 82, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978)*. If a plaintiff is entitled to due process, then [*14] the court must determine whether the plaintiff was provided with sufficient notice and the opportunity to be heard. *Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)*.

In the instant case, Plaintiff did not have a property interest in his position as Staff Assistant. Kentucky statues make clear that an individual hired for a classified position does not achieve status or have a property interest in such a position until an initial probationary period has expired. "[A]n employee may serve a six (6) months probationary period when he is initially appointed to the classified service. An employee may be separated from his position, reduced in class or rank, or replaced on the eligible list during this initial probationary period . . ." *KRS § 18A.111*. Even if Plaintiff had a property interest in his employment, he was provided with a meaningful opportunity to be heard, consistent with due process. A hearing officer of the Kentucky Personnel Board conducted a hearing related to Plaintiff's termination, at which Plaintiff was permitted to call witnesses and present evidence. Plaintiff's constitutional right to due process was not violated. Accordingly, summary judgment shall be granted to Defendants [*15] on Plaintiff's due process claims.

## Equal Protection

The *Equal Protection Clause of the Fourteenth Amendment* "is essentially a direction that all persons similarly situated should be treated alike." *Doe v. Michigan Dept. of State Police, 490 F.3d 491, 502 (6th Cir. 2007)(citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985))*. Several classifications of individuals are considered suspect and entitled to heightened scrutiny under the *Equal Protection clause*. Such classifications include those based on race, alienage, national origin, gender, and illegitimacy. *Id. at 503*.

Plaintiff asserts an equal protection claim in his complaint. Plaintiff, however, does not allege that he is a member of any suspect class and does not identify any similarly situated person who was treated differently than himself. Defendants having failed to directly address said claim, the Court cannot grant summary judgment; how-

ever, Plaintiff shall inform the Court why the equal protection claim should not be dismissed.

## Freedom of Association & Freedom of Speech

Patronage dismissals are generally considered unconstitutional violations of a person's right to freedom of association and freedom of speech. *See Elrod v. Burns, 427 U.S. 347, 356-57, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).* However, a public employer may make personnel decisions based on political association if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel, 445 U.S. 507, 519, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980).* This is known as the *Branti* exception. Whether party affiliation is an appropriate requirement "is to be construed broadly, so as presumptively to encompass positions placed by the legislature outside of the 'merit' civil service." *McCloud v. Testa, 97 F.3d 1536, 1542 (6th Cir. 1996)* (citing *Rice v. Ohio Dep't of Transp., 14 F.3d 1133, 1143 (6th Cir. 1994))*. This is known as the *Rice* canon.

Defendants do not dispute that Plaintiff's former position, Staff Assistant to the OIG, was *classified* as a non-political merit position; however, they argue that based on the *Branti* exception, it is *actually* a political position because of the duties and responsibilities it entails. *McCloud* describes four categories of positions which fall into the *Branti* exception, rendering them "political". Defendants contend that Duncan's position as Staff Assistant to the OIG fell [*17] into either category two or three of the *Branti* exception. Category two includes "[p]ositions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated." *McCloud, 97 F.3d at 1557.* Category three positions include "[c]onfidential advisors who spend a significant portion of their time on the job advising category one or category two position-holders on how to exercise their statutory or delegated policymaking authority." *Id.* This Court is not swayed by Defendants' argument. While Duncan's self-described duties as Staff Assistant may have included some supervisory and policy-making responsibilities, the Court declines to question the judgment of the Kentucky Legislature that the position in question is in fact entitled to protection against political patronage dismissal.

In the event that the Court found that Duncan's former position did not fall into the *Branti* exception based upon the job classifications outlined in *McCloud*, Defendants alternatively argued that Plaintiff's probationary status changed the level of protection he enjoyed and made him susceptible to termination based on political patronage. According [*18] to Defendants, because Plaintiff was still in a probationary period at the time of

his termination and had not yet attained civil service protection, his position was political. Therefore, Defendants argue, if Plaintiff were terminated for political reasons, his termination would fall under the *Branti* exception.

Defendants cite to *Miracle v. Gable, 452 S.W.2d 399 (Ky. 1970)* to support their position that Kentucky allows political discrimination against probationary merit system employees. Defendants argue that because *Miracle* states that a probationary employee can be terminated for "any reason, political or otherwise," Plaintiff falls within the exception to the constitutional rule against patronage dismissals. *Id. at 400.* But *Miracle* does not carry the weight Defendants ascribe to it. Unreliable and not on point, the *Miracle* case is more than thirty years old, has never been cited to by a Kentucky court in a published opinion, and interpreted a personnel department rule rather than the merit system statute. Moreover, the statement that a merit employee with probationary status could be fired for political reasons is dicta because the case addressed the timeliness and notice, not the [*19] justification, of the employee's termination. *See id.* In any event, *KRS § 18A.111* explains that during the six-month probationary period, an employee may be terminated and shall not have the right to appeal except as provided by *KRS § 18A.095. KRS § 18A.095(15)(a)* states that "any employee," or even any applicant, "who believes that he has been discriminated against, may appeal to the board." Finally, *KRS § 18A.140* considers political discrimination in the same category as ethnic, gender, disability, and age discrimination. These statutes challenge Defendants' argument and show that Kentucky law does not allow employees, even probationary merit system employees, to be subjected to political discrimination.

