UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL, : : : | |
| Plaintiffs, : : | |
| V. : : | CIV. NO. 3:03CV221 (AVC) |
| JOHN G. ROWLAND, ET AL, : : : | |
| Defendants. : | SEPTEMBER 25, 2007 |

**PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR RECONSIDERATION**

Plaintiffs submit this Reply Memorandum to respond to defendants' arguments in their Opposition ("Opp.") to Plaintiffs' Motion for Reconsideration of the Court's dismissal of plaintiffs' claims for monetary damages.

**DISCUSSION**

    A.    **Defendants' Reliance on the Eleventh Amendment Bar on Recovery of "Back Pay" Does Not Support Dismissal of Plaintiffs' Individual-Capacity Claims for Compensatory and Punitive Damages.**

In their Opposition, defendants argue that the Court's decision barring plaintiffs from recovering compensatory or punitive damages from defendants Rowland and Ryan in their individual capacities was correct because the Eleventh Amendment "bars plaintiffs' claims for back-pay." Opp. at 9, citing Dwyer v. Regan, 777 F.2d 825, 836-37 (2d Cir. 1985).

Plaintiffs do not seek to recover "back pay," as that term is used in the cases relied on by defendants. "Back pay" – the unpaid salary (or other accrued compensation) an <u>employer</u> owes its employee – can only be awarded against an <u>employer</u>. The State – not defendants Rowland

and Ryan in their individual capacities – was plaintiffs' employer, and the State is immune under the Eleventh Amendment from an award of "back pay." Dwyer at 836.

Plaintiffs do seek to recover compensatory damages from defendants Rowland and Ryan, including damages for plaintiffs' financial losses and emotional distress. The Supreme Court has made clear that these damages are appropriately awarded under § 1983, Memphis Community School District v. Stachura, 477 U.S. 299, 307 (1986), and the Second Circuit has expressly held that the bar on holding a state official liable for "back pay" does not affect a § 1983 plaintiff's right to recover compensatory damages. Dwyer at 836-37.

The Supreme Court has emphasized that the principal purpose of the damages remedies afforded by § 1983 is to provide compensation for the injuries suffered by individuals victimized by unconstitutional conduct. "'The basic purpose' of § 1983 damages is 'to compensate persons for injuries caused by the deprivation of constitutional rights.'" Stachura at 307, quoting Carey v.Piphus, 435 U.S. 247, 254 (1978).

To that end, the damages available to § 1983 plaintiffs for violations of constitutional rights are "ordinarily determined according to principles derived from the common law of torts." Stachura at 306. Section 1983's damages provisions derive from "the common law system of recovery" with "damages that are *compensatory* – damages grounded in determinations of plaintiffs' actual losses." Id. at 307 (emphasis in original). This damages mechanism, which includes punitive damages for willful constitutional misconduct, serves the statute's twin goals of making victims of "constitutional torts" whole for their injuries and deterring future unconstitutional conduct by governmental actors. Id. at 306-07.

Thus, a §1983 plaintiff is entitled to recover "compensatory damages" for his actual losses, including

> not only out-of-pocket loss and other monetary harms, but also such injuries as "impairment of reputation ..., personal humiliation, and mental anguish and suffering." ... (citation omitted).  See also Carey at 264 (mental and emotion distress constitute compensable injury in § 1983 cases).

Id. at 307; Henry v. Gross, 803 F.2d 757, 768 (2d Cir. 1986) (holding, in action against state official, "It is a basic principle of tort law in general, and of civil rights law in particular, that compensable injuries may include not only monetary losses such as out-of-pocket expenses but also injuries such as 'personal humiliation' and 'mental anguish' [citing Stachura]").

On an individual-capacity claim, a §1983 plaintiff may also recover punitive damages from a state official who intentionally violates the plaintiff's federal rights or acts in callous or reckless disregard of federal rights. Smith v. Wade, 461 U.S. 30, 56 (1983).

Plaintiffs' individual-capacity claims (the first four claims for relief in plaintiffs' Amended Complaint) expressly seek to recover these aspects of compensatory and punitive damages.  Plaintiffs expressly allege that plaintiffs have suffered economic loss, as well as emotional distress, as a result of defendants' claimed violation of plaintiffs' First Amendment rights.[1]  Plaintiffs seek to recover these elements of compensatory damages from defendants "in their individual capacities."[2]

Plaintiffs further allege in each of their individual-capacity claims that defendants "deliberately intended to interfere with" and acted "in intentional and reckless disregard" of

---

[1] Amended Complaint, First Claim, ¶¶55-56, 59; Second Claim, ¶¶62-63, 66; Third Claim, ¶¶56, 59; Fourth Claim, ¶¶62, 65;

[2] Id., Prayer for Relief, ¶¶3, 5, 7.

plaintiffs constitutional rights.[3]  Plaintiffs seek punitive damages from defendants "in their individual capacities" on each of plaintiffs' individual-capacity claims.[4]

