UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL, | : : : | |
| Plaintiffs, | : : | |
| V. | : : | CIV. NO. 3:03CV221 (AVC) |
| JOHN G. ROWLAND, ET AL, | : : | |
| Defendants. | : | OCTOBER 3, 2007 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR LEAVE TO FILE SUR-REPLY BRIEF**

Defendants' proposed Sur-reply is plainly intended to suggest that complicated issues of qualified immunity warrant denial of plaintiffs' Motion for Reconsideration. As with their prior attempts to assert Eleventh Amendment and legislative immunity, defendants misstate the Court's inquiry <u>at this stage of the proceedings</u>. Equally important, what defendants describe as a <u>qualified immunity</u> defense is, in fact, a defense <u>on the merits</u> that involves disputed issues of fact and intent that can only be adjudicated by the trier.

In their proposed Sur-reply, defendants contend that their termination decisions were not motivated by anti-union animus or retaliation against political opponents. Rather, defendants argue, they were forced to make constitutionally-neutral lay-off determinations to achieve needed budgetary savings to balance the State's FY 03 Budget when the unions would not provide the savings through collective bargaining concessions.

Based on this factual explanation of their conduct and intent, defendants assert that the inquiry on qualified immunity is not whether the law was clearly established that the First

Amendment prohibited defendants from terminating state union employees on account of their union activity or because of their political opposition to then-Governor Rowland.[1] Rather, defendants argue, their right to qualified immunity turns on whether the law was established that state union employees could not be laid off to resolve a budget crisis if their unions refused to grant collective bargaining concessions. (Def. Sur. at 4).

But defendants' articulation of the reason for their conduct and their motivation underlying their termination decisions is *defendants'* – not plaintiffs'– version of the facts and defendants' intent. Plaintiffs do not allege – and do not agree – that the terminations were ordered by defendants to resolve the State's FY 03 Budget crisis or that in deciding which employees to terminate, defendants acted neutrally, without anti-union animus.

Plaintiffs' Amended Complaint makes no reference to the FY 2003 budget deficit. Rather, plaintiffs expressly allege that the terminations were ordered in retaliation for plaintiffs' union activity and were motivated by anti-union animus. Plaintiffs contend that defendants – in demanding <u>long-term</u> collective bargaining concessions and threatening (and implementing) terminations when the concessions were not granted – were seeking to weaken the state employee unions and alter the State's <u>long-term</u> collective bargaining obligations as part of an overall plan to re-structure the State's work force and relationship with the unions for the next 20 years. Plaintiffs assert that defendants' claim that they acted to resolve the FY 03 Budget crisis is pretextual.

---

[1] Defendants do not apparently dispute the well-established case law establishing those propositions cited by plaintiffs. See Pl.Rep.Mem. at 9 & n.5.

Of course, plaintiffs' allegations are, at this point, unproven. But the law is crystal-clear: at this stage of the proceedings, plaintiffs' allegations of defendants' unconstitutional motivation and conduct – not defendants' asserted good faith explanation for their conduct – determine whether the defense of qualified immunity requires dismissal of plaintiffs' individual-capacity claims. Acevedo-Garcia v. Vera Monroig, 204 F.3d 1, 11-12 (1st Cir. 2000) (rejecting claim of qualified immunity – and dismissing attempted interlocutory appeal – where defendants denied they had terminated plaintiffs because of their political affiliations and asserted they had acted for legitimate budgetary reasons).[2]

Moreover, even if the terminations were intended to deal with the budget crisis, plaintiffs do not allege – and do not agree – that defendants' selection of which state employees should be terminated was constitutionally neutral. There were, in 2002-03, approximately 50,000 state

---

[2] Plaintiffs are prepared to present substantial evidence in support of their contentions of defendants' true motivation and that defendants' claim that the terminations were to address the FY 03 Budget crisis is pretextual. This evidence includes the following:

The actual terminations (and the savings from the terminations) bore no reasonable relation to the FY 03 Budget deficit and had little, if any effect on the FY 03 Budget. Many of the terminations did not take effect until after June 30, 2003, and thus could provide no possible savings in FY 03. Defendants further ordered the termination of numerous union employees whose positions were 100% financed by federal grants or industry funding. Those terminations provided no savings in FY 2003. Indeed, numerous of the terminated employees brought successful grievances challenging the State's claim that they were "laid off" for reasons of economic necessity and were ordered reinstated based on a finding that the "lay-offs" were not supported by the required economic necessity. And even with respect to employees whose salary was paid by the State and who were terminated in FY 03, the State was required to pay unemployment compensation, as well as months of accrued vacation and sick pay through and beyond June 30, 2003, again providing no savings in FY 2003.
Moreover, long before the FY 03 Budget crisis, defendants had expressed their desire to restructure the State's union work force and weaken the strength of the state unions. In the fall of 2002, defendants specifically advised the plaintiff-unions that the purpose of the demanded concessions was not to address the FY 2003 budget deficit, but to re-structure the State's long-term relationship with its union work force. To that end, defendants rejected union concessions that would have provided tens of millions of dollars more in FY 03 savings than the terminations afforded. Defendants explicitly admitted in the Fall of 2002 that the terminations would not – and were not intended to – affect the FY 03 Budget crisis.

employees – approximately 40,000 unionized; 10,000 non-union. Plaintiffs allege that defendants intentionally selected only union employees for termination and did so because of anti-union animus.[3]

