UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING | : | CIVIL ACTION NO. |
| AGENT COALITION, ET AL. | : | |
|     Plaintiffs, | : | 3:03CV221 (AVC) |
| | : | |
| V. | : | |
| | : | |
| JOHN G. ROWLAND, ET AL., | : | |
|     Defendants. | : | September 28, 2007 |

**DEFENDANTS' SUR-REPLY IN SUPPORT OF THEIR OPPOSITION
TO PLAINTIFFS' AUGUST 22, 2007 MOTION FOR RECONSIDERATION**

Defendants submit this sur-reply brief to address two points raised in Plaintiffs' September 25, 2007 Reply Brief in Support of Their Motion for Consideration ("Pls' Reply Br.").

**A.   Granting Reconsideration Would Be Extraordinary In These Circumstances**

The cases cited in Plaintiffs' Reply Brief where courts have granted untimely motions for reconsideration (id. at 8) do not bear comparison to Plaintiffs' extraordinary delay in this case. The motions in those cases ranged from two days late to twenty-two days late;[1] Plaintiffs' most recent motion for reconsideration was filed more than eighteen months after this Court's January 18, 2006 Ruling.

---

[1] In Palmer v. Sena, 474 F. Supp. 2d 353, 354 (D. Conn. 2007), the court considered an untimely motion to reconsider a January 30, 2007 ruling "in light of the availability of new evidence." Palmer filed his motion for reconsideration on February 15, 2007, making it untimely by two days. Id. In Lopez v. Smiley, 375 F. Supp. 2d 19 (D. Conn. 2005), the court considered an untimely motion that pertained to an October 5, 2004 ruling. Lopez filed the motion on November 10, 2004, and the court considered the motion in part because the defendants did not claim any prejudice by the delay. Id. at 21. Finally, in Kamasinski v. Judicial Review Counsel, 843 F. Supp. 811 (D. Conn. 1994), the court reconsidered a September 30, 1993 ruling. Id. at 812. The motion for reconsideration was filed on October 18, 1993, and was filed because the plaintiff had amended his complaint on October 15, 1993. Id.

As discussed further below, reconsideration would prejudice Defendants because they were precluded from pursuing their qualified immunity defense in this Court or on appeal. Plaintiffs have not sought leave of court to file their untimely motion nor have they offered any reason for the delay. In these circumstances, particularly where Plaintiffs had relied on this Court's previous ruling *in support* of their arguments opposing Defendants' motion to stay discovery (see Defs' Opp. Br. at 3-4), this Court should deny Plaintiffs' untimely motion. See, e.g., Lillbask ex rel. Mauclaire v. Sergi, 193 F. Supp. 2d 503, 510 (D. Conn. 2002) (citing the law of the case doctrine, and denying motion for extension of time *nunc pro tunc* and corresponding motion for reconsideration as untimely because "[l]ack of bad faith and of prejudice, while relevant, is not sufficient to justify the unreasonably long [ten month] delay").

**B.    Defendants Would Be Prejudiced If This Court Reconsiders Its Ruling Because They Were Precluded From Asserting a Qualified Immunity Defense While this Case Was On Appeal with a Stay of Discovery**

Plaintiffs misconstrue the nature and legitimacy of Defendants' qualified immunity defense, and the resulting prejudice if this Court reconsiders its ruling. (Pls' Reply Br. at 9.) As discussed in Defendants' Opposition brief at 6-7, qualified immunity is a multi-step inquiry that requires the Court to decide, first, whether the plaintiff has alleged a violation of a constitutional right and, second, whether that right was "clearly established" at the time the action was taken. See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999).

Here, Plaintiffs contend that Defendants cannot prevail on a qualified immunity defense because "[a]t the time of the events at issue in this litigation, the right of a public employee to engage in union activity without retaliation had been well-established for over twenty years." (Pls' Reply Br. at 9.) That broad and obvious proposition, however, does not establish a constitutional violation. Instead, this Circuit has made clear that, at the outset of the qualified immunity inquiry, the alleged constitutional right at issue must be defined with specificity and

not in the abstract.  See Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999) (reversing judgment on qualified immunity grounds because, although the plaintiff-employee alleged that he was terminated in retaliation for expressing First Amendment rights, the circumstances of his termination did not violate the First Amendment).  As the Court in Lewis noted:

> The district and magistrate judges defined the [First Amendment] right in question far too broadly.  The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech.  Such an inquiry requires that a court define the constitutional right with some specificity.[2]

Id. at 167.

In this case, the relevant inquiry is not whether Plaintiffs have a First Amendment right "to engage in union activity without retaliation."  (Pls' Reply Br. at 9.)  That broad proposition is

---

[2] Indeed, it is well established that the "constitutional right" at issue must be narrowly defined in the context of each case; otherwise, a plaintiff could *always* plead a constitutional violation:

> The operation of [the qualified immunity] standard . . . depends substantially upon the level of generality at which the relevant "legal rule" is to be identified.  For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right.  Much the same could be said of any other constitutional or statutory violation.  But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.  Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. . . .  It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Anderson v. Creighton, 483 U.S. 635, 639-40 (1987); see Lewis, 165 F.3d at 166-67; Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992).

irrelevant for the qualified immunity analysis.  (See footnote 2, supra.)  Rather, the relevant inquiry is whether these particular Plaintiffs had a First Amendment right not to be laid-off if their unions did not agree to contract concessions.

