UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE EMPLOYEES BARGAINING<br>AGENT COALITION, ET AL, :<br>:<br>Plaintiffs, :<br>:<br>V. :<br>:<br>JOHN G. ROWLAND, ET AL, :<br>:<br>Defendants. : | <br><br><br><br><br><br>CIV. NO. 3:03CV221 (AVC)<br><br><br><br>MAY 8, 2008 |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT<br>OF MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT**

The issue presented by plaintiff's Motion for Entry of Partial Final Judgment is whether plaintiffs are to be afforded an opportunity to correct this Court's erroneous ruling that the Eleventh Amendment bars plaintiffs' individual capacity claims against defendants Rowland and Ryan.

There is no serious dispute that the Court's ruling striking the individual capacity claims on Eleventh Amendment grounds because of the State's potential liability to pay any large verdict was erroneous. See Hafer v. Melo, 502 U.S. 21, 25-31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal' liability on state officials under § 1983");[1] Huang v. Johnson, 251 F.3d 65, 70 (2d Cir. 2001) (reversing

---

[1] Consistent with Hafer, the Second Circuit has repeatedly held that state officials sued in their individual capacities have no Eleventh Amendment protection from liability for § 1983 damages:

> [T]he Eleventh Amendment does not extend to a suit against a state official in his [or her] individual capacity, even when the conduct complained of was carried out in accordance with state law.

Ford v. Reynolds, 316 F.3d at 356, quoting Berman Enters. v. Jorling, 3 F.3d 602, 606 (2d Cir. 1993);

dismissal of individual-capacity claims premised on State's likely liability for $50 million damages sought because "the fact that the award sought by Huang is so large that appellees might not be able to pay it on their own does not transform the claim into one against appellees in their official capacities").[2]

In opposing plaintiffs' previous Motion for Reconsideration of the Court's ruling and in opposing plaintiffs' Motion for Entry of Partial Final Judgment, defendants have not attempted to defend the merits of the Court's ruling.[3]  Indeed, plaintiffs doubt that defendants' counsel would sign a Rule 11 pleading contending that the Court's ruling is supportable under existing law.

---

accord, Yorktown Medical Laboratory, Inc. v. Perales, 948 F.2d 84, 88-89 (2d Cir. 1991) ("The Eleventh Amendment bar, by definition, only applies to official capacity suits"); Dube v. State University of New York, 900 F.2d 587 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991) ("The Eleventh Amendment, however, provides no immunity for state officials sued in their personal capacities").

[2] Accord, Berman Enterprise v. Jorling, 3 F.3d at 606 (dismissal of individual-capacity claims for monetary damages on Eleventh Amendment grounds because of State's enormous potential exposure for paying judgment erroneous).  Decisions in other circuits are in accord.  See e.g., Sales v. Grant, 224 F.3d 293, 298 (4th Cir. 2000) ("it is the [defendant's] potential legal liability, rather than its ability or inability to require a third party to reimburse it, or discharge its legal liability in the first instance, that is relevant ..."); Benning v. Board of Regents, 928 F.2d 775, 778-79 (7th Cir. 1991) ("the state cannot manufacture immunity for its employees simply by volunteering to indemnify them"); Jackson v. Georgia Department of Transportation, 16 F.3d 1573, 1577-78 (11th Cir. 1994) (same); Greiss v. Colorado, 841 F.2d 1042, 1046-47 (10th Cir. 1988) (same); Spruytte v. Walters, 753 F.2d 498, 512 * n. 6 (6th Cir. 1985) (same), cert. denied, 474 U.S. 1054 (1986); Demery v. Kupperman, 735 F.2d 1139, 1146-49 (9th Cir. 1984), cert. denied, 469 U.S. 1127 (1985) (same).

[3] Defendants do not even try to defend the Court's ruling in their opposition to plaintiffs' pending Motion.  Likewise, in their objection to plaintiffs' Motion for Reconsideration, defendants did not defend the Court's decision to strike plaintiffs' damages claims, although defendants did assert – as plaintiffs had conceded – that plaintiffs were properly barred from recovering "back pay."  See Figueroa-Rodriguez v. Aquino, 863 F.2d 1037, 1043 n. 7 (1st Cir. 1988) ("[Back pay] must be paid by or on behalf of the employer *by definition.* ... To say that an 'individual capacity' defendant is liable for 'back pay' is a misnomer; he may be liable for compensatory damages in the same amount (plaintiff's lost wages) ... [parenthetical in original]).

