UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL. ) | CIVIL ACTION NO. 3:03-CV-221 (AVC) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN G. ROWLAND, ET AL. ) | |
| ) | JULY 25, 2008 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT
OF THE DEFENDANTS' MOTION TO DISMISS**

      This Court previously dismissed the Plaintiffs' claims for money damages. What remains are their claims for injunctive relief, principally in the form of reinstatement to state service. But, as the Plaintiffs candidly admitted in their memorandum of law in support of their Motion for Entry of Partial Final Judgment (dated April 4, 2008), the passage of time has effectively rendered that claim for injunctive relief moot:

> At the time this action was commenced (in early 2003), the remedy afforded by such relief would have been meaningful to the 2800 union employees affected by the terminations at issue in this case. Now, over five years later, reinstatement will provide no relief for the monetary losses sustained over the past five years; and, moreover, reinstatement may be a wholly illusory remedy for the older employees who have reached retirement age or for younger employees who have, by now, been forced to accept other employment. . . . ***As a practical matter, the only meaningful relief that plaintiffs can obtain in this action is monetary relief***.

*Id*. at 4 (emphasis supplied).

      Given this candid admission, the Plaintiffs should have withdrawn their claims for injunctive relief months ago. That would have given them the final judgment they want in order to appeal the dismissal of their damages claims, which, to invoke the vernacular, "is

where the money is." Nevertheless, the injunction claims remain. Accordingly, the Defendants now formally move to dismiss them.

This memorandum of law sets forth why the Plaintiffs lack standing to assert their claims for injunctive relief.[1] The standing arguments are straightforward and simple. First, with one exception, the state rehired the named individual plaintiffs years ago, or they retired. The one exception is William Hill, *who was never laid off in the first place*. Based on the doctrine of standing and its corollary, mootness, the named Plaintiffs lack the "injury in fact" that is an essential predicate of Article III jurisdiction.

Second, the named associational Defendants, *i.e.* the State Employees Bargaining Agent Coalition ("SEBAC") and its constituent unions, lack "associational standing" to assert claims for reinstatement on behalf of their members because such relief unavoidably requires the individualized participation of the members. *See Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977) (associational standing allowed only when "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit").

Third, in addition to seeking reinstatement, the Plaintiffs seek an injunction barring the Defendants from engaging in *future* "anti-union" retaliation in violation of the Plaintiffs' First Amendment rights of speech and association. However, because the Plaintiffs can offer nothing more than mere conjecture and speculation about future retaliation, they lack standing to request an injunction or declaratory judgment barring such conduct. *City of Los Angeles v.*

---

[1] A separate motion and memorandum, to be submitted forthwith, will explain why, in light of the Second Circuit's decision in this case, the Defendants are entitled to absolute legislative immunity.

2

*Lyons*, 461 U.S. 95, 104 (1983).  Moreover, a federal court may not exercise its powers of *equity* to grant relief against speculative, future conduct.  *Id*. at 111-12.

# ARGUMENT

**I.    THE LEGAL STANDARD FOR GRANTING A MOTION TO DISMISS BASED ON A PLAINTIFF'S LACK OF STANDING.**

In *Rent Stabilization Ass'n. v. Dinkins*, 5 F.3d 591 (2d Cir. 1993), the Second Circuit clarified that a motion to dismiss based upon a plaintiff's lack of standing is properly made under Fed.R.Civ.P. 12(b)(6), not 12(b)(1), but that "it may become necessary for the district court to make findings of fact to determine whether a party has standing to sue."  *Id*. at 594.  Accordingly, in resolving this motion, the Court is *not* required to confine itself to facts alleged in the Amended Complaint.  Rather, it must also consider the accompanying affidavits, which set forth facts relevant to the standing issues raised herein.

**II.   THE FIVE INDIVIDUAL PLAINTIFFS LACK STANDING BECAUSE THEY WERE NEVER FIRED IN THE FIRST PLACE, WERE REHIRED YEARS AGO, OR HAVE RETIRED.**

It is axiomatic that a party must have standing to seek any type of judicial relief.  As the Second Circuit recently explained:

> "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III.  The irreducible constitutional minimum of standing contains the following three elements: First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Nat'l Council of La Raza v. Mukasey*, No. 07-0816-cv, 2008 U.S. App. LEXIS 14129, *4 (2d Cir. July 3, 2008) (internal quotations and citations omitted).

