UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING | : | |
| AGENT COALITION, ET AL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| V. | : | CIV. NO. 3:03CV221 (AVC) |
| | : | |
| JOHN G. ROWLAND, ET AL, | : | |
| | : | |
| Defendants. | : | AUGUST 4, 2008 |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY AND TO
MODIFY SCHEDULING ORDER**

**Introduction**

Two and one-half years after defendants rejected this Court's invitation to conduct phased

discovery on defendants' legislative immunity defense; one year after the Second Circuit

effectively eliminated legislative immunity as a practical defense in this action; and nine months

after defendants agreed to a scheduling order that provided for discovery of all issues raised in

the case, defendants – through their new counsel – have moved to stay discovery and suspend the

Scheduling Order's trial deadlines pending a ruling on defendants' legislative immunity defense.

Defendants' motion seeks to repudiate defendants' prior discovery agreements and

representations and is based on a misunderstanding of the Second Circuit's decision in this

action.  Defendants' motion should be denied.

**Discussion**

In August 2007, after the mandate dismissing and denying defendants' interlocutory appeal was issued by the Second Circuit, the Court directed the parties to file a Rule 26(f) report setting forth a schedule for discovery and trial of this action. [Dkt. # 116]. The parties conferred and entered into a Rule 26(f) scheduling agreement submitted to the Court on September 7, 2007 [Dkt. #126].

In the parties' agreed Rule 26(f) report, defendants – through their prior counsel – expressly agreed that discovery would commence immediately; that it would cover all aspects of plaintiffs' claims and defendants' defenses; and that discovery would <u>not</u> be conducted in phases. Thus, section E of the parties' report ["Discovery"] provided that the scope of discovery would include the following areas:

> 1. The parties anticipate that discovery will be needed on the following subjects: the facts and circumstances alleged in Plaintiffs' complaint; the facts and circumstances relating to Defendants' defenses; prior history of the Parties; Plaintiffs' alleged damages, if the Court grants Plaintiffs' motion for reconsideration.

[<u>Id</u>. at 4]. The report further provided in section E-2(a) that written discovery would "commence immediately." [<u>Id</u>.]. Section E-3 specifically provided that discovery would not be conducted in phases:

> 3. Discovery will not be conducted in phases.

[<u>Id</u>. at 5]. The Court approved the parties' agreement on September 26, 2007 (modifying, slightly, the dates proposed by the parties). [Dkt. # 132].[1]

---

[1] A copy of the parties' September 7, 2007 Rule 26(f) Report is attached as Exhibit A.

Consistent with their intention to conduct discovery "immediately" on all aspects of plaintiffs' claims, defendants – through their prior counsel – immediately served 18 sets of comprehensive interrogatories and requests to produce, seeking discovery from plaintiffs as to their affirmative claims and damages.  Defendants' September 21, 2007 interrogatories seek broad areas of information relating to the merits of plaintiffs' claims:

1.    Describe in detail each element of the damages or other relief you are seeking in this action. For each such element or category of damage, state the amount you seek, and your method of computation for such damages; and in providing the information responsive to this interrogatory, state the gross amount of such damages.

2.    Describe in detail all efforts you have made to mitigate, limit, or reduce the amount of damages you claim in this case, and state the amount by which such efforts reduce each element or category of the damages you seek.

3.    Identify by name, address, and field of expertise each person whom you expect to call as an expert witness at trial, the subject matter on which each such expert is expected to testify, the substance of the facts and/or opinion to which each such expert is expected to testify, and state a summary of the grounds for each such expert opinion.

4.    Identify all individuals who were witnesses to, or have knowledge or information about, any alleged improper or unlawful conduct committed by Defendants against you, and, for each such person, describe in detail the knowledge or information you believe he or she possesses.

5.    Identify each person who may have knowledge or information concerning the allegations in your Complaint, and, for each such person, describe in detail the knowledge or information you believe he or she possesses.

6.    Identify the person(s) answering these Interrogatories, responding to the Requests for Production, and/or all persons assisting in those processes or reviewing the responses.

7.    Identify any current or former State employees who, to your knowledge, left a union or did not join a union because of either the Defendants' alleged actions or a concern about alleged reprisals. For each such person, explain in detail your understanding of why that person left or did not join a union.

