UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING AGENT COALITION, ET AL. | ) ) ) | CIVIL ACTION NO. 3:03-CV-221 (AVC) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JOHN G. ROWLAND, ET AL. | ) ) | AUGUST 27, 2008 |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Absent extraordinary circumstances, high ranking government officials, particularly governors and members of their cabinet, should not be compelled to testify or submit to depositions. Nor can such officials be forced to testify about their deliberative processes in the course of making policy decisions; executive privilege protects such deliberations.

The Plaintiffs cannot not even come close to satisfying the high burden required to depose Governor Rell and Secretary Genuario, whom the Plaintiffs have sued in their official capacities, or to piercing executive privilege. To permit their depositions to go forward would be a manifest abuse of discretion. Accordingly, the Defendants' motion for a protective order should be granted.

**FACTUAL BACKGROUND**

The Plaintiffs commenced this action in February 2003 in response to Governor John Rowland's decision to lay off approximately 2500 state workers when, during a budget crisis, the unions of which they were members refused to grant monetary concessions. The Plaintiffs

alleged that the Governor terminated them in retaliation for their union membership and activities, purportedly in violation of the First Amendment.

The Defendants filed a motion to dismiss the complaint on February 24, 2003. On May 27, 2003—before the Court took any action on the motion to dismiss—the Plaintiffs filed an Amended Complaint, which attempted to address many of the deficiencies in the original complaint. On July 7, 2003, the Defendants moved to dismiss the Amended Complaint on grounds of, *inter alia*, absolute legislative immunity and qualified immunity. Although all briefing concerning that motion was completed by August 22, 2003, it remained *sub judice* before Judge Alvin Thompson until the case was reassigned to this Court on November 17, 2005.

On January 18, 2006, the Court issued its ruling on the motion to dismiss, holding that the Eleventh Amendment barred the Plaintiffs' claims seeking money damages from the Defendants in their individual capacities. Pending discovery, however, the Court denied the motion insofar as it challenged the complaint on grounds of absolute legislative immunity.

The Defendants filed an interlocutory appeal, which the Second Circuit heard on November 8, 2006. On July 10, 2007, the court of appeals issued its decision, holding that the legislative immunity defense required limited fact-finding. In particular, the Second Circuit instructed this Court on remand to determine whether the Defendants' actions in terminating the Plaintiffs' employment were "procedurally" and "substantively" legislative. *SEBAC v. Rowland*, 494 F.3d 71, 90, 92 (2d Cir. 2007). The Second Circuit explained that an action is "procedurally legislative" if it was an "integral step in the legislative process." *Id*. at 89. The terminations at issue are "substantively legislative" if the Defendants eliminated the Plaintiffs'

2

positions. *Id.* at 91 ("The elimination of a position, unlike the 'hiring or firing of a particular employee,' is a substantively legislative act for legislative immunity purposes.") Significantly, the court of appeals held that the Defendants' *motives* for reducing the size of the state workforce are irrelevant to the immunity analysis. *Id.* at 90 ("Neither a showing of 'good faith' nor an inquiry into defendants' subjective 'reasons' addresses the relevant issue of whether the 'nature of the act[s]' that gave rise to the alleged harm was legislative or executive.")

On remand, the Defendants filed a motion to dismiss the remaining injunction claims as moot because the State had either rehired the plaintiffs or they had retired. *See* Motion to Dismiss (dated July 25, 2008). In response to that motion, the Plaintiffs noticed the depositions of Governor Rell and Secretary Genuario. *See* Letter from Plaintiffs' counsel (dated August 8, 2008) (explaining that the depositions were noticed "to assist plaintiffs in responding to factual assertions in defendants' pending Motion to Dismiss." A copy of the letter is attached as Exhibit A.

## ARGUMENT

**I.    The Plaintiffs Cannot Meet The Heavy Burden Required To Depose Governor Rell And Secretary Genuario.**

"As a general proposition, high ranking government officials are not subject to depositions." *Marisol A. v. Giuliani,* No. 95 CIV. 10533 (RJW), 1998 WL 132810, *2 (S.D.N.Y. Mar.23, 1998). As the First Circuit Court of Appeals recently explained:

> The need for limited access to high government officials through the discovery process is well established. In *United States v. Morgan*, 313 U.S. 409, 422 [ ] (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. Relying on *Morgan*, other courts have concluded that top executive department officials should not,

>  absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action. This rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses" and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.

*Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (internal citations and quotation marks omitted); *accord In re United States (Holder)*, 197 F.3d 310, 313 (8th Cir. 1999); *Simplex Time Recover Co. v. Sec'y of* Labor, 766 F.2d 575, 586 (D.C.Cir. 1985); *In re FDIC*, 58 F.3d 1055, 1060 (9th Cir. 1995); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979); *Warzon v. Drew*, 155 F.R.D. 183, 185 (E.D. Wis. 1994).

