UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STATE EMPLOYEES BARGAINING | : | |
| AGENT COALITION, ET AL, | : | |
| | : | |
| | : | |
| V. | : | CIV. NO. 3:03CV221 (AVC) |
| | : | |
| JOHN G. ROWLAND, ET AL, | : | SEPTEMBER 5, 2008 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTIONS FOR DISCOVERY ORDERS**

**Introduction**

On June 20, 2008, this Court entered Orders [Dkt. # 165, 163] allowing defendants until

July 15, 2008 to make rolling responses to plaintiffs' First Set of Interrogatories and Requests for

Production as to defendant Genuario[1] and to respond to plaintiffs' First Set of Interrogatories as

to defendant Rell[2] and Request for Admissions.[3]  Apparently believing that this Court will not

impose discovery sanctions upon them because they are state officials, defendants have refused

to respond to these discovery pleadings.

Plaintiffs have moved, pursuant to Fed.R.Civ.Pro. 37(a) & (d), for entry of discovery

orders against each defendant.  Plaintiffs seek (i) to compel full responses to their pending

---

[1]  A copy of plaintiffs' February 20, 2008 First Set of Interrogatories and Requests for Production as to defendant Genuario is attached to the Affidavit of David S. Golub dated September 5, 2008 ("Golub Aff.") as Exhibit A.

[2]  A copy of plaintiffs' May 19, 2008 First Set of Interrogatories as to defendant Rell is attached to Golub Aff. as Exhibit B.

[3]  A copy of plaintiffs' May 19, 2008 Requests for Admissions (as to both defendants) is attached to Golub Aff. as Exhibit C.

interrogatories and requests to produce within ten days;[4] (ii) failing such responses, entry of orders precluding defendants from challenging plaintiffs' claims and/or deeming certain claims established; and (iii) an award of the costs of pursuing these Motions.

Plaintiffs submit this Memorandum and the annexed Affidavit of David S. Golub dated September 5, 2008 and attached Exhibits in support of their Motions for Discovery Orders.

**History of the Discovery Proceedings in this Action**

In August 2007, after the mandate dismissing and denying defendants' interlocutory appeal was issued by the Second Circuit, this Court directed the parties to file a Rule 26(f) report setting forth a schedule for discovery and trial of this action. [Dkt. # 116]. The parties conferred and entered into a Rule 26(f) scheduling agreement submitted to the Court on September 7, 2007. [Dkt. #126].[5]

In the parties' *agreed* Rule 26(f) report, defendants – through their prior counsel – expressly agreed that discovery would commence immediately [§ E-2(a)]; that it would cover all aspects of plaintiffs' claims and defendants' defenses [§ E-1]; and that "discovery will not be conducted in phases." [§ E-3]. By Order dated September 26, 2007, the Court approved the

---

[4] Plaintiffs' Motions for Discovery Orders are directed specifically to plaintiffs' unanswered interrogatories and requests to produce. Defendants' failure to timely respond to plaintiffs' Requests for Admissions is governed by Fed.R.Civ.Pro. 36(a)(3), which provides that "a matter is admitted unless, within 30 days after being served [or such longer time as the parties agree or the court may have allowed], the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

[5] A copy of the parties' September 7, 2007 Rule 26(f) Report is attached to Golub Aff. as Exhibit D.

parties' Rule 26(f) agreement (modifying, slightly, the dates proposed by the parties). [Dkt. # 132].[6]

Consistent with the parties' agreement to conduct discovery "immediately" on all aspects of plaintiffs' claims, defendants – through their prior counsel – immediately served 18 sets of comprehensive interrogatories and requests to produce, seeking discovery from plaintiffs as to their affirmative claims and damages.[7] Defendants also served 19 notices of deposition, encompassing each of the five individual plaintiffs, each of the thirteen plaintiff unions (in the form of Rule 30(b)(6) notices of deposition), and for the plaintiff Unions' lead negotiator, Attorney Daniel Livingston.[8] Defendants' Rule 30(b)(6) Notices of Deposition required production of witnesses by each union to designated to testify on virtually every aspect of plaintiffs' affirmative claims and damages. [See Exhibit F].

---

[6] Prior to the Court's September 26, 2007 Order, discovery in this action was stayed, over plaintiffs' objection, for over 4½ years while defendants' Motion to Dismiss and interlocutory appeal from this Court's denial of their Motion were *sub judice*. In its January 18, 2006 Ruling on defendants' Motion to Dismiss ("Ruling"), the Court stated that in light of the delay in proceeding with the case, discovery should commence without delay, and then proposed a "limited first phase of discovery concerning the applicability of absolute legislative immunity, and re-argument on that issue before merits discovery, if desired." [Ruling at 16]. The Court directed the parties to advise the Court by letter if they sought such phased discovery. [Id.]. Defendants expressly rejected this offer of limited discovery on their legislative immunity defense, [see January 31, 2006 Order Directing the Commencement of Discovery (Dkt. # 95) at 1-2], and obtained – over plaintiffs' objection – a continuing stay of all discovery while pursued their unsuccessful appeal of the Court's Ruling.

[7] On September 21, 2007, defendants served 18 identical sets of Interrogatories and Requests for Production on each of the union and individual plaintiffs in this action. A copy of one of these identical sets is attached to Golub Aff. as Exhibit E.

[8] On September 7, 2007, defendants served notices of deposition on each of the 18 plaintiffs, including 13 identical Rule 30(b)(6) notices on each plaintiff Union and a notice of deposition for the Unions' lead negotiator, Attorney Daniel Livingston. Thirteen amended Rule 30(b)(6) notices of depositions for each plaintiff union were re-served on September 27, 2007, changing the proposed dates of the depositions. A copy of one of these identical Rule 30(b)(6) notices is attached to Golub Aff. as Exhibit F.

