Westlaw.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 1

▷
Willemijn Houdstermaatschaapij BV v. Apollo
Computer
D.Del.,1989.

United States District Court,D. Delaware.
WILLEMIJN HOUDSTERMAATSCHAAPIJ BV,
A Corporation of the Netherlands Weena 723, 3001
GD Rotterdam, The Netherlands, Plaintiff,
v.
APOLLO COMPUTER INC., 330 Billerica Road,
Chelmsford, Massachusetts 01824, Defendant.
**Civ. A. No. 88-109-JRR.**

Feb. 17, 1989.

Patentee brought action against alleged infringer.
Alleged infringer counterclaimed seeking declarat-
ory judgment that patents were invalid and that its
products did not infringe. Upon motions of parties,
the District Court, Roth, J., held that: (1) alleged in-
fringer was not entitled to separate trials on issues
of liability and damages; (2) interests of justice and
convenience of witnesses did not require transfer of
action to district of alleged infringer's principal
place of business; (3) minimum standards of partic-
ularity for assertion of privilege were not met with
respect to certain responses to patentee's interrogat-
ories; (4) communications between foreign patent
agent and United States attorney which "touched
base" with United States were entitled to privilege
if patent agent was working on behalf of and under
direction of attorney; (5) whether documents pro-
duced by or on behalf of other foreign patent agents
which related solely to matters outside United
States were entitled to privilege depended entirely
on laws of countries concerned; and (6) neither
party would be awarded its expenses in bringing
their respective motions to compel.

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A ☞1959.1**

170A Federal Civil Procedure
    170AXV Trial
        170AXV(A) In General
            170Ak1959 Separate Trial of Particular
Issues
                170Ak1959.1 k. In General. Most
Cited Cases
    (Formerly 170Ak1959)
Separate trials on liability and damages would not
be ordered in patent infringement action where, al-
though infringer would stipulate to commercial suc-
cess of its allegedly infringing product, stipulation
would not eliminate need for evidence of commer-
cial success in liability phase of trial to show that
success of product was attributable to patentee's
"token ring"; single trial did not pose substantial
risk of confusion, and bifurcation might result in
unfair delay. Fed.Rules Civ.Proc.Rule 42(b), 28
U.S.C.A.

**[2] Federal Courts 170B ☞110**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in
Proper Forum
                170Bk106 Determination in Particular
Transferable Actions
                    170Bk110 k. Patents, Copyrights
and Trade Regulation. Most Cited Cases
Transfer of patent infringement case from federal
district which contained field sales offices in which
some infringing activity had allegedly occurred to
federal district containing alleged infringer's prin-
cipal place of business would not be ordered in in-
terest of justice or for convenience of witnesses and
parties; convenience of numerous fact witnesses
located in transferee district was not significant
factor given doubtful need to call large number of
such witnesses, and interest of justice favored re-
tention of case in forum which had already become
involved with its substantive aspects. 28 U.S.C.A. §
1404(a).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 2

**[3] Federal Courts 170B ⌖105**

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)1 In General; Venue Laid in
Proper Forum
                170Bk105 k. Plaintiff's Choice of For-
um; Forum Shopping. Most Cited Cases
Although plaintiff's choice of forum is to be accor-
ded less respect when that forum is not plaintiff's
"home turf," exception does not apply to plaintiff
who has selected venue that is connected with sub-
ject matter of lawsuit in considering whether to
transfer matter to another federal district in interests
of justice and convenience of witnesses and parties.
28 U.S.C.A. § 1404(a).

**[4] Federal Civil Procedure 170A ⌖1514.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(D) Written Interrogatories to Parties
            170AX(D)2 Scope
                170Ak1514 Privileged Matters
                    170Ak1514.1 k. In General. Most
Cited Cases
    (Formerly 170Ak1514)
When responding to interrogatory, claims of attor-
ney-client privilege and work product protection do
not excuse party from specifically identifying al-
legedly privileged item. Fed.Rules Civ.Proc.Rule
37(a), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A ⌖1537.1**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(D) Written Interrogatories to Parties
            170AX(D)3 Answers; Failure to Answer
                170Ak1537 Failure to Answer; Sanc-
tions
                    170Ak1537.1 k. In General. Most
Cited Cases
    (Formerly 170Ak1537)
Where defendant's responses to interrogatories

claiming attorney-client privilege or work product
were evasive and incomplete in that they did not
specifically designate purportedly privileged docu-
ments, answers were equivalent of failure to answer
for purposes of motion to compel, and thus defend-
ant would be ordered to fully respond. Fed.Rules
Civ.Proc.Rule 37(a)(3), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A ⌖1534**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(D) Written Interrogatories to Parties
            170AX(D)3 Answers; Failure to Answer
                170Ak1534 k. Sufficiency. Most Cited
Cases
Defendant did not comply with rule giving party
served with interrogatory option to respond by spe-
cifying records from which answer may be derived
when it failed to specify category or location of re-
cords which purportedly contained answers.
Fed.Rules Civ.Proc.Rule 33(c), 28 U.S.C.A.

**[7] Patents 291 ⌖292.4**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.4 k. Other Matters. Most
Cited Cases
    (Formerly 291k292)
Alleged infringer was not excused from producing
product information during discovery in patent in-
fringement action because it had not yet sold product.

**[8] Patents 291 ⌖292.1(4)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.1 Interrogatories
                  291k292.1(4) k. Answers; Failure
to Answer. Most Cited Cases

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 3

In patent infringement case, alleged infringer was not justified in failing to respond to interrogatories concerning damages simply because it had applied for stay on damage issue; alleged infringer was required to conduct discovery as if no motion had been filed under such time as motion was granted.

[9] Patents 291 ⬳292.4

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k292 Discovery
       291k292.4 k. Other Matters. Most Cited Cases
   (Formerly 291k292)
In patent infringement litigation, patentee was not entitled to discovery of all of alleged infringer's patent applications, but only those pertaining to litigation.

[10] Patents 291 ⬳292.1(2.1)

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity
      291k292 Discovery
       291k292.1 Interrogatories
        291k292.1(2) Scope
         291k292.1(2.1) k. In General. Most Cited Cases
   (Formerly 291k292.1(2))
Alleged patent infringer was not entitled to object to interrogatory seeking information concerning installation of allegedly infringing "token rings" on grounds that it was willing to stipulate its commercial success, in that patentee desired to prove that commercial success was due to alleged infringing involvement of "token rings" rather than other aspects of defendant's product.

[11] Patents 291 ⬳292.1(4)

291 Patents
   291XII Infringement
     291XII(C) Suits in Equity

      291k292 Discovery
       291k292.1 Interrogatories
        291k292.1(4) k. Answers; Failure to Answer. Most Cited Cases
In patent infringement litigation, alleged infringer was not required to supplement its answer to interrogatory asking for information regarding any documents relating to litigation that had been destroyed, where it had already answered each subpart of interrogatory concerning destruction of documents in negative.

[12] Federal Civil Procedure 170A ⬳1618

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(E) Discovery and Production of Documents and Other Tangible Things
      170AX(E)4 Proceedings
       170Ak1615 Motion and Proceedings Thereon
        170Ak1618 k. Designation of Document or Thing and Contents Thereof. Most Cited Cases
Plaintiff would not be permitted to embellish on descriptions of documents described as "transmittal letters" in its withheld documents list in order to show that documents were covered by attorney-client privilege or work product doctrine and thus avoid defendant's motion to compel their production, where plaintiff could have easily described documents with requisite particularity initially and had in fact done so with respect to certain other documents.

[13] Federal Civil Procedure 170A ⬳1618

170A Federal Civil Procedure
   170AX Depositions and Discovery
     170AX(E) Discovery and Production of Documents and Other Tangible Things
      170AX(E)4 Proceedings
       170Ak1615 Motion and Proceedings Thereon
        170Ak1618 k. Designation of Document or Thing and Contents Thereof. Most Cited

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 4

Cases
Production would not be required of documents as
to which plaintiff had made out facially plausible
claim of privilege through its description of docu-
ments in its withheld documents list.

**[14] Witnesses 410 ☜184(2)**

410 Witnesses
    410II Competency
        410II(D)  Confidential  Relations  and  Priv-
ileged Communications
            410k184 Nature and Grounds of Privilege
in General
                410k184(2)  k.  What  Law  Governs.
Most Cited Cases
Federal courts apply principles of comity in deter-
mining whether attorney-client privilege in patent in-
fringement actions applies to communications with
foreign, nonattorney patent agents; if communica-
tions relate to prosecution of patent in agent's nat-
ive country and would be privileged under laws of
that country, attachment of privilege depends on
laws of that country; however, if communications
"touch base" with United States, United States priv-
ilege law applies.

**[15] Witnesses 410 ☜184(2)**

410 Witnesses
    410II Competency
        410II(D)  Confidential  Relations  and  Priv-
ileged Communications
            410k184 Nature and Grounds of Privilege
in General
                410k184(2)  k.  What  Law  Governs.
Most Cited Cases
Communications from British patent agent relating
to licensing and enforcement of patent in agent's
home country or other European countries did not
"touch base" with United States, and thus were not
subject to application of United States attorney-cli-
ent privilege law in patent infringement action re-
lating to United States patent.

**[16] Witnesses 410 ☜206**

410 Witnesses
    410II Competency
        410II(D)  Confidential  Relations  and  Priv-
ileged Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k206  k.  Communications  Through
or in Presence or Hearing of Others. Most Cited
Cases
Attorney-client privilege encompassed communica-
tions between attorney, client and independent pat-
ent agent concerning patent agent's assistance to at-
torney in patent reissue proceedings and in formu-
lating license and enforcement strategies for use in
United States if foreign patent agent was acting un-
der direction of attorney.

**[17] Witnesses 410 ☜206**

410 Witnesses
    410II Competency
        410II(D)  Confidential  Relations  and  Priv-
ileged Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k206  k.  Communications  Through
or in Presence or Hearing of Others. Most Cited
Cases
Two documents involving foreign patent agent
which "touch base" with the United States were en-
titled to attorney-client privilege in United States
patent infringement action, if foreign patent agents
were acting under discretion of American attorney.

**[18] Witnesses 410 ☜184(2)**

410 Witnesses
    410II Competency
        410II(D)  Confidential  Relations  and  Priv-
ileged Communications
            410k184 Nature and Grounds of Privilege
in General
                410k184(2)  k.  What  Law  Governs.
Most Cited Cases
Documents generated by foreign patent agents
which dealt with matters of foreign patent law and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 5

thus did not "touch base" with the United States were entitled to same attorney-client privilege protection in patent infringement action as they would have been given abroad under comity principles.

**[19] Witnesses 410 ☜➔201(1)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k197 Communications to or Advice by Attorney or Counsel
                410k201 Subject-Matter of Communications or Advice in General
                    410k201(1) k. In General. Most Cited Cases
Purely technical documents contained in letters between patent attorney and independent engineer were not entitled to attorney-client privilege in patent infringement case.

**[20] Patents 291 ☜➔292.4**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.4 k. Other Matters. Most Cited Cases
    (Formerly 291k292)
Documents containing advice provided by attorney to patentee's British patent attorney for use in ongoing litigation in that country were entitled to work product privilege in patent infringement case.

**[21] Patents 291 ☜➔292.4**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.4 k. Other Matters. Most Cited Cases
    (Formerly 291k292)
Technically oriented documents involving corres-

**[22] Witnesses 410 ☜➔219(3)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k219 Waiver of Privilege
                410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
Showing British patent agent privileged documents did not effect waiver of privilege in patent infringement litigation where foreign patent agent was acting as representative of patentee's United States patent counsel.

**[23] Federal Civil Procedure 170A ☜➔1600(2)**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1600 Privileged Matters in General
                    170Ak1600(2) k. Attorney and Client Privilege. Most Cited Cases
    (Formerly 170Ak1600.1)
Attorney-client privilege does not apply to documents which are strictly business communications even though they involve attorney.

**[24] Patents 291 ☜➔292.4**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k292 Discovery
                291k292.4 k. Other Matters. Most Cited Cases
    (Formerly 291k292)
In patent infringement litigation in which both sides

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 6

brought motions to compel discovery, sanctions would be awarded neither party at time of issuance of discovery order, where neither appeared to have moved to compel with intent to harass, and neither was overall winner or loser. Fed.Rules Civ.Proc.Rule 37(a)(4), 28 U.S.C.A.

**Patents 291 ☞328(2)**

291 Patents
  291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
    291k328 Patents Enumerated
      291k328(2) k. Original Utility. Most Cited Cases

**Patents 291 ☞328(4)**

291 Patents
  291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
    291k328 Patents Enumerated
      291k328(4) k. Reissue. Most Cited Cases
4,293,948. Cited.

31,852. Cited.

***1432** Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (George Vande Sande, Stanley B. Green, and Thomas Vande Sande, of Pollock, Vande Sande & Priddy, Washington, D.C., of counsel), for plaintiff.
Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul J. Hayes, and Victor B. Lebovici, of Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., of counsel), for defendant.
ROTH, District Judge.

FINDINGS OF FACT

This is an action for patent infringement. Plaintiff ("Willemijn") alleges that products sold by Defendant ("Apollo") infringe United States Patents 4,293,948 (the " '948 patent") and Re. 31,852 (the " '852 reissue"). The patents at issue here relate to a data transmission system through a closed loop between master pulse equipment and subordinated

terminal units.

The prosecution history in the United States Patent and Trademark Office ("PTO") leading to the March 19, 1985, reissue of the '948 patent spanned 17 years. The '948 patent issued on an application filed on October 27, 1974, which was a continuation of an abandoned application filed on August 27, 1973, which was in turn a continuation of an abandoned application filed on November 4, 1968.

Defendant has filed a counterclaim seeking a declaratory judgment that the patents relied on by plaintiff are invalid and that the defendant's products do not infringe. Neither party has requested a jury trial.

Plaintiff is a Netherlands holding company whose principal business is the licensing of these two patents and their foreign counterparts. Plaintiff's parent company is a Netherlands Antilles corporation. All directors and officers of plaintiff and its parent company are foreign corporations or individuals.

Plaintiff alleges that its operations relevant to this case are handled almost exclusively by Olof Soderblom, vice-chairman of Willemijn and inventor of the patented device. Although he lives in England, Mr. Soderblom apparently makes frequent trips to Washington, D.C., to supervise the licensing ***1433** of the patents in suit and this litigation. Soderblom Aff. ¶ 7.

Defendant is a Delaware corporation with its headquarters and principal place of business in Massachusetts. Defendant's U.S. design and manufacturing facilities are located in Massachusetts and neighboring New Hampshire.

Defendant concedes that it is a large multinational corporation, employing approximately 4,000 people and operating 35 sales and service offices in the United States alone. At least two of these offices are located within 100 miles of this Court-in Harmons, Maryland, and King of Prussia, Pennsylvania. The King of Prussia office appears to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429                                                                                                      Page 7
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

have sold over $126,000 worth of equipment to four or five Delaware clients in 1987. Ans. to Pl.Int. No. 47. Guadagno Dep.Tr. at 46.

At issue here are five pretrial motions made by the parties: (1) defendant's motion to bifurcate the trial and stay discovery on the issue of damages; (2) defendant's motion to transfer this action to the United States District Court for the District of Massachusetts; (3) plaintiff's motion to compel production of documents withheld on the basis of privilege; (4) defendant's motion to compel the production of documents withheld on the basis of privilege; and (5) plaintiff's motion for an award of sanctions.

## CONCLUSIONS OF LAW

### I. DEFENDANT'S MOTION TO BIFURCATE THE TRIAL.

[1] Defendant has moved this Court to order separate trials on the issues of liability and damages. Bifurcation in federal courts is governed by Fed.R.Civ.P. 42(b), which provides, in pertinent part:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue....

In accordance with the broad language of Rule 42(b), trial courts are given a great deal of discretion when deciding motions to bifurcate. *Smith v. Alyeska Pipeline Serv. Co.,* 538 F.Supp. 977, 982 (D.Del.1982).

It is usually not necessary to try different issues in the same case separately; however, if one of the three factors supporting bifurcation listed in Rule 42(b) is present, a court may order separate trials. 5 *Moore's Federal Practice* ¶ 42.03[1]. Since this case will not be tried to a jury, the type of prejudice referred to in the Rule is not a concern. *Id.*

Moreover, because the Court finds that defendant has failed to make a sufficient showing that bifurcation would promote convenience or save the Court time, the motion to bifurcate will be denied.

As defendant points out, this Court has previously observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues. *Smith,* 538 F.Supp. at 983 (quoting *Swofford v. B & W, Inc.,* 34 F.R.D. 15, 19-20 (S.D.Tex.1963), *aff'd,*336 F.2d 406 (5th Cir.1964), *cert. denied,*379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)). However, the fact that many patent cases are conducive to bifurcation is simply irrelevant here. Judge Latchum emphasized in *Smith* that bifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis. *Smith,* 538 F.Supp. at 982 (quoting *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978)).[FN1] Even where bifurcation has been found to promote judicial economy, this Court has refused to order separate trials if bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *See, e.g., H.B. Fuller Co. v. National Starch & Chem. Corp.,* 595 F.Supp. 622, 625 (D.Del.1984). In sum, a court must take into account the "overall equities" of *1434 the case in ruling on a motion to bifurcate. *Id.*

> FN1. In *Smith,* two factors not present in this case led Judge Latchum to order separate trials. First, both parties conceded that trial of the damages issue would be lengthy and complex; and second, both issues were to be tried to a jury, and thus there was a risk of prejudice or confusion.

Plaintiff argues that bifurcation would be improper for the simple reason that the issues concerned are too tightly interwoven to be tried separately. Specifically, plaintiff protests that if two trials are held, it will be required to present the same testimony and documentary evidence twice.

This Court has stated in the past that an overlapping

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

of issues is significant to the decision whether to bifurcate. *Akzona, Inc. v. E.I. DuPont De Nemours & Co.,* 607 F.Supp. 227, 233-34 (D.Del.1984). The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials. *See, e.g., Organic Chemicals v. Carroll Products, Inc.,* 86 F.R.D. 468, 469 (W.D.Mich.1980).

At the heart of plaintiff's overlap argument is the issue of the admissibility of financial information regarding defendant's sales performance. Plaintiff correctly points out that evidence of defendant's "commercial success" is a relevant secondary consideration in a determination of obviousness under 35 U.S.C. section 103. *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 587 F.Supp. 1112, 1116 (D.Del.1984); and it is indisputable that such evidence will be considered by a court assessing damages. Thus, plaintiff protests, bifurcation would require it to present the same evidence at both trials.[FN2]

> FN2. If the Court were to grant defendant's motion for bifurcation, evidence of commercial success would indeed appear to be admissible at the liability phase. Moreover, the Federal Circuit has ruled that a patentee need not show that it is entitled to an accounting in order to be permitted to discover records and testimony regarding an alleged infringer's sales. *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,* 813 F.2d 1207, 1212 (Fed.Cir.1987).