Defendants have not presented a viable argument that Duncan's position was "political." The *Rutan-Branti-Elrod* cases and their progeny make clear that the central issue in patronage cases is the nature of the job. *See Rutan v. Republican Party of Ill., 497 U.S. 62, 74, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990); Branti, 445 U.S. at 518; Elrod v. Burns, 427 U.S. 347, 363, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).* When the Sixth Circuit in *Rice* speaks of deference to the judgment of a state's elected officials, it means deference to their determination [*20] of the essential nature of the job. Since the Kentucky state legislature classified Staff Assistant to the OIG as a merit system job, it clearly considered the position non-political, and it strains credulity to argue that a probationary period somehow reverses this determination.

Defendants have now had the opportunity to present their arguments as to qualified immunity. Duncan relies on the "hit list" to support his contention that his constitutional rights were violated when he was terminated because of his political affiliation. Defendants maintain

that Duncan was terminated for failing to satisfactorily complete his probationary period. Relying on a Division of Unemployment Insurance finding, Defendants note that Duncan's employment in the Attorney General's office was also terminated for "failing to perform the work to the employer's satisfaction." Additionally, Nighbert states that he questioned Duncan's judgment, a contention that appears valid considering Duncan's conceded relationship with a subordinate employee while employed in the Attorney General's office. The Court also notes the incongruity in Plaintiff's contention that the very administration who hired him knowing [*21] his political affiliation - and in fact "cleared" his employment despite his ties to Chandler - would, less than six months later, discharge Plaintiff because of his political affiliation with Chandler. There is scant evidence to suggest that Duncan's constitutional rights were violated, and there is in fact appreciable evidence to the contrary; however, there is sufficient evidence to create a genuine issue of material fact regarding the reason for Plaintiff's termination.

Considering that there is a material issue of fact regarding the motivation for Plaintiff's termination, the *Feathers* factors are present. Duncan (1) has alleged that his constitutional rights were violated when he was terminated from his position because he is a Democrat, (2) has shown that the violation involved his clearly established constitutional right to freedom of association and freedom of speech, and (3) has offered sufficient evidence to indicate that what Defendants allegedly did was objectively unreasonable in light of his clearly established constitutional rights. As a result, Defendants are not entitled to qualified immunity on Plaintiff's freedom of association and freedom of speech claims.

### Governor [*22] Fletcher - Executive Immunity

Governor Fletcher argues that he is entitled to executive immunity from Plaintiff's state law claims. Citing *Baker v. Fletcher, 204 S.W.3d 589 (Ky. 2005)*, Governor Fletcher states that Kentucky's highest court has recently indicated that the Governor of the Commonwealth holds the same absolute executive immunity for official acts as did the President in *Nixon v. Fitzgerald, 457 U.S. 731, 102 S. Ct. 2690, 73 L. Ed. 2d 349 (1982)*.

In *Baker*, Kentucky's high court briefly re-visited its opinion in *Yanero v. Davis, 65 S.W.3d 510 (Ky. 2001)* which favorably cited *Nixon v. Fitzgerald* for the proposition that "a chief executive enjoys absolute immunity for official acts taken while in office." *Baker, 204 S.W.3d at 595 n.16*. To the extent that Governor Fletcher was involved in any decision regarding the termination of Plaintiff's employment, such a decision would have been an official act; therefore, Governor Fletcher is entitled to executive immunity for such acts.

Plaintiff also seeks monetary relief against Fletcher in his individual capacity for allegedly defamatory statements regarding the termination of Plaintiff's public employment which were made by Governor Fletcher on The Dave Baker Show. [*23] While Plaintiff disputes Fletcher's argument that the comments were official actions for which Fletcher should be granted immunity, the Court finds otherwise. Governor Fletcher was acting in his official capacity when discussing Plaintiff's termination, which was, and continues to be, a matter of public interest; therefore, Governor Fletcher is entitled to executive immunity against Plaintiff's state law claims of defamation and false light. Accordingly, Governor Fletcher's motion for summary judgment is granted as to Plaintiff's defamation and false light claims.

### IV. CONCLUSION

Accordingly, and for the foregoing reasons,

IT IS ORDERED that Defendants' motions for summary judgment [Record Nos. 31, 41, and 58] be, and the same hereby are, **GRANTED IN PART AND DENIED IN PART** as follows:

(1) That Defendants' motions for summary judgment as to official capacity claims seeking monetary relief be, and the same hereby are, **GRANTED;**

(2) That the motions of Defendants Fletcher and Adams for summary judgment as to Plaintiff's claim for reinstatement be, and the same hereby are, **GRANTED;**

(3) That Defendant Nighbert's motion for summary judgment as to Plaintiff's claim for reinstatement be, and the same [*24] hereby is, **DENIED;**

(4) That Defendants' motions for summary judgment as to Plaintiff's due process claims be, and the same hereby are, **GRANTED;**

(5) That Defendants' motions for summary judgment as to Plaintiff's freedom of speech and freedom of association claims be, and the same hereby are, **DENIED;** and

(6) That Defendant Fletcher's motion for summary judgment be, and the same hereby is, **GRANTED,** to the extent that he seeks executive immunity from Plaintiff's state law claims.

Additionally, **IT IS ORDERED:**

(7) That Plaintiff shall have up to and including September 14, 2007, in which to **SHOW CAUSE** why his claim under the *Equal Protection Clause* should not be dismissed; and

(8) That the stay on discovery be, and the same hereby is, **LIFTED.**

2007 U.S. Dist. LEXIS 65157, *

This the 31st day of August, 2007.

**Signed By:**

*Joseph M. Hood*

**United States District Judge**