The Eleventh Amendment bar on a "back pay" award does not affect a § 1983 plaintiff's right to recover these compensatory and punitive damages on individual-capacity claims against state officials.  In <u>Dwyer</u>, a wrongful termination case against a New York state official, the Second Circuit recognized that while "an award of backpay would necessarily have to be satisfied from State funds" and was, thus, barred by the Eleventh Amendment, Dwyer's individual-capacity claims for compensatory and punitive damages were not affected.  <u>Dwyer</u> at 836.  As the Second Circuit explained:

> Dwyer's request for compensatory and punitive damages stands on different footing from his request for backpay.  The complaint asserts claims against Regan in both his official and his individual capacities, and while we are aware of no theory that could render Regan individually liable for Dwyer's backpay, such is not the case with respect to the claim for damages.  While Regan had no duty in his individual capacity to pay Dwyer's salary, he did have a duty not to deny Dwyer his federally protected right to due process.  Thus, if Dwyer can establish that he requested and was denied a pretermination hearing into his claim that the announced elimination of his position was a sham, there is no Eleventh Amendment impediment to his recovering damages for that denial from Regan.  Similarly, if Dwyer were to establish that he timely requested and was denied a posttermination hearing, there would be no Eleventh Amendment impediment to his being awarded damages for that denial.

<u>Id</u>. at 836-37.

---

[3] <u>Id</u>., First Claim, ¶58; Second Claim, ¶65; Third Claim, ¶58; Fourth Claim, ¶64.

[4] <u>Id</u>. at ¶¶ 60 (First Claim); 67 (Second Claim); 60 (Third Claim); 66 (Fourth Claim); Prayer for Relief, ¶¶4, 6, 8.

The First Circuit articulated this same principle in ruling that a public employee could not recover "back pay" on an individual-capacity claim, but could recover compensatory damages for his lost wages *in the same amount as his back pay*:

> The court cannot award Hernandez back pay against Artau in his official capacity, an award that would come from the Commonwealth's treasury. But, that same sum – the difference between what Hernandez actually earned in his lower position and what he would have earned had he remained director of school – is still an element of Hernandez's compensatory damages.

Hernandez-Tirado v. Arau, 874 F.2d 866, 873 (1st Cir. 1989); accord Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1043 n. 7 (1st Cir. 1988) ("[Back pay] must be paid by or on behalf of the employer *by definition*. ... To say that an 'individual capacity' defendant is liable for 'back pay' is a misnomer; he may be liable for compensatory damages in the same amount (plaintiff's lost wages) ... [parenthetical in original])."

Consistent with these holdings, a § 1983 plaintiff can recover lost wages as an element of compensatory damages in an individual-capacity claim against a state official. See e.g., Gierlinger v. Gleason, 160 F.3d 858, 873-75 (2d Cir. 1998) (§ 1983 state-employee plaintiff who prevailed on individual-capacity claim of unconstitutional termination against state officials entitled to prejudgment interest "to the extent that the damages awarded to the plaintiff represent compensation for lost wages"); Lewis v. Cowen, 979 F.Supp. 99, 102-03 (D. Conn. 1997) (upholding jury verdict awarding lost pay to terminated state employee in § 1983 individual-capacity action against Connecticut state officials), rev'd on other grounds, 165 F.3d 154 (2d Cir.), cert. denied, 582 U.S. 823 (1999); St. George v. Mak, 2000 WL 303249 (D. Conn. 2000) (awarding lost income in § 1983 action against state official on individual-capacity claim

adverse employment action in retaliation in violation of First Amendment for union organizing activity) (copy attached).

Defendants do not explain how the bar on holding them liable for "back pay" justifies dismissal of plaintiffs' claims for compensatory or punitive damages. As defendants now acknowledge, the holding in Luder v. Endicott, 253 F.3d. 1020 (7th Cir. 2001), on which defendants previously relied in their Motion to Dismiss Reply Memorandum, does no more than affirm that individual state officials cannot be held liable for the State's back pay obligations:

> Luder accurately stands for the proposition that a suit, nominally against an individual, is in reality against the state if the relief requested must be paid by the state *as an employer*."

Opp. at 10, n. 11 (emphasis added). As defendants' footnote 11 tacitly admits, Luder does not stand for the proposition that an individual-capacity claim for compensatory damages that includes a claims for lost wages is barred by the Eleventh Amendment.

Plaintiffs' ability to recover compensatory damages for their "out-of-pocket losses and other monetary harms," Stachura at 307, is particularly critical in this case. Because of the delay occasioned by defendants' Motion to Dismiss and unsuccessful interlocutory appeal, the equitable remedy of reinstatement (available on plaintiffs' official-capacity claims) cannot provide relief for the years of lost income the plaintiffs have already suffered. Absent an opportunity for monetary relief (against defendants in their individual capacity), the core goals underlying § 1983 – making a victimized plaintiff whole for his injuries and deterring official misconduct in the future – will be wholly frustrated.