Even where terminations of state employees are necessary for budgetary reasons, the First Amendment prohibits singling out protected groups for termination based upon their protected status or political positions. Vezzetti v. Pellegrini, 22 F.3d 483, 486-87 (2d Cir. 1994) (First Amendment rights are violated when a public employee's exercise of protected First Amendment rights is a substantial factor in causing his dismissal). Just as defendants could not target Republicans or Democrats – each of whom have protected rights of association under the First Amendment – for lay-offs based on their political affiliation, see Branti v. Finkel, 445 U.S. 507, 515-16 (1980) (public employees discharged or threatened with discharge based on membership in Republican Party state a § 1983 claim); Rutan v. Republican Party of Illinois, 497 U.S. 62, 76-

---

[3] Again, plaintiffs' contentions are supported by substantial evidence. Plaintiffs have developed evidence that tefendants directed that the terminations be implemented in ways to impose the most pain on the unions. Defendants ordered state agencies and departments to terminate a specified numbers of union employees in each particular union without regard to programmatic needs of the programs, departments or agencies. They further directed agency and department heads to terminate union employees with the most seniority and to structure terminations so as to minimize the bumping rights of senior union members. Although, pursuant to statute, their respective collective bargaining agreements, and the SEBAC Placement and Training Agreement, all laid-off union employees enjoy the right to be recalled to their or newly-vacated positions, defendants publically announced that the terminated union members would never be brought back for re-employment.

Plaintiffs have, further, developed evidence that where two employees – one union and one non-union – held similar positions in the state work force, defendants instructed agency heads to terminate the union employee. Similarly, plaintiffs have obtained defendants' written directive with respect to probationary employees, instructing agency heads that where two probationary employees were to fill similar positions, the probationary employee whose position was unionized was to be terminated. Defendants, further, ordered "lay-offs" of lieutenants in the State of Connecticut Department of Corrections ["DOC"] who had recently voted to unionize and to recognize plaintiff CSEA as their union representative. During the negotiations for their first contract, the DOC lieutenants were advised that they would not have been subjected to lay-offs if they had not voted to join the union.

78 (1990) (even when public employee has no vested right to promotion, recall or transfer, the First Amendment forbids denial of position based on political affiliation or support), so defendants were not allowed to single out union members – who also have a protected right of association, Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-65 (1979) – for lay-offs because of their union status.

Similarly, the First Amendment affords state employees the right to support candidates of their choosing and prohibits terminations based on their political opposition to an elected Governor.  See e.g., Vezzetti at 486-87 (First Amendment rights are violated when a public employee's political affiliation is a substantial factor in causing his dismissal); Laidley v. McClain, 914 F.2d 1386, 1393, 1395 (10th Cir. 1990) (rejecting defendants' claim to qualified immunity for budgetary termination where evidence showed employee's political support of defendant's primary election opponent was a factor in the termination decision).

It is undisputed that the terminations ordered by defendants were only of members of state unions that supported Governor Rowland's opponent in the 2002 election and that no terminations were ordered in the one union that supported Governor Rowland in that election. While defendants apparently deny that they were motivated by a desire to retaliate against their political opponents, plaintiffs expressly allege such improper retaliation, and such allegations absolutely control, at this stage of the proceedings, for qualified immunity purposes.  Acevedo-Garcia at 11-12; Aquavia v. Goggin, 208 F.Supp.2d 225 (D. Conn. 2002) (denying motion to dismiss on qualified immunity grounds where defendant seeks to substitute claim of legitimate motivation for firing plaintiff for plaintiff's well-pled allegations that defendant motivated by impermissible First Amendment retaliation)

And, equally important, what defendants assert as a basis for qualified immunity is, in reality, their defense on the merits. Plaintiffs do not dispute that the State has the right to make neutral lay-off determinations necessitated by a budget crisis. If defendants establish that they made neutral lay-off decisions based on economic necessity occasioned by the FY 03 budget crisis, there is, quite simply, no constitutional violation.

In short, (i) defendants' asserted theory of plaintiffs' constitutional claims is not the theory that plaintiffs assert or accept; (ii) defendants' asserted explanation for their conduct and intent is disputed by plaintiffs and the dispute cannot be resolved on a motion to dismiss (or on an interlocutory appeal); and (iii) ultimately, defendants' asserted theory of "qualified immunity" is, in fact, defendants' defense on the merits for the jury to resolve at trial.

Whether or not the Court chooses to allow defendants' Sur-reply, the arguments advanced therein do not warrant denial of plaintiffs' Motion for Reconsideration.

                PLAINTIFFS STATE EMPLOYEES
                BARGAINING AGENT COALITION,
                ET AL,


                BY /s/ David S. Golub
                   DAVID S. GOLUB  ct 00145
                   JONATHAN M. LEVINE ct 07584
                   SILVER GOLUB & TEITELL LLP
                   184 ATLANTIC STREET
                   P.O. BOX 389
                   STAMFORD, CONNECTICUT  06904
                   TEL.  (203) 325-4491
                   FAC.  (203) 325-3759
                   dgolub@sgtlaw.com
                   jlevine@sgtlaw.com

**CERTIFICATION**

I hereby certify that on October 3, 2007, a copy of the foregoing Response to Defendants' Motion for Leave to File Sur-reply Brief with supporting Exhibits was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

       /s/ David S. Golub
       DAVID S. GOLUB ct00145
       SILVER GOLUB & TEITELL LLP
       184 Atlantic Street
       P. O. Box 389
       Stamford, CT 06904
       Telephone:  203-325-4491
       Fax: 203-325-3769
       E-mail:  dgolub@sgtlaw.com