Plaintiffs claim that, because State-employee layoffs were limited to members of unions that did not grant concessions, the layoffs constitute unconstitutional retaliation based on their exercise of their protected right to join a union.  (Amended Complaint, ¶¶ 42-45.)  Creating a First Amendment right in this context, however, would turn the collective bargaining process on its head.  Under the collective bargaining laws, the State can bargain with its unionized employees over the price at which those employees will sell their labor to the State only through the unions.  If Plaintiffs are correct, when a union refuses to lower that price, the State cannot respond by buying less of the labor that that union's membership seeks to sell.[3]  Rather, according to Plaintiffs, the First Amendment requires the State to bargain with a union but to impose the cost of any particular union's failure to agree on its entire workforce, not just on that union's membership.  It is not surprising that the Plaintiffs have consistently failed to cite

---

[3] The collective bargaining agreements explicitly give the State that right.  Each collective bargaining agreement between the State and the plaintiff unions included a statement of management rights, such as:

> [T]he State reserves and retains, whether exercised or not, all the lawful and customary rights, powers and prerogatives of public management.  Such rights include but are not limited to … determining the mission of an agency and the methods and means necessary to fulfill that mission, including the contracting out of or the discontinuation of services, positions or programs in whole or in part; … the suspension, demotion, discharge or any other appropriate action against its employees; [and] the relief from duty of its employees because of lack of work or for other legitimate reasons.

(E.g., Collective Bargaining Agreement between State and CEUI for Maintenance and Service Unit (NP-2), Art. 5, Sec. 1, copy attached as Ex. C.)

"clearly established" authority, or indeed any authority, requiring this result.[4] Indeed, the only relevant authority leads in the opposite direction.[5]

In the Court's January 18 Ruling, because of its ruling on the Eleventh Amendment, the Court did not decide whether Defendants' alleged conduct amounted to a First Amendment violation. (Jan. 18, 2006 Ruling at 15.) Nor did the Court decide, had Plaintiffs alleged a viable First Amendment violation (which it must find *before* proceeding further on the qualified immunity analysis), whether those rights were "clearly established" in the *specific context* of this case or whether Defendants' conduct was "objectively reasonable" given the complete absence of case law showing that a mass layoff would amount to a First Amendment violation. (See Defs' Opp. Br. at 8-9); cf. Whalen v. Mass. Trial Court, 397 F.3d 19, 27-28 (1st Cir. 2005) (defendant entitled to qualified immunity because an "objectively reasonable . . . official could have drawn the conclusion - albeit incorrectly" that a budget-driven layoff in which individual performance was considered did not trigger procedural due process right to a hearing); X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 67 (2d Cir. 1999) (on a motion to dismiss, finding no constitutional violation under qualified immunity analysis, in part, because no cases had

---

[4] As the Supreme Court has indicated, to overcome immunity, plaintiffs must identify cases holding that "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand. . . ." See Saucier v. Katz, 533 U.S. 194, 202 (2001); Driebel v. City of Milwaukee, 298 F.3d 622, 651 (7th Cir. 2002) ("The law is 'clearly established' if 'various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand.'").

[5] The Second Circuit has recognized, for instance, that there is no First Amendment violation where continued employment was conditioned on leaving one union and joining another union of the employer's choice. See Jensen v. Farrell Lines, Inc., 625 F.2d 379, 387-90 (2d Cir. 1980); cf. Sacco v. Pataki, 982 F. Supp. 231, 242 (S.D.N.Y. 1997) (on a motion to dismiss, State's decision no longer to recognize a particular union does not violate First Amendment rights, even where union members alleged, among other things, that that they were terminated because of their "public . . . opposition to the abrogation of their collective bargaining agreement").

recognized the alleged First Amendment and Equal Protection violations). Granting Plaintiffs' motion—filed 581 days after this Court's January 18, 2006 Ruling—would cause prejudice because Defendants would be forced to relitigate the same issues that should have been ruled on before the beginning of discovery, either in this Court or in the Second Circuit.[6]

**C.   Conclusion**

For the reasons explained above and in Defendants' Opposition Brief, this Court should deny Plaintiffs Motion for Reconsideration.

---

[6] Plaintiffs' assertion that Defendants could not have immediately appealed based on a denial of qualified immunity is wrong. (Pls' Reply Br. at 10 n.7.) Whether a constitutional right exists and is "clearly established" is a pure question of law over which there is immediate appellate jurisdiction. (See Defs' Opp. at 6-8.) In its January 18, 2006 Ruling, the court appeared to assume that Plaintiffs had adequately alleged a constitutional violation and treated the question whether the allegedly violated constitutional right was clearly established as identical to the question of the right's existence. Accordingly, it concluded that disputed issues of fact prevented it from reaching the qualified immunity defense. (Jan. 18, 2006 Ruling at 15.) These *legal conclusions* were immediately appealable. See, e.g., X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 67 (2d Cir. 1999) (on a motion to dismiss, "[a] district court's perceived need for discovery does not impede immediate appellate review of the legal questions of whether there is a constitutional right at all and, if so, whether it was clearly established at the time of the alleged conduct, for until 'these threshold immunity question[s are] resolved, discovery should not be allowed'"); Mozzochi v. Borden, 959 F.2d 1174, 1177 (2d Cir. 1992) ("The district court's denial of the defendants' motion for summary judgment based on qualified immunity, to the extent that it assumed that the rights allegedly violated were constitutionally protected, turned on a question of law and thus appellate jurisdiction is appropriate.").

-7-

        DEFENDANTS,
        JOHN G. ROWLAND AND
        MARC S. RYAN,


By:  /s/ Douglas W. Bartinik_____
    Allan B. Taylor (ct05332)
    Douglas W. Bartinik (ct26196)
    Day Pitney LLP
    242 Trumbull Street
    Hartford, Connecticut 06103-1212
    (860) 275-0100
    (860) 275-0343 (fax)
    *dwbartinik@dbh.com*
    Their Attorneys.


## **CERTIFICATION**

     I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court' s CM/ECF System.

        /s/ Douglas W. Bartinik_____
        Douglas W. Bartinik