Rule 54(b) provides a party with two potential avenues for obtaining review of a decision that disposes of an entire claim (but not of the entire case). First, the Rule expressly provides that where – as here – no judgment has been entered, the District Court "may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights." (emphasis added). Notwithstanding the clear provision of the Rule, defendants objected to plaintiffs' Motion for Reconsideration on the ground that plaintiffs' Motion was not filed with ten days of the Court's Ruling, and this Court denied plaintiffs' Motion solely on that basis. [See March 24, 2008 endorsement order to Dkt Entry 117.]

Second, the Rule provides that the District Court may direct entry of a final judgment as to the final claims and/or parties, affording the affected parties a right to an immediate appeal. In light of this Court's denial of their Motion for Reconsideration, plaintiffs seek entry of such a judgment so that they may pursue that appeal.

Defendants have objected to plaintiffs' Motion for Entry of Partial Judgment, claiming that plaintiffs have been guilty of "extraordinary delay" in seeking to overturn the ruling. Plaintiffs believe it is appropriate to respond to this argument by identifying the reasons for the delay in this action.

The principal cause of delay in resolution of this action was caused by the District Court's failure to rule on defendants' Motion to Dismiss for over 28 months, from August 2003 (when the motion was fully briefed) through January 16, 2006 (when this Court issued its decision). During that period, defendants refused to participate in discovery and sought and obtained a stay of proceedings until their motion was decided. During the 28 month period that the motion remained *sub judice*, plaintiffs repeatedly sought a ruling from the court, to no avail.

After this Court issued its Ruling on Defendants' Motion to Dismiss, defendants moved to continue the stay pending an interlocutory appeal. Plaintiffs objected to defendants' motion for stay, noting that no ground of defendants' proposed appeal supported appellate jurisdiction. In particular, plaintiffs noted that the Court's denial of defendants' claim to legislative immunity turned on disputed issues of fact and was, therefore, not immediately appealable.[4]

To convince this Court to order a stay, defendants represented that they were not seeking to have a factual dispute resolved by the Second Circuit, which they acknowledged "would obviously be improper."[5] Rather, defendants argued, they intended to argue on appeal that they were entitled to legislative immunity as a matter of law.[6] Defendants further asserted that their claim to Eleventh Amendment immunity was also immediately appealable since they intended to argue on appeal that this action constituted an "unprecedented application of Ex parte Young ... [that] would unconstitutionally infringe on the State's special sovereignty interests," and was thus barred under Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997).[7] Based on defendants' representations, this Court granted a stay pending the outcome of the appeal.

Defendants did not, however, pursue either of the grounds of appeal that they represented they would. Contrary to what they told this Court, defendants' legislative immunity argument on appeal was expressly premised on defendants' disputed factual contention that the terminations at

---

[4] See Plaintiffs' Memorandum in Opposition to Defendants' Motion to Stay Discovery Pending Appeal dated February 23, 2006 at 6-8.

[5] See Defendants' Reply to Plaintiffs' Memorandum in Opposition to Motion to Stay Discovery Pending Appeal dated March 9, 2006 at 1.

[6] Id.

[7] Id. at 7.

issue were ordered pursuant to defendants' "legislative" authority to alleviate Connecticut's FY 2003 budget deficit. With respect to their Eleventh Amendment argument on appeal, defendants did not contend that this action was barred by the Eleventh Amendment because it infringed on "special sovereignty interests." Rather, the only Eleventh Amendment contention that defendants raised before the Second Circuit was an assertion (never raised in this Court and for which no record existed) that plaintiffs' claims were "moot" since the jobs from which plaintiffs were terminated no longer existed.

Not surprisingly, the Second Circuit dismissed defendants' appeal of this Court's denial of their motion to dismiss on legislative immunity grounds for lack of appellate jurisdiction, SEBAC v. Rowland, 494 F.3d 71, 94 (2d Cir. 2007),[8] and summarily affirmed the denial of defendants' motion to dismiss on Eleventh Amendment immunity grounds. Id. at 96-97. But defendants' appeal had the effect of staying this action for an additional 20 months – from January 16, 2006 through August 14, 2007, when the Second Circuit's mandate was issued and entered in this Court.