Integrally related to the doctrine of standing is mootness. "[F]ederal courts lack jurisdiction to decide moot cases." *Dobson v. Hartford Life & Accident Ins. Co.*, 518 F. Supp. 2d 365, 376-377 (D. Conn. 2007). "A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III, Section 2 of the Constitution. In order to satisfy the case-or-controversy requirement, a party must, *at all stages of the litigation*, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Williams*, 475 F.3d 468, 478-79 (2d Cir. 2007) (internal quotation marks and citations omitted) (emphasis supplied). "Generally, if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case." *Id.* at 479 (internal quotation marks and citation omitted). *Accord Jam. Ash & Rubbish Removal Co. v. Ferguson*, Nos. 02-7835 (L), 06-3649-cv (CON), 2008 U.S. App. LEXIS 8941, *3-*4 (2d Cir. Apr. 25, 2008).

Together, these two jurisdictional doctrines—standing and mootness—compel dismissal of the individual named Plaintiffs' claims for reinstatement. The undisputed evidence establishes the following facts:

1.      William D. Hill *was never laid off* from his position as a Rehabilitation Counselor 1 with the Department of Mental Health and Addiction Services, a position he has held since 5/9/97. *See* Affidavit of Carla Kushin ("Kushin Aff."), ¶ 2, attached hereto as Exhibit A. Accordingly, he never had standing to sue in the first place.

2. Dennis Heffernan exercised his option to retire instead of being laid off. Kushin Aff., ¶ 3. Consequently, he lacks standing or, in the alternative, his claim is moot.

3. Geneva Hedgecock was laid off on January 7, 2003 from her position at the Department of Social Services (Secretary 2) and was rehired to the same position and salary on May 23, 2003 at the Department of Public Health. Kushin Aff., ¶ 4. Her claim for reinstatement is moot. *See DeLoreto v. Ment*, 944 F. Supp. 1023, 1035 (D. Conn. 1996) (rehiring of terminated employee renders claim for reinstatement moot).[2]

4. Denise Bouffard was laid off from her position as a Support Enforcement Officer for the Judicial Branch on January 16, 2003. She was rehired on June 27, 2003 as a Support Enforcement Officer at her same rate of pay. *See* Affidavit of Eileen Rausch, ¶ 2, attached hereto as Exhibit B. Her reinstatement claim is moot as well.[3]

5. Marcelle Y. Groves (now Pichanick) was laid off as a Management Analyst 2 on January 17, 2003 and was rehired on November 5, 2003 as a Fiscal Administrative Officer. Kushin Aff., ¶ 5. She is a currently a Financial Examiner at the Department of Banking. *Id*. Like the preceding two individuals, Pichanick's claim for reinstatement is also moot.

---

[2] This Court cited *DeLoreto* with approval in its January 18, 2006 ruling on the Defendants' initial motion to dismiss. *See State Employees. Bargaining Agent Coalition v. Rowland*, Civil No. 3:03cv221 (AVC), 2006 U.S. Dist. LEXIS 1551, *20 (D. Conn. Jan. 18, 2006).

[3] Ms. Bouffard's claim fails as a matter of law for another reason as well. As an employee of the Judicial Branch, *which is an independent branch of the state government*, Governor Rowland lacked the constitutional authority to order the Chief Justice to lay off her or anyone else in the Branch. All he could do was ask the Chief Justice to voluntarily reduce the expenses of the Judicial Branch by, among other things, layoffs. Even assuming that Governor Rowland had a constitutionally improper motive for ordering layoffs—and he did not—that motive cannot be attributed to the Chief Justice or the Chief Court Administrator, who are not defendants in this case.

In sum, the claims of the five individual Plaintiffs seeking reinstatement to state employment must be dismissed on standing or mootness grounds.

### III. THE ASSOCIATIONAL PLAINTIFFS DO NOT HAVE STANDING TO ASSERT INJUNCTION CLAIMS SEEKING REINSTATEMENT ON BEHALF OF THEIR MEMBERS.