3

8.      List the name, address, telephone number, job title, salary and/or wage-rate, termination date (if applicable), and employment dates of all of your members (current or former) who claim to have been unlawfully terminated or otherwise adversely affected by Defendants' allegedly unlawful conduct as alleged in the Amended Complaint.

[See Def. First Set of Interrogatories and Requests for Production dated September 21, 2007 (attached as Exhibit B) at Interrogatories ## 1-8].[2]  Defendants' document requests were equally broad, including, for example, the following Requests:

2.      All documents that support or otherwise relate to the allegations in the Amended Complaint.

3.      All documents, notes, memos, correspondence, journals, diaries, calendars, or other materials reflecting or relating to any communications between you and any other person or entity regarding any of the factual allegations in your Amended Complaint.

4.      All documents that rebut or contradict any of Defendants' defenses in this case or that reflect the alleged falsity of Defendants' stated reasons for laying off Plaintiffs.

7.      All documents reflecting your claimed damages in this case.

11.     All documents concerning each and every comment, statement, conduct, action, or incident made by and/or committed by Defendants or their agents that you believe was unlawful and/or that support the claims in your Amended Complaint.

14.     All documents concerning your or your members' endorsement of and/or opposition to, if any, gubernatorial candidates in Connecticut's 2002 gubernatorial election.

15.     All documents reflecting any retaliation against you or your members for support of or opposition to gubernatorial candidates in Connecticut's 2002 gubernatorial election.

16.     All documents related to your claim that Defendants were aware that their

---

[2]  On September 21, 2007, defendants served 18 identical sets of Interrogatories and Requests for Production on each of the union and individual plaintiffs in this action.  A copy of one these identical sets is attached as Exhibit B.

4

conduct violated your or your members' constitutional rights and/or that Defendants intentionally violated those rights, as alleged in the Amended Complaint.

17.     As alleged in the Third Claim for Relief ¶ 52 of the Amended Complaint, all documents supporting your contention that "defendants publicly derided the union leadership and made direct appeals to union members to urge their leadership to agree to the rejected concessions" including but not limited to any "email messages ... sent directly to union members describing negotiating proposal not previously presented to union leadership ... "

24.     All documents reflecting the employment status from November 1, 2002 through the present of your members (current or former) who claim to have been unlawfully terminated or otherwise adversely affected by the Defendants' allegedly unlawful conduct as alleged in the Amended Complaint.

[Id. at Requests ## 1-25].

Defendants further issued notices of depositions for all plaintiffs, including Rule 30(b)(6) notices on each of the plaintiff unions seeking designations by each union of representatives to testify on broad areas relating to the merits of plaintiffs' claims (and unrelated to defendants' legislative immunity defense).  Areas of designation include: communications in any form between the union and Governor Rowland, Secretary Ryan, Office of Policy and Management, and any representative of Governor Rowland's staff, between July 1, 2002 and August 31, 2003, concerning the Fiscal Year 2003 budget, including possible concessions; proposals made by the union to any legislative or executive branch representative to address budget shortfall between those dates; contract negotiations on behalf of the union between those dates; employment status of current or former members of the union from November 1, 2002 to the present; names of current or former members of the union whose employment was terminated or otherwise affected or who were otherwise adversely affected by defendants' allegedly illegal conduct; grievances and/or arbitrations by or involving the union or its members concerning defendants' allegedly

5

illegal conduct; and the union's endorsement and/or opposition of gubernatorial candidates in Connecticut's 2002 gubernatorial election. [See Defendants' September 27, 2007 Rule 30(b)(6) Notice of Deposition (attached as Exhibit C).][3]

The agreed scope of broad discovery contemplated by the parties' Rule 26(f) report, and defendants' undertaking of that discovery reflected the parties' understanding of the import of the Second Circuit's decision limiting the application of defendants' principal defense of legislative immunity. In its decision, the Second Circuit unanimously agreed with plaintiffs' argument that legislative immunity does not apply at all to plaintiffs' claims seeking to require defendants to reinstate terminated union employees to existing positions in the State's work force and that, with respect to plaintiffs' claims for reinstatement to the terminated employees' prior positions, the defense will only apply if the positions no longer exist due to legislative elimination of the positions. State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 82 (2d Cir. 2007).