In the Second Circuit, courts have repeatedly invoked the rule that high government officials are effectively immune from discovery except under extraordinary circumstances. *E.g.*, *State of New York v. Oneida Indian Nation of New York*, No. 95 CIV 554 (LEK/RFT), 2007 WL 2287878 (N.D.N.Y. Aug. 7, 2007); *Marisol A. v. Giuliani,* No. 95 CIV. 10533 (RJW), 1998 WL 158948, at *3 (S.D.N.Y. Apr.1, 1998) (barring deposition of Governor Pataki subject to conditions); *Marisol A. v. Giuliani,* 1998 WL 132810 (denying deposition of Mayor Giuliani); *Universal Calvary Church v. City of New York*, No. 96 CIV. 4606 (RPP), 1999 WL 350852, at *2 (S.D.N.Y. June 2, 1999) (granting protective order preventing deposition of Mayor Giuliani and two former police commissioners); *Friedlander v. Roberts,* Nos. 98 Civ. 1684 (RMB), 98 Civ. 8007 (RMB), 2000 WL 1471566 (S.D.N.Y. Sept. 28, 2000) (finding Mayor Giuliani not subject to deposition); *L.D. Leasing Corp. v. Crimaldi,* No. 91-CV-2430 (EHN), 1992 WL 373732, at *1 (E.D.N.Y. Dec. 1. 1992) (granting protective order as to deposition of Mayor Dinkins).

Before the deposition of a high ranking government official will be allowed, *the party seeking to take the deposition must establish*: 1) that the deposition is *essential* to obtain relevant information of which the official has *unique personal knowledge*; 2) the information cannot be obtained from any other source or through less burdensome means; and 3) the deposition would not significantly interfere with the official's ability to perform his governmental duties.  *Marisol A. v. Giuliani*, 1998 WL 132810, at *2; *Warzon v. Drew*, 155 F.R.D. at 185.  The requirement that the deposition be necessary to obtain relevant information not available from other sources "is strictly imposed."  *Marisol A. v. Giuliani*, 1998 WL 132810, at *2.

Significantly, in contrast to the typical motion for a protective order, it is not the Defendants burden in this case to establish that the discovery should not be had.  Rather, it is the Plaintiffs' burden to persuade this Court that the conditions-precedent to taking the depositions of Governor Rell and Secretary Genuario are satisfied.  *E.g.*, *Warzon v. Drew*, 155 F.R.D. at 185 ("Before the involuntary depositions of high ranking government officials will be permitted, *the party seeking the depositions must demonstrate* that the particular official's testimony will likely lead to the discovery of admissible evidence and is essential to that party's case."); *Hankins v. City of Philadelphia,* 1996 U.S. Dist. LEXIS 13314, *3-4 (E.D.Pa. 1996) (placing burden on party seeking deposition to "demonstrate that [the official's] testimony is likely to lead to the discovery of admissible evidence, is essential to that party's case and that this evidence is not available through any alternative source or less burdensome means.")  Thus, in responding to this motion, *the Plaintiffs* must: 1) identify the specific information that

5

they seek from Governor Rell and Secretary Genuario;[1] 2) state why this information is essential to proving their case (and why it is not barred by executive privilege);[2] and 3) convincingly explain why the only sources of information they seek are the governor and the secretary of OPM.

At this juncture, it is extremely difficult to foresee how the Plaintiffs can overcome the significant legal barriers to deposing Governor Rell and Secretary Genuario. As to the secretary, the Court can take judicial notice that he was appointed secretary of OPM in 2005—well after the events at issue in this case, which occurred in late 2002/early 2003. Prior to his appointment, he was in the legislature. Simply put, the secretary lacks personal knowledge of the allegations of the complaint, which focus principally on *Governor Rowland's* subjective motives for ordering the layoffs at issue, particularly his alleged anti-union animus. Similarly, Governor Rell, in her capacity as then-Lt. Governor, was not involved in the decision-making process that led to the elimination of state government positions and layoffs during the budget crisis in 2002/2003. The Plaintiffs cannot possibly meet their burden of establishing that she is the *only* source of non-privileged information essential to their case.

In sum, absent a compelling showing that Governor Rell and Secretary Genuario are the *only* sources of essential, non-privileged information, the Plaintiffs cannot take their depositions.

---

[1] As noted, in a letter accompanying the deposition notices Plaintiffs' counsel stated that he was noticing the depositions "to assist plaintiffs in responding to factual assertions in defendants' pending Motion to Dismiss." *See* Exhibit A. That motion asks this Court to dismiss the Plaintiffs' injunction claims seeking reinstatement on the grounds that the claims are moot because the named plaintiffs were rehired or retired. No deposition of Governor Rell or Secretary Genuario is required to respond to this mootness argument.

[2] See discussion, infra, at Part II.