On February 20, 2008, plaintiffs served their First Set of Interrogatories and Requests to Produce [Exhibit A] on defendant Genuario, in his official capacity as Secretary of the Office of Policy and Management of the State of Connecticut. Plaintiffs' February 20, 2008 discovery pleading contains three interrogatories and fourteen document requests.

On March 25, 2008, the parties conferred concerning their responses to each others' pending discovery. New counsel had recently appeared on behalf of defendants and requested a thirty-day extension of time to respond to plaintiffs' discovery. Plaintiffs consented to this request. The parties submitted a Joint Motion for mutual thirty day extensions to respond to their respective pending discovery, with defendants' new counsel representing in the Joint Motion that the time was necessary to enable them "to familiarize themselves with this factually and legally complex case." [Dkt. # 151].[9] The Court granted the parties' Joint Motion on March 26, 2008, extending the time for defendant Genuario's discovery responses to April 25, 2008. [Dkt. # 153].

In late April 2008, the parties conferred again concerning the pending discovery. The parties agreed to seek permission from the Court to make rolling responses to the pending discovery so as to minimize the burden of responding. On April 25, 2008, the parties filed a Joint Motion [Dkt. # 158] seeking authorization to make such rolling responses over the course of the next month (to June 1, 2008). The parties' Joint Motion stated in support of this request:

> The parties have agreed ... to make rolling production and
> responses over the course of the next month.

[Id.].[10] As the parties explained in the Joint Motion, such rolling production and responses

---

[9] A copy of the parties' March 25, 2008 Joint Motion is attached to Golub Aff. as Exhibit G.

[10] A copy of the parties' April 25, 2008 Joint Motion is attached to Golub Aff. as Exhibit H.

would "decrease the burden of responding for state officials ..." [Id.]. The Court granted the parties' Joint Motion on April 28, 2008, ordering:

> The discovery responses described in the within motion shall be made in the manner specified on or before June 1, 2008. [Dkt. # 159].

On May 20, 2008, plaintiffs served contention Interrogatories [Exhibit B] on defendant Rell, in her official capacity as Governor of the State of Connecticut, and Requests for Admission [Exhibit C] on both defendants.

In June 2008, when the rolling responses anticipated in the parties' April 25, 2008 Joint Motion had not been made, the parties agreed to submit a further Joint Motion to extend the time for their respective responses to July 15, 2008. The parties' June 19, 2008 Joint Motion [Dkt. # 163] again stated that "the parties have agreed to make rolling production in response to [their respective] discovery requests," and further represented that "the parties diligently continue to compile information necessary to respond to said requests." [Id. at 1].[11] The Joint Motion also reiterated that such rolling responses would "decrease the burden of responding for the state officials ..." [Id. at 2]. The parties further sought modifications to the other scheduling deadlines, but represented that the requested extension would "not unduly delay the trial deadline." [Id.].

The Court granted the parties' Joint Motion on June 20, 2008 [Dkt. # 165], extending the time for defendant Genuario's discovery responses to July 15, 2008. Defendants also filed a separate Motion for Extension of Time [Dkt. # 162][12] to respond to plaintiffs' First Set of

---

[11] A copy of the parties' June 19, 2008 Joint Motion containing this request by defendants is attached to Golub Aff. as Exhibit I.

[12] A copy of defendants' June 19, 2008 Motion for Extension of Time is attached to Golub Aff. as Exhibit J.

Interrogatories as to defendant Rell and to plaintiffs' First Request for Admissions, which the Court also granted, extending the time for defendants' responses to that discovery to July 15, 2008. [Dkt. # 163].

Defendants did not respond to plaintiffs' discovery on July 15, 2008. Instead, on July 14, 2008, defendants filed a Motion for (partial) Stay of discovery and to Modify Scheduling Order. [Dkt. # 166, 168]. In support of their Motion, defendants claimed that plaintiffs are only entitled to discovery related to defendants' legislative immunity defense and to factual issues presented by a new motion to dismiss or for summary judgment defendants represented they were about to file which, defendants asserted, would establish "that every single member of the plaintiff class has either been rehired or has been offered but refused a position with the State." [Dkt. # 167 (Def. Mem.) at 5].

On July 25, 2008, defendants filed a new Motion to Dismiss. [Dkt. # 169]. Contrary to their representation in their July 14, 2008 Memorandum, defendants do not contend in the Motion that all of the terminated state workers have been reinstated or offered reinstatement. Rather, defendants' Motion asserts that the five individual plaintiffs have no claim for reinstatement; that the plaintiff unions lack standing to pursue claims for reinstatement on behalf of the remainder of the class of terminated employees; and that plaintiffs' remaining claims for injunctive relief are moot since there is no risk that defendants – the current Governor and Secretary of the Office of Policy and Management – will ever engage in the alleged illegal conduct at issue in this case.

Defendants have, to date, continued in their refusal to respond to plaintiffs' pending discovery, including even the discovery requests directed to the factual disputes surrounding their

6

claimed entitlement to legislative immunity and to the factual issues presented by their Motion to Dismiss.[13]  Defendants have maintained this refusal even though their counsel has represented to plaintiffs that defendants acknowledge their obligation to provide such discovery and represented they would be doing so, defendants' motion to stay notwithstanding.[14]  Plaintiffs have responded to defendants' 18 sets of discovery interrogatories and requests to produce.[15]

Defendants have not moved for an extension of time to respond to plaintiffs' discovery pending a ruling on their Motion for Stay, even after plaintiffs advised defendants, in writing, of plaintiffs' position that the mere filing of an unruled-upon Motion for Stay does not relieve them of their obligations under Rule 37.[16]

---

[13] Defendants have failed to serve provide sworn answers or objections to plaintiffs' interrogatories, have failed to file responses or objections to plaintiffs' requests for production, and have failed to respond to plaintiffs' Requests for Admissions.  In late July 2008, defendants produced a collection of unexplained spread sheets.  Although defendants represented they would provide an explanation of the spread sheets, they have failed to do so.  [See Exhibit K (August 5, 2008 email from Daniel J. Klau, Esq. to plaintiffs' counsel)].