Defendant disputes the existence of any significant evidentiary overlap in this case. Citing *Paine, Webber,* 587 F.Supp. at 1116, defendant contends that the evidence of its past financial performance introduced to show commercial success will be less extensive and of a different character than that used to prove damages. Furthermore, defendant maintains that its willingness to stipulate to the commercial success of its allegedly infringing products renders the use of evidence of its commercial suc-

cess during trial on the liability issue needlessly burdensome.

The Court acknowledges that the issue of commercial success is "not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and a big seller." *Paine, Webber,* 587 F.Supp. at 1116. Nevertheless, it is obvious that separate trials in the present case would require plaintiff to present at least a limited amount of evidence twice; and notwithstanding defendant's representations to the contrary, although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation.

Moreover, defendant's proposed stipulation fails to remedy the potential overlap problem in this case. Defendant has stated that it is willing to stipulate to the commercial success of the allegedly infringing product; however, it is apparently not prepared to stipulate that the success of that product is attributable to the "token ring" contained therein.

The token ring is the only aspect of defendant's product which plaintiff alleges infringes its patent. As plaintiff points out, it is the commercial success of the patented invention that is the relevant secondary consideration in determining obviousness. *Paine, Webber,* 587 F.Supp. at 1116. For this reason, defendant's proposed stipulation will not be especially helpful to plaintiff in its efforts to show liability, as it does not clearly establish that defendant's commercial success is due to defendant's allegedly infringing embodiment of the token ring rather than to other aspects of defendant's product.

Plaintiff next points out that courts are less likely to grant bifurcation when the issues to be decided are not particularly *1435 complex and a single trial on all issues thus does not carry with it a significant risk that the trier of fact will be confused. *Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F.Supp. 1485, 1492 (D.Del.1985). The burden of showing a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429                                                                                    Page 9
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

significant risk of confusion is on the party request-ing bifurcation. That burden is more difficult to meet where, as here, the case is to be tried without a jury. *Id.*

Neither party disputes the assertion that the techno-logy involved in this case is very complex. However, it would be disingenuous of either party to argue that a significant number of novel or com-plex legal issues have been raised thus far. The Court takes judicial notice of the fact that counsel for both parties have other patent cases currently pending in this district with nearly identical mo-tions outstanding. Furthermore, the most complic-ated factual matters in this case relate to the liabil-ity issue and would therefore be raised even if de-fendant's motion were granted. The Court therefore finds that defendants have failed to show that a sub-stantial risk of confusion will result if all issues in this case are decided at a single trial.

Perhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party. *H.B. Fuller,* 595 F.Supp. at 625. As plaintiff has correctly indicated, prejudice under these circumstances may simply amount to unfair delay of the final disposition of the matter. *Id.* Ap-plying this definition of prejudice, the Court finds that separate trials here might very well prejudice plaintiff.

In addition, considering the attorneys' behavior in this case so far, it appears inevitable that, if the mo-tion to bifurcate were granted, both the discovery process and the liability trial would be repeatedly delayed by disputes regarding the discoverability or admissability of evidence. Moreover, the foresee-able appeal of the outcome of the liability trial might further delay the trial on damages. Finally, while the Court is reluctant to ascribe bad faith to defendants in filing this motion, its timing does ap-pear to be conspicuously fortuitous-defendant filed this motion on the eve of the date its responses to plaintiff's interrogatories were due and defendant has not since that time responded to discovery on damages. Under the circumstances, a delay such as we suggest above would clearly be unfair to plaintiff.

Speculation aside, defendant appears to be able to point to little in the way of convenience or judicial economy to support its motion. It is undeniable that, if the Court were to bifurcate the trial and de-fendants were to prevail on the infringement issue, there would be no trial on damages; however, if de-fendant were to lose on liability, the two trials would end up taking considerably more time than would have been required to reach the same out-come with a single trial. Given the very limited be-nefit to be derived from bifurcation in this case, the Court is simply not willing to take the gamble that defendant recommends. Defendant's motion will thus be denied.[FN3]

> FN3. Implicit in the Court's denial of de-fendant's motion to bifurcate is a refusal to grant defendant's request for a stay of dis-covery on the issue of damages.

## II. DEFENDANT'S MOTION TO TRANSFER.

[2] In order to succeed on its motion to transfer this action, defendant must satisfy the requirements of 28 U.S.C. section 1404(a). As a threshold matter, transfer may only be ordered when the action "might have been brought" in the transferee district in the first place. 28 U.S.C. § 1404(a). This action could have been brought in the district court for the district of Massachusetts, since defendant has its principal place of business there. *Pall Corp. v. Bentley Laboratories, Inc.,* 523 F.Supp. 450, 451 (D.Del.1981). In other words, at the time of com-mencement of this action, the two requirements of section 1404(a) were satisfied: venue would have been proper in the transferee district, and the trans-feree court possessed the power to assert personal jurisdiction over the defendant. *1436Van Dusen v. Barrack,* 376 U.S. 612, 616-17, 84 S.Ct. 805, 808-809, 11 L.Ed.2d 945 (1964).[FN4] Accordingly, this suit "might have been brought" in the District of Massachusetts, and this Court has the power to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 10

order a transfer to that jurisdiction.

> FN4. The district of Massachusetts would have been a proper venue for plaintiff to file this suit. As stated at 28 U.S.C. section 1400(b): "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Plaintiff does not dispute that on the day this suit was filed, defendant's principal place of business was in Chelmsford, Massachusetts. Thus, defendant is considered a resident of Massachusetts for venue purposes. 28 U.S.C. § 1391(c).

> Furthermore, the Massachusetts court had personal jurisdiction over defendant at the commencement of this action, based on defendant's "residence" in that state. *See Pall,* 523 F.Supp. at 451.

Section 1404(a) also requires that a transfer be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). These considerations comprise the discretion left to a court deciding a motion to transfer. Guiding the Court in its balancing of these considerations is the standard established by the Third Circuit in *Shutte v. Armco Steel Corp.,* 431 F.2d 22 (3d Cir.)*cert. denied,*401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The *Shutte* court emphasized that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request." *Shutte,* 431 F.2d at 25. This Court has consistently shown deference for plaintiffs' forum choices. *See, e.g., Krupp Int., Inc. v. Yarn Indus., Inc.,* 615 F.Supp. 1103, 1106 (D.Del.1985). Thus, the plaintiff's decision to have this case tried by this Court should prevail unless defendant can show that the balance of convenience or the interest of justice strongly favors a transfer. *Id.* For the reasons stated below, the Court finds that defendant has made no such showing.

[3] Defendant argues correctly that plaintiff's choice of forum is to be accorded less respect where that forum is not plaintiff's "home turf." *Davis Constructors v. Dartco Manufacturing, Inc.,* 668 F.Supp. 380, 384 (D.Del.1987). This is especially true where the chosen forum is merely the statutory home state of the defendant corporation. *Quandt v. Beech Aircraft Corp.,* 317 F.Supp. 1009, 1012 (D.Del.1970). However, defendant appears to have misinterpreted the home turf exception.

The home turf exception does not apply to a plaintiff who has selected a venue that is connected with the subject matter of the lawsuit. *See, e.g., Boroughs Wellcome Co. v. Giant Foods,* 392 F.Supp. 761, 763 (D.Del.1975). According to plaintiff, at least four or five of the allegedly infringing acts committed by defendant occurred in Delaware, when defendants' employees installed computer equipment at the offices of its customers in this state. Guadagno Dep.Tr. 46. Since Delaware is related to the subject matter of this suit, the home turf exception is inapplicable, and plaintiff's forum choice is entitled to the usual degree of deference. *Id.*[FN5]

> FN5. Defendant has not only misinterpreted the home turf exception, but appears to have overestimated it, as well. "Defendant's burden of proof is no less when plaintiff is litigating away from its home turf. It is simply easier for defendant to meet that burden in such situations." *General Instrument Corp. v. Mostek Corp.,* 417 F.Supp 821, 823 (D.Del.1976). Even in a case where a plaintiff is away from its home turf, its choice of forum is entitled to deference, and should not be upset unless the defendant can "show that the balance of convenience *strongly* favors transfer." *Read Corp. v. Portec, Inc.,* Civil Action No. 88-29-JRR, slip op. at p. 2 (D.Del. September 14, 1988) [1988 WL 125128] (citations omitted).

In an attempt to overcome the deference shown to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

plaintiff's choice of forum, defendant declares that it will be severely inconvenienced by having to defend this case in Delaware, as all of its employees with sufficient familiarity to be helpful in this litigation, along with all relevant records, are located in Massachusetts. In light of the infringing activities which plaintiff alleges have been committed in this district, defendant's declaration is hard to believe. Plaintiff has persuasively argued that each alleged infringement occurs not at defendant's headquarters, but at the offices of defendant's customers, when employees *1437 from defendant's field offices, such as the one in King of Prussia, link equipment into customers' computer networks.

While there may be other sites attributable to defendant's alleged misconduct, this district appears to be at least one "center of gravity" of this lawsuit, since some of defendant's customers are located in Delaware. *See Sports Eye, Inc. v. Daily Racing Form, Inc.,* 565 F.Supp. 634, 638 (D.Del.1983). Accordingly, at least some relevant documents and proposed witnesses will undoubtedly be located in this area, and neither party will be unduly prejudiced if the case is tried here. *Id.*[FN6]

> FN6. Even if some of defendant's employees are forced to come to Wilmington from the Boston area during trial, defendant will not suffer a substantial inconvenience, at least in comparison to the hardship plaintiff would suffer if forced to litigate in Massachusetts. An argument similar to defendant's persuaded this Court to grant defendant's motion to transfer in *Scott Paper Co. v. Faucet Queens, Inc.,* Civil Action No. 86-493-CMW (D.Del. January 14, 1987) [1987 WL 28488]. However, in that case the defendant was a small Chicago corporation with only 20 employees, moving for transfer from Wilmington to Chicago. The decision to transfer was based largely on the finding that the absence of a few employees during trial would impose a severe burden on defendant, but would

have comparatively little effect on a company as large as Scott Paper. *Id.,* slip op. at pp. 4-5. In light of the relative sizes of the two corporate parties in this case, and the fact that trial in Boston would interrupt Mr. Soderblom's licensing activities in Washington, the Court concludes that a different result is warranted here.

Furthermore, given the modern document production technology available today and the fairly liberal discovery rules in force in federal courts, there is no reason why the forum in which a case is litigated must determine where pretrial discovery and document production takes place. *See, e.g., Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.,* Civil Action No. 76-37, slip op. at p. 4 (D.Del. November 23, 1977). It can be expected that all necessary documents will have been produced long before trial. *Id.* And there is no reason to expect that any problems will arise from the use of photocopies during trial. *Id.* at 5. Thus, during the pretrial period, trying this case in Wilmington should be about as convenient for defendant as trying it in Massachusetts.

Finally, the defendant's own delay in filing this motion serves as evidence that trial in this district would not be particularly inconvenient. *McFarlin v. Alcoa Steamship Co.,* 210 F.Supp. 793, 795-96 (E.D.Pa.1962). The delay is particularly significant here, as there is no claim that the reason for the newly-alleged inconvenience has recently arisen. *Id.* The Court therefore finds that defendant has failed to show that it would suffer significant prejudice if forced to defend this litigation here.

The Court also finds that defendant has failed to demonstrate that trial in Delaware would significantly inconvenience the witnesses it plans to call at trial. This Court has already stated that:

[w]hen inconvenience to witnesses is alleged some information should be put in the record as to how many witnesses are involved, the materiality of these witnesses to the case, how far away these witnesses are from the transferee Court as compared

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

with this Court, how long they will be required at the trial, and whether they are persons whose time is vitally important to the defendant's business.

*Aetna Casualty & Sur. Co. v. Singer-General Precision, Inc.,* 323 F.Supp. 1141, 1144 (D.Del.1971). At the time this motion was filed, defendant had not identified most of its witnesses with the degree of specificity required in *Aetna;* in fact, defendant had identified only two witnesses by name. Of those two, Mr. Vande Sande lives in Washington, which is closer to Wilmington than Boston, and Mr. Soderblom visits Washington frequently.[FN7] Defendant ***1438** also alluded to fifteen unnamed employees and two or three unnamed expert witnesses living in the Massachusetts area at that time, but their interests should be given little or no weight in the Court's consideration of relative inconvenience, since their description at that time was far too vague when judged by the standard set out in *Aet- na.*

> FN7. In its Reply Brief, defendant correctly points out that "the convenience of counsel is irrelevant to the merits of a Motion to Transfer." Defendant's Reply Brief at 5-6 (citing *Solomon v. Continental Life Insurance Co.,* 472 F.2d 1043, 1047 (3d Cir.1973); *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 146 n. 18 (D.Del.1985); *General Electric v. Westinghouse Electric Corp.,* 294 F.Supp. 36, 37 (D.Del.1968)). Thus, at the time this motion was filed, defendant had effectively identified only one witness by name.

Appended to its Reply Memorandum in Support of its Motion to Transfer defendant has included a more complete listing of its proposed fact witnesses, along with their names, addresses-largely in the Boston area-and anticipated testimony. Defendant contends that this enhanced list cures any *Aetna* problems with the original and should therefore persuade the Court to grant its motion to transfer on the basis of witness inconvenience.

However, in straightforward patent cases such as this one, this Court has been skeptical of the parties' purported need to call a large number of fact witnesses. Accordingly, we have been reluctant to attach much significance to such lengthy lists when considering a motion to transfer. *See, e.g., Cosden Oil,* Civil Action No. 76-37, slip op. at p. 5 ("the Court is unwilling to anticipate a problem which past experience suggests is unlikely to arise."). Since defendant has still not named its proposed expert witnesses, all of whom, defendant asserts, live in the Boston area, their convenience also cannot be given much consideration.[FN8]

> FN8. The parties have accused one another of identifying proposed witnesses close to their desired forums as an afterthought, solely to support their forum selection. Given the timing of these identifications-plaintiff also identified some of its witnesses belatedly-it would appear that these accusations have some merit. In any event, the skeptical approach recommended in *Cosden* suggests that witness convenience should be given only limited weight. *See also Ziegler v. Dart Industries, Inc.,* 383 F.Supp. 362, 364 (D.Del.1974). Thus, this factor does not lend support to defendant's motion to transfer.

Transfer motions in large patent cases depend far more heavily on the third factor enumerated in section 1404(a), the interest of justice, than on considerations of party or witness convenience. *See Ziegler v. Dart Industries, Inc.,* 383 F.Supp. 362, 364 (D.Del.1974). Courts typically examine four criteria in determining where the interest of justice lies. *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 147 (D.Del.1985). In the present case, analysis of these criteria leads the Court to the conclusion that defendant's motion should be denied.

One important consideration in determining which venue is favored by the interest of justice is the "economic and efficient utilization of judicial resources ..." *Minstar,* 626 F.Supp. at 147. Judicial

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

economy favors the retention of the present case since this Court has already become involved with substantive aspects of the matter. The Court has not only begun to familiarize itself with the case but has also demonstrated a willingness to conduct conferences and hearings on short notice (e.g., the preliminary injunction hearing held at defendant's request on December 14, 1988).

A second consideration in determining whether the interest of justice warrants a transfer is the effect transfer would have on the cost of the litigation to the parties. *Minstar,* 626 F.Supp. at 148. Legal fees appear to be the major expense for both parties in this action and will no doubt be high regardless of where the action is tried. Moreover, this Court has held that the cost of travel and accommodations for the parties and counsel is not a particularly important factor in weighing litigation costs. *Magee v. Essex-Tec Corp.,* 704 F.Supp. 543, 550 (D.Del.1988) (citations omitted). Since relevant documents and witnesses would appear to be located close to both Massachusetts and Delaware, the Court finds that no aggregate savings would arise from a transfer.

Access to proof and the availability of compulsory process are the third and fourth considerations in the interest of justice calculus. *Minstar,* 626 F.Supp. at 147. Defendant asserts that the Massachusetts court has subpoena power over more of the documents and witnesses it wishes to call at trial than this Court has; however, since most of the witnesses that have been referred to by defendant are its own employees, *1439 defendant can compel their presence at trial regardless of this Court's lack of subpoena power. *Mayer v. Development Corp. of America,* 396 F.Supp. 917, 934 n. 28 (D.Del.1975). Most of those who are not presently employed by defendant are former employees who will presumably testify voluntarily. Furthermore, any documents defendant wishes to use at trial will have been produced by plaintiff and marked as exhibits well before trial. In fact, defendant concedes that most of the witnesses it plans to call at trial are its own employees, former employees, or former

counsel. Defendant's Reply Brief at 4. Plaintiff, on the other hand, has stated that it plans to call employees of defendant's King of Prussia office as witnesses. Obviously, these proposed witnesses are not within plaintiff's control. Thus, to the extent that access to proof and amenability to compulsory process are a relevant considerations in this case, that support trial of the case in Delaware, where plaintiffs' witnesses can be subpoenaed.[FN9]

> FN9. This Court has the power to subpoena employees of defendant's King of Prussia office even if they are not present in this district, because King of Prussia is within 100 miles of this courthouse. *See* Fed.R.Civ.P. 45(e)(1).

Three of the four considerations comprising the interest of justice calculus favor denial of defendant's motion to transfer. The other one is essentially neutral. Clearly defendant has not demonstrated circumstances which would lead the Court to disregard plaintiff's choice of forum. In light of the foregoing analysis of the interests of justice and consideration of the convenience of the parties and witnesses, the Court will deny defendant's motion to transfer.

### III. PLAINTIFF'S MOTION TO COMPEL

Plaintiff has filed a motion to compel pursuant to Fed.R.Civ.P. 37(a), asking this Court to order defendant to answer its interrogatories properly. Plaintiff asserts that defendant has failed to adequately respond to many of its interrogatories. Specifically, plaintiff states that defendant's answers ignore numerous specific inquiries in its interrogatories, fail to properly identify documents which defendant claims are privileged, and, in some instances, improperly assert attorney-client and work product protection. Plaintiff has also moved the Court to award it sanctions for its expenses in seeking this order. That motion is treated in Section V of this Opinion.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Defendant has refused to respond to a number of plaintiff's interrogatories on the basis of attorney-client privilege or work product protection. Without addressing the merits of defendant's claims of privilege, plaintiff correctly points out that defendant's responses in connection with those claims are incomplete.[FN10]

> FN10. Defendant has claimed, in its responses, that the attorney-client privilege and/or the work product doctrine applies to the documents requested in interrogatories 16, 21, 22(b), 24, 25(a) and (b), 26, and 31, among others. Plaintiff seeks an Order compelling more complete responses to each of these interrogatories.