Moreover, even putting aside plaintiffs' claims for the "out-of-pocket losses and other monetary harms" they suffered as a result of defendants' alleged unconstitutional conduct,

plaintiffs are undeniably entitled to recover compensatory damages for the "impairment of reputation ..., personal humiliation, and mental anguish and suffering" defendants' conduct caused, Stachura at 305-06; Carey at 264; Henry at 768; The Irish Lesbian and Gay Organization v. Giuliani, 143 F.3d 638, 650 (2d Cir. 1998) (§ 1983 plaintiffs alleging a First Amendment violation may recover compensatory damages for "impairment of reputation ..., personal humiliation, and mental anguish and suffering"). Defendants do not attempt to justify the dismissal of these aspects of plaintiffs' individual-capacity claims.

Likewise, defendants do not offer any legal rationale for denying plaintiffs the right to seek an award of punitive damages for defendants' alleged willful violations of plaintiffs' First Amendment rights. Indeed, the Second Circuit has made clear that punitive damages may be recovered even absent an award of compensatory damages. New Windsor Volunteer Ambulance Corps., Inc. v. Meyers, 442 F.3d 101, 121 (2d Cir. 2006); Robinson v. Cattaraugus County, 147 F.3d 153, 161 (2d Cir. 1998) ("We have long recognized in § 1983 cases that punitive damages may be awarded even in the absence of a compensatory award").

The Court's Ruling dismissing plaintiffs' individual-capacity claims for monetary damages is directly contrary to established § 1983 damages law and should be reconsidered.

### B. The Interests of Justice Warrant Reconsideration of the Court's Prior Ruling.

Defendants argue that plaintiffs' Motion for Reconsideration should be denied on timeliness grounds. However, this Court retains the unquestioned right to correct an error in a prior ruling at any time before entry of final judgment. "[A] district court is vested with the power to revisit its decisions before entry of final judgment and is free from the constraints of

Rule 60 in so doing ...." Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir. 1996). Consistent with this authority, courts in this District have granted motions for reconsideration outside the Local Rule's ten-day limit where the issues raised in the motion warrant relief. Lopez v. Smiley, 375 F.Supp2d 19, 21 (D. Conn. 2005) (Kravitz, J.); see also Palmer v. Sena, 474 F.Supp.2d 353, 354-55 (D. Conn. 2007) (Hall, J.); Kamasinski v. Judicial Review Counsil, 843 F.Supp 811, 812 (D. Conn. 1994) (Cabranes, J.).

Plaintiffs respectfully submit that the interests of justice warrant reconsideration now. Plaintiffs have moved promptly for reconsideration upon issuance of the Second Circuit mandate rejecting defendants' Eleventh Amendment and legislative immunity challenges to this Court's jurisdiction over plaintiffs' action.

The issue here is whether this case should go forward on an erroneously limited basis that deprives plaintiffs of their right to obtain compensatory damages for their losses. As plaintiffs note above, this issue is particularly important since the equitable remedy of reinstatement (available on plaintiffs' official capacity claims) cannot provide relief for the years of lost income the plaintiffs have already suffered, nor will all of the injured plaintiffs be in a position – five years after their terminations – to accept reinstatement. Thus, absent reconsideration of the dismissal of plaintiffs' claims for compensatory damages, none of the plaintiffs will be able to obtain complete relief and many of the plaintiffs will be unable to obtain any relief.

In their Opposition, defendants contend that they will be prejudiced by the Court's correction of its prior error because the Court did not previously rule on their qualified immunity defense. No such prejudice exists since defendants cannot prevail on a qualified immunity defense at this stage of the proceedings and because defendants will be free, in any event, to re-

assert their defense if the individual capacity claims are reinstated.

Public officials are entitled to qualified immunity for unconstitutional acts only if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000).

Plaintiffs' individual-capacity claims are based on their First Amendment right to be free from retaliation for their union membership and activities (First and Third Claims for Relief) and from retaliation for political association (Second and Fourth Claims for Relief). At the time of the events at issue in this litigation, the right of a public employee to engage in union activity without retaliation had been well-established for over twenty years.[5] The right of a public employee to engage in political association without adverse treatment had been established for even longer.[6] Any contention that defendants are entitled to qualified immunity based on the first prong of the Harlow test is frivolous.

---

[5] Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-65 (1979) (recognizing that public employees and their unions have a protected First Amendment right to engage in union activity); DeLoreto v. Ment, 944 F. Supp. 1023, 1034 (D. Conn. 1996) ("[C]ourts have repeatedly held that discrimination against public employees because of their union membership is actionable under section 1983"); Stellmaker v. DePetrillo, 710 F. Supp. 891, 893 (D. Conn. 1989) ("[T]he state may not abridge the right of public employees to associate in a labor union ..., nor may it retaliate against an employee for doing so"); Lajoie v. Connecticut State Board of Labor Relations, 837 F. Supp. 34, 41 (D. Conn. 1993) (recognizing First Amendment claim where defendants allegedly threatened termination if plaintiff continued union activity); St. George, 2000 WL 303249 (awarding damages to state employees for adverse employment action taken in retaliation for union activity).