Defendants contend that plaintiffs could have sought interlocutory review of the Court's ruling in 2006, in conjunction with defendants' appeal. While technically correct, defendants' contention ignores that plaintiffs were seeking to obtain a ruling from the Second Circuit on defendants' appeal as soon as possible, so that the stay of proceedings that had prevented

---

[8] With respect to defendants' legislative immunity defense, the Second Circuit further ruled, "as a matter of law, that legislative immunity presents no bar to plaintiffs' claims insofar as plaintiffs seek placement into *other, existing positions* in the State workforce." Id. at 94 (italics in original). The Second Circuit affirmed this Court's denial of defendants' motion to dismiss as to this aspect of plaintiffs' claims and "direct[ed] the court, on remand, to consider this claim without regard to defendants' asserted legislative immunity defense." Id.

discovery for over three years could be lifted. The <u>practical</u> effect of seeking to add an appeal by plaintiffs to defendants' appeal would have been to delay disposition of defendants' appeal, as the paperwork on the two appeals was processed (and, presumably, consolidated) by the Second Circuit; as the additional briefing and reply briefing by the parties on plaintiffs' appeal took place; and as the Second Circuit considered the additional issue raised by plaintiffs' appeal.

Defendants' professed concern <u>now</u> with delay is ironic, if not incredibly cynical. Defendants had no concern about delay when they successfully blocked any discovery or proceedings in this action unrelated to their Motion to Dismiss for over 4½ years, from January 2003 (when this action was filed) until August 2007. Defendants do not claim they will suffer any prejudice from allowing plaintiffs' proposed appeal, nor do they claim that discovery – which can proceed apace while the appeal is pursued – will be unduly delayed. Indeed, plaintiffs note that defendants have yet to produce even <u>one</u> document or interrogatory answer in response to plaintiffs' discovery pleadings, nor has even one deposition yet gone forward in this action.

In their opposition to plaintiffs' Motion for Entry of Partial Judgment, defendants make the further argument that plaintiffs should not be allowed to seek review of the dismissal of plaintiffs' individual capacity claims since "two alternative grounds exist to support that ruling" – qualified immunity and legislative immunity. (Def. Mem. at 1-4). This argument is simply wrong as a matter of law.

Defendants' claims to immunity – to the extent they are bona fide[9] – are fact-bound and can only be determined, on the basis of the trier's resolution of disputed evidence, at trial. Indeed, that is precisely what the Second Circuit held in dismissing defendants' legislative immunity appeal for lack of appellate jurisdiction – that any entitlement to legislative immunity

---

[9] In arguing for qualified immunity, defendants have asserted that it was objectively reasonable for them to believe that because they were dealing with a budget crisis, they were permitted to make termination decisions based on the union status of the state employees (i.e, it was permissible, because of the budget crisis for defendants to terminate only union members). While plaintiffs dispute defendants' claimed motivation for the terminations, it is difficult to believe that defendants seriously contend that qualified immunity lies *even on their disputed version of the facts*.

Do defendants truly intend to argue that they believed that budgetary termination decisions could be made on the basis of plaintiffs' membership in an association protected by the First Amendment? Membership in a union, like membership in a political party, is protected by the First Amendment's guarantee of freedom of association. "The First Amendment protects the rights of employees to associate and participate in labor unions," DeLoreto v. Ment, 944 F. Supp. 1023, 1034 (D. Conn. 1996), and "protects the right of [unions] to engage in advocacy on behalf of their members." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 464-65 (1979). Just as it has long been held that public employee hiring and firing decisions may not be made on the basis of party affiliation, see Rutan v. Republican Party of Illinois, 497 U.S. 62, 78 (1990) (governor's policy of conditioning state work force employment on party affiliation violates First Amendment); Branti v. Finkel, 445 U.S. 507, 516 (1980) (firing public employees based on party affiliation violates the First Amendment), so the First Amendment prohibits the State from firing public employees based on their union status. DeLoreto at 1034 ("[C]ourts have repeatedly held that discrimination against public employees because of their union membership is actionable under section 1983").