As noted above, the Plaintiffs maintain that, "[a]s a practical matter, the only meaningful relief [they] can obtain in this action is monetary relief." It is settled, however, that an *association*, including a labor union, does not have standing to seek money damages on behalf of its members. *E.g.*, *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) [hereinafter *Union Carbide*] ("We know of no Supreme Court or federal court of appeals ruling that an association has standing to pursue damages claims on behalf of its members.") Thus, even if the Plaintiffs are successful at some point in the future in convincing the Second Circuit to reinstate their money damages claim, the associational Plaintiffs in this case—SEBAC and its member unions—will not have standing to assert that claim on behalf of their members.

For the purpose of this motion, however, what matters is that the associational Plaintiffs also lack standing to seek injunctive relief in the form of reinstatement on their members' behalf. This conclusion follows from the third prong of the test for associational standing established in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333 (1977). That prong allows associational standing only if "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343.

As the Second Circuit explained in *Union Carbide*, where an association "seeks a purely legal ruling without requesting that the federal court award individualized relief to its

6

members, the *Hunt* test may be satisfied." *Union Carbide*, 361 F.3d at 714. However, where the association seeks individualized injunctive relief for specific members, the test is not satisfied.

This case falls within the latter, not the former, category.[4] The associational Plaintiffs seek particularized relief for each individual member—reinstatement "to their former positions with the State of Connecticut or such other position as the Court deems appropriate, with full and appropriate restoration of seniority and benefits." Amended Complaint ("Am. Compl.") at p. 32, ¶ 9. The Court cannot grant such relief without the participation of individual members. For example, the Court could not possibly determine what positions are appropriate for individual members without assessing their individual qualifications. The Court would also require individualized testimony regarding salary and benefits and whether the individual even wanted to accept the former or other position. Consequently, the case does not satisfy the third prong of the *Hunt* test and, therefore, the associational Plaintiffs lack standing to sue for reinstatement on behalf of their individual members. *See, e.g., Local 100, Serv. Employees Int'l. Union v. Assumption Parish Sch. Bd.*, 1996 WL 191746, 1 (E.D.La. 1996) (holding that

---

[4] Illustrative of this critical distinction is the United State Supreme Court's decision in *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, 477 U.S. 274 (1986) [hereinafter *Brock*]. The Supreme Court ruled in *Brock* that a labor union "had standing to challenge a 'policy directive' of the United States Department of Labor that 'allegedly resulted in the denial of trade readjustment allowance benefits to thousands of the Union's members.'" *Union Carbide*, 361 F.3d at 714 (quoting *Brock*, 477 U.S. at 281.) That is, the union had standing because its claim raised a pure question of law: "whether the Secretary [of the Department of Labor] properly interpreted the Trade Act's . . . eligibility provisions." *Id.* Resolution of that purely legal question did *not* require the participation of any individual member of the union.

labor union did not have standing to assert claim for reinstatement on behalf of a terminated member because such relief would require her participation in case).[5]

### III. THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO GRANT AN INJUNCTION PREVENTING SPECULATIVE FUTURE CONDUCT.

In addition to dismissing the Plaintiffs' claims for reinstatement, the Court must also dismiss the Plaintiffs' claim seeking injunctions barring the Defendants from repeating the alleged unconstitutional conduct *in the future*.[6] This claim for relief fails for two reasons: (1) the court lacks jurisdiction to hear the claim under Article III of the U.S. Constitution because the future retaliation alleged by the plaintiffs is too speculative;[7] and (2) courts do not exercise their equitable powers to grant injunctions against speculative conduct.

It is well-settled that a plaintiff's assertion "that he may again be subject to an illegal [act] does not create the actual controversy that must exist for a declaratory judgment to be

---

[5] A copy of the decision is attached hereto as Exhibit C.

[6] *See* Am. Compl. at p.32, ¶ 9 (requesting order "enjoining defendants, in their official capacities, from ordering further terminations of members of the plaintiff Unions on account of their participation in or support of constitutionally-protected union activities[.]"); *id.* at 32, ¶ 10 (requesting order enjoining defendants Rowland and Ryan, in their official capacities, from (a) penalizing plaintiff SEBAC, the plaintiff Unions or their members on account of their participation in or support of union activities; (b) retaliating against the endorsing unions and/or their members for refusing to support defendant Rowland in his re-election bid and for supporting his opponent; (c) undermining plaintiff SEBAC, the plaintiff Unions, and the unions' leadership with their rank and file members or otherwise interfering with their effective representation of their members, refusing to bargain collectively with plaintiff SEBAC or the plaintiff Unions as the exclusive bargaining agents for their members, or discouraging union membership; or (d) penalizing plaintiffs for refusing to grant concessions on their legislatively-approved and statutorily-protected contract rights[.]").