Thus, the Second Circuit ruled that, even to the extent defendants can prove that their actions in terminating plaintiffs' employment were procedurally and substantively "legislative," the defense of legislative immunity would not, as a matter of law, bar plaintiffs' request for injunctive orders compelling defendants, in their capacity as executive officers with control over the State's work force, to reinstate terminated workers to existing positions in the State's work

---

[3] On September 21, 2007, defendants served notices of deposition on each of the 18 plaintiffs, including 13 identical Rule 30(b)(6) notices on each plaintiff Union and a notice of deposition for the Unions' lead negotiator, Attorney Daniel Livingston. Thirteen amended Rule 30(b)(6) notices of depositions for each plaintiff union were re-served on September 27, 2007, changing the proposed dates of the depositions. A copy of one these identical Rule 30(b)(6) notices is attached as Exhibit C.

force:

> Because ordering defendants to hire plaintiffs into existing
> positions in the state workforce would not require either a new
> allocation of funds or a new passage of legislation, but would
> instead compel defendants to act only in their administrative
> capacities as executive branch officials with authority over the state
> workforce, we conclude that legislative immunity prevents no
> obstacle to the District Court's ordering of such relief. [footnote
> omitted]
>
> ....
>
> As a matter of law, defendants are not entitled to legislative
> immunity with respect to plaintiffs' claims to placement in other,
> existing positions, because granting this relief would not enjoin
> defendants in their performance of legislative functions.

Id. at 93, 98.

The Second Circuit ruled that, to the extent defendants can prove that they ordered the

terminations in a legislative capacity, the defense of legislative immunity would only apply to bar

reinstatement to terminated employee's prior positions that no longer exist because they had been

eliminated by *legislative* action:

> [W]e cannot assess, at the pleading stage, the merits of plaintiffs'
> argument that legislative immunity also presents no obstacle to
> their claims seeking reinstatement to their *previous positions*.
> Whether restoring plaintiffs to those positions would compel
> defendants to act in their legislative capacities will necessarily
> hinge on the findings  made by the District Court regarding the
> issues to be resolved under Bogan.  If defendants successfully
> demonstrate that their actions in terminating plaintiffs' positions
> were legislative in nature under Bogan, plaintiffs' claims for
> reinstatement to their previous positions would be barred by
> legislative immunity.  This is because ordering such relief would
> require no less than a judicial order compelling defendants, in their
> official capacities, to re-create positions that would have been
> eliminated through prior legislative action.
>
> ....

7

> In the circumstances presented, discovery is necessary to assess whether defendants are entitled to legislative immunity with respect to plaintiffs' claims for reinstatement to their previous positions.

Id. at 93-94, 98.

Defendants' current contention in support of their motion to stay that discovery should be limited to the issue of legislative immunity because resolution of that defense can be dispositive of this action is, quite simply, erroneous.[4]

Defendants' attempt to stay discovery and abort the progress of this action toward trial violates not only their prior counsel's discovery agreements and discovery undertakings, but the agreements and representations by defendants' *current* counsel to plaintiffs and the Court. On March 25, 2008, defendants sought a thirty-day extension of time to respond to plaintiffs' discovery, representing that new counsel had just appeared for defendants and that the time was requested to enable them "to familiarize themselves with this factually and legally complex case." [Dkt. # 151].[5] The Court granted defendants' motion on March 26, 2008, extending the time for defendants' discovery responses to April 25, 2008. [Dkt. # 153].

Thereafter, the parties conferred on the completion of their respective responses to each others' pending discovery requests. The parties agreed to seek permission from the Court to make rolling production in response to the pending interrogatories and document requests so as to minimize the burden of responding to the discovery. On April 25, 2008, the parties filed a

---

[4] Defendants' contention that the Second Circuit ordered "limited" discovery on the legislative immunity issue is also erroneous. Nowhere in the Second Circuit's decision did the court indicate that, on remand, discovery was to be limited in any respect.