II.  **The Deposition Notices Should Be Quashed Because The Plaintiffs' Anticipated Questions Would Intrude Upon Executive Privilege.**

Based on communications between counsel, the Defendants anticipate that the Plaintiffs will want to question Governor Rell and Secretary Genuario about the Governor's intentions concerning future layoffs. That is, they will want to know whether she is considering layoffs as a possible response to the State's worsening budget situation. For the record, Governor Rell has not made any decision whether to lay off state employees if the budget situation worsens. Further, any discussions that the Governor may have had with Secretary Genuario or other administration officials regarding how to respond to the budget situation are plainly subject to executive privilege.

Executive privilege, also known as the deliberative process privilege, "protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *New York City Managerial Employee Ass'n v. Dinkins*, 807 F. Supp. 955, 957 (S.D.N.Y. 1992) (internal citations and quotation marks omitted). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).[3]

---

[3] Although the deliberate process privilege frequently arises in the context of federal Freedom of Information Act ("FOIA") cases, the FOIA is not the source of the privilege. Rather, it is a preexisting privilege. *Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991) (Congress intended to incorporate into the FOIA all the normal civil discovery privileges, including executive privilege).

The deliberative process privilege exists when the communications sought to be discovered are both predecisional and deliberative. *Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991); *New York City Managerial Employee Ass'n*, 807 F.Supp. at 957. Predecisional communications are communications generated to assist the agency decisionmaker in making a decision, while deliberative communications relate to the process by which policies are formulated. *Hopkins*, 929 F.2d at 84.

Significantly, the executive privilege is not strictly limited to *communications* between parties. It also protects the mental processes by which an executive reaches a decision. *United States v. Morgan,* 313 U.S. 409, 422 (1941) (holding that "the integrity of the administrative process must be [] respected," and therefore discouraged the practice of calling high level officials as witnesses); *Morgan v. United States,* 304 U.S. 1, 18, (1938) (recognizing that it is "not the function of the court to probe the mental processes of the Secretary of Agriculture in reaching his conclusions"). In short, as previously noted, high ranking government officials may not be compelled to testify about their reasons for taking official actions absent the most extraordinary circumstances. *Simplex Time Recorder Co.,* 766 F.2d at 586. Questions during a deposition that seek testimony from a government official about policy deliberations intrude upon executive privilege. And when the only information sought through a deposition is information that the privilege protects, the deposition must be quashed. *Marisol A. v. Giuliani,* 1998 WL 158948, at *3.

### III. The District Court Must Quash The Notices Of Deposition Of Governor Rell And Secretary Genuario To Protect The Substance Of Their Government Immunity Defenses.

As the Defendants explained in their Motion to Stay Discovery (dated July 14, 2008), which is *sub judice,* the Plaintiffs' complaint alleges a paradigmatic example of a "subjective intent" or "motive-based" constitutional tort. That is, the Plaintiffs allege that Governor John Rowland and Marc Ryan, his secretary of OPM, violated the First Amendment when, *motivated by anti-union animus*, they ordered layoffs of approximately 2500 state employees in late 2002 and early 2003. Such improper motive, according to the Plaintiffs, violates their First Amendment rights of freedom of speech and association. When such a motive-based constitutional claim is alleged, and when, as here, the defendant asserts a governmental immunity defense, the United States Supreme Court has mandated that a district court *must* exercise its discretion over trial management and discovery "in a way that protects the substance" of the defense. *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998). Specifically, the district court "*must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings*." *Id.*

The Defendants incorporate by reference the arguments articulated in support of their Motion to Stay Discovery. Those arguments were made in response to written discovery requests directed to Governor Rell and Secretary Genuario. *A fortiori*, those arguments apply to notices to take their depositions. The Defendants do not dispute that the Plaintiffs are entitled to limited discovery on questions relating to legislative immunity, in accordance with the Second Circuit's decision in this case. *State Employees Bargaining Agent Coalition v.*

9

*Rowland, et al.*, 494 F.3d at 90, 92. That limited discovery, however, can be had without subjecting the Defendants to burdensome depositions.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion for a Protective Order and should quash the notices of depositions of Governor Rell and Secretary Genuario.

                                        DEFENDANTS:
                                        JOHN G. ROWLAND AND MARC S. RYAN


                                        By    /s/
                                            Daniel J. Klau (ct17957)
                                            Bernard E. Jacques (ct12293)
                                            Pepe & Hazard LLP
                                            Their Attorney
                                            Goodwin Square
                                            225 Asylum Street
                                            Hartford, CT 06103-4302
                                            Tel. No. (860) 522-5175
                                            Fax No. (860) 522-2796
                                            bjacques@pepehazard.com
                                            dklau@pepehazard.com

**CERTIFICATION**

I hereby certify that on August 27, 2008, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/_____
Daniel Klau

11