[14] See Exhibit K (August 5, 2008 email representing that defendants were "preparing a large document production early next week," that was never made); Exhibit L (July 22, 2008 email from Attorney Klau acknowledging "there are certain documents that you are clearly entitled to under the 2d Cir. decision.  We're bates stamping a bunch of documents we owe you, with more to follow"); Exhibit M (July 22, 2008 email from Attorney Klau promising to provide plaintiffs "much of what was requested," notwithstanding defendants' motion for stay).

[15] Defendants have not sought to go forward with any of the depositions they noticed.

[16] See Exhibit M (July 22, 2008 email from plaintiffs' counsel to Daniel J. Klau, Esq.), asserting "plaintiffs' position that the mere filing of a motion to stay, absent a ruling from the Court actually staying discovery, does not relieve defendants of any of their discovery obligations").

<u>Argument</u>

**I.    Plaintiffs Are Entitled to Entry of Orders Requiring Defendants to Respond to Plaintiffs' Interrogatories and Requests to Produce or Face Preclusive Orders.**

**A.    Defendants Have Failed to Comply with the Court's Discovery Orders and Their Own  Representations and Agreements.**

On April 28, 2008, in response to a Joint Motion by the parties for permission to make rolling responses to outstanding discovery, this Court issued the following Order with respect to defendant Genuario's responses to plaintiffs' First Set of Interrogatories and Requests for Production dated February 20, 2008:

> The discovery responses described in the within motion shall be made in the manner specified on or before June 1, 2008.

[Dkt. # 159]. On June 20, 2008, in response to defendants' representation that they were "diligently continu[ing] to compile the information necessary to respond," [Dkt. # 162], the Court entered an Order extending the time for defendant Genuario's responses to July 15, 2008. [Dkt. #165].

As outlined above, these discovery orders were the product of a series of agreements and representations by defendants' prior and current counsel – all submitted to and approved by this Court. These agreements included the following:

– defendants' agreement as to the scope of discovery entered into by defendants in the parties' Rule 26(f) Report [Exhibit D], approved by the Court on September 26, 2007. In the Rule 26(f) report, defendants (through their prior counsel) expressly agreed that discovery would "commence immediately" [§ E-2(a)]; that it would cover all aspects of plaintiffs' claims [§ E-1], and defendants' defenses; and that "discovery will not be conducted in phases." [§ E-3].

8

– on March 25, 2008, defendants' current counsel sought plaintiffs' consent to a 30 day extension of time to respond to the February 20, 2008 discovery in order to familiarize themselves with the file. [See Exhibit G.] Plaintiffs consented to this request, and the Court approved the requested extension on March 26, 2008. [Dkt. # 153].

– on April 25, 2008, defendants' current counsel and plaintiffs' counsel had discussions about the parties' pending discovery. The parties agreed to seek permission from the Court to make rolling responses to each others' discovery over the course of the next month so as to minimize the burden of the responses. The parties entered into a Joint Motion [Exhibit H] seeking authorization for such rolling responses. As the parties explained in the Joint Motion, such rolling production and responses would "decrease the burden of responding for state officials ..." [Id.]. At no time during the parties' discussions on April 25, 2008, did defendants' counsel assert that they would contest their obligation to respond to the discovery.

– In June 2008, when the rolling production anticipated in the parties' April 25, 2008 Joint Motion had not been made, the parties agreed to submit a further Joint Motion to extend the time for their respective discovery responses to July 15, 2008. The parties' June 19, 2008 Joint Motion [Exhibit I] again stated that "the parties have agreed to make rolling production in response to [their respective] discovery requests," and further represented that "the parties diligently continue to compile information necessary to respond to said requests." [Id. at 1]. The Joint Motion also reiterated that such rolling production would "decrease the burden of responding for the state officials ..." [Id. at 2]. The parties further sought modifications to the other scheduling deadlines, but represented that the requested extension would "not unduly delay

the trial deadline." [Id.]. The Court issued an order allowing the requested extension on June 20, 2008. [Dkt. # 165].

– On that same date, the Court also approved defendants' motion for an extension of time to July 15, 2008 to respond to plaintiffs' Requests for Admission and First Set of Interrogatories to defendant Rell. [Dkt. # 163].

Notwithstanding these court Orders, and the representations and agreements underlying these Orders, defendants have refused to respond to plaintiffs' discovery, claiming that they are entitled to a partial stay of discovery. In their Motion to Stay and Modify Scheduling Order, defendants argue that discovery should be limited to the phased discovery they expressly rejected, first in January 2006, see n. 6, and again in September 2007. As plaintiffs discuss below, defendants' Motion to Stay is without basis. However, irrespective of the lack of merit of defendants' Motion, the mere filing of an unruled-upon Motion to Stay is not sufficient to relieve defendants of their obligations to comply with the Court's discovery orders and the requirements of the federal Rules.

Under the federal discovery rules, a party is not allowed to unilaterally arrogate to itself the right to ignore discovery deadlines. As one district court has ruled in rejecting a defendant's argument that it was relieved of its obligation to respond to pending interrogatories because it filed a motion to stay:

> Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion has been filed at all.