[4] When responding to an interrogatory, claims of attorney-client privilege and work product protection do not excuse a party from specifically identifying the allegedly privileged item. *Scovill Manufacturing Co. v. Sunbeam Corp.,* 61 F.R.D. 598, 603 (D.Del.1973). As a matter of fact, this Court has stated that a proper claim of attorney-client privilege "requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del.1974). Similarly, a party asserting work product protection must "identify the withheld documents with sufficient particularly that the opposing counsel can intelligently argue that the privilege ought not to apply." *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn.1985).

[5] Viewing defendant's responses to plaintiff's interrogatories as charitably as possible, it is still apparent that the minimum standards of particularity for an assertion of privilege have not been met. Illustrative is defendant's response to plaintiff's interrogatory number 21: "Apollo *1440 objects to Interrogatory No. 21 as calling for documents which are subject to the attorney client privilege and/or the work product doctrine." Defendant's only justification for its failure to specifically designate the

purportedly privileged documents is an alleged failure by plaintiff to adequately respond to defendant's interrogatories. However, "unclean hands" arguments have no relevance to a motion to compel. Because defendant's responses claiming the privilege are evasive and incomplete, they are the equivalent of a failure to answer for the purposes of a motion to compel. Fed.R.Civ.P. 37(a)(3). Accordingly, defendant will be ordered to fully respond to these interrogatories.

In addition to its claims of privilege, defendant relies on the option set out in Fed.R.Civ.P. 33(c) to respond with documents as justification for some of its incomplete responses to plaintiff's interrogatories.[FN11] Here again, defendant is abusing a discovery privilege to frustrate plaintiff's legitimate discovery attempts.

> FN11. Defendant alleges that it has fully responded to interrogatories 16, 22(b), 24, 25(a) and (b), 26 and 31. Plaintiff disputes this and seeks an Order compelling a complete response to each of these interrogatories.

[6] In appropriate situations, Rule 33(c) gives a party served with an interrogatory the option, within certain limitations, to respond by specifying records from which the answer may be derived and providing the discovering party with an opportunity to inspect those records. To be a proper response under the Rule, such a specification must be sufficiently detailed "to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answers may be obtained." Fed.R.Civ.P. 33(c). This final sentence was added to make it clear that the party served has a duty to specify the category and location of those records which contain the responses to the interrogatory. Fed.R.Civ.P. 33(c), *Notes of Advisory Committee on Rules,* 1980 Amendments.

It is clear that defendant's documentary responses do not comply with the minimum requirements of Rule 33(c). For example, in its supplemental re-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 15

sponse to plaintiff's interrogatory number 21, defendant states: "The requested documents are identified in Apollo's privileged document list or have been produced pursuant to Fed.R.Civ.P. 33(c)." FN12 Defendant's response says nothing about the category or location of those records. Defendant's responses are thus equivalent to a failure to answer. Fed.R.Civ.P. 37(a)(3); FN13 and defendant will be ordered to respond properly to these interrogatories.

> FN12. Note that this supplemental response does not cure the failure of defendant's original response to this interrogatory to support a claim of privilege: while defendant's withheld document list includes descriptions of all of the documents from which a complete answer to a given interrogatory could be derived, it does not indicate which of those documents are responsive to the interrogatory.

> FN13. In light of the conclusion that the answers examined thus far are evasive or incomplete, it is not necessary for the Court to deal at length with the additional reasons why plaintiff asserts they are inadequate.

[7] In addition to its broad-based objections to defendant's answers, plaintiff has made more particular complaints concerning defendant's answers to seven of its interrogatories. For example, in interrogatory 1, plaintiff asked for information on all token rings "made, used, sold, or leased" by defendant over a specified period. Defendant gave an incomplete answer in reliance on Rule 33(c) and voiced its objection to the interrogatory on the ground that it asked for technology still in the developmental stages.

Plaintiff has conceded it is not asking for information on defendant's experimental technology. However, there is no basis for defendant's position that simply because it has not sold a product, it need not produce information relating to that product during discovery. Plaintiff correctly points out that the statutory definition of patent infringement explicitly encompasses products made or used, yet never sold.FN14 Accordingly, defendant will be ordered to answer this *1441 interrogatory properly including providing information on token rings used in defendant's headquarters equipment.

> FN14. See 35 U.S.C.A. § 271(a) (1984).

In interrogatory 11, plaintiff requested defendant to identify any prior art which formed the basis of one of defendant's invalidity claims. Although plaintiff maintains that defendant's response to this interrogatory was too vague to be proper, plaintiff suggests no standard for evaluating responses to such items. Furthermore, defendant contends that its failure to answer this interrogatory at an earlier date is attributable to plaintiff's delay in relinquishing two interference files. And defendant assures the Court that it is aware of its duty to supplement if it decides to use more documents. Thus, defendant shall be ordered to do no more at the present time.

[8] Interrogatories 27 and 28(a) requested information on the issue of defendant's profitability. Defendant objected to both interrogatories, arguing that it should not have to respond to interrogatories on the issue of damages unless and until the Court has decided whether to stay discovery on the issue of damages. Furthermore, defendant contends, since it is willing to stipulate to its own commercial success, such information would be unnecessary, not to mention burdensome.

Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all. In any event, since this Court has decided to deny defendant's request to stay, defendant will be ordered to respond to these interrogatories

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

FN15

FN15. Defendant cites *Slater Electric, Inc. v. Indian Head, Inc.*, 38 Fed.R.Serv.2d 488, 490-91 (S.D.N.Y.1983), for the proposition that when one party stipulates as to its commercial success, a court will stay discovery on the damages issue. However, in *Slater*, both sides had already exchanged specific financial information regarding profitability, so the stipulation was irrelevant for discovery purposes. *Id.*

Defendant also points to plaintiff's failure to formally assert one or more claims of the '948 patent against defendant's products in support of its argument that any documents relating to damages incurred prior to the date of the reissue are irrelevant. Defendant appears to ignore the fact that the original Complaint filed in this suit contained just such a formal assertion. Furthermore, defendant has known since last June, when Mr. Soderblom was deposed, at least some of the claims of the '948 patent which plaintiff contends are infringed (claims 1, 2, 5, 10, and 22). *See* Soderblom Dep. Tr. at 256-57, 264-67, 279, and 285.

[9] Interrogatory 29 requests identification by number of all patents and patent applications owned by defendant, as well as all licenses it has purchased or issued. Here again, defendant objects because it has requested a stay of discovery on damages. This argument is no more persuasive here than it was in connection with the other interrogatories. However, defendant also contends that interrogatory 29 is overbroad, i.e., that plaintiff has no right to see all Apollo patent applications, only those that pertain to this litigation. This is certainly a valid objection. An interrogatory this broadly worded amounts to little more than a fishing expedition. The Court will therefore not order defendant to respond except as to patents, patent applications and licenses pertaining to this litigation.

[10] Defendant objects to interrogatory 44 for three reasons: there has been no formal '948 patent claim asserted; defendant should not have to answer while its request for a stay is *sub judice;* and defendant is willing to stipulate to its commercial success. All three of these arguments have already been rejected. Given the fact that the subject matter of interrogatory 44-installation of allegedly infringing token rings-is as relevant as that of the other interrogatories analyzed thus far, the Court concludes that defendant has improperly refused to answer and will be ordered to do so.

[11] Finally, interrogatory 46 asks defendant for information regarding any documents *\*1442 relating to this litigation that have been destroyed. As defendant states in its Brief in Opposition to Willemijn's Motion to Compel, defendant has answered each sub-part of this interrogatory in the negative. While plaintiff seeks reassurances in the form of supplementation, there does not appear to be any reason to doubt defendant's honesty in this regard. Thus, supplementation is unnecessary, and plaintiff's motion with regard to this interrogatory will be denied.

## IV. DEFENDANT'S MOTION TO COMPEL

Defendant has also filed a Motion to Compel pursuant to Fed.R.Civ.P. 37(a). The basis of this motion is defendant's allegation that plaintiff has improperly withheld hundreds of documents, relying on spurious claims of privilege. Defendant has divided the documents withheld by plaintiff into the following five categories for the purposes of its motion:

Category I: Transmittal letters and other documents for which there is no claim of privilege;

Category II: Documents involving Mr. Graham Coles;

Category III: Documents involving foreign patent agents but which do not relate to the prosecution of a patent application in the foreign agent's country;

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429                                                    Page 17
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Category IV: Documents involving foreign patent agents prosecuting patents in their native countries; and

Category V: Documents for which plaintiff has failed to meet its burden to prove privilege, including technical documents to or from non-lawyer consultants.

Defendant's Brief in Support of its Motion to Compel Brief at 1. In the interests of convenience and clarity, the Court will address these categories *seriatim* in ruling on defendant's motion to compel.FN16

> FN16. Plaintiff alleges that defendant violated Local Rule of Civil Practice 3.1[D] by failing to raise a number of its objections earlier in the pretrial proceedings. The Rule requires, with respect to motions relating to discovery, that the movant's attorney attach an affidavit "detailing the date, time spent, and method of communication in attempting to reach an agreement on the subject of the motion with the other party or parties, and that certificate shall indicate if the motion is opposed or unopposed."

> Defendant calls the Court's attention to correspondence dating back to June 23, 1988, objecting to plaintiff's withholding of documents. Defendant maintains that these letters satisfy the requirements of Rule 3.1[D]. Having examined the letters, the Court finds that they comport with the broad language of the Rule.

In order to justify its refusal to produce the documents requested by defendant, plaintiff must show that the withheld documents are protected under the attorney-client privilege, the work product doctrine, or both. As recognized by this Court, the attorney-client privilege applies only if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication related to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing some crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 144 (D.Del.1977) (citations omitted).

The work product doctrine, on the other hand, protects documents prepared in anticipation of litigation or for trial, by or for a party or its representative. *Hercules,* 434 F.Supp. at 150. The former federal common law rule has been codified at Fed.R.Civ.P. 26(b)(3). The Rule states, in relevant part: "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." As interpreted by this Court, the doctrine protects "memoranda, recorded mental impressions, synopses of witness statements, drafts of documents, etc., prepared by an attorney **\*1443** 'with an eye to litigation.' " *Hercules,* 434 F.Supp. at 150.

As noted in Section I of this Opinion, a party asserting the privilege must make a proper showing that the criteria set out by the this Court in *Hercules* have been met. *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 93 (D.Del.1974). Such a showing is usually by affidavit, containing information such as that contained in the withheld document list provided for defendant by plaintiff in this case. *Id. See* Appendix A to defendant's Brief. Similarly, a party asserting work product protection must identify the withheld documents with sufficient particularity to enable opposing counsel to intelligently argue that the protection ought not to apply. *Petz,* 113 F.R.D. at 497.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Unlike plaintiff's motion to compel, defendant's motion does not raise objections to the identifications given in plaintiff's withheld document list; defendant's motion goes to the merits of plaintiff's claims of privilege and protection. For example, category 1 consists largely of documents which defendant refers to simply as "transmittal letters," based on the description given in plaintiff's withheld document list.[FN17] If this portrayal is accurate, then these documents are not protected by the attorney-client privilege unless they contain legal opinions or requests for legal advice. *Hercules*, 434 F.Supp. at 145. Defendant contends that the documents contain no such information, and that they should therefore be ordered produced.

> FN17. Withheld Documents Number 2, 3, 60, 63(c), 72(b), 151, 526, 528. *See* Appendix A to defendant's Brief. Plaintiff asserts that the attorney-client privilege applies to all of these documents, and that the work product doctrine also applies to Nos. 72(b) and 526. Documents number 235, 7, 413, 468, and 556 were also placed in category I, but are not characterized as transmittal letters by defendant.

Plaintiff maintains that the documents in category I have been erroneously characterized by defendant, i.e., that some of them are not transmittal letters at all, and that those that are transmittal letters deal with privileged legal issues. Plaintiff claims that all of these letters are protected by the attorney-client privilege and that some are protected by both that privilege and the work product doctrine.

[12] It is clear that some of the descriptions supplied by the plaintiff in its withheld document list are facially insufficient to support a finding that either form of protection is merited.[FN18] In its Brief, plaintiff now seeks to augment or correct those descriptions. If permitted to do so, the documents as newly described would probably be found to be privileged. The Court must therefore decide whether to hold plaintiff to the representations made in its list or permit it to modify them in re-

sponse to defendant's motion.

> FN18. As an example of the paucity of information in the descriptions given in plaintiff's withheld document list, documents number 2 and 3 are described by plaintiff simply as transmittal letters; similarly, withheld document 151 is described as a letter acknowledging receipt of comments, the equivalent of a transmittal letter for purposes of a motion to compel. *Hercules*, 434 F.Supp. at 145. Since no further descriptions were given, these documents would not appear to be privileged. *Id.*

This Court has consistently emphasized that the party asserting the attorney-client privilege bears the burden of proof. *See, e.g., Fibreboard*, 63 F.R.D. at 94. Before compiling its withheld document list, plaintiff could easily have ascertained the standard of particularity expected by this Court and could have met that standard. Allowing it to do so now would encourage dilatory discovery practices.

Furthermore, the descriptions of these transmittal letters contrast sharply with those of other documents on plaintiff's list. For example, plaintiff described withheld document number 63(c) not merely as a transmittal letter, but as a transmittal letter which specifically requested "legal advice, comments, and instructions," thus entitling the letter to protection under the attorney-client privilege. This contrast leads the Court to the conclusion that plaintiff knew how to characterize a document correctly when it compiled its list and seeks to make changes now only to escape producing the documents requested. Plaintiff *1444 will not be permitted at this time to embellish insufficient descriptions to avoid complying with defendant's legitimate discovery requests. Withheld documents 2, 3, and 151 will thus be ordered produced.

[13] Withheld documents 72(b), 526, and 528 appear to be precisely the type of items protected by both the attorney-client privilege and the work product doctrine, since all three allegedly contain

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429                                                                                           Page 19
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

legal advice from counsel to plaintiff during the course of preparation for this trial. *See United Coal Companies v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d Cir.1988). Because plaintiff has made out a facially plausible claim of privilege, these documents need not be produced.[FN19]

> FN19. Plaintiff concedes that withheld document number 235 is not privileged. Number 235 has thus been produced for defendant, along with withheld documents 188, 232(x), 233(x), and 234-36. *See* plaintiff's Brief in Response to Defendant's Motion to Compel at 4 n. 2.

Defendant and plaintiff have agreed that withheld documents number 7 and 434, which are identical, are irrelevant to this case. Accordingly, their production will not be compelled.

As for document number 63(c), it will be considered as part of category II, along with the other documents involving Mr. Coles, since he was its author. For similar reasons, number 60 will be considered in category II, as well.

The final batch of withheld documents in Category I, documents number 413, 468, and 556, were all prepared by Mr. Farber, an advisor to Mr. Vande Sande, plaintiff's attorney. It is the settled law of this Circuit that work product protection extends to documents prepared by non-attorneys acting at an attorney's request. *United Coal,* 839 F.2d at 966. Since these documents were all prepared at Vande Sande's request, in anticipation of this litigation, they would appear to be entitled to protection under the work product doctrine and need not be produced.

Category II consists of hundreds of pages of documents sent to or received from Mr. Graham Coles and withheld by plaintiff on the basis of the attorney-client privilege.[FN20] Mr. Coles is a British "patent agent." He has also been referred to as a "patent attorney" by plaintiff in its withheld document list. However, defendant emphasizes, and

plaintiff does not dispute, that Coles is not an "attorney" according to the definition of the term employed in the United States.[FN21]

> FN20. According to defendant, the documents relating to Mr. Coles are as follows: 3, 6-10, 11(a)-(b), 12-20, 51(a)-(e), 52-58, 60, 62, 63(a)-(c), 64-69, 70(a)-(b), 71, 72(a)-(c), 73-75, 77, 77, 78, 82-92, 95, 97, 99, 101, 102(a)-(c), 103(a)-(c), 104, 105(a)-(f), 106-110, 114-127, 129, 131-143, 146, 148, 149, 156-163, 165-166, 168, 169,, 171-173, 174(a)-(b), 175-179, 180(a)-(b), 181, 183, 184, 187, 189(a)-(b), 191, 192, 194, 195, 196(a)-(b), 197-200, 201(a)-(d), 202, 203, 204(a)-(c), 206-214, 216, 218-220, 222-232, 224(x), 227(x), 229(x), 231(x), 234, 237-251, 252(a)-(d), 253-255, 261, 263, 266, 268, 271, 276-283, 284(a)-(h), 285-287, 291, 294, 365(a)-(b), 366, 367(a)-(b), 368-370, 375-377, 411-412, 418, 419, 427-431, 433, 434, 451-453, 455-457, 465, 467, 469-474, 477, 478, 480, 484, 486, 502-507, 510, 526-529, 534, 545-548, 550-554, 558-567, 570, 572, 578-583, 585, 591-600, 610, 613, 616.

> FN21. There appears to be nothing improper in plaintiff's portrayal of Mr. Coles as a Patent attorney: "[v]irtually all *patent attorneys* in Europe have *only* a technical or scientific background and, with rare exceptions, have no legal training and are not members of the bar." Note, *The European Patent Attorney Qualifying Examination, An American Perspective,*46 J.Pat.Off.Soc'y 47, 51 (Jan.1987) (emphasis in original).

[14] According to federal common law principles, which determine the availability of the attorney-client privilege in patent infringement actions, the applicability of the privilege to communications with foreign (non-attorney) patent agents hinges on the subject matter of those communications. *Duplan*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 20

Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1169 (D.S.C.1975); Chubb Integrated Systems, Ltd. v. National Bank, 103 F.R.D. 52, 65 (D.D.C.1984); In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 391 (D.D.C.1978). If the communications relate to the prosecution of a patent in the agent's native country and would be privileged under the laws of that country, the attachment of the privilege depends on the laws of that country; in other words, federal courts will apply *1445 principals of comity. Id. However, if the communications "touch base" with the United States, U.S. privilege law applies. Id.

In Chubb, the court held that communications by a foreignpatentagent-GrahamColes,coincidentally-relating to the prosecution of a United States patent for another corporation were not protected by the attorney-client privilege. Chubb, 103 F.R.D. at 65. See also Duplan, 397 F.Supp. at 1169 ("no communications from patent agents, American or foreign, are subject to the attorney-client privilege in the United States.") Defendant argues that Chubb is on all fours with the present case and thus should govern this Court's analysis. However, plaintiff has shown that significant distinctions exist between the function Coles performed for Chubb and the functions he performed for plaintiff.

[15] One function that Coles performed for plaintiff that he apparently did not perform for Chubb was that of British patent agent. In this capacity, Coles assisted plaintiff in formulating licensing and enforcement policies for its patents in Europe, and advised plaintiff of possible infringements. See Coles Aff. at 9; Soderblom Aff. at 9. Coles performed these activities pursuant to plaintiff's instructions. Id. While they may have involved interaction with citizens of other European countries, it appears that these duties never touched base with the United States. Thus, even though Coles' activities did not relate solely to his native (British) patent office, there is no apparent justification for applying United States privilege law to the withheld documents relating to those activities, since those docu-

ments have no relation to this country at all. Chubb, 103 F.R.D. at 65.[FN22] The documents will therefore be ordered produced for examination in camera, to ensure that they do not relate to the U.S. and that they are in fact privileged.