[6] Elrod v. Burns, 427 U.S. 347, 362-63 (1976) (public employees discharged or threatened with discharge solely because of their political affiliation state a § 1983 claim); Branti v. Finkel, 445 U.S. 507, 515-16 (1980) (same); Rutan v. Republican Party of Illinois, 497 U.S. 62, 78 (1990) ("Under our sustained precedent, conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition...."); Vezzetti v. Pellegrini, 22 F.3d 483, 486-87 (2d Cir. 1994) ("First Amendment rights are violated when a person holding a nonpolicymaking position is dismissed from employment for political reasons").

In arguing for qualified immunity, defendants rely on the second prong of Harlow, arguing that they were motivated not by First Amendment animus but by budgetary concerns and that it was "objectively reasonable" for them to believe that it was permissible for them to terminate state union employees to deal with a budget crisis. This contention is not, however, cognizable on a motion to dismiss as it would require the Court to reject plaintiffs' well-pleaded allegations of defendants' unconstitutional intent. Locurto v. Safir, 264 F.3d 154, 169-70 (2d Cir. 2001) (at motion to dismiss stage, defendants not allowed to dispute plaintiffs' allegations of defendants' unconstitutional intent); see Aquavia v. Goggin, 208 F.Supp.2d 225 (D. Conn. 2002) (denying motion to dismiss based on second prong of Harlow where defendant seeks to substitute claim of legitimate motivation for firing plaintiff for plaintiff's well-pled allegations that defendant motivated by impermissible First Amendment retaliation); Acevedo-Garcia v. Vera Monroig, 204 F.3d 1, 11 (1st Cir. 2000) (rejecting claim of qualified immunity based on second prong of Harlow where defendants denied they had terminated plaintiffs because of their political affiliations and asserted they had acted for legitimate budgetary reasons).[7]

In any event, defendants will suffer no prejudice from reinstatement of the individual capacity claims since if they truly believe that their qualified immunity defense has merit, they are free to reassert it.

---

[7] Nor does an interlocutory appeal lie from the pretrial denial of defendants' qualified immunity defense since that defense is based on their disputed factual assertions of their good-faith motivation. Locurto at 170 (interlocutory appeal of denial of qualified immunity defense must be dismissed for lack of jurisdiction where appeal based on defendants' disputed version of their intent).

PLAINTIFFS STATE EMPLOYEES
BARGAINING AGENT COALITION,
ET AL,


BY_____
DAVID S. GOLUB  ct 00145
JONATHAN M. LEVINE ct 07584
SILVER GOLUB & TEITELL LLP
184 ATLANTIC STREET
P.O. BOX 389
STAMFORD, CONNECTICUT  06904
 TEL.  (203) 325-4491
 FAC.  (203) 325-3759
 dgolub@sgtlaw.com
 jlevine@sgtlaw.com

## **CERTIFICATION**

I hereby certify that on September 25, 2007, a copy of the foregoing Reply Memorandum in Support of Plaintiffs' Motion for Reconsideration with supporting Exhibits was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ David S. Golub
    DAVID S. GOLUB ct00145
    SILVER GOLUB & TEITELL LLP
    184 Atlantic Street
    P. O. Box 389
    Stamford, CT 06904
    Telephone: 203-325-4491
    Fax: 203-325-3769
    E-mail: dgolub@sgtlaw.com

Westlaw.

Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

▷
St. George v. Mak
D.Conn.,2000.

United States District Court, D. Connecticut.
Ann Kennedy ST. GEORGE
v.
Edwin MAK.
**No. 5:92CV593 (HBF).**

Feb. 15, 2000.

Ruling on Damages, Attorneys Fees and Costs
FITZSIMMONS.
*1 On March 31, 1999, this Court found in favor of plaintiffs Ann Kennedy St. George and Lou Lewis and against the late High Sheriff Edwin Mak [FN1] on plaintiffs' Section 1983 claims that Mak violated their First Amendment rights under the United States Constitution by taking adverse employment action against them in retaliation for their union organizing activity. [Doc. # 169.] A damages hearing was held on June 11, 1999. Edwin Mak appeared to testify.

FN1. High Sheriff Edwin Mak died on November 20, 1999.