Moreover, with respect to defendants' claim to legislative immunity, the Second Circuit expressly ruled that to establish legislative immunity, defendants would be required to establish that their actions were procedurally (as well as substantively) legislative – i.e., that defendants complied with the statutory requirements of Conn. Gen. Stats. § 4-85(b)(2) that they claim rendered their conduct legislative. SEBAC v. Rowland at 90-91. In this regard, the court rejected defendants' contention that their acts must be deemed "legislative" if they were directed to resolving Connecticut's budget crisis. As the court explained, establishing procedural compliance is necessary "before high-level *executive* branch officials in the State of Connecticut can claim the protections of an immunity traditionally accorded to members of the *legislative* branch." Id. at 89 (emphasis in original). Plaintiffs believe that it is undisputed that defendants never invoked § 4-85(b)(2) as the basis for the terminations and did not comply with the requirements of the statute in ordering the terminations, thus rendering their claim to legislative immunity unavailing.

that defendants might have requires discovery and cannot be determined at the pretrial stage. See SEBAC v. Rowland, 494 F.3d at 90-93. And that is precisely what courts have routinely held in rejecting defendant-officials' attempts to litigate their entitlement to qualified immunity at the pretrial stage. See Acevedo-Garcia v. Vera Monroig, 204 F.3d 1, 11 (1st Cir. 2000) (rejecting pre-trial claim of qualified immunity where defendants denied they had terminated plaintiffs because of their political affiliations and asserted they had acted for legitimate budgetary reasons); Aquavia v. Goggin, 208 F.Supp.2d 225 (D. Conn. 2002) (denying motion to dismiss where defendant seeks to substitute claim of legitimate motivation for firing plaintiff for plaintiff's well-pled allegations that defendant motivated by impermissible First Amendment retaliation);. Locurto v. Safir, 264 F.3d 154, 169-70 (2d Cir. 2001) (at pretrial stage, defendants not allowed to dispute plaintiffs' allegations of defendants' unconstitutional intent).

Quite simply, the law is clear – including the law of this case established by Second Circuit on defendants' unsuccessful appeal – that immunity defenses, including legislative immunity, cannot be decided without evidence and fact-finding. Defendants' contention that their immunity defenses present "alternative grounds" for upholding the pretrial dismissal of plaintiffs' individual capacity claims is without any legal basis.

Finally, defendants argue that because plaintiffs have acknowledged the limited relief that injunctive orders can now afford, plaintiffs should either voluntarily withdraw their official capacity claims or be forced to do so. While it is true that injunctive relief in the form of reinstatement (as opposed to money damages) may now be no longer feasible for many of the union employees terminated by defendants, that does not mean that for many employees reinstatement would not be a meaningful remedy. And, equally important, plaintiffs' Amended

Complaint seeks other forms of injunctive relief against defendants, including an injunction barring defendants from engaging in the future in the illegal retaliatory conduct at issue.

In their appeal to the Second Circuit, defendants unsuccessfully challenged plaintiffs' right to injunctive relief barring defendants from retaliating against union employees and unions in the future. As the Second Circuit held in rejecting defendants' challenge to plaintiffs' right to obtain such injunctive orders:

> Plaintiffs seek other forms of injunctive relief as a remedy for defendants' alleged ongoing retaliation against the individual and union plaintiffs, as demonstrated by defendants' alleged failure to rehire the individual plaintiffs (or restore their positions). The prohibition against retaliation sought by plaintiffs, for example, would prevent this alleged ongoing injury from occurring again in the future.

Id. at 98. There is no basis for defendants' contention that plaintiffs' desire to obtain monetary damages, as the most meaningful form of relief for many terminated employees, invalidates plaintiffs' right to injunctive relief.

## **CONCLUSION**

Defendants lulled this Court into erroneously dismissing plaintiffs' individual capacity claims with a fallacious argument, raised for the first time in defendants' Motion to Dismiss Reply Memorandum. Defendants now seek to prevent plaintiffs from obtaining review of the Court's error – either in this Court or in the Second Circuit.

Fundamental fairness requires that plaintiffs be provided an opportunity to litigate the correctness of the Court's dismissal of this critical aspect of their case. Plaintiffs' Motion for Entry of Partial Final Judgment should be granted.

PLAINTIFFS,


BY /s/_____
   DAVID S. GOLUB ct00145
   JONATHAN M. LEVINE ct 07584
   SILVER GOLUB & TEITELL LLP
   184 Atlantic Street
   P.O. Box 389
   Stamford, Connecticut 06904
   (203) 325-4491
   Fax: (203) 325-3769

## CERTIFICATION

I hereby certify that on May 8, 2008, a copy of the foregoing Plaintiffs' Reply Memorandum in Support of Motion for Entry of Partial Final Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                      /s/_____
                                      DAVID S. GOLUB   ct 00145
                                      SILVER GOLUB & TEITELL LLP
                                      184 Atlantic Street
                                      P. O. Box 389
                                      Stamford, CT 06904
                                      Telephone: 203-325-4491
                                      Fax: 203-325-3769
                                      E-mail:   dgolub@sgtlaw.com