[7] Notably, the question of standing must be considered *with respect to each particular claim for relief* that a plaintiff asserts. *City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983); *id.* at 129-30 (Marshall, J., dissenting) (disagreeing with majority's position that "a separate standing inquiry" is required "with respect to each request for relief").

entered." *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) [hereinafter *Lyons*]. "It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant." *Id*. at 107 n.8 (emphasis in original); *see also Minsky v. Kelley*, 240 Fed. Appx. 920, 922 (2d Cir. 2007) (citing *Lyons* with approval for stated proposition).

In *Lyons*, the Supreme Court considered whether a federal court had jurisdiction to consider a plaintiff's request for an injunction barring the Los Angeles police department from using a certain type of "chokehold" during arrests. The district court had answered that question in the affirmative and the court of appeals affirmed. The Supreme Court reversed. The Court explained that, even if the defendants had violated the plaintiff's rights once, this "does nothing to establish a real and immediate threat that [the plaintiffs] would again be" subjected to the same conduct. *Id*. at 105.

The rule stated in *Lyons* disposes of the Plaintiffs' claim for an injunction barring future "retaliation" based on union membership. Here, as in *Lyons*, the Plaintiffs offer nothing more than "conjecture to suggest that in every instance" of termination of state employees who happen to be union members, the then-acting governor will have an unconstitutional, "anti-union" animus or motive for the termination. The Plaintiffs do not offer, nor could they offer, any allegations of a threat, promise, or policy that would provide them with anything more than "subjective apprehensions" of future First Amendment retaliation by Governor Rell or whoever succeeds her. *See id*. at 109 ("Lyons' lack of standing does not rest on the

9

termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued").

Indeed, the Plaintiffs' allegations of unconstitutional motive actually undercut their claim for an injunction barring future retaliation, for those allegations are inextricably tied to *Governor Rowland personally*, not to the Office of the Governor in general. *See, e.g.*, Am. Compl. at p. 16, ¶ 52 ("Throughout his tenure as Governor, defendant Rowland has had a hostile attitude toward state employee unions and has publicly stated that his 'natural enemies have been the unions.'"); *id.* at p. 17, ¶ 58 ("All of the state union employees selected for termination are members of the endorsing unions that supported defendant Rowland's opponent in the 2002 gubernatorial race and opposed defendant Rowland's reelection.").

In sum, as in *Lyons*, the Plaintiffs' subjective fears are an insufficient basis for them to invoke the Article III jurisdiction of this Court for the purpose of seeking an injunction barring future retaliation.

Significantly, the decision in *Lyons* also provides an independent, non-jurisdictional, basis for dismissing the Plaintiffs' request for relief in the form of an injunction barring future retaliation. *Lyons* teaches that this uniquely "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *Lyons*, 461 U.S. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1984)). Thus, even if the Plaintiffs could establish Article III standing to seek such injunctive relief, the preconditions for exercising the Court's *equitable* powers do not exist and, accordingly, the requested relief cannot be granted.

10

## CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Amended Complaint should be granted.

                DEFENDANTS:
                JOHN G. ROWLAND AND MARC S. RYAN

By    /s/
        Daniel J. Klau (ct17957)
        Bernard E. Jacques (ct12293)
        Pepe & Hazard LLP
        Their Attorney
        Goodwin Square
        225 Asylum Street
        Hartford, CT 06103-4302
        Tel. No. (860) 522-5175
        Fax No. (860) 522-2796
        bjacques@pepehazard.com
        dklau@pepehazard.com

DJK/33813/2/858013v2
07/25/08-HRT/

**CERTIFICATION**

I hereby certify that on July 25, 2008, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

```
                              _____/s/_____
                                     Daniel Klau
```

DJK/33813/2/858013v2
07/25/08-HRT/