[5] A copy of the parties' March 25, 2008 Joint Motion containing this request by defendants is attached as Exhibit D.

8

Joint Motion [Dkt. # 158] seeking authorization to make such rolling production over the course

of the next thirty-five days (to June 1, 2008).  The parties' Joint Motion stated in support of this

request:

> The parties have agreed ... to make rolling production and
> responses over the course of the next month.

[Id.].  As the parties explained in the Joint Motion, such rolling production and responses would

"decrease the burden of responding for state officials ..." [Id.].[6]

    The Court granted the parties' Joint Motion on April 28, 2008, ordering:

> The discovery responses described in the within motion shall be
> made in the manner specified on or before June 1, 2008.

[Dkt. # 159].

    In June 2008, when the rolling production anticipated in the parties' April 25, 2008 Joint

Motion had not been made, the parties agreed to submit a further Joint Motion to extend the time

for their respective discovery responses to July 15, 2008.  The parties' June 19, 2008 Joint

Motion [Dkt. # 163] again stated that "the parties have agreed to make rolling production in

response to [their respective] discovery requests," and further represented that "the parties

diligently continue to compile information necessary to respond to said requests." [Id. at 1].  The

Joint Motion also reiterated that such rolling production would "decrease the burden of

responding for the state officials ..." [Id. at 2].  The parties further sought modifications to the

other scheduling deadlines, but represented that the requested extension would "not unduly

_____

    [6] A copy of the parties' April 25, 2008 Joint Motion containing this request by
defendants is attached as Exhibit E.

delaythe trial deadline." [Id.].[7]  The Court granted the parties' Joint Motion on June 20, 2008 [Dkt. # 165], extending the time for the discovery responses to July 15, 2008.

Defendants' current Motion to stay discovery and suspend the scheduling order (and trial deadlines) thus constitutes a repudiation not only of defendants' Rule 26(f) scheduling agreements (by defendants' prior counsel), but of the agreements and representations of defendants' current counsel to plaintiffs and the Court in two separate motions.

Defendants attempt to justify their disavowal of their agreements and representations by asserting, in a footnote to their Motion, that their new counsel only "recently" learned of case law authorizing a court to structure discovery in a civil rights action to limit the burden on state officials asserting an immunity defense. [See Def. Mot. to Stay at n. 1].  But the Crawford-El decision cited by defendants [id.] was decided in 1998, five years before this case even began, and its holding has been established and well-known law for at least a decade.  The decision – even if truly not known to defendants' counsel before 2008 – can hardly justify defendants' repudiation of their agreements and representations.

 Furthermore, prior to the Second Circuit's decision clarifying the limited applicability of the legislative immunity defense, this Court expressly offered defendants the opportunity to conduct limited discovery on the defense, and defendants rejected the Court's invitation.  At the end of the Court's January 18, 2006 Ruling on defendants' Motion to Dismiss ("Ruling"), the Court stated that in light of the delay in proceeding with the case, discovery should commence without delay, and then proposed a "limited first phase of discovery concerning the applicability

---

[7]  A copy of the parties' June 19, 2008 Joint Motion containing this request by defendants is attached a Exhibit F.

of absolute legislative immunity, and re-argument on that issue before merits discovery, if desired." [Dkt. # 93 (Ruling) at 16].  The Court directed the parties to advise the Court by letter if they sought such phased discovery. [Id.].  As the Court noted in its January 31, 2006 Order Directing the Commencement of Discovery [Dkt. # 95], defendants expressly rejected this offer of limited discovery on their legislative immunity defense. [Order at 1-2].

Defendants' rejection of the Court's offer of phased discovery in January 2006 is significant for a number of reasons.  First, defendants made a strategic decision two and one-half years ago not to seek to develop a factual basis for their defense, but instead to proceed with an appeal (over plaintiffs' objection) that was dismissed because of the absence of an undisputed factual record.  See State Employees Bargaining Agent Coalition, 494 F.3d at 90-91, 98.  By virtue of their strategic decision, defendants delayed resolution of this action for over eighteen months.  They should not now be allowed to benefit from their tactical decision.