Willemijn Houstermaatschapppij BV v. Apollo Computer Inc., 707 F. Supp. 1429, 1441 (D.Del, 1989) (emphasis added) (copy attached).

The holding in Willemijn was applied to a situation directly analogous to the situation in this case in Applied Biosystems, Inc. v. Cruachem, Inc., 1990 WL 495458 (D. Del. August 3, 1990) (Roth, J.). In Applied Biosystems, the parties had – as here – entered into an agreed scheduling order that covered the defendant's pending discovery directed to the plaintiff's antitrust claims in the case. The plaintiff moved to sever its antitrust claims and did not respond to the defendant's discovery directed to those claims. The court rejected the plaintiff's attempt to impose "a unilateral stay" citing the language from Willemijn quoted above, the court held:

> [T]he fact that [plaintiff] has pending amotion to sever antitrust issues from patent issues does not impact upon its duty under the Federal Rules of Civil Procedure and under the stipulated order to conduct discovery on all issues in this case.

Id. at *2; accord, Standard Chlorine of Delaware, Inc. v. Sinibaldi, 821 F. Supp 232 (D. Del. 1992).

The holding in Willemijn was also applied in Billups v. West, 1997 WL 100798 (S.D.N.Y. March 6, 1997) (Pitman, Mag.) (copy attached), a case in which state officials failed to respond to a *pro se* plaintiff's discovery requests. Relying on the quoted language from Willemijn cited above, the court in Billups held:

> [T]he power vested in the Court to extend deadlines is not a power that a party can exercise unilaterally. In the absence of an extension *from the Court*, responses to discovery requests are governed by the unambiguous time limits clearly set forth in the Federal Rules of Civil Procedure.

Id. at * 3.

Most recently, Judge Dorsey relied upon these principles, in requiring a defendant to make full responses to a plaintiff's pending discovery requests. Berube v. Great Atlantic & Pacific Tea Company, Inc., 2006 WL 3826702 (D. Conn. Nov. 30, 2006) (Dorsey, J.) (copy attached). In Berube, where a defendant produced documents that were partially responsive to the plaintiffs' discovery requests and promised, but did not serve, timely formal responses or objections, Judge Dorsey held that the defendant had waived its right to object to specific requests and ordered compliance in full with the plaintiff's interrogatories and requests for production. In his ruling, Judge Dorsey quoted the following language from Billups:

> The time limits set forth in the Federal Rules of Civil Procedure are not optional. They are mandatory for all litigants – large or small, public and private. Litigants simply do not have unbridled, unilateral discretion to decide when they will respond to discovery requests. The very notion of such a chaotic system would make impossible for cases to be resolved in a "just, speedy, and inexpensive" manner contemplated by Rule 1 of the Federal Rules of Civil Procedure.

Berube at *5, quoting Billups at * 2.

In this case, if defendants truly believed they were entitled to a stay and wanted to protect their position while the Court ruled on their Motion to Stay, defendants were, at a minimum, required to obtain a ruling from the Court extending their time to respond to plaintiffs' discovery until their Motion to Stay was decided. Defendants – despite being expressly advised by plaintiffs that the mere filing of the motion to stay did not relieve defendants of their obligations to comply with plaintiffs' discovery requests[17] – did not seek such an extension.

---

[17] On July 22, 2008, after receiving defendants' Motion to Stay in this case, plaintiffs emailed defendants' counsel, as follows:

> Re SEBAC, it is plaintiffs' position that the mere filing of a motion to stay, absent a ruling from the Court actually staying discovery, does not relieve defendants of any of their discovery obligations. [Exhibit M].

The reason for defendants' failure to file a motion for an extension of time to respond to plaintiffs' discovery pending a ruling on their Motion to Stay is evident: given the tortured history of discovery in this case (including defendants' prior refusal to engage in phased discovery on the legislative immunity issue); defendants' prior agreement in the parties' Rule 26(f) report to conduct discovery on all aspects of the case; defendants' affirmative undertaking of extensive discovery on all issues; and defendants' representations to plaintiffs' and the Court in the parties' Joint Motions, defendants knew it was unlikely that a motion for extension of time would be granted and further knew that such a motion would almost certainly be ruled upon promptly by the Court, requiring them to provide the pending discovery forthwith.

In the absence of an Order granting defendants' relief from "the unambiguous time limits clearly set forth in the Federal Rules of Civil Procedure" and this Court's June 20, 2008 Orders, defendants were required to respond to plaintiffs' pending discovery by July 15, 2008 and should be ordered to respond fully now. *Id.*

**B.    Defendants' Purported Justifications for Staying Discovery Are Baseless.**

On August 4, 2008, plaintiffs filed their Memorandum in Opposition to Defendants' Motion to Stay. As set forth in plaintiffs' Memorandum, defendants' purported justifications for limiting discovery are baseless.

Defendants first contend that discovery should be limited to the issue of legislative immunity because resolution of that defense can be dispositive of this action is, quite simply, erroneous. As plaintiffs discuss in their August 4, 2008, Memorandum, in its decision rejecting defendants' interlocutory appeal, the Second Circuit unanimously agreed with plaintiffs' argument that legislative immunity does <u>not</u> apply <u>at all</u> to plaintiffs' claims seeking to require

13

defendants to reinstate terminated union employees to existing positions in the State's work force

and that, with respect to plaintiffs' claims for reinstatement to the terminated employees' prior

positions, the defense will only apply if the positions no longer exist due to legislative

elimination of the positions. [Pl. Mem. at 6-8, citing to <u>State Employees Bargaining Agent</u>

<u>Coalition v. Rowland</u>, 494 F.3d 71, 82 (2d Cir. 2007)].