> FN22. The other case defendant cites in support of this argument is equally unpersuasive. In Detection Systems, Inc. v. Pittway Corp., 96 F.R.D. 152, 156 (W.D.N.Y.1982), the court found that a British patent agent had acted as a mere conduit for a Japanese patent agent, transmitting advice to their American client. The court declined to apply the British attorney-client privilege rule, stating: "[t]his type of activity cannot be used to shield documents from discovery." Id. Since there have been no allegations that Coles was merely a conduit for European patent agents' advice, Detection Systems is inapposite.

[16] The other function Coles performed for plaintiff is more analogous to his role as described in Chubb. Coles helped plaintiff's United States patent counsel in reissue patent proceedings and in the formulation of licensing and enforcement strategies for use in the United States and Japan. Coles Aff. at 6-7; Soderblom Aff. at 7-8; Coles Aff. at 6, 7. These activities required frequent communications between Coles and Soderblom in England and between Soderblom, Coles, and Vande Sande. These communications comprise the remainder of the category II documents.

The Chubb court rejected the argument that communications similar to these were privileged. Chubb, 103 F.R.D. at 65. In that case, the plaintiff, Chubb, had argued that the privilege applied on the theory that Coles had been acting as an employee of Chubb and that Coles' communications with Chubb's U.S. counsel (Mr. Vande Sande) were thus essentially communications between an attorney and his client. The Chubb court rejected this argument and with it the rule of Foseco International,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

*Ltd. v. Fireline, Inc.*, 546 F.Supp. 22 (N.D.Ohio 1982) (attorney-client privilege applied to similar communications, based on such a "constructive employee" theory). *Id.* at 25.

In the present case, plaintiff has not relied on a constructive employee theory. Thus, neither *Chubb* nor *Foseco* is on point. Instead, plaintiff contends that Coles was acting under Mr. Vande Sande's direction and was thus acting as an agent of the attorney, rather than an employee of the client, for purposes of the privilege.[FN23] ***1446** While the distinction may appear formalistic, it is a significant one for purposes of determining whether the privilege applies to the communications between plaintiff, Coles, and Vande Sande.

> FN23. Defendant notes that plaintiff is here arguing that Coles was acting as its U.S. counsel's subordinate at the same time Coles was arguing that he was an employee of Chubb in that litigation. However, defendant offers no authority for the proposition that the two claims are mutually exclusive. Even if they were mutually exclusive, the *Chubb* court determined that Coles was not a Chubb employee. *Chubb,* 103 F.R.D. at 66.

Under similar circumstances, in *United Coal*, 839 F.2d at 966, the Third Circuit held that the work product doctrine does not apply exclusively to documents containing the mental impressions of an attorney. Limiting the scope of the doctrine, the court stated, would ignore:

the realities of litigation in our adversary system. One of those realities is that attorneys must often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect materials prepared by agents for the attorney as well as those prepared by the attorney himself.

*Id.* (quoting *United States v. Nobles*, 422 U.S. 225,

238-39, 95 S.Ct. 2160, 2170-71, 45 L.Ed.2d 141 (1975)).[FN24]

> FN24. Expansion of the attorney-client privilege to protect communications between an attorney's representative and the attorney or the attorney's client is supported by authority from other jurisdictions. *See, e.g., United States v. Kovel,* 296 F.2d 918 (2d Cir.1961); *Daniels v. Hadley Memorial Hospital, et al.,* 68 F.R.D. 583 (D.D.C.1975); *Mendenhall v. Barber-Greene,* 531 F.Supp. 951, 217 US-PQ 786 (N.D.Ill.1982); *Congoleum Industries v. G.A.F. Corp.,* 49 F.R.D. 82, 84 (E.D.Pa.1969); *In re Ampicillin Litigation,* 81 F.R.D. 377, 394 (D.D.C.1978); *Cf. Himmelfarb v. United States,* 175 F.2d 924 (9th Cir.1949). At least one commentator supports such an expansion, as well. *See 2 Weinstein's Evidence* ¶ 503(a)(3)[01].

This Court has held that a non-attorney patent agent, employed in the patent department of a corporation, may qualify as a subordinate of the corporation's attorney, if working at the direction of and under the supervision of that attorney; accordingly, the Court held that the attorney-client privilege applied to communications between the two. *Hercules,* 434 F.Supp. at 146. *Hercules* specifically distinguished patent agents who handle patent matters on an independent basis, such as Mr. Coles; however, it did not hold that independent patent agents could not also be found to be attorneys' subordinates.[FN25]

> FN25. By expressly distinguishing between in-house and independent patent agents in *Hercules,* this Court was able to avoid the issue presented in *Duplan,* 397 F.Supp. at 1169, and other cases which held that communications between a client and an independent patent agent are never privileged. *Hercules,* 434 F.Supp. at 146. However, neither this Court, the Federal Circuit, nor the Third Circuit has ever ad-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

opted the rule of *Duplan.*

The *Hercules* decision left open the issue of the applicability of the attorney-client privilege to communications between an attorney, a client, and an independent patent agent, if that patent agent is working on behalf of and under the direction of the attorney. That is the issue squarely faced by this Court today. Recognition of the realities of litigation and analogous application of the work product doctrine leads us to hold that the attorney-client privilege may encompass documents such as those in category II involving discussions between plaintiff, Coles, and Vande Sande, if Coles was acting under the direction of Vande Sande. Accordingly, these documents will be ordered produced for examination *in camera* to determine if they are protected by such a relationship.

[17] The withheld documents in category III, all of which relate to foreign patent agents other than Mr. Coles, can be analyzed in much the same manner as some of the Coles documents in category II. Here again, plaintiff argues that the attorney-client privilege applies to such documents and again there is valid (though not controlling) authority so holding.

With respect to the documents in this category which touch base with the United States, defendant contends that *Chubb* requires that this country's attorney-client privilege rule be applied. *Chubb,* 103 F.R.D. at 65. Since the foreign patent agents connected with these documents are not patent attorneys under U.S. law, defendant *1447 argues, these documents cannot be found to be privileged. *Id.* However, since plaintiff's descriptions of those documents in its withheld document list indicate that the foreign patent agents involved were really only "functionaries," with the "real lawyering" being done by plaintiff's U.S. counsel, the Court finds that "the communication is like that between a lawyer and any non-lawyer who serves under the lawyer's supervision." *Mendenhall,* 531 F.Supp. at 955. The fact that the correspondents were patent agents, or that they were located in Europe, is irrelevant. Thus, for the same reasons that it should be expan-

ded to protect the Coles documents that touch base with the U.S., the attorney-client privilege should be expanded to protect these documents, if the foreign patents agents were indeed acting under the discretion of an American attorney. They will thus be ordered produced for examination *in camera.*FN26

> FN26. According to plaintiff, those documents are as follows: 22-47, 297-99, 304, 309-63, 393-95, 459, 460, 514-16, 520-22, and 524.

> Plaintiff admits that it accidentally transposed the author and recipient of number 298 in the list it provided to defendant (in reality, plaintiff states, Vande Sande is the author and Bergvall the recipient). This is more understandable (and less conspicuous) than the additions plaintiff sought to make to its transmittal letters in category I, since it will have little effect on whether the privilege applies.

> Plaintiff also admits that it mistakenly identified documents number 307 and 308 as relating to plaintiff's U.S. patent when they actually relate to its U.K. patent, and that it mistakenly listed Vande Sande as a recipient of number 307 when no recipient is actually mentioned on the letter. Again, these errors appear innocent and inconsequential.

[18] As for the rest of the documents in category III, all of them would appear to deal with matters of foreign patent law. For that reason they do not touch base with the United States and comity requires that they be given the same attorney-client privilege protection that they would be given abroad. *Chubb,* 103 F.R.D. at 65. The extent of those privileges must therefore be determined. That issue will be dealt with in the discussion of the category IV documents, where these documents should have been assigned in the first place.FN27

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

FN27. The remainder of the documents originally assigned to category III by defendant, organized by country of relevant patent agent, are as follows:

German patent agent: 1, 4, 5, 59, 472, 474-75, 587-90, 601-09.

French patent agent: 7-10, 17-19, 52-54, 56, 64-65, 67, 419, 484.

Japanese patent agent: 260, 265, 267, 269-70, 272-75, 421, 422, 462, 479, 482-83, 485, 487-501, 512, 530-33, 536, 538-44, 549, 555, 569, 571, 573, 575-77, 580, 584, 611-12, 615.

Swedish patent agent: 61, 303, 396-410, 587-90, 601-09.

British patent agent: 1, 2, 4, 5, 50, 71, 76, 76(a), 77(a), 79-81, 83, 93-100, 107, 109, 111-13, 116-19, 122-25, 128-30, 136-41, 144-57, 159, 162-64, 167, 169-73, 176, 179, 180(a)-(b), 181-83, 203, 219, 221-22, 225(x), 227(x), 228, 228(x), 229(x), 230, 230(x), 231(x), 254, 255, 257, 283, 308, 476, 508, 509, 511.

Document number 7, along with the identical number 484, was deemed irrelevant by both parties. See category I discussion. Plaintiff claims that document number 50 has nothing to do with a British patent agent, and the identification provided in the list of withheld documents supplied by plaintiff bears this out. Finally, plaintiff states that Coles was not involved with number 225, as defendant has alleged, and the identification in the list bears that out. Thus, these documents would appear to be irrelevant as well, and for that reason will not be ordered produced.

Assuming that all of the documents in category IV were produced by or on behalf of foreign patent agents and relate solely to matters outside the United States, whether and to what extent they are privileged depends entirely on the laws of the countries concerned.FN28 For this reason, the Court must now determine whether the laws of the foreign countries involved would extend the attorney-client privilege to them. Chubb, 103 F.R.D. at 65.

FN28. In addition to those documents reassigned from category III, category IV contains the following withheld documents, organized by country of origin:

Sweden: 48-50.

South Africa: 188, 232(x), 233(x), 234, 235, 236.

Netherlands: 215, 217, 371-74, 378-86, 388-89.

Japan: 396-99, 401-02, 479, 481.

Austria: 403-10.

As to the South African documents, see category I discussion.

Plaintiff has provided the Court with authority in the form of United States case *1448 law and legal opinions of foreign attorneys and patent agents to support its position that some form of privilege exists under the laws of the United Kingdom, Sweden, Holland, Japan, Austria, Germany, France, and Canada analogous to that of the United States.FN29 Defendant maintains that plaintiff has failed to meet its burden of proving that an applicable privilege exists in any of these foreign jurisdictions.

FN29. According to plaintiff:

The laws of the following countries acknowledge the existence of privilege with regard to communications involving patent agents: U.K. [Detection Systems, Inc. v. Pittway Corp., 96 F.R.D.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

152, 220 U.S.P.Q. 716, 718 (W.D.N.Y.1981); *Mendenhall v. Baxter-Green* [*Barber-Greene*], *supra*, at 788 n. 5]; Sweden (Ex. 3); Austria (Ex. 3); Germany (Ex. 3); France (*Baxter Travenol, supra* ); Canada (*Mendenhall, supra* [531 F.Supp. 951, 217 USPQ 786] at 788 n. 5).

Plaintiff's Brief in Response to Defendant's Motion to Compel at 11 n. 5.

Exhibit numbers refer to attachments to plaintiff's Brief consisting of correspondence between Mr. Vande Sande and foreign attorneys and patent agents.

However, defendant has submitted no authority relating to the quantum of proof necessary to establish the extent of a foreign country's privilege law. Fed.R.Civ.P. 44.1, which covers the problem of establishing the rules of foreign countries, gives courts a great deal of flexibility in determining their content: once foreign law has been invoked by a simple notice of intent, a judge may consider any relevant material in determining its content, including items located through independent research.FN30 1 *Weinstein's Evidence,* ¶ 200[02]. Having read the material submitted by plaintiff, the Court finds that each of these jurisdictions has at least some varying degree of attorney-client privilege, whether it be statutory or common law. Rather than set out findings as to the particulars of each country's law in this Opinion, the Court will order these documents produced for inspection *in camera,* to determine whether or not they would be privileged under the relevant foreign laws In that regard, the parties are directed to provide the Court with further information on the privilege applicable in the countries in question.

FN30. Fed.R.Civ.P. 44.1 states:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissable under the Federal Rules of Evidence. The Court's determination shall be treated as a ruling on a question of law.

[19] Finally, defendant argues that the withholding of a number of items in category V is wrongful because they contain purely technical information used in completing a patent application, rather than legal advice.FN31 *Hercules,* 434 F.Supp. at 147. Plaintiff acknowledges that purely technical documents are not privileged, but states that documents, such as those used primarily as aids in completing patent applications, have already been produced.

FN31. Documents 21, 22, 392, 461, and 517.

What have been properly withheld, plaintiff maintains, are documents which contain some technical information, but have as their primary purpose the furnishing of legal advice to the plaintiff or the solicitation of legal advice from its attorney. The Court finds this description hard to believe, as most of these documents are letters between Mr. Vande Sande and an independent engineer and date back to late 1973, the time that plaintiff's patent was pending. Moreover, the descriptions of these documents given by plaintiff in its list of withheld documents mention only technical, not legal, advice. *See* Appendix A to defendant's Brief.

This Court has stated that:

Only if the attorney is "acting as a lawyer"-giving advice with respect to the legal implications of a proposed course of business-may the privilege be properly invoked ...

The attorney-client privilege does not protect technical information such as the results of research, tests and experiments communicated to the attor-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

ney, not calling for a legal opinion or interpretation, but meant primarily for aid in completing a patent application.

***1449** *Hercules,* 434 F.Supp. at 147 (citations omitted). In light of the descriptions given in plaintiff's withheld document list, these technical documents do not appear to be protected by the privilege and shall be ordered produced.

[20] Defendant next objects to plaintiff's use of the work product doctrine to justify withholding a number of documents to or from so-called "technical persons." [FN32] Defendant states that there is no basis for a finding that any of these documents meets the requirements of the doctrine. This is simply not true. A number of these documents allegedly contain advice provided by an expert to plaintiff's British patent attorney for use in ongoing litigation in that country. If they are as plaintiff describes them, these documents are clearly within even the narrowest construction of the doctrine as set out at Fed.R.Civ.P. 26(b)(3), *See United Coal,* 839 F.2d at 966; thus, they will not be ordered produced for inspection *in camera.*

> FN32. At issue here are the following documents: 128, 130, 152, 154-55, 163, 167, 185, 186, 190, 233, 226(x), 231(x), 256, 413, 415, 417, 436, 525, 556, 185, 256, 416-17, 436, 186, 190, 415, 525.

[21] The remainder of these technically-oriented documents involve correspondence between plaintiff's U.S. counsel and technical advisors or expert witnesses retained in connection with this litigation. Such materials are also protected under the work product doctrine as it is construed by the Third Circuit. *Id.*[FN33] If they conform to plaintiff's description, these documents are privileged. Therefore, they also will not be ordered produced for inspection *in camera.*

> FN33. The fact that at least one of these documents (number 415) involved the prosecution of plaintiff's reissue patent does

not necessarily render the doctrine inapplicable, so long as there was an "eye toward future litigation" at the time it was drafted. *Hercules,* 434 F.Supp. at 152. Given the fact that document number 415 was drafted in November of 1987, it is entirely likely that this litigation was taken into account.

[22] Defendant employs a catch-all approach in arguing that the remainder of the documents in category V have been improperly withheld, stating simply that the any applicable privilege has been waived and/or not proved. Regarding defendant's waiver argument, since the Court has held that Mr. Coles was a representative of plaintiff's counsel, showing him privileged documents did not effect a waiver of the privilege.

As for the documents involving Mr. Kirkpatrick, numbers 193 and 435, they would appear to be protected work product, since he is identified in plaintiff's withheld document list as one of plaintiff's attorneys and the documents are identified as prepared in anticipation of litigation. *See* Appendix A to defendant's Brief. The same is true for the documents connected with British patent agent Meddle, 226(x) and 233, since they are identified as providing information in connection with British patent litigation. *Id.* These four documents therefore need not be produced.

[23] Finally, Defendant lists 46 documents involving plaintiff's U.S. counsel, Mr. Vande Sande, stating that they should be produced, or at least inspected *in camera,* to ensure that they are actually privileged, as plaintiff claims.[FN34] Plaintiff correctly asserts that documents are not privileged simply because they involve an attorney. *Hercules,* 434 F.Supp. at 147.

> FN34. Numbers 105(g), 205, 258-59, 262, 264, 288-90, 292-93, 295-96, 300-02, 305-07, 364, 387, 390-91, 414, 420, 423-25, 432, 450, 458, 463-64, 466, 513, 518-19, 523, 535, 537, 557, 568, 574, 586,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 26 of 26

707 F.Supp. 1429
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

Page 26

and 614.

If the withheld document is strictly a business communication, the attorney-client privilege does not apply. *Hercules,* 434 F.Supp. at 147. From the descriptions given by plaintiff in its withheld document list, some of the documents in category V appear to be more business-oriented than legal in character. For example, number 259 is described as a "memo to file in connection with potential license agreement." However, some of these documents, as described, are clearly legal in nature and therefore deserve protection. For example, document number 364 is described as a letter "providing legal advice in connection with negotiation of a license agreement ..." To avoid misapplication of the privilege, *1450 it may be necessary to get a better sense of the "primary purpose" of each document before it can be classified.[FN35] *Hercules,* 434 F.Supp. at 148. An *in camera* review would therefore be appropriate.[FN36]

> FN35. In light of this conclusion, it will not be necessary to consider defendant's other arguments for an *in camera* inspection.

> FN36. At about the time oral argument was held on the motions dealt with in this decision, defendant filed a supplemental motion giving further reasons why four of the documents in category V should be produced. These documents consist of correspondence between Dr. Arthur I. Larky and Mr. Vande Sande, and a report by Mr. Vande Sande regarding a meeting with Larky. As stated previously in this Opinion, document number 23 shall be ordered produced for inspection *in camera,* and documents 21, 392, and 517 shall be ordered produced. In light of these determinations, it is not necessary for the Court to address defendant's supplemental claims.

V. PLAINTIFF'S MOTION FOR SANCTIONS

[24] As for plaintiff's request that the Court award it sanctions to cover its expenses in bringing this motion, Fed.R.Civ.P. 37(a)(4) authorizes a court to grant reasonable expenses to the moving party if a discovery-related motion is granted or to the non-movant if the motion is denied. In fact, this provision requires that expenses be awarded to the prevailing party unless the conduct of the losing party is found to have been "substantially justified." FN37 Rule 37(a)(4), *Notes to Advisory Committee Rules,* 1970 Amendment. The goal of the Rule is to deter the abuse implicit in carrying or forcing discovery disputes into court needlessly. *Id.*

> FN37. The test of substantial justification is not defined in the comments to Rule 37. However the Advisory Committee's Notes specifically point out that the Rule as amended is in no way intended to narrow the discretion of the court.