DAMAGES: LOUIS LEWIS

Lewis seeks approximately $254,625.15 in damages as follows: [FN2]

FN2. In his Supplemental Memorandum of Law in Support of Damages, Lewis requested, in the alternative, total damages in the range of § 160,000-$543,544.14, calculated as follows:
$12,382-$14,658 total special damages
$75,000-$400,000 compensatory damages
$15,000-$50,000 punitive or exemplary damages
$160,000-$543,544 TOTAL

| | |
|---|---|
| Compensatory Damages: | |
| (Demotion from 6/13-7/10/91) | $ 380.00 |
| ($120/day 7/10/91-12/26/93) | $70,421.92 |
| Subtotal | $70,801.92 |
| (Lost present value) | x.24 |
| | $72,878.93 |
| Interest of 10%: | |
| (12/26/93-2/7/97) | $22,742.22 |
| Total | $ 95,625.15 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

| | |
|---|---|
| Compensatory Damages | |
| Pain and Suffering: | $ 75,000.00 |
| Punitive Damages: | $ 75,000.00 |
| Total Damages Sought | $245,625.15 |

Loss of Present Value/Prejudgment Interest

Mak first objects to plaintiff's claim of loss of present value of $2,007.01 and prejudgment interest of $22,742.22. Upon consideration, the Court *DENIES* plaintiff's request for loss of present value of $2,007.01 and *GRANTS* plaintiff's request for prejudgment interest. However, interest will be awarded pursuant to 28 U.S.C. § 1961; plaintiff's request for interest calculated at 10% is *DENIED*. See *Gierlinger v. Gleason,* 160 F.3d 858, 873 (2d Cir .1998) ("In a suit to enforce a federal right, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court"); *Worthington v. City of New Haven,* 3:94CV609(EBB), 1999 WL 958627, *17 (D.Conn. Oct. 5, 1999) (courts appear to favor the statutory rate pursuant to section 1961, "because it takes into account the effects of inflation, but does not overly compensate the plaintiff").

Mitigation

Defendant also "takes issue with the period of time sought by the plaintiff Lewis as there is no evidence by the plaintiff that he was physically able to return to any duties as a special deputy sheriff on any given date, and no evidence by the plaintiff of any other positions sought to mitigate damages."[Doc. # 173 at 3.] Defendant bears the burden of introducing evidence that plaintiff could have minimized his damages. *Federal Ins. Co. v. Sabine Towing & Transp. Co., Inc.,* 783 F.2d 347, 350 (2d Cir.1986). Defendant failed to carry this burden. His only evidence on the question of mitigation was a reference to Lewis' deposition testimony that he was working part time for United Security at Remington Arms in Bridgeport. Defendant makes no other citation to the record, nor does he propose any documented set-off figure to reduce the compensatory damages. The Court is not required to scour the record or the parties' various submissions to piece together appropriate arguments. See *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994); *Niles v. New York State Office of Mental Retardation and Developmental Disability,* No. 89-cv-598, 1996 WL 743839, *5-6 (N.D.N.Y. Dec.20, 1996). Even assuming that this Court were so inclined (and it is not), the Court ordered the parties to "provide specific citations to the evidence in the record" in their briefs in support of their claims for damages.[FN3][Doc. # 169 at 171.]

> FN3. The Court also notes that defendant's response fails to comply with Local Rule 9(a)(1) which states: "[n]othing in this Rule shall require the Judge ruling on the motion to review portions of the record in response to a motion, where the moving papers do not make specific reference to such portions of the record."D.Conn.L.Civ.R. 9(a)(1). The Rule is clear that the party, not the court, has the obligation to review and cite to specific portions of the record which support his argument.

*2 Accordingly, Lewis is awarded compensatory damages in the amount of $70,801.92 along with prejudgment interest from December 26, 1993 through February 7, 1997, calculated in accordance with 28 U.S.C. § 1961.

"Pain and Suffering"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

Defendant argues, and the Court agrees, that "[t]here is no evidence presented by the plaintiff Lewis as to any pain and suffering endured by him as a result of the defendant Mak's actions. To have the court award compensation based on what the plaintiff concedes is a "sparse" record [FN4] would be nothing more than speculation."[Doc. # 173 at 5.] Plaintiff provides no citation to any evidence in the record in support of his claim for $75,000 for pain and suffering. The Court is sympathetic to plaintiff's argument that "[o]nly the most unfeeling person would have been completely unaffected by Ed Mak's actions."[Doc. # 171 at 4.] However, the Court can not substitute sympathy for proof. Accordingly, no damages are awarded for pain and suffering.

> FN4. Plaintiff states "[u]nfortunately the totality of what Lou Lewis went through is confined to his deposition, and that is sparse."(Pl. Mem., Doc. # 173 at 3.] Plaintiff cites no other testimony or evidence in the trial record to support this damages claim for pain and suffering.