Second, it is undeniable that defendants were aware, in September 2007 when they entered into the Rule 26(f) report agreeing to unlimited, non-phased discovery, that phased discovery on the defense was something they could request, and chose not to do so.  As discussed above, that decision was no doubt based in part on defendants' recognition of the now-limited application of the legislative immunity defense, as well as on their awareness of this Court's stated concern that this case move forward to completion expeditiously. [See Ruling at16; January 31, 2006 Order Directing the Commencement of Discovery at 1-2.]

And, third, given the prominence of this issue in the Court's January 18, 2006 Ruling on defendants' Motion to Dismiss and January 31, 2006 Order, it is difficult to credit defendants' counsel's current contention that they only recently realized that case law permitted phased

discovery in civil rights actions.

Indeed, the timing of defendants' Motion to Stay belies defendants' contention that they only realized they could seek such phased discovery.  Defendants' Motion to Stay was filed the day before defendants were required to respond to plaintiffs' May 19, 2008 Requests for Admission, which require defendants to admit or deny that they intentionally made the termination decisions at issue in this action based on state employees' union status,[8] and to plaintiffs' contention Interrogatories to the defendant Governor, in her official capacity, requiring her to respond to whether it is the official position of Connecticut's Governor that it is permissible to make termination decisions based on a state employee's union status and that it will be constitutionally permissible for Connecticut's Governor to make similar decisions in the future.[9]

On June 19, 2008, defendants' current counsel sought a thirty-day extension of time to respond to these Requests for Admission and Interrogatories to the defendant Governor in her official capacity [Dkt. # 162],[10] and the Court granted defendants' motion, extending the time for the responses to July 15, 2008 [Dkt. # 163].  Defendants' current Motion to Stay was filed on July 14, 2008, the day before the responses were due.  Defendants have chosen – at their peril – to ignore their obligations to respond to either the Requests for Admission or Interrogatories – even to those Requests and Interrogatories that undeniably appertain to defendants' legislative

---

[8]  A copy of plaintiffs' May 19, 2008 Requests for Admission is attached as Exhibit G.

[9]  A copy of plaintiffs' May 19, 2008 Interrogatories to Governor Rell, in her official capacity, is attached as Exhibit H.

[10]  A copy of defendants' June 19, 2008 Motion for Extension of Time is attached as Exhibit I.

immunity defense.

Thus, plaintiffs' Requests for Admission contain a section specifically requiring defendants to admit or deny whether they complied with the mandatory procedures for modifying Connecticut's budget to alleviate a budget deficit – the requirements that the Second Circuit held must be met in order for defendants to establish that they acted in a "procedurally" legislative manner. [See Pl. Req. for Admissions, § D, ## 40-68]. The Requests further require defendants to admit or deny whether terminated employees' positions were "eliminated" by the legislature. [id. at ## 69-70] and whether or not the decision of which positions to create and fill in the State's work force has been determined by the executive branch [id. at 71-73]. These Requests go directly to the factual issues that the Second Circuit held must be established in order for defendants to establish their entitlement to legislative immunity.

The Requests further require defendants to admit or deny whether the terminations at issue were, in fact, directed to resolving the FY 2003 budget deficit – as defendants have asserted, without evidentiary support throughout this litigation – or, rather, were to pressure the plaintiff unions to make collective bargaining concessions in future years, as plaintiffs assert, and thus included terminations of employees without regard to the financial impact (or lack of impact) of the terminations on FY 03 expenses. [See e.g., id. at § B, ## 20-33].

These – and the other Requests for Admission propounded by plaintiffs – are neither unduly burdensome nor time-consuming to answer; and answers consistent with plaintiffs' understanding of the facts pertaining to defendants' conduct will factually establish the elements of plaintiffs' constitutional claims and eliminate defendants' claim to legislative immunity.

Finally, defendants represented in their Memorandum in support of their Motion to Stay that they were about to file a motion to dismiss or for summary judgment "that will establish that every single member of the plaintiff class has either been rehired or has been offered but refused a position with the State." [Def. Mem. at 5]. Defendants argued that discovery should be stayed pending a ruling on that motion, which defendants argued would be wholly dispositive of the case.