Thus, the Second Circuit ruled that, even to the extent defendants can prove, *factually*,

that their actions in terminating plaintiffs' employment were procedurally and substantively

"legislative," the defense of legislative immunity does <u>not</u>, *as a matter of law*, bar plaintiffs'

request for injunctive orders compelling defendants, in their capacity as executive officers with

control over the State's work force, to reinstate terminated workers to existing positions in the

State's work force:

> Because ordering defendants to hire plaintiffs into existing positions in the state
> workforce would not require either a new allocation of funds or a new passage of
> legislation, but would instead compel defendants to act only in their
> administrative capacities as executive branch officials with authority over the state
> workforce, we conclude that legislative immunity prevents no obstacle to the
> District Court's ordering of such relief. [footnote omitted]
>
> ....
>
> As a matter of law, defendants are not entitled to legislative immunity with
> respect to plaintiffs' claims to placement in other, existing positions, because
> granting this relief would not enjoin defendants in their performance of legislative
> functions.

<u>Id</u>. at 93, 98.

The Second Circuit ruled that, to the extent defendants can prove, factually, that they

ordered the terminations in a legislative capacity, the defense of legislative immunity would only

14

apply to bar reinstatement to terminated employee's prior positions if such positions no longer

exist because they had been eliminated by *legislative* action:

> [W]e cannot assess, at the pleading stage, the merits of plaintiffs' argument that
> legislative immunity also presents no obstacle to their claims seeking
> reinstatement to their *previous positions*. Whether restoring plaintiffs to those
> positions would compel defendants to act in their legislative capacities will
> necessarily hinge on the findings made by the District Court regarding the issues
> to be resolved under <u>Bogan</u>. If defendants successfully demonstrate that their
> actions in terminating plaintiffs' positions were legislative in nature under <u>Bogan</u>,
> plaintiffs' claims for reinstatement to their previous positions would be barred by
> legislative immunity. This is because ordering such relief would require no less
> than a judicial order compelling defendants, in their official capacities, to re-create
> positions that would have been eliminated through prior legislative action.
> ....
>
> In the circumstances presented, discovery is necessary to assess whether
> defendants are entitled to legislative immunity with respect to plaintiffs' claims
> for reinstatement to their previous positions.

<u>Id.</u> at 93-94, 98.

Defendants, while purporting to rely on the Second Circuit's decision in their Motion to

Stay, point to no holding in the case supporting their argument for a stay. There is, quite simply,

no legal basis for defendants' contention that the legislative immunity defense can be dispositive

of this case. Likewise, defendants' contention in their Memorandum that the Second Circuit

ordered "limited" discovery on the legislative immunity issue (Def. Mem. at 1) is unsupported by

any citation to the text of the Second Circuit decision[18] and is also erroneous. Nowhere in the

---

[18] Defendants' authority for this assertion is a general citation to the Second Circuit decision, with no specific page reference. [Def. Mem. at 1].

Second Circuit's decision did the court indicate that, on remand, discovery was to be limited in any respect.[19]

Defendants' prior counsel plainly understood the import of the Second Circuit's ruling and expressly agreed that discovery would not be conducted in phases. Defendants' prior counsel undertook extensive discovery on all aspects of plaintiffs' claims and plaintiffs have complied with that discovery. It is grossly inequitable for defendants now to try to repudiate their counsel's prior agreements and conduct of the case.

In addition to seeking to limit discovery to legislative immunity issues, defendants represented in their Memorandum in support of their Motion to Stay that they were about to file a motion to dismiss or for summary judgment "that will establish that every single member of the plaintiff class has either been rehired or has been offered but refused a position with the State." [Def. Mem. at 5]. Defendants argued that discovery should be stayed pending a ruling on that motion, which defendants argued would be wholly dispositive of the case.

But defendants filed no such motion. Instead, they have filed a purported Motion to Dismiss for Lack of Jurisdiction asserting that none of the five named plaintiffs (nor any of the plaintiff unions) has standing to pursue this action on behalf of the class. [See Def. July 25, 2008 Motion (Dkt. # 169)]. In support of this motion, defendants have proffered two Declarations

---

[19] Prior to the filing of defendants' Motion to Stay, plaintiffs' counsel spoke with defendants' counsel about defendants' contention that discovery should be limited to the legislative immunity defense because the defense could purportedly be dispositive of the case. Plaintiffs' counsel pointed out that defendants were apparently misreading the Second Circuit decision and expressly referred to the portion of the decision that holds that legislative immunity does not, as a matter of law, bar plaintiffs' claims for reinstatement to existing positions in the State's work force. Plaintiffs' counsel also noted that defendants' prior counsel had rejected the opportunity to conduct phased discovery on the defense in January 2006 and had agreed to full discovery in September 2007. See Golub Aff. at ¶ 23.

stating that one of the five named plaintiffs was not terminated; that two have been rehired to positions in the State's work force similar to those they had when they were terminated; that one named plaintiff was rehired to a different position; and that one named plaintiff took early retirement.