In this case, the memoranda from both sides are replete with accusations of abuses of the discovery process. Furthermore, our decisions on the two motions to compel are mixed, in that neither party was an overall "winner" or "loser." Finally, looked upon charitably, neither party's motion to compel appears to have been made with the intent to harass. Thus the Court will not at this time grant sanctions against either party.

CONCLUSION

For the reasons stated above, defendant's motion to bifurcate the trial and stay discovery on the issue of damages is denied, as is defendant's motion to transfer this action. The two motions to compel are granted in part and denied in part, as detailed in the body of this Opinion.

D.Del.,1989.
Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.
707 F.Supp. 1429, 13 U.S.P.Q.2d 1001

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                                      Page 1
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

▷
Billups v. West
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Billy BILLUPS, Plaintiff,
v.
Sue WEST, Medical Supply Clerk at Green Haven Cor-
rectional Facility; Hari Chakravorty, Medical Doctor at
Green Haven Correctional Facility; M. Coloni, Re-
gistered Nurse, A.N.A at Green Haven Correctional Fa-
cility; G. Williams, Correctional Officer at Green
Haven Correctional Facility; C. Scully, Former Superin-
tendent at Green Haven Correctional Facility; C. Artuz,
Superintendent at Green Haven Correctional Facility;
Larry Zwillinger Regional Health Services Administrat-
or at Green Haven Correctional Facility; Earl S.
Hughes, Former Inmate Grievance Program Supervisor
at Green Haven Correctional Facility, Defendants.
No. 95 Civ. 1146 (KMW)(HBP).

March 6, 1997.

Billy Billups, Stormville, NY.
Richard J. Cardinale, Assistant Attorney General, Of-
fice of the Attorney General, New York City.

OPINION AND ORDER

PITMAN, United States Magistrate Judge:

I. *Introduction*

**\*1** *Pro se* plaintiff Billy Billups, an inmate at the Green
Haven Correctional Facility, brings this civil rights ac-
tion under 42 U.S.C. §§ 1983, 1985(3) and 1988, al-
leging that defendants, eight correctional employees, vi-
olated his First, Eighth and Fourteenth Amendment
rights. Both plaintiff and defendants have moved for or-
ders compelling discovery. Additionally, plaintiff has
moved for sanctions and for assignment of counsel. For
the reasons stated below, plaintiff's motions are granted
in part and denied in part and defendants' motion is
granted.[FN1]

FN1. Prior to the filing of the pending discov-
ery motions, defendants moved for summary
judgment. In order to avoid any issue under
Rule 56(f) of the Federal Rules of Civil Pro-
cedure and because plaintiff is proceeding *pro
se,* I have deferred consideration of defendants'
summary judgment motion until the resolution
of the pending discovery disputes.

II. *Facts*

A. *Plaintiff's Complaint*

This action arises from defendants' alleged delay in
providing plaintiff with a plastic mattress cover and
steel bed. Billups alleges that when he arrived at the
Green Haven Correctional Facility in August 1992, he
was issued a "used, unsanitized mattress which ... gave
off an offensive odor and leaked ... a fire-retardant
powder chemicals [sic]." (Compl.¶ 14). Plaintiff al-
leges that he experienced an allergic reaction to those
chemicals and that his symptoms included severe head-
aches, itchy skin, eye-irritation, nasal congestion and
sleeplessness; he also claims to have experienced lower
back pain due to defective bed springs (Compl.¶ 15).
Billups visited the prison health clinic on numerous oc-
casions to report his symptoms and the allegedly defect-
ive bed. The gravamen of Billups' complaint here is that
he received inadequate medical care and experienced a
prolonged delay in receiving a replacement bed and
mattress cover because correctional personnel conspired
against him in retaliation for Billups filing past griev-
ances (Compl.¶¶ 13, 23).

Defendants deny that any of plaintiff's complaints rise
to the level of a constitutional violation and contend
that plaintiff's complaint fails to state a claim for which
relief can be granted,[FN2] that defendants' are entitled to
qualified immunity and that the Eleventh Amendment
bars plaintiff's action in whole or in part.

FN2. Although defendants assert plaintiff's pu-
tative failure to state a claim as an affirmative
defense, they have not made any motion to dis-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

Page 2

miss pursuant to Rule 12(b)(6), Fed.R.Civ.P.

### B. *Prior Proceedings*

On February 26, 1996, plaintiff served interrogatories on defendants. At defendants' request, former Magistrate Judge (now District Judge) Nina Gershon extended defendants' time to respond to May 10, 1996. Defendants, however, failed to comply with this extended deadline and did not respond to plaintiff's interrogatories until June 28, 1996. On April 15, 1996, plaintiff served document requests on defendants. Defendants did not respond until June 17, 1996. In fact, defendants responded to plaintiff's interrogatories and document requests only after plaintiff wrote to the Court, complaining of defendants' defaults and requesting a stay of defendants' summary judgment motion, submitted on June 7, 1996, until the completion of discovery (June 10, 1996 Letter from Billy Billups). In their responses, defendants answered certain discovery requests and objected to others. Defendants have not offered any explanation for their failure to respond to plaintiff's discovery requests in a timely manner. In fact, defendants' papers on the pending motion do not even address the issue.

\*2 On May 24, 1996, plaintiff served his requests to admit on defendants. In a letter to Judge Gershon dated June 7, 1996, defendants' requested "permission to stay their response to [plaintiff's requests to admit] until the enclosed motion for summary judgment is decided." (June 7, 1996 Letter from Assistant Attorney General Richard Cardinale). No action was taken concerning defendants' request, and defendants did not mail their response to these requests until July 18, 1996. Defendants denied the substance of almost all of plaintiff's requests to admit.

Plaintiff subsequently moved to compel discovery and for sanctions with respect to all three sets of discovery requests.

Defendants have also moved to compel answers to their own interrogatories regarding plaintiff's witnesses and computation of damages. Additionally, defendants have moved to compel the production of documents that demonstrate plaintiff's injuries, how each defendant caused such injuries and how each defendant violated plaintiff's rights.

### III. *Analysis*

### A. *Sanctions*

At the threshold of plaintiff's motion to compel is the issue of what consequences flow from defendants' failure to provide timely discovery responses. Numerous authorities hold that a failure to respond to a discovery request in a timely manner waives any objection the recipient might otherwise have. *E.g. Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981); *Smith v. Conway,* 154 F.R.D. 73, 76 (S.D.N.Y.1994); *Scott v. Arex, Inc.* 124 F.R.D. 39, 41 (D.Conn.1989); *Turick v. Yamaha Motor Corp.,* 121 F.R.D. 32, 36 (S.D.N.Y.1988); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice & Procedure § 2173* at 293-94 (2d ed. 1994) ("In the absence of an extension of time, failure to object [to interrogatories] within the time fixed by the rule is a waiver of any objection.").

The history of this case clearly indicates that defendants' have repeatedly missed discovery deadlines; indeed, as noted above, they have missed the adjourned discovery deadline that they themselves requested with respect to plaintiff's interrogatories. The problem is compounded by the fact that defendants have not offered any explanation or excuse for their defaults. Defendants simply ignore them as if they had never occurred.

The time limits set forth in the Federal Rules of Civil Procedure are *not* optional. They are mandatory for *all* litigants-large or small, public and private. Litigants simply do not have unbridled, unilateral discretion to decide when they will respond to discovery requests. The very notion of such a chaotic system would make it impossible for cases to be resolved in a "just, speedy, and inexpensive" manner contemplated by Rule 1 of the Federal Rules of Civil Procedure.

Indeed, any doubt that a litigant may have concerning the importance of complying with discovery deadlines should be eliminated by Local Civil Rule 46(e)(1)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                    Page 3
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

which provides:

**\*3** Where an objection is made to any interrogatory or
sub-part thereof or to any document request under
Fed.R.Civ.P. 34, the objection shall state with spe-
cificity all grounds. *Any ground not stated in an objec-
tion within the time provided by the Federal Rules of
Civil Procedure, or any extensions thereof, shall be
waived.* (Emphasis added).

Admittedly, a slavish devotion to the Rules would, at
times, result in instances of harshness and injustice.
Thus, this Court has never been miserly in granting ex-
tensions of time either on consent or for good cause
shown. In this very case, such an extension was granted
to defendants with respect to plaintiff's interrogatories.
However, the power vested in the Court to extend dead-
lines is not a power that a party can exercise unilater-
ally. In the absence of an extension *from the Court*, re-
sponses to discovery requests are governed by the un-
ambiguous time limits clearly set forth in the Federal
Rules of Civil Procedure.

Finally, the fact that defendants requested (but were not
granted) an extension of time to respond to plaintiff's
requests to admit, provides no excuse for their failure to
respond in a timely manner. A request for an extension
of time that is not granted simply does not operate as an
extension. As explained by former District Judge (now
Circuit Judge) Roth of the Third Circuit:

Defendant's argument assumes that the moment it has
filed a motion to stay discovery on the damages issue, it
need no longer obey basic discovery rules. Defendant is
in effect granting itself a stay of discovery. Simple logic
teaches that defendant has put the presumption on the
wrong side: unless and until it is granted a stay, defend-
ant should be required to conduct discovery as if no mo-
tion had been filed at all.

*Willemijn Houdstermaatschaapij BV v. Apollo Com-
puter, Inc.,* 707 F.Supp. 1429, 1441 (D.Del.1989).

Unfortunately, the defaults in this case do not appear to
be isolated incidents. The Attorney General's Office has
repeatedly shown indifference to the requirements of

the Federal and Local Civil Rules. *E.g. Trammell v. C.
Greiner,* No. 95 Civ. 38(LAK)(MHD) 1996 WL 191591
(S.D.N.Y. April 19, 1996) (Assistant Attorney General
("AAG") repeatedly violated Court orders and discov-
ery deadlines by failing to file a timely answer, pretrial
order and timely response to plaintiff's motion to com-
pel. Additionally, AAG failed to take timely discovery
and did not acknowledge his repeated defaults in his pa-
pers.); *Colon v. Dolan,* No. 93 Civ. 8915(KMW)(AJP)
1995 WL 672478 (S.D.N.Y. November 9, 1995) (AAG
failed to file timely pretrial order after the Court granted
extension that AAG had requested.); *Pearson v. Cough-
lin,* No. 92 Civ. 1869(DLC) 1995 WL 366463
(S.D.N.Y. June 20, 1995) (AAG filed overdue answer
only after Court warned of a default judgment; AAG re-
quested extension to file a dispositive motion four days
after the motion was due; AAG failed to respond timely
to plaintiff's motion for default judgment; AAG's excuse
to the Court for his defaults was that he had developed a
"block" about the case.); *Waul v. Coughlin,* No. 93 Civ.
753(DLC) 1995 WL 258165 (S.D.N.Y. May 2, 1995)
(AAG filed answer to complaint 15 months past dead-
line.). These cases lead to the inevitable conclusion that
the Attorney General's Office does not seem to under-
stand that adherence to discovery deadlines and other
Court-ordered deadlines is not optional and is crucial
for the expedient and just resolution of a case. The
Court is well aware of the Attorney General's workload
and has always been willing to grant reasonable exten-
sions if a reasonable basis is shown or if the adversary
has consented.[FN3] However, to ignore the defaults
here-defaults for which the Attorney General's Office
has never offered any excuse or explanation whatsoever
FN4-would effectively hold that the Federal Rules of
Civil Procedure do not apply to the Attorney General's
Office. This I will not do.

> FN3. In any event the Attorney General has
> never made any claim that his defaults here
> were due to overwork or understaffing.

> FN4. I am aware that I have the authority under
> Rule 6(b)(2), Fed.R.Civ.P. to enlarge time peri-
> ods even after their expiration where the failure
> to act timely was the result of "excusable neg-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

lect". As noted above, however, defendants have failed to even address their failure to respond to plaintiff's discovery requests. Accordingly, there is no basis in the record for the Court to even consider granting a *nunc pro tunc* extension of time under Rule 6(b)(2).

**\*4** The Federal Rules of Civil Procedure provide a host of sanctions for non-compliance with discovery requests including default judgment, issue preclusion and assessment of attorney's fees.[FN5] As noted above, Local Civil Rule 46(e)(1) provides that untimely objections to any interrogatory or document request are waived. Federal Rule of Civil Procedure 36 governing admissions, provides that failure to respond timely to a request to admit results in the matter being deemed admitted. Finally, the Court may also impose a monetary sanction. *Waul v. Coughlin,* No. 93 Civ. 753(DLC) 1995 WL 258165 (S.D.N.Y. May 2, 1995); *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338 (D.Conn.1981) (Cabranes, J.).

> FN5. Plaintiff has asked the Court to apply nearly every sanction available.

Ordinarily, I would be inclined to apply the letter and the spirit of Local Civil Rule 46(e)(1) and Federal Rule of Civil Procedure 36, and hold that defendants' unexplained defaults result in a waiver of the objections defendants have belatedly asserted and that the requests to admit are deemed admitted. The propriety of such ruling must, however, be evaluated in the context of the entire case.

Plaintiff here is seeking damages for the allegedly late receipt of a plastic mattress cover and a steel bed. In the universe of prisoners' rights litigation, plaintiff's claimed injuries are relatively minor. Any recovery that plaintiff may ultimately obtain will, in all likelihood, be paid out of taxpayer funds. In addition, the discovery plaintiff is seeking includes such sensitive materials as the personnel files of correction officers and the officers' tax returns. As discussed in more detail below, the relevance of certain other materials is borderline to questionable at best. In light of these factors, I do not believe that justice would be served by granting

plaintiff the discovery windfall that would result from the literal application of Local Civil Rule 46(e)(1) and Rule 36 of the Federal Rules of Civil Procedure.

Accordingly, defendants' objections to plaintiff's interrogatories, document requests and requests to admit, will not be deemed waived and will be considered on the merits. Defendants should not mistake this ruling as an invitation to continued violations of the Federal and Local Rules of Civil Procedure. Defendants are put on notice that I will not treat future violations with similar indulgence.

Some sanction, however, is essential to ensure that the Attorney General's Office understands the importance of compliance with the Court's rules. In light of the fact that the Attorney General's behavior has taxed the judicial system and has caused unnecessary motion practice, the appropriate sanction at this time, is a $1,000 fine, payable to the Clerk of the Court within thirty (30) days from the date of this Opinion and Order.[FN6] Courts confronting similar situations have assessed such nominal fines under the inherent power of the Court. *Williams v. Esmor Correctional Services, Inc.,* No. 95 Civ. 3925(LAP)(AJP) 1995 WL 581627 (S.D.N.Y. October 3, 1995); *Miltope Corp. v. Hartford Casualty Insurance* 163 F.R.D. 191, 195 (S.D.N.Y.1995) (collecting cases); *Graff v. Metro North Commuter R.R.,* No. 94 Civ. 2587(LAK) 1995 WL 363771 (S.D.N.Y. June 16, 1995); *Waul v. Coughlin,* No. 93 Civ. 753(DLC) 1995 WL 258165 (S.D.N.Y. May 2, 1995).

> FN6. I am not assessing any fine or sanction payable to plaintiff. Although attorney's fees to the movant would ordinarily be an appropriate sanction on a motion such as this, plaintiff is proceeding pro se and, thus, has incurred no attorney's fees as a result of defendants' defaults.

**\*5** I will now turn to the merits of the parties' discovery disputes.

### B. *Production of Defendant Williams' Personnel Files*

Billups first seeks to compel the production of defendant Williams' personnel records and personnel evalu-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                          Page 5
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

ations ("Personnel files"). Williams is an officer of the
Department of Corrections in charge of inmate living
quarters; Williams also arranged for Billups to receive a
replacement mattress cover (Williams' Response to
Plaintiff's Interrogatory 4). Billups claims that Williams
delayed his receipt of a plastic mattress cover which
prolonged Billups' symptoms (Plaintiff's Motion to
Compel at 9). Billups alleges that Williams acted
against him out of racial animus [FN7] and in retaliation
for past grievances filed by Billups (Compl.¶ 39). Bil-
lups further alleges that Williams falsely stated in a
grievance investigation statement that Billups had been
issued a new mattress cover (Compl.¶ 35). As a con-
sequence, Billups alleges that the Inmate Grievance
Resolution Committee decided not to replace his mat-
tress cover, believing that Billups had been provided
with a replacement. Billups claims that production of
the personnel files are relevant to his retaliation claims
(Plaintiff's Motion to Compel ¶ 21).

    FN7. Billups is an African-American.

Defendants oppose production on the ground that dis-
closure of such information to a *pro se* inmate "runs
counter to legitimate penalogical interests and con-
cerns." (Defendants' Affidavit in Opposition ¶ 4). De-
fendants also cite Section 50-a of the New York Civil
Rights Law which states that personnel files of police
officers, firefighters and correction officers are not to be
disclosed except by consent of the individual or pursu-
ant to court order.[FN8] The statute also provides that
the Court may make an *in camera* inspection of such re-
cords to determine if the records are relevant to the ac-
tion and if disclosure is appropriate. N.Y. Civil Rights
Law § 50-a(2), (3) (McKinney 1992).

    FN8. Defendants concede that Section 50-a is a
    state privilege law and does not govern a feder-
    al civil rights action, but asks that Court con-
    sider the statute in the interests of comity. *See
    Unger v. Cohen,* 125 F.R.D. 67, 69
    (S.D.N.Y.1989).

Federal Rule of Civil Procedure 26(b)(1) governs the
scope of discovery and permits disclosure of materials
that are relevant to the action or are likely to lead to the

discovery of admissible evidence. "This obviously
broad rule is liberally construed." *Daval Steel Products
v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991).
"[T]he overriding policy is one of disclosure of relevant
information in the interest of promoting the search for
truth in a federal question case." *Burke v. New York
City Police Dept.,* 115 F.R.D. 220, 225 (S.D.N.Y.1987).

Although no privileges apply in this situation, defend-
ants have legitimate concerns regarding the disclosure
of personal information relating to correction officers.
Federal Courts must conduct a balancing test of the
competing interests to determine if disclosure is appro-
priate. *See generally King v. Conde,* 121 F.R.D. 180,
189 (E.D.N.Y.1988).

Defendants have submitted with their opposition papers
an affidavit from George Schneider, Deputy Superin-
tendent of Security at the Green Haven Correctional Fa-
cility. The affidavit, however, is insufficient under *King*
because Schneider makes only conclusory statements
about why the files should not be disclosed. He does not
even state that he has personally reviewed Williams'
personnel files.