### DAMAGES: ANN KENNEDY ST. GEORGE

St. George seeks approximately $164,658 in damages as follows: [FN5]

> FN5. In her Supplemental Memorandum of Law in Support of Damages, St. George requested, in the alternative, total damages in the range of $102,382 $454,685, calculated as follows:
> $12,382-$14,658 total special damages
> $75,000-$400,000 compensatory damages
> $15,000-$50,000 punitive or exemplary damages
> $102,382-$454,685 TOTAL

| | |
|---|---|
| Compensatory Damages: ($110/day from 10/30-11/27/92) | $ 2,090 |
| (shortfall of $10/day from 11/27/92-1/13/97) | $10,292 |
| Interest of 10%: (11/27/92-1/13/97) | $ 2,276 |
| Total Compensatory Damages | $ 14,658 |
| Pain and Suffering: | $ 75,000 |
| Punitive Damages: | $ 75,000 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

| | |
|---|---|
| Total Damages Sought | $164,658 |

### Compensatory Damages

As a preliminary matter, defendant does not object to plaintiff's wage claim of $2,090 for the period of time she was medically able to work from October 30 through November 27, 1992.

Upon plaintiff's return to duty on November 27, 1992, St. George was assigned as a courtroom bailiff earning $100 per day. Paying $10 less then the per diem rate for a lock-up officer. Defendant argues that St. George's reassignment to a lower paying position is unrelated to the First Amendment violations. St. George seeks $10,292 for the shortfall of $10 per day from her reinstatement on November 27, 1992 through January 13, 1997.

The Court found that Mak told St. George on Monday, November 2, 1992 that she had been fired on May 31, 1992, "for failing to reapply for her position and, because of 'this litigation,' he couldn't reappoint her."[Doc. # 169 at 111.] When Mak subsequently reappointed St. George on November 27, 1992, he did so to a lower paying position. On this record, the Court has already found that St. George's reassignment to a lower paying position is related to the First Amendment violations.[FN6]

> FN6. The Court found:
> Examining the evidence as a whole, the Court is persuaded that St. George was not reappointed because of her complaints of anti-union discrimination. Since her application was submitted at a time when she was not cleared to work, and the Department at one time was contesting her workers' compensation claim, it may have appeared that her non-reappointment would go unnoticed. When she complained, she was quickly reinstated. But her reinstatement was at a per diem rate of $100, ten dollars less than her former pay, a discrepancy for which defendants offered no explanation. Based on this finding that the failure to reappoint was based on St. George's exercise of her First Amendment rights ...
> (Doc. # 169 at 115.]

Accordingly, St. George is awarded $12,382 in compensatory damages for lost compensation. After consideration, the Court also awards prejudgment interest, pursuant to 28 U.S.C. § 1961, from November 27, 1992 through January 13, 1997.

### "Pain and Suffering"

The Court has carefully considered Ms. St. George's testimony in this case, and defendant's argument to consider only Mak's actions and not the acts of Ingeme and Dunham. It is established that St. George was a known union organizer and she suffered adverse consequences for her activity, including failure to reappoint and demotion. *See* Doc. # 169 at 115. After considering the evidence, particularly plaintiff's testimony, the Court awards St. George compensatory damages for the emotional harm engendered by the constitutional violation in the amount of $25,000.

### PUNITIVE DAMAGES (both plaintiffs)

*3 In deciding whether to award punitive damages, a Court must consider the underlying purpose of punitive damages. Punitive damages are discretionary and are designed to punish a defendant for outrageous conduct or to deter him and others like him from similar conduct in the future. Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 2130, 144 L.Ed.2d 494 (1999) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Thus, in deciding whether to award punitive damages, the Court considers whether the defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

the wrongful conduct. The Court also considers whether actual damages, standing alone, are likely to deter or prevent a defendant from again performing any wrongful acts he may have performed, or whether punitive damages are necessary to provide deterrence. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ( "[D]eterrence of future egregious conduct is a primary purpose of both 42 U.S.C. § 1983 ... and of punitive damages"). Finally, the Court considers whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those the defendant may have committed.

In light of this standard, the Court finds that punitive damages against Edwin Mak are not warranted. There is no need for specific deterrence. In 1998, defendant Mak did not seek reelection to the position of High Sheriff; he was obviously in failing health at the damages hearing and, in November 1999, Edwin Mak died. The political process has minimized the need for general deterrence. As of July 1, 1999, Special Deputies are permitted to form a bargaining unit and to collectively bargain. Conn.Gen.Stat. § 6-43. Moreover, proposals to abolish the High Sheriff system in this state or to place control over the special deputies with the Judicial Branch are now before the legislature. The Court has carefully considered the trial record and the parties'

briefs and finds, under these specific circumstances, that an award of actual damages will adequately punish the unconstitutional conduct which occurred while an award of punitive damages would not serve any further public purpose.

POST-JUDGMENT INTEREST

Under 28 U.S.C. § 1961, prevailing plaintiffs are entitled to post-judgment interest on all money judgments obtained through the federal court. "Post-judgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment."*Andrulonis v. United States,* 26 F.3d 1224, 1230 (2d Cir.1994). Defendant will pay post-judgment interest to the plaintiffs pursuant to 28 U.S.C. § 1961.