But defendants filed no such motion. Instead, they have filed a purported Motion to Dismiss for Lack of Jurisdiction asserting that none of the five named plaintiffs (nor any of the plaintiff unions) has standing to pursue this action on behalf of the class. [See Def. July 25, 2008 Motion (Dkt. # 169)]. In support of this motion, defendants have proffered two Declarations stating that one of the five named plaintiffs was not terminated; that two have been rehired to positions in the State's work force similar to those they had when they were terminated; that one named plaintiff was rehired to a different position; and that one named plaintiff took early retirement.

Plaintiffs are preparing their response to defendants' Motion to Dismiss, but the Motion is plainly without merit. Thus, with respect to named plaintiff Marcelle Pichanick Groves, although she was rehired by the State, she was rehired at a position three grades lower than the position she had when she was terminated. Plaintiff Groves seeks reinstatement to a position at least at the job level she had when she was terminated.[11] With respect to plaintiff Dennis P.

---

[11] Defendants' Motion to Dismiss was filed on July 25, 2008, and plaintiffs are in the process of obtaining a Declaration from Ms. Groves in connection with plaintiffs' response to defendants' Motion to Dismiss, and have verified the information about Ms. Groves' lower job level set forth above. Defendants' Declaration with respect to plaintiff Groves' rehiring deliberately fails to mention her lower pay grade.

Heffernan, although he opted for early retirement in February 2003, that was only <u>after</u> he was terminated from his state position (in mid-January 2003), and he seeks reinstatement to an appropriate position in the state work force.[12]

Moreover, as the Declaration of plaintiff Geneva Hedgecock attests, while she was rehired to a position in the State work force similar to the one she had when she was terminated, the position has different responsibilities and is geographically disadvantageous for Ms. Hedgecock and she seeks reinstatement to her prior position.[13]  Similarly, with respect to named plaintiff Denise A. Bouffard, she has suffered a loss of competitive seniority due to the time she was out of work due to her termination even though she was reinstated to a position similar to the one she had when she was terminated.[14]

Defendants' claim in their Motion to Dismiss that the plaintiff unions lack standing to represent the class of terminated employees ignores that this Court previously declined to dismiss the unions' claims on this very ground.  <u>See</u> Ruling at 15.  In its Ruling, the Court indicated it did not believe there was merit to defendants' standing argument and that defendants could raise it on summary judgment.  <u>Id.</u>  Defendants' bald reassertion of its standing argument, which merely

---

[12]  Plaintiffs are in the process of obtaining a Declaration from Mr. Heffernan in connection with plaintiffs' response to defendants' Motion to Dismiss, and have verified the information about the timing of Mr. Heffernan's termination and early retirement set forth above. Defendants' Declaration with respect to plaintiff Heffernan fails to mention that he was terminated <u>prior</u> to his taking early retirement.

[13]  A copy of the Declaration of Geneva Hedgecock dated August 1, 2008, is attached as Exhibit J.

[14]  Plaintiffs are in the process of obtaining a Declaration from Ms. Bouffard in connection with plaintiffs' response to defendants' Motion to Dismiss, and have verified the information about Ms. Bouffard set forth above.

repeats the arguments already rejected by the Court, disregards the Court's Ruling and is without merit.

The discovery defendants seek to block goes directly to defendants' factual claim that all members of the plaintiff class have been reinstated or offered reinstatement to their prior or equivalent positions in the State work force. [See e.g., Pl. Feb. 20, 2008 First Set of Interrogatories at ## 1-3.][15]  That is the discovery that defendants' counsel represented they were "diligently" compiling and that rolling production would enable them to provide without undue burden.  Defendants have no proper justification for seeking to block that discovery now.[16]

And plaintiffs and the plaintiff unions further seek injunctive relief barring defendants from making termination decisions in the future based on plaintiffs' union status and union activity and barring defendants from retaliating against plaintiffs because of their union activity and support for opposing political candidates.  Although, in their Motion to Dismiss, defendants contend that plaintiffs are not entitled to such injunctive relief, the Second Circuit expressly affirmed the importance of this aspect of plaintiffs' claims.  As the Second Circuit ruled in rejecting defendants' argument that plaintiffs' claims for such relief were barred:

> Defendants also argue that plaintiffs' other claims for injunctive
> relief including [their] claims for an injunction prohibiting
> retaliation against plaintiffs are barred by the Eleventh
> Amendment.  Defendants contend that the additional forms of

---

[15]  A copy of plaintiffs' February 20, 2008 First Set of Interrogatories and Requests for Production to Defendant Robert Genuario, in his official capacity, is attached as Exhibit K.