Plaintiffs are preparing their response to defendants' Motion to Dismiss, but the Motion is plainly without merit. Thus, with respect to named plaintiff Marcelle Pichanick Groves, although she was rehired by the State, she was rehired at a position three grades lower than the position she had when she was terminated. Plaintiff Groves seeks a position at least at the job level she had when she was terminated. Defendants' claims are similarly invalid with respect to three of the other individual plaintiffs, as well. With respect to plaintiff Dennis P. Heffernan, although he opted for early retirement in February 2003, that was only <u>after</u> he was terminated from his state position (in mid-January 2003), and he seeks reinstatement to an appropriate position in the state work force. Moreover, while plaintiff Geneva Hedgecock was rehired to a position in the State work force similar to the one she had when she was terminated, the position has different responsibilities and is geographically disadvantageous for Ms. Hedgecock and she seeks reinstatement her prior position. Similarly, plaintiff Denise A. Bouffard has suffered a loss of competitive seniority due to the time she was out of work due to her termination even though she was reinstated to a position similar to the one she had when she was terminated.[20]

Defendants' claim in their Motion to Dismiss that the plaintiff unions lack standing to represent the class of terminated employees ignores that this Court previously declined to dismiss

---

[20] Declarations from plaintiffs Groves, Heffernan, Hedgecock and Bouffard are attached to Golub Aff. as Exhibit N. Plaintiffs note that Defendants' Declaration with respect to plaintiff Groves' rehiring deliberately fails to mention her lower pay grade.

the unions' claims on this very ground. See Ruling at 15. In its Ruling, the Court indicated it did

not believe there was merit to defendants' standing argument and that defendants could raise it

on summary judgment. Id. Defendants' bald reassertion of its standing argument, which merely

repeats the arguments already rejected by the Court, disregards the Court's Ruling and is without

merit.

And plaintiffs and the plaintiff unions further seek injunctive relief barring defendants

from making termination decisions in the future based on plaintiffs' union status and union

activity and barring defendants from retaliating against plaintiffs because of their union activity

and support for opposing political candidates. Although, in their Motion to Dismiss, defendants

contend that plaintiffs are not entitled to such injunctive relief, the Second Circuit expressly

affirmed the importance of this aspect of plaintiffs' claims. As the Second Circuit ruled in

rejecting defendants' argument that plaintiffs' claims for such relief were barred:

> Defendants also argue that plaintiffs' other claims for injunctive relief
> including [their] claims for an injunction prohibiting retaliation against plaintiffs
> are barred by the Eleventh Amendment. Defendants contend that the additional
> forms of injunctive relief requested by plaintiffs also do not respond to any
> ongoing violation of federal law. We disagree. Plaintiffs seek other forms of
> injunctive relief as a remedy for defendants' alleged ongoing retaliation against
> the individual and union plaintiffs, as demonstrated by defendants' alleged failure
> to rehire the individual plaintiffs (or restore their positions). The prohibition
> against retaliation sought by plaintiffs, for example, would prevent this alleged
> ongoing injury from occurring again in the future. Thus, sovereign immunity does
> not bar the other forms of injunctive relief sought by plaintiffs.

494 F.3d at 98.

Thus, defendants' asserted justifications for limiting discovery – the purportedly

dispositive nature of their legislative immunity defense and the grounds asserted in their new

Motion to Dismiss – are without basis.

**C.**    **Defendants Have Refused to Respond to Any of Plaintiffs' Pending
Discovery, Even Those Aspects that They Acknowledge Are Appropriate.**

The good faith basis for defendants' Motion to Stay is further cast into doubt by
defendants' failure to provide plaintiffs with discovery responses even as to those areas that they
concede are appropriate in their stay Memorandum – i.e., the factual issues raised by defendants'
legislative immunity defense and the factual issues presented by defendants' Motion to Dismiss.

Thus, plaintiffs' discovery directed to defendant Genuario and plaintiffs' Requests for
Admission contain sections specifically directed to the factual merits of defendants' legislative
immunity defense. The discovery directed to defendant Genuario requires information and
documents directed to the alleged budgetary savings in FY 03 that defendants have asserted were
the basis for the termination decisions at issue in this litigation [See Exhibit A, Int. 1f, i; 2a, 3;
Req. for Prod. 5, 6, 7, 8, 14]  and further seek documents pertaining to any purported exercise of
the Governor's budgetary rescission authority pursuant to Conn. Gen. Stats. § 4-85(b). [Id., Req.
for Prod. 12, 13].

Plaintiffs' Requests for Admissions similarly seek to require defendants to admit or deny
whether they complied with the mandatory procedures for modifying Connecticut's budget to
alleviate a budget deficit – the requirements that the Second Circuit held must be met in order for
defendants to establish that they acted in a "procedurally" legislative manner. [See Exhibit C, Pl.
Req. for Admissions, § D, ## 40-68]. The Requests further require defendants to admit or deny
whether terminated employees' positions were "eliminated" by the legislature. [id. at ## 69-70]
and whether or not the decision of which positions to create and fill in the State's work force has
been determined by the executive branch [id. at 71-73]. These Requests go directly to the factual

19

issues that the Second Circuit held must be established in order for defendants to establish their entitlement to legislative immunity.

The Requests further require defendants to admit or deny whether the terminations at issue were, in fact, directed to resolving the FY 2003 budget deficit – as defendants have asserted, without evidentiary support throughout this litigation – or, rather, were to pressure the plaintiff unions to make collective bargaining concessions in future years, as plaintiffs assert, and thus included terminations of employees without regard to the financial impact (or lack of impact) of the terminations on FY 03 expenses. [See e.g., id. at § B, ## 20-33].

These – and the other Requests for Admission propounded by plaintiffs – are neither unduly burdensome nor time-consuming to answer; and answers consistent with plaintiffs' understanding of the facts pertaining to defendants' conduct will factually establish the elements of plaintiffs' constitutional claims and eliminate defendants' claim to legislative immunity.

Similarly, although defendants admit that plaintiffs are entitled to conduct discovery relating to defendants' Motion to Dismiss, defendants have refused to respond to aspects of plaintiffs' discovery directed to factual issues presented by that Motion. Thus, while defendants argue that there is no basis for plaintiffs' prayer for injunctive relief because there is no evidence that defendant Rell would, in the future, ever engage in anti-union conduct, defendants refuse to respond to plaintiffs' interrogatories concerning the current Governor's position on the existence of plaintiffs' First Amendment right to engage in union activity [see e.g., Ex. B; Pl. First Set of Int. to Gov. Rell at Int. 1-7) and the propriety of termination or lay-off decisions based on a state employee's union status (id. at 9-13).