*6 Nevertheless, defendants' have expressed legitimate
concerns regarding disclosure of personal information
about correctional employees. Dissemination of such
personal information may jeopardize an officer's effect-
iveness on the job and may raise safety issues concern-
ing both the officer and his family. Courts faced with
similar cases have conducted an *in camera* inspection to
determine if any material in the personnel files is suffi-
ciently relevant to plaintiff's claims to outweigh a de-
fendant's legitimate concern regarding disclosure of this
matter. *Thompson v. Keane,* No. 95 Civ.
2442(SHS)(AJP) 1996 WL 566537 (S.D.N.Y. October
4, 1996); *Malsh v. New York City Police Dept.,* No. 92
Civ. 2973(KTD) 1995 WL 6256 (S.D.N.Y. January 6,
1995); *Montalvo v. Hutchinson,* 837 F.Supp. 576
(S.D.N.Y.1993); *Boyd v. City of New York,* No. 86 Civ.
4501(CSH) 1987 WL 6915 (S.D.N.Y. February 11,
1987); *Cincotta v. City of New York,* No. 83 Civ.
7506(KTD)(MHD) 1984 WL 1210 (S.D.N.Y. Nov. 14,
1984); *Marshall v. New York City Transit Authority,*
No. 84 Civ. 1033(RJW)(MHD) 1984 WL 380 (S.D.N.Y.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                      Page 6
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

May 24, 1984); *Hurley v. Keenan,* No. 79 Civ. 4772(RJW)(MHD) 1984 WL 358 (S.D.N.Y. May 8, 1984).

Accordingly, defendants shall submit to the Court Williams' personnel records and evaluations from August 1992 through January 1995, within 30 days from the date of this Opinion and Order for an *in camera* inspection.[FN9]

> FN9. Plaintiff has requested all of Williams' personnel records from 1992-1996. Plaintiff, however, did not arrive to the Green Haven Correctional Facility until August 1992 (Compl.¶ 14), therefore, there is no need for disclosure prior to that time. Additionally, there is no need for the files beyond January 1995, for as of that date, Billups' no longer had a defective bed (Plaintiff's Request to Admit number 26).

> Plaintiff has made numerous document requests to which these same temporal limitations will be applied. *See* Miscellaneous Document Requests, *infra,* part III.D.

### C. *Production of Defendants' Tax Returns*

Plaintiff also seeks to compel the production of several defendants' federal income tax returns. Plaintiff claims that this material is relevant to his claim for punitive damages (Plaintiff's Reply Affidavit ¶ 4). Defendants oppose production on the ground that privacy and penalogical concerns outweigh the need for disclosure (Defendants' Affidavit in Opposition ¶ 6).

Courts have been reluctant to order routinely discovery of tax returns due to the confidential information contained in such documents and to encourage accurate reporting. *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979). A two prong test has been applied in determining whether to compel production of tax returns. To compel production, the Court must find that (1) the tax returns are relevant; and (2) that there is a compelling need for disclosure of the returns because the information is not otherwise obtainable. *Russell v.*

*Del Vecchio,* 764 F.Supp. 275, 276 (E.D.N.Y.1991); *Lemanik, S.A. v. McKinley Allsopp, Inc.,* 125 F.R.D. 602, 609 (S.D.N.Y.1989); *United States v. Bonanno,* 119 F.R.D. 625, 627 (E.D.N.Y.1988); *S.E.C. v. Cymaticolor Corp.,* 106 F.R.D. 545, 547 (S.D.N.Y.1985); *Smith v. Bader, supra,* 83 F.R.D. at 438.

Although plaintiff has articulated at least a colorable theory of relevance, production of defendants' tax returns at this stage would be premature, given the pending motion for summary judgment. Accordingly, plaintiff's motion to compel production of defendants' tax returns is denied without prejudice to renewal within thirty (30) days from the Court's decision on the pending summary judgment motion in the event that plaintiff's claims survive that motion.

### D. *Miscellaneous Document Requests*

**\*7** Plaintiff also seeks to compel production of the following:

1. All "Inmate Attitude and Behavior Reports" concerning Billups, written by defendant Williams from 1992 through 1996 as well as the report referring Billups for a psychiatric examination (Plaintiff's Document Request 1(b)-(c)).

Billups claims that these reports are relevant to prove Billups, retaliation claim. Defendants object to producing these reports on the grounds that the reports are not relevant and will not lead to the discovery of admissible evidence.

Unfortunately, neither party has submitted a description of what these reports may contain. However, based solely on the title of these documents, it appears that they may be relevant to the issue of Williams' animus towards Billups and thus may contain relevant information for Billups' retaliation claim. Accordingly, I order production of the documents from August 1992 through January 1995 within thirty (30) days from the date of this Opinion and Order.

2. Copies of all grievance complaints that plaintiff has filed against defendants Williams, Zwillinger, Hughes,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                      Page 7
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

West, Coloni from 1992-1996, along with defendants' and the superintendents' responses to such complaints, including central office review committee decisions (Plaintiff's Document Requests 1(f)-(h); 2(b)-(d); 4(b)-(c); 5(c)-(d); 7(b), (d)).

Plaintiff alleges that these documents will show that defendants' were biased against plaintiff and ultimately, retaliated against him. Although Billups admits that inmates at the Green Haven Correctional Facility may obtain copies of their grievances if they pay for copying costs, he claims that defendants should produce these documents to him and bear the expense since he is proceeding *in forma pauperis* (Plaintiff's Reply Affidavit ¶ 5).

Defendants object to the production of the grievance reports on the grounds that production is unduly burdensome, inconvenient and expensive (Defendants' Affidavit in Opposition ¶ 8-9). Defendants further object on the grounds that inmates are automatically provided with a copy of their grievance upon filing, and that additional copies are available at the facility to inmates, for a nominal cost (James Lagoy Affidavit ¶ 2). Defendants further contend that no exception to facility procedure should be made for Billups simply because he has filed a lawsuit (Defendants' Affidavit in Opposition ¶¶ 8-9).

Although plaintiff is proceeding *in forma pauperis,* and the Court thereby waives his filing fee, his status does not excuse him from all other litigation costs that a party must bear. *See generally Glucover v. Coca-Cola Bottling Co.,* No. 91 Civ. 6331(PKL) 1996 WL 1998 (S.D.N.Y. January 3, 1996); *Gonzalez v. Fenner,* 128 F.R.D. 606 (S.D.N.Y.1989); *Brown v. De Filippis,* 125 F.R.D. 83 (S.D.N.Y.1989). Moreover, plaintiff has not proffered any documentary evidence concerning his current financial resources and, thus, I have no basis for concluding that he should be excused from paying copying costs.

**\*8** It appears that the documents requested may be relevant to Billups' retaliation/discrimination claims. For example, it would appear that a threshold element of Billups' retaliation claim is that he had previously filed

grievances and that there was, therefore, at least a theoretical basis for a retaliation claim. Accordingly, within thirty (30) days from the date of this Opinion and Order, defendants shall advise Billups of the approximate cost to copy the documents he has requested and that are dated from August 1992 through January 1995. If Billups still seeks copies of the documents, he shall tender payment to the defendants for copying within ten (10) business days of his receipt of the cost estimates. Defendants shall produce copies of the documents requested within thirty (30) days of Billups' payment.

3. Copies of all health records, including X-rays and prescription medications relating to the instant action, with all unrelated medical complaints redacted (Plaintiff's Document Requests 3(h), (k)-(m); 6(c)-(e); 7(d)).

Inmates at the Green Haven Correctional Facility are able to obtain copies of their medical records at a nominal cost. Plaintiff claims that he made a good faith effort to obtain these documents from within the facility but withdrew his request due to correctional employees' "inordinate delay" in copying the documents (Plaintiff's Motion to Compel ¶ 24).

Defendants object to production on the grounds that the request is unduly burdensome, inconvenient and expensive and that an inmate's medical records are available to an inmate at the facility, for a copying charge (Defendants' Affidavit in Opposition ¶¶ 10-13). Defendants also oppose production on the ground that Billups has previously ordered medical records and has twice cancelled his order claiming that his order was taking too long and that the cost at five cents per copy was unreasonable (Barbara Whitney Affidavit ¶¶ 3-5). Defendants further object to redacting Billups' medical records on the ground that they cannot possibly know which symptoms plaintiff considers as unrelated to his claims (Defendants' Affidavit in Opposition ¶ 12).

Billups' medical records are relevant to demonstrate his allegations that he received inadequate medical care. As noted above, Billups' in *forma pauperis* status does not excuse him from ordinary litigation costs. Accordingly, plaintiff shall pay for any copy of his medical records

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

requested.

Additionally, it is unreasonable to burden defendants with redacting portions of plaintiff's medical records since they cannot possibly know what symptoms plaintiff claims are unrelated to the defective bed. Redacting the medical records seems to be a tedious, futile task that will not assist the progression of the case.

Accordingly, within thirty (30) days from the date of this Opinion and Order, defendants shall advise Billups of the approximate cost to copy the documents he has requested. If Billups still seeks copies of the documents, he shall tender payment to the defendants for copying within ten (10) business days of his receipt of the cost estimates. Defendants shall produce unredacted copies of the documents requested within thirty (30) days of Billups' payment.

*9 4. A list of the medical staff working at the health clinic on forty occasions when Billups visited the clinic, and the staff's qualifications (Plaintiff's document request 10(a)).

Billups alleges that this information is necessary so that he can demonstrate that the medical staff did not keep accurate medical records regarding his health and that he received inadequate medical care.

Defendants object to production of these documents on the grounds that the request is vague, overbroad, and that the burden outweighs the benefit.

Production of the qualifications of medical staff is necessary for Billups to oppose defendants' summary judgment motion that claims, among other things, that Billups received adequate medical care. The following information is sufficient for Billups to oppose defendants' summary judgment motion:

1. College and/or medical school attended

2. Date and State of Licensure

3. Board Certification date, if any

The foregoing information shall be produced within

thirty (30) days from the date of this Opinion and Order.

5. A "certified list" of all materials used in the manufacture of the bed mattresses at the Green Haven Correctional Facility and a representative sample of each material (Plaintiff's Motion to Compel 3(a)-(e)).

Defendants object on the ground that such a list and materials are not in their possession.

Defendants cannot be compelled to produced what they do not have. *Italia Di Navigazione SpA v. M.V. Hermes I,* 564 F.Supp. 492, 495 (S.D.N.Y.1983). Therefore, I will not compel production of these materials.

6. A copy of the "Federal Certification of the DOCS IG-RC" and "Directive 4040, Title 7 NYCRR, and GHCF P & P" (Plaintiff's document request 4(f) and 4(g)). Billups states that these documents are relevant to prove the allegation that "a *de facto* policy was implemented to destroy and delay plaintiff's grievances against the medical department and personnel." (Plaintiff's Motion to Compel ¶ 25).

Defendants object to production of the Federal Certification of the "DOCS IGRC" on the ground that the document is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the production of "directive 4040, Title 7 NYCRR, and GHCF P & P" on the ground that the information is public and accessible to Billups at the facility.

Billups has used acronyms to describe the documents requested and has not explained what they are or what relevant information each document may contain. Accordingly, production will not be compelled.

7. "(1) Copies of all institutional checks or vouchers made out to TCG [E]nterprises with respect to purchase requests dated 2/16/94, 4/24/94; and 10/16/94 .... (2) all invoices or receipts from TCG [E]nterprises in regards to purchase requests listed in item 1 ... (3) copies of all delivery receipts in regards to items no. 1-2". (Plaintiff's Supplemental Reply Affidavit ¶ 7). Additionally, plaintiff requests from defendants all computer printouts for packages received at the facility from TCG En-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                          Page 9
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

terprises in mid-December 1994, and copies of all pur-
chase requests or orders with the approving signature of
defendants Zwillinger and Artuz. Plaintiff does not state
how these documents are relevant, but appears to ask
this Court to compel production as a sanction on de-
fendants (Plaintiff's Supplemental Reply Affidavit ¶ 7).

**\*10** Defendants oppose production on the grounds that
plaintiff originally requested some of these documents
in a Freedom of Information Law ("FOIL") request and
subsequently cancelled the request; defendants have at-
tached copies of the FOIL request and subsequent can-
cellation (Richard J. Cardinale Affidavit dated October
23, 1996).

The Court will not compel defendants to produce volu-
minous documents when plaintiff does not proffer to the
Court the relevance of such documents. Moreover, the
relevance of such documents is not apparent to the
Court. Accordingly, production will not be ordered.

Plaintiff also claims that he did not receive various pur-
chase orders sent by defendants in response to docu-
ment request 5(h)-(i). Defendants are ordered to resend
those documents within thirty (30) days from the date of
this Opinion and Order. Plaintiff is put on notice to pre-
serve all documents received for the Court will not
again require defendants' to resend documents.[FN10]

> FN10. Plaintiff also complains that the pur-
> chase orders produced in response to his 5(e)
> and 5(g) document requests are unsatisfactory
> since no approving signature appeared on the
> orders. The documents have been produced as
> they exist and therefore further production will
> not be ordered.
>
> Additionally, plaintiff alleges that the docu-
> ments produced in response to his 5(e) and
> 5(g) request may be falsified because he did
> not receive any documents when he made
> similar FOIL requests. The FOIL requests
> and the document requests, however, are dif-
> ferent. Thus, the allegation that the docu-
> ments produced are falsified is unsubstanti-
> ated.

### E. *Interrogatories* [FN11]

> FN11. In their opposition papers, defendants
> have not addressed plaintiff's complaints con-
> cerning their interrogatory responses.

Plaintiff also seeks to compel a response to interrogat-
ory one, which seeks the identity of defendants' expert
witnesses at trial.

Defendants' expert witnesses are not implicated in de-
fendants' motion for summary judgment. Thus, Billups
does not need to know the identity of defendants' expert
witnesses to respond to the motion for summary judg-
ment. Accordingly, Billups' request is denied without
prejudice to renewal within thirty (30) days after the
summary judgment motion is decided if Billups' action
survives said motion.

Plaintiff has also moved for sanctions on the ground
that defendants' responses to several interrogatories are
false (Plaintiff's Motion to Compel ¶¶ 31-32). Plaintiff
does not proffer any evidence that defendants' answers
are false but promises that future discovery will demon-
strate the falsity of defendants' responses. This aspect of
plaintiff's motion is, therefore, denied without prejudice
to renewal if and when plaintiff can prove the falsity he
claims.

Additionally, plaintiff states that defendants' responses
to the interrogatories are incomplete, vexatious, mis-
leading and generalized.[FN12] Although plaintiff does
not specifically state how defendants' answers are in-
complete, it is clear that many of defendants' answers
are patently insufficient.

> FN12. Plaintiff also objects to the interrogatory
> answers on the grounds that the answers are
> boilerplate. This objection is either meaning-
> less or cumulative of Billups' other objections.

Defendants respond to several interrogatories by stating,
"I do not recall" "I do not know" and "not to the best of
my recollection". These responses are insufficient be-
cause Rule 26(g) of the Federal Rules of Civil Proced-
ure requires that a party make reasonable efforts to ob-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

tain the information sought in an interrogatory. And, when a party claims lack of knowledge, a party's response must describe the steps taken to obtain the information sought or why no such efforts are necessary. *Continental Illinois National Bank & Trust Company of Chicago v. Canton,* 136 F.R.D. 682, 684 (D.Kan.1991); *Miller v. Doctor's General Hospital,* 76 F.R.D. 136, 140 (W.D.Okla.1977); *International Fertilizer & Chemical Corp. v. Brasileiro,* 21 F.R.D. 193, 194 (S.D.N.Y.1957); 8A C. Wright, A. Miller & R. Marcus, *Federal Practice & Procedure* § 2177 at 323 (2d ed. 1994) (Interrogatory answers sufficient "when the an-

| Defendant: | Interrogatory: |
|---|---|
| Coloni | 2,3,5,20,26,31 |
| Zwillinger | 2,3,5,18,31 |
| Hughes | 2,5,22,31 |
| Scully | 2,5,12,31 |
| Artuz | 12,31 |
| West | 18,31 |
| Williams | 31 |

Plaintiff also complains that the interrogatory responses are vexatious. Interrogatory answers have been found to be vexatious when a party failed to make an inquiry to obtain the information sought, and that failure resulted in additional proceedings and prolonged depositions. *Learning International, Inc. v. Competence Assurance Systems Inc.,* No. 90 Civ.2032(MBM) 1990 WL 204163 (S.D.N.Y. Dec.13, 1990).

Although defendants in the instant case have failed to make an inquiry to obtain information to respond to the interrogatories, I find that the interrogatory responses have not by themselves, multiplied the proceedings and are more properly characterized as "incomplete" rather than "vexatious". Accordingly, I will not order sanctions based on the responses at this time.

Finally, plaintiff objects to defendants' interrogatory answers on the grounds that their answers are misleading and generalized.

Although a Court may order supplemental responses

swers as a whole disclose a conscientious endeavor to understand the questions and to answer fully those questions as are proper...."); 4A *Moore's Federal Practice* ¶ 33.26 at 33-134 (2d ed.1996).

*11 Accordingly, the following defendants are to serve supplemental responses to the following interrogatories within thirty (30) days from the date of this Opinion and Order:

and sanctions when interrogatory answers are misleading, *Basch v. Westinghouse Electric Corp.,* 777 F.2d 165, 174-75 (4th Cir.1985); *De Ponce v. Buxbaum,* No. 90 Civ. 6344(SWK)(BAL) 1995 WL 51098 *2 (S.D.N.Y.1995), or generalized, *White v. Beloginis.* 53 F.R.D. 480 (S.D.N.Y.1971), plaintiff has not explained nor is it apparent to the Court after examining the responses in issue, why the responses are allegedly misleading and generalized. Indeed, most of defendants' answers are simply "I do not recall" and are therefore more properly characterized as incomplete. Accordingly, plaintiff's objections on these grounds are without merit.

## F. *Request to Admit* [FN13]

FN13. In their opposition papers, defendants have not addressed plaintiff's complaints concerning their admission responses.

Plaintiff objects to nearly all of defendants' responses to his requests to admit on the grounds that the responses

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

are incomplete, non-specific, evasive, misleading, false and vexatious. Specifically, plaintiff claims that defendants have not made a good faith effort to obtain the information necessary to respond sufficiently to plaintiff's requests to admit (Plaintiff's Motion to Compel ¶ 36).FN14

> FN14. The Court assumes that this explanation supports plaintiff's claim that defendants' admissions are incomplete and non-specific.

Pursuant to Federal Rule of Civil Procedure 36(a), a party has a duty to make a reasonable inquiry to obtain information that assists a party to admit or deny a particular matter, or to state that the information readily available to the party is insufficient to enable the party to admit or deny the matter. *See Herrera v. Scully,* 143 F.R.D. 545, 548 (S.D.N.Y.1992). Several of defendants responses state, "Defendants deny knowledge or information sufficient to form a belief as to the truth of this allegation." Defendants' statement is essentially a refusal to admit or deny a particular matter without explaining the reasonable efforts made to accurately respond to plaintiff's request. Accordingly, defendants are ordered to supplement their responses to requests to admit numbers 12, 19, and 24 within thirty (30) days from the date of this Opinion and Order.