ATTORNEYS FEES AND COSTS (both plaintiffs)

*4 Plaintiffs seek a total of $313,689.83 in attorneys fees and costs pursuant to 42 U.S.C. § 1988.

| | |
|---|---|
| Attorneys Fees | $302,007.50 |
| Costs and Expenses | $ 11,682.33 |
| Total | $313,689.83 |

The calculation of the reasonable fee to be awarded to a prevailing § 1983 claimant pursuant to 42 U.S.C. § 1988 is to be based principally on a "lodestar" figure, which is arrived at by multiplying "the number of hours reasonably expended on the litigation ... by a reasonable hourly rate."*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The district court must thus examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time

available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts ... In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998) (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235-36 (2d Cir.1985). The party seeking an award of fees has the burden of submitting "evidence supporting the hours worked and rates claimed."*Hensley v. Eckerhart,* 461

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470  
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). An "award of attorneys fees is reviewed only for abuse of discretion."*Gierlinger,* 160 F.3d at 876.

Plaintiffs request attorneys fees at the rate of $250 per hour for 1,291.01 hours spent by Attorney Anthony Slez and fees at the rate of $175 per hour for 276.59 hours spent by Attorney Kevin Boyle. Defendant does not challenge the hourly rates for either attorney. Rather, defendant contends that plaintiff's attorneys' time records are vague, and disputes particular entries as redundant or not reimbursable under 42 U.S.C. § 1988.

Labor Board Hearings

Plaintiff seek fees and costs expended on the Labor Board proceedings. Defendant objects to any fees and costs associated with the administrative proceedings. "The time that is compensable under § 1988 is that 'reasonably expended on the litigation.' "*Webb v. Dyer County Board of Education,* 471 U.S. 234, 242-43, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1983) (citing *Hensley,* 461 U.S. at 433)."[N]othing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit."*Webb,* 471 U.S. at 241. Because § 1983 stands "as an independent avenue of relief" and petitioner "could go straight to court to assert it,"*id.,* attorneys fees incurred from the Labor Board proceedings in this case are not compensable under § 1988. "Congress only authorized the district courts to allow the prevailing party a reasonable attorneys fee in an action or proceeding to enforce § 1988."*Id.* The Court denies plaintiffs' requests for attorneys fees incurred in litigating before the Labor Board. The Court will tax costs for generating Labor Board hearing transcripts which were introduced into the record of the civil rights action. Accordingly, Attorney Kevin F. Boyle's request for attorneys fees for the period of May 28, 1991 through July 30, 1992 in the amount of $17,428.25 and from February 4, 1993 through April 11, 1994 in the amount of $22,496.25 is *DENIED.*Attorney Anthony Slez's request for fees for his appearances at three Labor Board hearings, entry date August 15, 1993, in the amount of $5,768 is also *DENIED.*

*5 Attorney Slez's fee request for May 10, 1993 in the amount of $1,218.75 is *GRANTED* over objection.

Attorney Boyle

Attorney Boyle's request for fees, incurred at trial and for drafting post-trial briefs, from January 8 through February 3, 1997, in the amount of $8,478.75 is GRANTED over objection.

Attorney Anthony Slez

Unless otherwise indicated, attorneys fees and costs that are not objected to by defendant have been *GRANTED.*After extensive consideration, the Court rules on defendant's objections as follows.

Defendant objects to entries of December 31, 1994, February 7, 8, 9, 14-16, 1995 and January 18, 1997, "as unreasonable and excessive as these entries total $40,966.25 for services which are essentially administrative and not required or necessary to advance the causes herein."[Def. Opp. At 3.] After careful consideration, the Court *DENIES* the December 31, 1994 request in the amount of $12,213.50 for cataloguing documents as essentially administrative. The Court *GRANTS* the fee requests of February 7, 8, 9 and 14-16, 1995. The fee request of January 18, 1997 in the amount of $2,437.50 to re-cut the complaints post-trial is *DENIED.*Plaintiffs failed to file a post-trial complaint, despite the Court's order to do so.

The request for fees to review the Rioux file and exhibits, entry date August 29, 1995, in the amount of $2,843.75 is *DENIED* as this fee is unrelated to the Fairfield County cases.

Defendant objects to the entries between January 7 and December 2, 1996, vaguely described as "weekly review to keep fresh and updated."Attorney Slez billed for two hours for each of 51 consecutive weeks at $500 per week. No other activity was entered in the billing records for that period. Plaintiffs' request for these fees in the amount of $25,500 is *DENIED.*The Court *GRANTS* plaintiff's request for fees for December 15 and December 22, 1996 in the amount of $1,000 for "final set-up review and prep."