[16]  At about the time they filed their July 25, 2008 Motion to Dismiss, defendants forwarded two packets containing an unsworn listing of state union employees involved in some way in the terminations at issue in this action.  Plaintiffs' efforts to obtain clarification of the meaning of the listings were not successful.  No other responses to any of plaintiffs' discovery requests, under oath or not under oath, have been provided by defendants.

injunctive relief requested by plaintiffs also do not respond to any
ongoing violation of federal law.  We disagree.  Plaintiffs seek
other forms of injunctive relief as a remedy for defendants' alleged
ongoing retaliation against the individual and union plaintiffs, as
demonstrated by defendants' alleged failure to rehire the individual
plaintiffs (or restore their positions).  The prohibition against
retaliation sought by plaintiffs, for example, would prevent this
alleged ongoing injury from occurring again in the future.  Thus,
sovereign immunity does not bar the other forms of injunctive
relief sought by plaintiffs.

494 F.3d at 98.

Plaintiffs' pending discovery – including, in particular, plaintiffs' contention

interrogatories to the Governor in her official capacity – seek to establish whether it is or is not

defendants' official position that they may make termination decisions based on state employees'

union status and union activities and whether defendants will seek to do so in the future should

there be a budget deficit.  This discovery – which is not at all burdensome to answer – will

establish a factual basis for plaintiffs' claims for such injunctive relief, and there is no proper

basis to block such discovery.

**Conclusion**

    This action is now over five years old.  Discovery was stayed, at defendants' insistence for over four years while their Motion to Dismiss was pending and while they pursued an interlocutory appeal based on patently disputed factual issues.  Upon remand, defendants – through counsel who had aggressively protected defendants from what they viewed as unwarranted discovery – entered into a Rule 26(f) discovery agreement that provided for discovery on all claims and defenses on a non-phased basis, and thereafter propounded extensive discovery on all claims and defenses, which plaintiffs have answered.[17]

    Defendants' new counsel entered into an agreement to provide rolling production of documents and interrogatory responses, representing to the Court that such production would minimize any burden on state officials and that they were diligently compiling the responsive information.  On the eve of the required responses to plaintiffs' First Set of Interrogatories and Requests for Production – and, perhaps more important, to plaintiffs' Requests for Admission and contention interrogatories – defendants have filed a spurious Motion to Stay, seeking to block any discovery on the basis of their claims to legislative immunity that have been rejected by the Second Circuit.  Defendants also seek to delay trial of this matter indefinitely, through suspension of the trial deadlines.

---

[17]  The plaintiff Unions filed answers and objections to defendants First Set of Interrogatories and Requests for Production, including the production of responsive documents. The named plaintiffs, other than plaintiff William Hill, have likewise filed answers and objections to defendants' discovery.  Plaintiffs' counsel are attempting to contact plaintiff Hill to secure his signed responses to defendants' discovery.

     Plaintiffs submit that there is no basis for defendants' Motion and that defendants'

Motion to Stay and Modify Scheduling Order should be denied.

PLAINTIFFS,


BY\_\_\_\_/s/_____
     DAVID S. GOLUB ct 00145
     JONATHAN M. LEVINE ct 07584
     MARILYN J. RAMOS ct 11433
     SILVER GOLUB & TEITELL LLP
     184 Atlantic Street
     P.O. Box 389
     Stamford, CT  06904
     Telephone:  (203) 325-4491
     Fax:     (203) 325-3769

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2008, a copy of foregoing Plaintiffs' Memorandum in Opposition to Defendants' Motion to Stay Discovery and to Modify Scheduling Order was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

_____/s/_____

MARILYN J. RAMOS ct11433
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
Telephone:   203-325-4491
Fax: 203-325-3769
E-mail:   mramos@sgtlaw.com

20