For example, plaintiffs' contention interrogatories to the Governor, in her official capacity, seek to establish whether it is or is not defendant's official position that the state may make termination decisions based on state employees' union status and union activities:

> 9. State whether it is your position that where there is an economic necessity for layoffs in the State of Connecticut's work force, you and other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select which employees to lay off based on whether the employees are or are not members of state employee unions. If it is not your position, state under what circumstances you contend you or other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select employees for layoff based on whether the employees are or are not members of state employee unions.

> 10. State whether it is your position that where there is an economic necessity for lay-offs in the State of Connecticut's work force and where the state employee unions have failed to agree to collective bargaining agreement concessions sought by you as a means to avoid such lay offs, you and other state officials may, consistent with the First, Fifth and Fourteenth Amendments to the United States Constitution , lay off only members of state employee unions. If it is not your position, state under what circumstances you contend you or other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select union employees for layoff where the unions have declined requested financial concessions.

(Id. at Int. 9-10), and whether defendants will seek to do so in the future should there be a budget deficit:

> 13. State whether it is your position that should there be an economic necessity for layoffs in the State of Connecticut's work force in the future, defendants may, consistent with the First and Fourteenth Amendments to the United States Constitution, choose which employees to lay off based on whether the employees are or are not members of state employee unions.

14. State whether it is your position that should there be an economic necessity for layoffs in the State of Connecticut's work force in the future, and should the state employee unions decline to agree to collective bargaining agreement concessions sought by defendants as a way to avoid such lay offs, defendants may, consistent with the First, Fifth and Fourteenth Amendments to the United States Constitution, choose which employees to lay off based on whether the employees are or are not members of state employee unions.

(Id. at Int. 13-14).

This discovery – which is not at all burdensome to answer – is directly germane to the factual assertions in defendants' Motion to Dismiss that there is no likelihood of the conduct at issue ever being repeated and that this action is, therefore, moot as to plaintiffs' claims for declaratory injunctive relief. (Def. Mem. in Support of Motion to Dismiss at 8-10).[21]

Defendants' failure to provide discovery responses to discovery that is not even covered by their Motion to Stay is, quite simply, inexcusable. When coupled with the timing of defendants' Motion to Stay, the good faith basis for defendants' conduct becomes even more questionable: defendants were apparently perfectly willing to respond to plaintiffs' discovery until the day before they were required to respond to plaintiffs' Requests for Admissions – which would have required them to admit the factual and legal predicates of plaintiffs' claims – and to respond to contention interrogatories (directed to Governor Rell), which would require her to take a formal position in this litigation on the legality of defendants' conduct.

---

[21] Most recently, defendants have refused to produce defendants Rell and Genuario for duly-noticed depositions, even though their testimony is directly relevant to the factual claims in defendants' Motion to Dismiss that plaintiffs' claims for declaratory injunctive relief are moot because plaintiffs have no evidence that defendants will engage in the conduct violative of the unions' and union members' rights at issue in this litigation. Defendants have moved for a protective order to bar these deposition. Plaintiffs are preparing their response to defendants' motion.

Likewise, although asserting in support of their Motion to Stay that all of the terminated employees have either been reinstated or declined reinstatement, defendants have refused to provide interrogatory answers and documents in support of this contention. The discovery defendants have ignored goes directly to defendants' factual claim that all members of the plaintiff class have been reinstated or offered reinstatement to their prior or equivalent positions in the State work force. [See e.g., Exhibit A, Ints. 1-3.] That is the discovery that defendants' counsel represented they were "diligently" compiling and that rolling production would enable them to provide without undue burden. Defendants have no proper justification for refusing that discovery now.

**E.    Plaintiffs Are Entitled to Orders Compelling Defendants to Respond Fully to All of Plaintiffs' Interrogatories and Requests for Production Within Ten Days and, Failing That, to Entry of Preclusive Orders.**

Where, as here, a party fails to respond to appropriately filed interrogatories or requests for production of documents, the party seeking discovery may either: (a) move under Rule 37(a) for a court order compelling discovery, or (b) "move directly for the imposition of sanctions under Rule 37(d)." The J.M. Cleminshaw Company v. City of Norwich, 93 F.R.D. 338, 345 n. 2 (D. Conn. 1981); see also Wright, Miller & Marcus, Federal Practice & Procedure, v. 8A, § 2291 at 714 (Rule 37(d) "allows the court ... to impose a variety of sanctions on a party who ... has failed to serve answers or objections to interrogatories submitted under Rule 33, or has failed to serve a written response to a request for inspection under Rule 34, after proper service of the request").

In this case, the Court has entered orders requiring defendants to respond to plaintiffs' discovery by July 15, 2008, But even absent such orders, plaintiff would be entitled to discovery

sanctions under Rule 37(d): "no prior court order is required to bring Rule 37(d) into play." The

J.M. Cleminshaw Company at 345 n.2 (quoting Wright, et al, Federal Practice & Procedure, at

§ 2291); United States v. Reyes, 307 F.3d 451, 457-58 (6th Cir. 2002) (dismissal for failure of

plaintiff to serve response to request for inspection under Rule 34 affirmed, despite fact that

defendant did seek order compelling discovery, as Rule 37(d)(3) expressly authorizes that

sanction); Moore's Federal Rules Pamphlet, § 37.10 a6 520 (2005) ("Though in many

circumstances a court order compelling discovery is required before sanctions may be imposed

for failure to cooperate in discovery, Rule 37(d) dispenses with that requirement.").