*12 Additionally, defendants' response to plaintiff's request to admit number 2, is also insufficient.FN15 Defendants' response states, "Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegation upon the ground that plaintiff has not provided a copy of this document."

> FN15. Plaintiff's Request to Admit number 2 requests an admission that plaintiff's ambulatory health record dated March 21, 1994 have the words: "security risk" written on the top left side of the report.

This response is insufficient for plaintiff has not asked defendants about the authenticity of a document, but merely if particular words appear on a document in defendants' actual possession. Thus, plaintiff is under no obligation to attach a copy of the document to his request to admit.

A party need not attach copies of documents *referred* to in his requests, particularly when they are within defendant's possession, such as regulations, office memoranda and letters, unless plaintiff is directly seeking admission as to the authenticity of the documents themselves.

*Diederich v. Department of the Army,* 132 F.R.D. 614, 617 (S.D.N.Y.1990) (emphasis in original). Accordingly, defendants are ordered to supplement their response to request to admit number 2 within thirty (30) days from the date of this Opinion and Order.

Additionally, defendants object to several of plaintiff's requests to admit on the grounds that the request seeks information from individuals who are not defendants in the action and that the request concerns a matter not alleged in the complaint.

While a party may be required "under some circumstances" to interview third persons to admit or deny a matter, *see Dubin v. E.F. Hutton Group Inc.,* 125 F.R.D. 372, 374 (S.D.N.Y.1989), *quoting Al-Jundi v. Rockefeller,* 91 F.R.D. 590, 593 (W.D.N.Y.1981), the third persons in issue, are not implicated in defendants' motion for summary judgment. Billups therefore, does not need supplemental responses to respond to the pending summary judgment motion. Accordingly, Billups' request is denied without prejudice to renewal within thirty (30) days after the summary judgment motion is decided if Billups' action survives said motion.

Additionally, defendants have properly objected to requests to admit that do not concern allegations in the complaint. The purpose of requests to admit is to narrow, not expand, the issues for trial. *E.g. Diederich v. Department of the Army, supra,* 132 F.R.D. at 616,*Dubin v. E.F. Hutton Group, Inc., supra.* 125 F.R.D. at 375. Accordingly, defendants objections to requests to admit numbers 4 and 5 are sustained.

Finally, Billups also claims that the responses to nearly all of his requests to admit are evasive, misleading, false and vexatious.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

Although Courts have ordered supplemental answers and sanctions where a party has failed to admit a matter later proven true, *see Apex Oil Co., v. Belcher Co.,* 855 F.2d 1009 (2d Cir.1988) and for evasive responses, *see Beberaggi v. New York City Transit Authority,* No. 93 Civ. 1737(SWK)(MHD) 1994 WL 18556 (S.D.N.Y. January 19, 1994), Billups has not specifically indicated how defendants' admissions are false, evasive, misleading, or vexatious nor are these claimed defects apparent to the Court. Accordingly, plaintiff's objections on these grounds are without merit.

### G. *Appointment of Counsel*

*13 Billups has also moved for the appointment of counsel.

The factors to be considered in ruling on a motion for the appointment of counsel are well-settled and include, "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, [plaintiff's] efforts to obtain a lawyer and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." Of these factors, "the factor which command [s] the most attention [is] the merits." *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989).

Although the truth of plaintiff's claims are unknown at this time, the nature of plaintiff's case-delayed receipt of a mattress cover and a replacement bed resulting in relatively minor symptoms-suggests that this case is not sufficiently meritorious to warrant the appointment of counsel. Even assuming the truth of plaintiff's factual allegations, plaintiff's damages appear to be modest at best. In the words of the Second Circuit:

Courts do not perform a useful service if they appoint a volunteer lawyer to a case which a private lawyer would not take if it were brought to his or her attention. Nor do courts perform a socially justified function when they request the services of a volunteer lawyer for a meritless case that no lawyer would take were the plaintiff not indigent.

*Cooper v. A. Sargenti Co.,* 877 F.2d 170, 174 (2d Cir.1989).

With respect to the other factors set forth in *Cooper,* plaintiff has not demonstrated to the Court that he has made an attempt to obtain a lawyer. Moreover, plaintiff's papers, moving to compel discovery and for sanctions, indicate that he is fully capable of presenting his case if unassisted by counsel, despite his complaints of "complex discovery". I therefore deny plaintiff's motion for appointment of counsel.

### H. *Defendants' Cross-Motion*

Defendants have also moved to compel responses to interrogatories and document requests served on plaintiff.

Defendants have requested in their interrogatories that Billups set forth the names of his witnesses and a specific computation of each category of damages (Defendants' First Set of Interrogatories and Request for Production of Documents ¶¶ 5-6).

Plaintiff argues that defendants' cross-motion should be stricken in its entirety or in the alternative, that the Court preclude defendants from conducting their own discovery until they have satisfied plaintiff's requests (Plaintiff's Reply Affidavit ¶ 11).

Striking defendants' cross-motion is not warranted. Ordinarily, a party must still fulfill its discovery obligations, despite the fact that its adversary may have failed to do so. Pursuant to Local Civil Rule 46(a), defendants' interrogatories are plainly appropriate. Accordingly, plaintiff is ordered to respond to defendants' interrogatories within thirty (30) days from the date of this Opinion and Order.

Additionally, defendants have asked for documents which show how each defendant violated plaintiff's rights and caused him injury, all correspondence concerning the incidents alleged in the complaint, and all documents concerning plaintiff's alleged physical or psychological injuries (Defendants' First Set of Interrogatories and Request for Production of Documents ¶¶ 1-4).

*14 Again, plaintiff objects to production of the requested documents on the ground that defendants themselves

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

are delinquent in responding to plaintiff's discovery requests.

I find that the documents requested by defendants are relevant, particularly if the case should proceed to trial. Billups claims that he currently has no documents in his possession responsive to defendants' document requests. Obviously, a party cannot be ordered to produce what he does not have. If Billups does obtain responsive documents in the future, he is to advise defendants and make the documents available for copying by defendants within fifteen (15) days of his receipt thereof.

IV. *Conclusion*

1. The Office of the Attorney General is ordered to pay to the Clerk of the Court of the Southern District of New York a fine of $1,000, within thirty (30) days from the date of this Opinion and Order.

2. Defendants are ordered to submit to the Court defendant Williams, personnel records and evaluations from August 1992 through January 1995 for an *in camera* inspection, within thirty (30) days from the date of this Opinion and Order.

3. Plaintiff's motion to compel production of defendants' tax returns is denied without prejudice to renewal within thirty (30) days from the date of the Court's decision on the pending summary judgment motion, if plaintiff's claims survives said motion.

4. Defendants are to produce to plaintiff "Inmate Attitude and Behavior" reports, dated from August 1992 through January 1995, as well as any report recommending Billups for psychiatric evaluation, written by defendant Williams, dated from August 1992 through January 1995, within thirty (30) days from the date of this Opinion and Order.

5. Within thirty (30) days from the date of this Opinion and Order, defendants shall advise plaintiff of the approximate cost to copy grievances and unredacted medical records that he has requested and that are dated

from August 1992 through January 1995. Plaintiff is to tender payment to defendants for the documents he seeks within ten (10) business days of his receipt of the copying cost estimates, if he still seeks copies of the documents. Defendants shall produce copies of the documents requested within thirty (30) days of Billups' payment.

6. Defendants are to provide plaintiff with the qualifications of medical staff, as set forth in this Opinion, within thirty (30) days from the date of this Opinion and Order.

7. Plaintiff's motion to compel production of the documents sought in plaintiff's requests 3(a)-(e), 4(f)-(g) and the documents listed in ¶ 7 of Plaintiff's Supplemental Reply Affidavit, is denied.

8. Defendants are to resend documents produced for plaintiff's document request 5(h)-5(i) within thirty (30) days from the date of this Opinion and Order. Plaintiff's motion to compel further production of document requests 5(e) and 5(g) is denied.

9. Plaintiff's motion to compel identification of defendants' expert witnesses is denied without prejudice to renewal within thirty (30) days from the date of the Court's decision on the pending summary judgment motion, if plaintiff's claims survives said motion.

***15** 10. Plaintiff's motion to sanction defendants for allegedly false interrogatory responses is denied without prejudice to renewal if and when plaintiff can prove the falsity he claims.

11. Plaintiff's motion to sanction defendants for vexatious, misleading, boilerplate and generalized interrogatory responses is denied.

12. The following defendants are to serve supplemental interrogatory responses within thirty (30) days from the date of this Opinion and Order:

Defendant:                                    Interrogatory:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

| | |
|---|---|
| Coloni | 2,3,5,20,26,31 |
| Zwillinger | 2,3,5,18,31 |
| Hughes | 2,5,22,31 |
| Scully | 2,5,12,31 |
| Artuz | 12,31 |
| West | 18,31 |
| Williams | 31 |

13. Defendants are to serve supplemental responses to plaintiff's requests to admit numbers 2, 12, 19 and 24 within thirty (30) days from the date of this Opinion and Order.

14. Plaintiff's motion to compel supplemental responses to plaintiff's requests to admit concerning third persons, is denied without prejudice to renewal within thirty (30) days from the date of the Court's decision on the pending summary judgment motion, if plaintiff's claims survives said motion.

15. Plaintiff's motion to sanction defendants due to evasive, misleading, false and vexatious responses to plaintiff's requests to admit is denied.

16. Plaintiff's motion for the appointment of counsel is denied.

17. Plaintiff is ordered to respond to defendants' interrogatories (¶¶ 5-6 of Defendants' First Set of Interrogatories and Request for Production of Documents) within thirty (30) days from the date of this Opinion and Order.

18. Within fifteen (15) days after defendants' production of documents to plaintiff, plaintiff is to make available to defendants' all documents responsive to defendants' document requests for copying (¶¶ 1-4 of Defendants' First Set of Interrogatories and Request for Production of Documents)

19. A scheduling order setting plaintiff's time to respond to defendants' motion for summary judgment will be issued, after the Court's *in camera* inspection of the records described in paragraph 2, above.

S.D.N.Y.,1997.

Billups v. West
Not Reported in F.Supp., 1997 WL 100798 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

Page 1

Berube v. Great Atlantic & Pacific Tea Co., Inc.
D.Conn.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Connecticut.
Paul BERUBE, Plaintiff,
v.
GREAT ATLANTIC & PACIFIC TEA COM-
PANY, INC., Defendant.
**Civil No. 3:06cv197 (PCD).**

Nov. 30, 2006.

Jacques J. Parenteau, Madsen, Prestley & Paren-
teau, New London, CT, Peter Burgoyne Prestley,
Todd D. Steigman, Madsen, Prestley & Parenteau,
LLC, Hartford, CT, for Plaintiff.
Brian E. Spears, Levett Rockwood, Westport, CT,
John P. Barry, Marc E. Alifanz, Proskauer Rose
LLP, Newark, NJ, for Defendant.

### RULING ON PLAINTIFF'S MOTION TO COM-
### PEL

PETER C. DORSEY, U.S. District Judge.
**\*1** Plaintiff moves, pursuant to Federal Rule of
Civil Procedure 37, for an order compelling De-
fendant Great Atlantic and Pacific Tea Company,
Inc. ("A & P") to fully and completely respond to
Plaintiff's First Set of Interrogatories and Requests
for Production, dated June 28, 2006. For the reas-
ons stated herein, Plaintiff's Motion to Compel
[Doc. No. 19] is **granted** and Plaintiff's Plaintiff's
Motion for Extension of Time to Disclose Experts
and Provide Damages Analysis [Doc. No. 20] is
**granted in part.**

### I. BACKGROUND

This is an age and disability discrimination action
arising out of Defendant's termination of Plaintiff's
employment on December 22, 2003. Plaintiff com-
menced this action in February 2006. On June 27,

2006, Defendant served its first set of discovery re-
quests on Plaintiff, requesting, *inter alia,* that
Plaintiff execute medical authorizations to allow for
third-party discovery regarding Plaintiff's alleged
disability. The next day, on June 28, 2006, Plaintiff
served his First Set of Interrogatories and Requests
for Production on Defendant.

Plaintiff responded to Defendant's discovery re-
quest on July 27, 2006, and in that response, objec-
ted to executing the authorizations without entry of
a confidentiality stipulation and protective order
and enclosed a proposed order. (Steigman Letter,
July 27, 2006, Ex. B to Barry Aff.) On August 2,
2006, Defendant sent their proposed revisions to
Plaintiff's draft Protective Order. (Barry email,
Aug. 2, 2006, Ex. C to Barry Aff.) On August 14,
2006, Plaintiff responded to Defendant's proposed
revisions, accepting all of them with a minor excep-
tion. (Steigman email, Aug. 14, 2006, Ex. D to
Barry Aff.) Defendant agreed to Plaintiff's excep-
tion that day, and the parties filed the Protective
Order with this Court on August 16, 2006.
(Steigman email, Aug. 16, 2006, Ex. E to Barry
Aff.) During those negotiations, Plaintiff made no
demand for or reference to its discovery requests.

Defendant failed to object or respond to Plaintiff's
discovery requests within thirty days of the date of
service, as required by the Federal Rules of Civil
Procedure. On August 15, 2006, over two weeks
after Defendant's responses and objections were
due but without any prompting or inquiry from
Plaintiff, counsel for Defendant sent an email to
Plaintiff's counsel stating that Defendant and its
counsel were "in the process of finalizing our dis-
covery responses, which we hope to get to you
shortly."(Barry email, Aug. 15, 2006, Ex. E to Pl.'s
Mot. Compel.) Defense counsel also inquired as to
Plaintiff's availability for a deposition. (*Id.*)
Plaintiff's counsel replied to the email on that same
date, requesting that Defendant's responses "be fi-
nalized as rapidly as possible because the responses
are already more than 2 weeks late."(Steigman

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

email, Aug. 15, 2006, Ex. F to Pl.'s Mot. Compel.) In response to defense counsel's inquiry regarding Plaintiff's deposition, Plaintiff's counsel stated that he did not know when Plaintiff would be available for a deposition or when Plaintiff's counsel would be able to meet with Plaintiff in order for him to execute the medical authorizations, as he had recently learned that Plaintiff was hospitalized and ordered to remain on bed rest and under twenty-four hour supervision "for the foreseeable future." (*Id.*) On August 22, 2006, Plaintiff's counsel emailed defense counsel in order to update him on Plaintiff's condition and informed him that "[t]he current consensus is that [Plaintiff] is going to remain on bed rest under 24 hour supervision for at least another 4 weeks."(Steigman email, Aug. 22, 2006, Ex. F to Barry Aff.) Defense counsel responded that same day, inquiring why Plaintiff's bed rest prevented him from signing the medical authorizations. (Barry email, Aug. 22, 2006, Ex. G to Barry Aff.) Plaintiff's counsel did not respond to that inquiry.

*2 On August 28, 2006, defense counsel advised Plaintiff that if he did not respond to Defendant's August 22, 2006 email by August 30, 2006, Defendant would be forced to contact the Court. (Barry email, Aug. 28, 2006, Ex. H to Barry Aff.) Plaintiff's counsel responded that same day, stating that "[his] schedule ha[d] not permitted [him] the opportunity to meet with [Plaintiff] and that the medical authorizations were being sent to Plaintiff for his signature."(Steigman email, Aug. 28, 2006, Ex. G to Pl.'s Mot. Compel.) Plaintiff also asked defense counsel to "[p]lease provide me with a date by which we can expect to receive Defendant's responses to Plaintiff's discovery requests."(Steigman email, Aug. 28, 2006, Ex. G to Pl.'s Mot. Compel.) That same date, one month after Defendant's responses to Plaintiff's discovery requests were due, Plaintiff received 549 pages of document production from Defendant that were partially responsive to Plaintiff's discovery requests, unaccompanied by any written responses or objections to Plaintiff's interrogatories and document requests.[FN1] Counsel for Defendant wrote that "[f]ormal discovery re-

sponses will follow shortly."(Barry Letter, Aug. 25, 2006, Ex. H to Pl.'s Mot. Compel.)

> FN1. Defense counsel indicates that the responses were mailed, via overnight mail, on August 25, 2006, prior to any demand from Plaintiff other than the parties' August 15, 2006 correspondence, and despite the fact that Plaintiff had still failed to sign the medical authorizations necessary for Defendant to obtain third-party discovery.

On September 7, 2006, Plaintiff's counsel sent Defendant the executed medical authorizations and indicated that Plaintiff would be seeking the assistance of the Court if complete responses to Plaintiff's discovery requests were not received by 4:00 p.m. on the following day, September 8, 2006. In that letter, Plaintiff's counsel explained its position that since Defendant had failed to object or respond within the thirty days permitted under the Federal Rules of Civil Procedure, any objections were waived and Plaintiff expected full compliance with the discovery requests. (Steigman Letter, Sept. 7, 2006, Ex. I to Pl.'s Mot. Compel.)

On September 8, 2006, six weeks after the expiration of Defendant's deadline to serve responses, Plaintiff received Defendant's formal written responses to Plaintiff's discovery requests. These responses included "general" objections as well as objections to many of Plaintiff's individual discovery requests. (*See* Def.'s Objections and Responses to Pl.'s First Set of Interrogatories, Sept. 8, 2006, Ex. B to Pl.'s Mot. Compel; Def.'s Objections and Responses to Pl.'s First Set of Requests for Production of Documents, Sept. 8, 2006, Ex. C to Pl.'s Mot. Compel.) On that same day, Plaintiff's counsel sent an email to defense counsel indicating Plaintiff's position that Defendant had waived all of its objections to Plaintiff's discovery requests and therefore, that defense counsel should indicate whether information and/or documents were withheld in response to Plaintiff's discovery requests. (Steigman email, Sept. 8, 2006, Ex. J to Pl.'s Mot. Compel.) Defense counsel failed to respond to the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

September 8 email and accordingly, on September 15, 2006, Plaintiff's counsel sent another email to defense counsel inquiring about a response to the earlier email. (Steigman email, Sept. 15, 2006, Ex. K to Pl.'s Mot. Compel.) On September 25, 2006, defense counsel sent a letter to Plaintiff's counsel responding to Plaintiff's contention that Defendant had waived its objections to Plaintiff's discovery requests as a result of its failure to make its objections before the expiration of the thirty day deadline and explaining its position on the matter. (Barry Letter, Sept. 25, 2006, Ex. L to Pl.'s Mot. Compel.)