Finally, defendant objects to the fee entries dated

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d | Page 7
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

October 19 and December 31, 1992; January 6, March 24, June 15, and June 21, 1993; August 23 and September 6, 1995, as "each date lists cumulative time expended for multiple days of services rendered, leaving the defendant unable to determine what was done on any given day to verify the reasonableness of the requested fee."After careful consideration, the Court *GRANTS* the fees requested for October 19 and December 31, 1992; March 24, 1993, August 23 and September 6, 1995. The requested fee for January 6, 1993 in the amount of $13,731.25 is *DENIED* as cumulative and insufficiently distinguished from the entry on December 31, 1992 for essentially the same work in the amount of $16,653. The June 15, 1993 fee request of $15,749.50 for "11 depositions, including prep" is *DENIED* as the description is vague and not susceptible to a determination of whether the time billed was reasonable. Last, the Court *DENIES* the fee request for June 21, 1993 to "appear in court and prep for seven motions to dismiss" as plaintiff was unsuccessful in defending these motions.

*6 Accordingly, the Court grants plaintiffs Lewis and Kennedy St. George's attorneys fees in the amount of $180,036.25.[FN7]Defendant seeks a further reduction of the total attorneys fees for St. George and Lewis' failure to prevail against Warren Tingley and Gary Ingeme, and Peter Mattor's failure to prevail against Ed Mak and Roger Delsin. As to Mak, plaintiffs did not prevail on separate claims regarding association dues under the First Amendment, and claims under the Fifth Amendment, Fourteenth Amendment, the Connecticut Constitution and various state law claims. A plaintiff is a prevailing party in the litigation, within the meaning of § 1988, if he or she has received actual relief on the merits of his or her claim, and a plaintiff "should not necessarily be denied fees for hours expended on interim stages of the case in which a ruling was made in favor of the party against whom she [or] he ultimately prevailed."*Gierlinger v. Gleason,* 160 F.3d 858, 880 (1998) (citations omitted). Mindful of the goal of § 1988 to compensate plaintiffs for what it has reasonably cost to obtain vindication of their meritorious civil rights claims, the Court will make only a small further adjustment, reducing the total attorneys fee to $165,000.

FN7. Attorney Boyle

| | |
|---|---|
| (48.45 hours at $175 per hour) | $ 8,478.75 |
| Attorney Slez | |
| (686.23 hours at $250 per hour) | $171,557.50 |
| | $180,036.25 |

### COSTS

Plaintiffs seek costs in the amount of $11,682.33. The Court *DENIES* plaintiffs' postage charges listed on January 6, February 24 & 26, and March 5, 1993 totaling $44.16, pursuant to D.Conn.L.Civ.R. 17(c)(7)(xvi). The Court *GRANTS* Attorney Boyle's costs of $593.60 for transcripts of the Labor Board proceedings. The Court carefully considered defendant's other objections and declines to reduce costs further. Accordingly, plaintiffs are entitled to litigation costs in the amount of $11,638.17.

### CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 8
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470
**(Cite as: Not Reported in F.Supp.2d)**

The Court notes that its review of this application for damages, fees and costs was hampered and therefore significantly delayed by the plaintiffs' failure to comply with the Court's order that they file memoranda with supporting citations to the record. While the preparation of a transcript is a significant expense (compensable to a prevailing party as costs, however), and can perhaps be dispensed with when proof of damages is accomplished by exhibits properly entered in the record rather than testimony, in this case the Court was required to search its own notes as well as the record, lest plaintiffs be deprived of damages to which they were entitled simply because counsel failed to identify the evidence which supported them.

Similarly, the lack of specific, contemporaneous time records could have resulted in the denial of most of the claim for attorneys' fees. Mindful that plaintiffs' counsel operates in a small firm and lacks the resources of larger firms, the Court has consulted docket sheets and the Court file, and made an effort, based on the ongoing documented activity in the case, to give counsel the benefit of doubt when he made blanket entries covering a week's or month's worth of work. Such a time-consuming re-examination of an inadequately-supported fee application has limits, however. For the reasons set forth above, the Court orders entry of judgment in favor of plaintiff The Estate of Louis A. Lewis against defendant Edwin Mak in the amount of $70,801.92 in compensatory damages with prejudgment interest to be calculated as set forth above. The Court also orders the defendant to pay the plaintiff post-judgment interest on his damages award at the same rate as prejudgment interest.

*7 The Court orders entry of judgment in favor of plaintiff Ann Kennedy St. George against defendant Edwin Mak in the total amount of $37,392 in compensatory damages with prejudgment interest to be calculated as set forth above. The Court also orders the defendant to pay the plaintiff post-judgment interest on her damages award at the same rate as prejudgment interest.

As set forth above, attorneys fees are GRANTED in the amount of $165,000. Costs and Expenses are GRANTED in the amount of $11,638.17.

SO ORDERED at Bridgeport this 11th day of February 2000.

D.Conn.,2000.
St. George v. Mak
Not Reported in F.Supp.2d, 2000 WL 303249 (D.Conn.), 145 Lab.Cas. P 59,470

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.