As required by Fed.R.Civ.Pro. 37a(1) and 37(d)(1)(B) and D. Conn. Local Rule

37(a), plaintiffs have undertaken good faith efforts to resolve the discovery disputes described

herein, including defendants' claim that they are entitled to limit the scope of discovery, with

Daniel J. Klau, Esq., counsel for defendants.  Plaintiffs have been unsuccessful in these efforts.

[Golub Aff.. ¶ 42].  Indeed, although (as reflected in the Exhibits K, L & M), Attorney Klau has

acknowledged that defendants are obligated to provide discovery, defendants have failed to do

so. Id.

Under Rules 37(a) & (d), this Court has wide discretion to determine the appropriate

sanction for a party who fails to serve answers or objections to interrogatories or responses or

objections to requests to produce. Oy v. Weiss, 1989 WL 20594 (E.D.N.Y. March 2, 1989)

(Glasser, J.) (copy attached) ("Whether to sanction defendants for failure to respond to discovery

demands is within the discretion of the district court") (citing National Hockey League v.

Metropolitan Hock Club, 427 U.S. 639, 643).  The Rule's only limitation is that order is "just,"

although it may consider the available remedies under "subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." F.R.Civ. Proc. 37(d).

Such orders may include Rule 37(b)(2)(B)'s order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence," as well as orders striking defenses as to which the discovery is not provided. Oy, 1989 WL 20594, * 2 (defendants' failure to respond to discovery demands resulted in a dismissal of its counterclaim and a striking of an affirmative defense as the court precluded defendants from offering any evidence in support of the claim or defense). See Insurance Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707-09 (1982) (when defendant failed to cooperate in discovery as to its defense of lack of personal jurisdiction, sanction of precluding that defense and deeming personal jurisdiction to be present proper); 7 Moore's Federal Practice, 37.51 (3d ed), 37A.12 (discussing range of evidentiary and preclusive sanctions available where party fails to respond to discovery).

Although, under Rule 37(a) & (d), plaintiffs would be entitled now to entry of orders deeming their claims established and precluding defendants from disputing plaintiff's claims and striking defendants' defenses, plaintiffs are willing, before seeking entry of such orders, to provide defendants with an opportunity to respond fully to the interrogatories and documents requests and, failing that, for preclusive orders to enter.

Accordingly, plaintiffs requests entry of an Order requiring defendants to respond _fully_ to plaintiffs' interrogatories and requests to produce within ten days (as provided by Local Rule 9(d)(5). In this regard, plaintiffs note that defendants, by failing to file timely objections to any of plaintiffs' discovery, have waived their right to object now. _Berube_ at *5 (party who fails to

serve timely objections, waives right to object); Fed.R.Civ.Pro. 33(b)(3) & 34(b)(2)(A) (party

must respond to interrogatories and requests to produce within thirty days); Fed.R.Civ.Pro.

33(b)(4) ("any ground [for objection to an interrogatory] not stated in a timely objection is

waived unless the party's failure to object is excused by the court for good cause shown");

Fed.R.Civ.Pro. 33(b)(3).

      Thus, a party that fails to respond to discovery and has not asserted a timely objection or

moved for a protective order may not avoid entry of orders under Rule 37(d) on the ground that

the discovery might otherwise be objectionable.  Rule 37(d) expressly provides:

> The failure to act described in this subdivision may not be excused on the ground
> that the discovery sought is objectionable unless the party failing to act has a
> pending motion for a protective order as provided by Rule 26(c).

See Wright, 2291 at 721 ("A party may not defend against sanctions under Rule 37(d) by

contending that the request for discovery was improper and objectionable.  A party that takes this

view is required to object or apply for a protective order under Rule 26(c).  This was the better

view prior to 1970, and it was written into Rule 37(d) in that year.").  As Judge Dorsey stated in

*Berube*, "these time limits are mandatory." *Berube* at *5.

**II.     Plaintiffs Are Entitled to An Award of Their Attorneys' Fees and Costs Incurred in Connection with This Motion.**

      Plaintiffs further seek, pursuant to Fed.R.Civ.Pro. 37(d) and & (b)(2) and D. Conn. Local

Civil Rule 37(d)4), an award of their attorneys' fees and costs in pursuing their Motions for

Discovery Orders in that there is no justification for defendants' failure to respond to plaintiffs'

discovery.

**Conclusion**

This case is over five years old.  After staying all discovery for over 4½ years, defendants – through their new counsel – have unilaterally and impermissibly terminated all discovery in this case, in violation of this Court's scheduling and extension orders and in breach of their express agreements and representations to plaintiffs.   In January 2006, this Court expressly directed, in light of the age of the case then, that discovery should commence without delay.  The Court's concern nearly three years ago are even more applicable now.

Plaintiffs submit that they are entitled to entry of discovery orders requiring defendants to respond fully to plaintiffs' pending discovery within ten days, upon pain of preclusive orders for failure to do so, and to an award of their attorneys' fees and costs.

<div align="right">

PLAINTIFFS,


BY___/s/_____
   DAVID S. GOLUB ct 00145
   SILVER GOLUB & TEITELL LLP
   184 Atlantic Street
   P.O. Box 389
   Stamford, Connecticut 06904
   Telephone:  (203) 325-4491
   Fax:  (203) 325-3769

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, a copy of the foregoing Plaintiffs'

Memorandum in Support of Motions for Discovery Order was filed electronically and served by mail

on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties

by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the

Court's CM/ECF System.

<div style="margin-left: 40%;">

_____/s/_____

DAVID S. GOLUB ct00145
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
Telephone:  203-325-4491
Fax: 203-325-3769
E-mail:  dgolub@sgtlaw.com

</div>

28