*3 On October 12, 2006, Plaintiff's counsel sent another letter to defense counsel indicating that Plaintiff still maintained that Defendant had waived its objections as a result of its failure to object in a timely manner, but also arguing that each of Defendant's objections to Plaintiff's discovery requests was lacking in merit, and asserting that Defendant should supplement its responses to those requests. (Steigman Letter, Oct. 12, 2006, Ex. M to Pl.'s Mot. Compel.) This letter was Plaintiff's first response to the merits of Defendant's objections to Plaintiff's discovery requests. Plaintiff also raised, for the first time, the difficulty in securing expert testimony prior to receiving all of the documents and information requested from Defendant.(*Id.*) In that letter, Plaintiff's counsel requested that Defendant respond on or before October 20, 2006.(*Id.*)

On October 19, 2006, defense counsel sent an email to Plaintiff's counsel stating that it was "possible" that Defendant's response to Plaintiff's letter would arrive after the proposed October 20, 2006 deadline set by Plaintiff's counsel. (Nuccio email, Oct. 19, 2006, Ex. N to Pl.'s Mot. Compel.) On that same date, Plaintiff's counsel replied to this email and requested a specific date by which Plaintiff would receive a response to his letter of October 12, and stated that if defense counsel did not provide a specific date, Plaintiff would seek the Court's assistance in obtaining Defendant's responses. (Steigman email, Oct. 19, 2006, Ex. O to Pl.'s Mot. Compel.) Plaintiff's counsel noted that responses were re-

quired in order for him to meet the parties' agreed-upon October 31, 2006 deadline for disclosing expert witnesses, and asked whether Defendant would consent to an extension of time for Plaintiff to disclose his expert witnesses. (*Id.*) Defense counsel responded that same day, stating that Plaintiff would receive Defendant's responses "next week." (Nuccio email, Oct. 19, 2006, Ex. P to Pl.'s Mot. Compel.) Defense counsel also refused to consent to Plaintiff's request for an extension of time, stating that "Defendant has already produced all information necessary for Plaintiff's expert report."(*Id.*)

On October 20, 2006, before receiving Defendant's responses, Plaintiff filed his Motion to Compel. Further, on October 25, 2006, Plaintiff filed a Motion for Extension of Time to Disclose Experts and Provide Damages Analysis, arguing that he will not have the information necessary to make a full expert witness disclosure until after Defendant produces all of the information requested by Plaintiff, and requesting an extension of thirty days after Defendant produces the information requested to disclose his expert witnesses and provide a damages analysis. The parties participated in a settlement/status conference with this Court on November 3, 2006, Defendant responded to Plaintiff's Motion to Compel on November 10, 2006, and Plaintiff filed a reply brief in support of his Motion to Compel on November 27, 2006. Since the filing of Plaintiff's Motion to Compel, Defendant has "responded in full" to Plaintiff's October 12, 2006 letter and has provided additional document production, thus rendering moot some of the issues raised in Plaintiff's motion.

## II. STANDARD OF REVIEW

*4 The scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure is very broad, "encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."*Maresco v. Evans Chemetics, Div. of W.R.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

*Grace & Co.*, 964 F.2d 106, 114 (2d Cir.1992) quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)."Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."Fed.R.Civ.P. 26(b)(1).

If a party fails to respond or objects to discovery, Rule 37(a) of the Federal Rules of Civil Procedure provides that the requesting party may, "upon reasonable notice to other parties and all persons affected thereby," move to compel compliance. Moreover, Rule 37(d) provides, in pertinent part, that:

If a party ... fails ... to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.... In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(d). As referenced in Rule 37(d), subsection (b)(2) of that rule lists some of the sanctions that a court may impose for a party's failure to properly comply with discovery requests. Permissible sanctions include, but are not limited to:
(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party

to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed.R.Civ.P. 37(b)(2)(A)-(C).

## III. DISCUSSION

In his motion to compel, Plaintiff requests that the Court issue an order declaring that all of Defendant's objections have been waived, or in the alternative, that Defendant's objections are improper, unsupported and without merit, and directing Defendant to fully respond to each of Plaintiff's discovery requests. Additionally, Plaintiff requests that this Court award Plaintiff the attorneys' costs and fees incurred in the filing of this motion.

### A. Waiver

*5 Pursuant to Rule 33 of the Federal Rules of Civil Procedure, a party must answer or object to interrogatories within thirty days after the service of the interrogatories. Fed.R.Civ.P. 33(b)(3). The rule also provides that "[a]ny ground [for an objection to an interrogatory] not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown."*Id.* 33(b)(4). These time limits are mandatory and are important to the speedy resolution of cases. Indeed, as noted by the court in *Billups v. West,* No. 95 Civ. 1146, 1997 WL 100798 (S.D.N.Y. Mar. 6, 1997),

The time limits set forth in the Federal Rules of Civil Procedure are not optional. They are mandatory for all litigants-large or small, public and private. Litigants simply do not have unbridled, unilateral discretion to decide when they will respond to discovery requests. The very notion of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

such a chaotic system would make it impossible for cases to be resolved in a "just, speedy, and inexpensive" manner contemplated by Rule 1 of the Federal Rules of Civil Procedure.

*Id.* at *2. The *Billups* court also noted, however, that "[t]he propriety of such ruling [regarding waiver of objections] must ... be evaluated in the context of the entire case."*Id* . at *4;*see also Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979) (noting that discovery "sanctions must be weighed in light of the full record in the case"). The majority of courts follow the general rule that objections are waived if they are not made within thirty days of service, unless the answering party has sought leave of court to make an untimely objection, or unless "good cause" is shown. *See Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981); *Travelers Indem. Co. v. Joseph Davis, Inc.,* No. 05CV870A, 2006 U.S. Dist. LEXIS 82905, * (W.D.N.Y. Nov. 14, 2006); *Lohrenz v. Donnelly,* 187 F.R.D. 1, 5 (D.D.C.1999); *Billups,* 1997 WL 100798, at *2;*Smith v. Conway,* 154 F.R.D. 73, 76 (S.D.N .Y.1994); *Scott v. Arex, Inc.,* 124 F.R.D. 39, 41 (D.Conn.1989); *Turick v. Yamaha Motor Corp.,* 121 F.R.D. 32, 36 (S.D.N.Y.1988); *Sturdevant v. Sears, Roebuck & Co.,* 32 F.R.D. 426, 428 (W.D.Mo.1963); 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2173 (2d ed. 1994) ("In the absence of an extension of time, failure to object within the time fixed by the rule is a waiver of any objection.").

Plaintiff argues that by failing to object to its discovery requests within thirty days of service, Defendant has waived any objections thereto. Defendant argues that its objections were not waived because (1) it served objections to ninety-three document requests and seventeen interrogatories less than eleven weeks after the requests were served; (2) Defendant kept Plaintiff apprised of the status of its discovery responses and produced more than 500 responsive documents before serving formal written discovery responses; (3) Plaintiff has not been prejudiced by the delay; and (4) Plaintiff likewise delayed in fully complying with its discovery obligations by, for example, failing to produce medical authorizations until more than ten weeks after they were requested.

*6 Although the background set forth by the parties indicates that they were communicating with regard to the responses, Defendant has presented no "good cause" for excusing its failure to object within thirty days of the date the discovery requests were served or to seek leave from the Court for an extension of time to respond. The fact that there were ninety-three document requests and seventeen interrogatories does not provide a basis under Rule 33 for excusing a timely response. Likewise, the fact that Plaintiff was kept apprised of Defendant's progress-while professionally courteous-does not excuse compliance with the Federal Rules. The question of whether Plaintiff has been prejudiced by the delay is not made relevant by Rule 33, which asks only whether Defendant has shown "good cause" for failure to comply. Finally, Plaintiff's delay does not provide an excuse for Defendant's tardiness, but is an entirely separate matter. In sum, Defendant's arguments do not show "good cause" for its failure to fully respond to Plaintiff's discovery requests until six weeks after the expiration of the thirty-day response period provided for in Rule 33.

The fact that the parties engaged in a considerable amount of discussions suggests that a more lenient approach might be appropriate, however, there is no suggestion here that Defendant made an effort to preserve its right to file objections and no implication that Plaintiff agreed to an extension of time to do so. Defendant had every opportunity to move for an extension of time to file its discovery responses, but failed to do so. Because the Court can find no good cause for excusing compliance with the discovery rules, Defendant's objections to Plaintiff's discovery requests are overruled.

**B. Attorney's Fees and Costs**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

Page 6

Federal Rule of Civil Procedure 37 provides that if a party fails to serve answers to interrogatories,

In lieu of any order or in addition thereto, the court *shall* require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure *unless* the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(d) (emphasis added). Moreover, District of Connecticut Local Rule 37(d)(4) provides that:
Where a party has sought or opposed discovery which has resulted in the filing of a motion, and that party's position is not warranted under existing law and cannot be supported by good faith argument for extension, modification or reversal of existing law, sanctions *will* be imposed in accordance with applicable law. **If** a sanction consists of or includes a reasonable attorney's fee, the amount of such attorney's fee shall be calculated by using the normal hourly rate of the attorney for the party in whose favor a sanction is imposed, unless the party against whom a sanction is imposed can demonstrate that such amount is unreasonable in light of all the circumstances.

*7 D. Conn. Loc. Civ. R. 37(d)(4). Neither rule makes the award of attorney's fees mandatory-both give the courts discretion to award other sanctions in lieu of an attorneys' fee or to make the determination that the "failure was substantially justified or that other circumstances make an award of expenses unjust."This Court has already imposed a sanction on Defendant-namely, waiver of its objections to Plaintiff's discovery requests. In light of that sanction and the fact that Defendant communicated with Plaintiff throughout the discovery process thus far, this Court will not order Defendant or its counsel to pay attorney's fees to Plaintiff.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel [Doc. No. 19] is **granted.**Defendant shall serve complete responses to each of Plaintiff's discovery requests on Plaintiff on or before December 15, 2006. Moreover, Plaintiff's Motion for Extension of Time to Disclose Experts and Provide Damages Analysis [Doc. No. 20] is **granted in part.**Plaintiff is shall disclose his expert witnesses and provide a damages analysis on or before January 2, 2006.

SO ORDERED.

D.Conn.,2006.
Berube v. Great Atlantic & Pacific Tea Co., Inc.
Not Reported in F.Supp.2d, 2006 WL 3826702 (D.Conn.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1989 WL 20594 (E.D.N.Y.)

**C**
Oy v. Weiss
E.D.N.Y.,1989.
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.
Lohjan Paperi OY, Plaintiff,
Daniel WEISS, American Paper Marketing, Inc.
(AMPA), Defendants.
**No. CV-87-2002.**

March 2, 1989.

Hall, Dickler, Lawler, Kent & Friedman, New York
City, for plaintiff.
Segal, Goodman & Goodman, Brooklyn, New
York, for defendants.

*MEMORANDUM AND ORDER*

GLASSER, District Judge:
*1 Plaintiff moves, pursuant to Fed.R.Civ.P. 56 for
partial summary judgment, and pursuant to
Fed.R.Civ.P. 37(d) and 37(b)(2)(B), to preclude de-
fendant American Paper Marketing, Inc. ("AMPA")
from making any offer of proof on the counter-
claim, thereby compelling its dismissal.

This is a diversity action concerning a contract dis-
pute over goods sold and delivered. The June 1985
sales agreement concerned 750 short tons of paper
to be sold by plaintiff to defendants for $5.45 per
1,000 square feet. Delivery in shipments of approx-
imately 150 short tons were to go to buyer's desig-
nated printing plant, and payment was to be made
to seller's representative 45 days from the date of
each invoice issued. The first 5 "orders" date from
July to November 1985. Order No. 6 concerns a
"trial order" made in November 1985.

The complaint alleges that defendant Daniel Weiss,
doing business as American Paper Marketing Inc.,
owes an outstanding debt of $216,382.95 on paper
he accepted from plaintiff, and owes plaintiff an ad-
ditional $4,245.55 on paper accepted as a trial or-

der. The complaint further alleges that Weiss has
used AMPA to shield his own assets from creditors,
used the proceeds of his subsequent sale of the pa-
per to satisfy his personal debts, that AMPA was
never properly incorporated, and that unless the
court pierces the corporate veil and awards judg-
ment against Weiss, Weiss will have succeeded in
defrauding plaintiff.

In their answer, defendants state the following as
"causes of action" (affirmative defenses): (1) fail-
ure to state a claim; (2) lack of personal jurisdiction
over defendant Weiss; [FN1] (3) that all transactions
were accomplished on behalf of AMPA and not on
behalf of Weiss; and (4) that the merchandise sup-
plied by plaintiff was defective and incapable of be-
ing used as intended. Defendants' counterclaim,
which prays for $5,000,000 in damages, alleges that
AMPA is a New York corporation and that
plaintiff's failure to properly supply the paper
ordered by defendant AMPA for resale to a major
account, caused the failure of AMPA.

This motion seeks summary judgment on the 4th
and 6th orders [FN2], and asks the court to refer the
matter to Magistrate Caden for a determination as
to liability between the two named defendants. De-
fendants argue that disputed factual issues remain,
including the issue raised in their fourth affirmative
defense and counterclaim that the merchandise
ordered by defendants and delivered by plaintiff to
defendants' customer was defective. Plaintiff asks
the court to strike the fourth affirmative defense
and counterclaim because defendants have not re-
sponded to discovery requests concerning the
"defectiveness" issue, and to order, pursuant to
Fed.R.Civ.P. 37(d) and 37(b)(2)(B), that defendants
be precluded from offering any evidence with re-
spect to that issue.

Because plaintiff's affidavits and supporting exhib-
its establish that pursuant to Orders No. 4 and 6 de-
liveries were accomplished, such deliveries were
accepted, and money is still due plaintiff on those

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1989 WL 20594 (E.D.N.Y.)

sales, and because the court finds that there is no genuine issue of material fact in dispute as to any product defects or otherwise, summary judgment is granted as to Orders No. 4 and 6. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 575, 586-87 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**\*2** First, the court notes that defendants have furnished neither a memorandum of law, nor a "separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," in disregard of Rules 3(b) and 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. Noncompliance with these rules permits a court to consider all facts set forth by the moving party to be deemed admitted, and, consequently, to grant the motion against the opposing party.

Second, it is clear from the submissions and from the arguments presented in open court, that only one shipment from plaintiff to defendant was defective, and that was the shipment designated as "Order No. 5." That order was not part of, nor did it impact upon the quality of Orders No. 4 and No. 6. Defendants offer absolutely no substantiation for their claim that other shipments were defective; they merely assert that this was so. Defendants were completely unable to provide the court with any indication that their resale customer had rejected the goods, or had failed to pay for the goods. On the other hand, plaintiff has satisfactorily demonstrated through documentary evidence not only that defendants fully accepted the shipments under Orders 4 and 6, but that defendants successfully resold the paper. Nevertheless, plaintiff is still waiting to be paid.

Defendants' request that the court extend their time to comply with discovery demands, contending that such time will allow them to provide information regarding the alleged defects in Orders 4 and 6 and to support AMPA's counterclaim, brings the court

to plaintiff's Rule 37 motion. Plaintiff seeks to preclude AMPA from introducing any evidence as to its counterclaim, *i.e.,* any proof that as a result of plaintiff's supplying AMPA with defective or unsuitable paper, AMPA lost its major account, ultimately causing the ruin of its business.

Whether to sanction defendants for failure to respond to discovery demands is within the discretion of the district court. *National Hockey League v. Metropolitan Hock Club,* 427 U.S. 639, 643 (1976); *see also Hazen v. Pasley,* 768 F.2d 226, 229 (8th Cir.1985) (Fed.R.Civ.P. 37(d)'s authorization of various sanctions affords district court great latitude.). Rule 37(d) extends the court's sanctioning power towards parties who do not abide by court orders, to those parties who similarly do not respond to discovery requests. The rule permits the court to make such orders "as are just" to remedy the failure to respond. Such orders may include Rule 37(b)(2)(B)'s order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence," or Rule 37(b)(2)(C)'s order dismissing the action.

There is no requirement in the Second Circuit that willful disregard or bad faith be shown in order for the court to sanction the offending party. Gross or even ordinary negligence will suffice. *Argo Marine Systems, Inc. v. Camar Corp.,* 755 F.2d 1006, 1014-15 (2d Cir.1985). However, accidental or involuntary noncompliance or some inability to comply should not be sanctioned severely, and a party should be able to present grounds for excuse freely. *See, e.g., Roberts v. Norden Division, United Aircraft Corp.,* 76 F.R.D. 75, 80 (E.D.N.Y.1977); *Diaz v. Southern Drilling Corp.,* 427 F.2d 1118, 1127 (5th Cir.), *cert. denied sub nom., Trefina, A.G. v. United States,* 400 U.S. 878 (1970).

**\*3** Defendant Weiss has yet to respond to interrogatories with which he was served over two years ago, and to document production requests he received over a year ago. Defendant, in his affidavit, states that he suffers from heart disease and has

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1989 WL 20594 (E.D.N.Y.)

been hospitalized in Israel for an extended period in the past year. Weiss represented that he has had difficulty in compiling data to comply with discovery requests, because he resides outside the United States. Weiss Affidavit at 8-9. During oral argument, defendant's counsel further asserted that certain relevant documents were lost en route to Israel.

Defendant Weiss makes no submission whatsoever to support his contention that he was too ill to comply with the discovery requests. Nor did he offer any support for his claim of difficulty in the compilation of his data. Defendants have not properly moved, pursuant to Fed.R.Civ.P. 6, for an order enlarging their time to respond to discovery requests, nor have they demonstrated that their failure to timely respond to those requests was a result of any excusable neglect, as that rule prescribes. Instead, defendants' counsel merely asks the court's patience, stating that compliance is a "slow process." Defendants have demonstrated little more to this court than their repeated failure to comply with discovery orders and complete disregard of their responsibilities. *See John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176-77 (2d Cir.1988); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066-68 (2d Cir.1979). For these reasons, plaintiff's motion is granted, and the court dismisses the counterclaim pursuant to Fed.R.Civ.P. 37(b)(2)(C).

Plaintiff's motion for partial summary judgment is granted. Plaintiff's Rule 37 motion is granted, defendants' fourth affirmative defense is stricken, and AMPA's counterclaim is dismissed with prejudice. The court further directs, pursuant to 28 U.S.C. § 636(b)(1)(B), that Magistrate John Caden conduct a hearing on the issue of liability for damages as between defendants, and that he thereafter submit his report and recommendations on that issue to this court.

SO ORDERED.

    FN1. Defendants abandoned the jurisdic-

tional defense at oral argument on February 24, 1989.

    FN2. Order No. 4, for $197,300.90, was billed under Invoice No. 5325/701871 on October 31, 1985. Order No. 6, for $4,245.55, was billed under Invoice No. 5325/702096, on November 29, 1985.

E.D.N.Y.,1989.
Oy v. Weiss
Not Reported in F.Supp., 1989 WL 20594 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.