UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STATE EMPLOYEES BARGAINING
AGENT COALITION, ET AL,

V.

JOHN G. ROWLAND, ET AL,

:
:
:
:
:
:
:
:

CIV. NO. 3:03CV221 (AVC)

SEPTEMBER 5, 2008

**<u>AFFIDAVIT</u>**

David S. Golub being duly sworn, does depose and say:

1.      I am a member of the law firm of Silver Golub & Teitell LLP, counsel for the

plaintiffs in the above-entitled action.  I submit this Affidavit in support of Plaintiffs' Motions

for Discovery Orders as to plaintiffs' February 20, 2008 First Set of Interrogatories and Requests

for Production as to defendant Robert Genuario[1] and plaintiffs' May 19, 2008 First Set of

Interrogatories as to defendant M. Jodi Rell.[2]

2.      On June 20, 2008, this Court entered Orders [Dkt. # 165, 163] allowing

defendants until July 15, 2008 to make rolling responses to plaintiffs' First Set of Interrogatories

and Requests for Production as to defendant Genuario and to respond to plaintiffs' First Set of

Interrogatories as to defendant Rell.  Defendants have refused to respond to these discovery

---

[1]  A copy of plaintiffs' February 20, 2008 First Set of Interrogatories and Requests for Production
as to defendant Genuario is attached as Exhibit A.

[2]  A copy of plaintiffs' May 19, 2008 First Set of Interrogatories as to defendant Rell is attached
as Exhibit B.

pleadings, in disregard of the Court's Orders, as well as their prior agreements to respond to plaintiffs' discovery.[3]

3.      Plaintiffs have moved, pursuant to Fed.R.Civ.Pro. 37(a) & (d), for entry of discovery orders against each defendant. Plaintiffs seek (i) to compel full responses to their pending interrogatories and requests to produce within ten days; (ii) failing such responses, entry of orders precluding defendants from challenging plaintiffs' claims and/or deeming certain claims established; and (iii) an award of the costs of pursuing these Motions.

A.      **Defendants' Agreements and Representations, and the Court's Orders Requiring Defendants to Respond to Plaintiffs' Discovery**

4.      In August 2007, after the mandate dismissing and denying defendants' interlocutory appeal was issued by the Second Circuit, this Court directed the parties to file a Rule 26(f) report setting forth a schedule for discovery and trial of this action. [Dkt. # 116]. The parties conferred and entered into a Rule 26(f) scheduling agreement submitted to the Court on September 7, 2007. [Dkt. #126].[4]

5.      In the parties' *agreed* Rule 26(f) report, defendants -- through their prior counsel -- expressly agreed that discovery would commence immediately [§ E-2(a)]; that it would cover all aspects of plaintiffs' claims and defendants' defenses [§ E-1]; and that "discovery will not be

---

[3] The Court also granted defendants an extension to July 15, 2008 to respond to plaintiffs' May 19, 2008 Requests for Admissions (as to both defendants). A copy of the Requests for Admissions is attached as Exhibit C. While defendants have also failed to respond to the Requests for Admissions, plaintiffs have not moved for entry of orders compelling responses as to the Requests for Admissions, as defendants' failure to timely respond to plaintiffs' Requests for Admissions is governed by Fed.R.Civ.Pro. 36(a)(3), which provides that "a matter is admitted unless, within 30 days after being served [or such longer time as the parties agree or the court may have allowed], the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

[4] A copy of the parties' September 7, 2007 Rule 26(f) Report is attached as Exhibit D.

2

conducted in phases." [§ E-3]. By Order dated September 26, 2007, the Court approved the
parties' Rule 26(f) agreement (modifying, slightly, the dates proposed by the parties). [Dkt. #
132].[5]

      6.     Consistent with the parties' agreement to conduct discovery "immediately" on all
aspects of plaintiffs' claims, defendants – through their prior counsel – immediately served 18
sets of comprehensive interrogatories and requests to produce, seeking discovery from plaintiffs
as to their affirmative claims and damages.[6] Defendants also served 19 notices of deposition,
encompassing each of the five individual plaintiffs, each of the thirteen plaintiff unions (in the
form of Rule 30(b)(6) notices of deposition), and for the plaintiff Unions' lead negotiator,
Attorney Daniel Livingston.[7] Defendants' Rule 30(b)(6) Notices of Deposition required
production of witnesses by each union to designated to testify on virtually every aspect of
plaintiffs' affirmative claims and damages. [See Exhibit F].

---

[5] Prior to the Court's September 26, 2007 Order, discovery in this action was stayed, over
plaintiffs' objection, for over 4½ years while defendants' Motion to Dismiss and interlocutory appeal
from this Court's denial of their Motion were *sub judice*. In its January 18, 2006 Ruling on defendants'
Motion to Dismiss ("Ruling"), the Court stated that in light of the delay in proceeding with the case,
discovery should commence without delay, and then proposed a "limited first phase of discovery
concerning the applicability of absolute legislative immunity, and re-argument on that issue before merits
discovery, if desired." [Ruling at 16]. The Court directed the parties to advise the Court by letter if they
sought such phased discovery. [Id.]. Defendants expressly rejected this offer of limited discovery on
their legislative immunity defense, [see January 31, 2006 Order Directing the Commencement of
Discovery (Dkt. # 95) at 1-2], and obtained – over plaintiffs' objection – a continuing stay of all
discovery while pursued their unsuccessful appeal of the Court's Ruling.

[6] On September 21, 2007, defendants served 18 identical sets of Interrogatories and Requests for
Production on each of the union and individual plaintiffs in this action. A copy of one of these identical
sets is attached as Exhibit E.

[7] On September 21, 2007, defendants served notices of deposition on each of the 18 plaintiffs,
including 13 identical Rule 30(b)(6) notices on each plaintiff Union and a notice of deposition for the
Unions' lead negotiator, Attorney Daniel Livingston. Thirteen amended Rule 30(b)(6) notices of
depositions for each plaintiff union were re-served on September 27, 2007, changing the proposed dates
of the depositions. A copy of one of these identical Rule 30(b)(6) notices is attached as Exhibit F.

7.      On February 20, 2008, plaintiffs served their First Set of Interrogatories and Requests to Produce [Exhibit A] on defendant Genuario, in his official capacity as Secretary of the Office of Policy and Management of the State of Connecticut. Plaintiffs' February 20, 2008 discovery pleading contains three interrogatories and fourteen document requests.

8.      On March 25, 2008, the parties conferred concerning their responses to each others' pending discovery. New counsel had recently appeared on behalf of defendants and requested a thirty-day extension of time to respond to plaintiffs' discovery. Plaintiffs consented to this request. The parties submitted a Joint Motion for mutual thirty day extensions to respond to their respective pending discovery, with defendants' new counsel representing in the Joint Motion that the time was necessary to enable them "to familiarize themselves with this factually and legally complex case." [Dkt. # 151].[8] The Court granted the parties' Joint Motion on March 26, 2008, extending the time for defendant Genuario's discovery responses to April 25, 2008. [Dkt. # 153].

9.      In late April 2008, the parties conferred again concerning the pending discovery. The parties agreed to seek permission from the Court to make rolling responses to the pending discovery so as to minimize the burden of responding.

10.     On April 25, 2008, the parties filed a Joint Motion [Dkt. # 158] seeking authorization to make such rolling responses over the course of the next month (to June 1, 2008). The parties' Joint Motion stated in support of this request:

> The parties have agreed ... to make rolling production and responses over the course of the next month.

---

[8]  A copy of the parties' March 25, 2008 Joint Motion is attached as Exhibit G.

4

[Id.]. As the parties explained in the Joint Motion, such rolling production and responses would "decrease the burden of responding for state officials ..." [Id.].[9]

11.    The Court granted the parties' Joint Motion on April 28, 2008, ordering:

> The discovery responses described in the within motion shall be made in the manner specified on or before June 1, 2008. [Dkt. # 159].

12.    On May 20, 2008, plaintiffs served contention Interrogatories [Exhibit B] on defendant Rell, in her official capacity as Governor of the State of Connecticut, and Requests for Admission [Exhibit C] on both defendants.

13.    In June 2008, when the rolling responses anticipated in the parties' April 25, 2008 Joint Motion had not been made, the parties agreed to submit a further Joint Motion to extend the time for their respective responses to July 15, 2008. The parties' June 19, 2008 Joint Motion [Dkt. # 163] again stated that "the parties have agreed to make rolling production in response to [their respective] discovery requests," and further represented that "the parties diligently continue to compile information necessary to respond to said requests." [Id. at 1].[10] The Joint Motion also reiterated that such rolling responses would "decrease the burden of responding for the state officials ..." [Id. at 2]. The parties further sought modifications to the other scheduling deadlines, but represented that the requested extension would "not unduly delay the trial deadline." [Id.].

14.    The Court granted the parties' Joint Motion on June 20, 2008 [Dkt. # 165], extending the time for defendant Genuario's discovery responses to July 15, 2008. Defendants

---

[9]  A copy of the parties' April 25, 2008 Joint Motion is attached as Exhibit H.

[10]  A copy of the parties' June 19, 2008 Joint Motion is attached as Exhibit I.

also filed a separate Motion for Extension of Time [Dkt. # 162][11] to respond to plaintiffs' First

Set of Interrogatories as to defendant Rell and to plaintiffs' First Request for Admissions, which

the Court also granted, extending the time for defendants' responses to that discovery to July 15,

2008. [Dkt. # 163].

15.     Defendants did not respond to plaintiffs' discovery on July 15, 2008. Instead, on

July 14, 2008, defendants filed a Motion for (partial) Stay of discovery and to Modify Scheduling

Order. [Dkt. # 166, 168]. In support of their Motion, defendants claim that plaintiffs are only

entitled to discovery related to defendants' legislative immunity defense and to factual issues

presented by a new  motion to dismiss or for summary judgment defendants represented they

were about to file which, defendants asserted, would establish "that every single member of the

plaintiff class has either been rehired or has been offered but refused a position with the State."

[Dkt. # 167 (Def. Mem.) at 5].

16.     On July 25, 2008, defendants filed a new Motion to Dismiss. [Dkt. # 169].

Contrary to their representation in their July 14, 2008 Memorandum, defendants do not contend

in the Motion that all of the terminated state workers have been reinstated or offered

reinstatement. Rather, defendants' Motion asserts that the five individual plaintiffs have no

claim for reinstatement; that the plaintiff unions lack standing to pursue claims for reinstatement

on behalf of the remainder of the class of terminated employees; and that plaintiffs' remaining

claims for injunctive relief are moot since there is no risk that defendants – the current Governor

and Secretary of the Office of Policy and Management – will ever engage in the alleged illegal

conduct at issue in this case.

---

[11] A copy of defendants' June 19, 2008 Motion for Extension of Time is attached as Exhibit J.

**B.     Defendants' Purported Justifications for Limiting Discovery Are Baseless.**

17.     On August 4, 2008, plaintiffs filed their Memorandum in Opposition to

Defendants' Motion to Stay.  As set forth in plaintiffs' Memorandum, defendants' purported

justifications for limiting discovery are baseless.

18.     Defendants first contend that discovery should be limited to the issue of

legislative immunity because resolution of that defense can be dispositive of this action is, quite

simply, erroneous.  As plaintiffs discuss in their August 4, 2008, Memorandum, in its decision

rejecting defendants' interlocutory appeal, the Second Circuit unanimously agreed with

plaintiffs' argument that legislative immunity does not apply at all to plaintiffs' claims seeking to

require defendants to reinstate terminated union employees to existing positions in the State's

work force and that, with respect to plaintiffs' claims for reinstatement to the terminated

employees' prior positions, the defense will only apply if the positions no longer exist due to

legislative elimination of the positions. [Pl. Mem. at 6-8, citing to State Employees Bargaining

Agent Coalition v. Rowland, 494 F.3d 71, 82 (2d Cir. 2007)].

19.     Thus, the Second Circuit ruled that, even to the extent defendants can prove,

*factually*, that their actions in terminating plaintiffs' employment were procedurally and

substantively "legislative," the defense of legislative immunity does not, *as a matter of law*, bar

plaintiffs' request for injunctive orders compelling defendants, in their capacity as executive

officers with control over the State's work force, to reinstate terminated workers to existing

positions in the State's work force:

> Because ordering defendants to hire plaintiffs into existing positions in the state
> workforce would not require either a new allocation of funds or a new passage of
> legislation, but would instead compel defendants to act only in their

7

> administrative capacities as executive branch officials with authority over the state
> workforce, we conclude that legislative immunity prevents no obstacle to the
> District Court's ordering of such relief. [footnote omitted]
>
> ....
>
> As a matter of law, defendants are not entitled to legislative immunity with
> respect to plaintiffs' claims to placement in other, existing positions, because
> granting this relief would not enjoin defendants in their performance of legislative
> functions.

Id. at 93, 98.

20.    The Second Circuit ruled that, to the extent defendants can prove, factually, that

they ordered the terminations in a legislative capacity, the defense of legislative immunity would

only apply to bar reinstatement to terminated employee's prior positions if such positions no

longer exist because they had been eliminated by *legislative* action:

> [W]e cannot assess, at the pleading stage, the merits of plaintiffs' argument that
> legislative immunity also presents no obstacle to their claims seeking
> reinstatement to their *previous positions*. Whether restoring plaintiffs to those
> positions would compel defendants to act in their legislative capacities will
> necessarily hinge on the findings  made by the District Court regarding the issues
> to be resolved under Bogan. If defendants successfully demonstrate that their
> actions in terminating plaintiffs' positions were legislative in nature under Bogan,
> plaintiffs' claims for reinstatement to their previous positions would be barred by
> legislative immunity.  This is because ordering such relief would require no less
> than a judicial order compelling defendants, in their official capacities, to re-create
> positions that would have been eliminated through prior legislative action.
> ....
>
> In the circumstances presented, discovery is necessary to assess whether
> defendants are entitled to legislative immunity with respect to plaintiffs' claims
> for reinstatement to their previous positions.

Id. at 93-94, 98.

21.    Defendants, while purporting to rely on the Second Circuit's decision in their

Motion to Stay, point to no holding in the case supporting their argument for a stay.  There is,

quite simply, no legal basis for defendants' contention that the legislative immunity defense can

be dispositive of this case. Likewise, defendants' contention in their Memorandum that the

Second Circuit ordered "limited" discovery on the legislative immunity issue (Def. Mem. at 1) is

unsupported by any citation to the text of the Second Circuit decision[12] and is also erroneous.

Nowhere in the Second Circuit's decision did the court indicate that, on remand, discovery was

to be limited in any respect.

     22.     Defendants' prior counsel plainly understood the import of the Second Circuit's

ruling and expressly agreed that discovery would not be conducted in phases. Defendants' prior

counsel undertook extensive discovery on all aspects of plaintiffs' claims and plaintiffs have

complied with that discovery. It is grossly inequitable for defendants now to try to repudiate

their counsel's prior agreements and conduct of the case.

     23.     Prior to the filing of defendants' Motion to Stay, I spoke with

defendants' counsel, Daniel J. Klau, Esq., about defendants' contention that discovery should be

limited to the legislative immunity defense because the defense could purportedly be dispositive

of the case. I pointed out to him that defendants were apparently misreading the Second Circuit

decision and expressly referred him to the portion of the decision that holds that legislative

immunity does not, as a matter of law, bar plaintiffs' claims for reinstatement to existing

positions in the State's work force. I also reminded him that defendants' prior counsel had

rejected the opportunity to conduct phased discovery on the defense in January 2006, see n. 5,

and had agreed to full discovery in September 2007.

_____

    [12] Defendants' authority for this assertion is a general citation to the Second Circuit decision,
with no specific page reference. [Def. Mem. at 1].

24.     In addition to seeking to limit discovery to legislative immunity issues, defendants contend that discovery should be limited to the issues raised by their new Motion to Dismiss. As noted above, defendants represented in their Memorandum in support of their Motion to Stay that they were about to file a motion to dismiss or for summary judgment "that will establish that every single member of the plaintiff class has either been rehired or has been offered but refused a position with the State." [Def. Mem. at 5]. Defendants argued that discovery should be stayed pending a ruling on that motion, which defendants argued would be wholly dispositive of the case. But defendants filed no such motion. Instead, they have filed a purported Motion to Dismiss for Lack of Jurisdiction asserting that none of the five named plaintiffs (nor any of the plaintiff unions) has standing to pursue this action on behalf of the class. [See Def. July 25, 2008 Motion (Dkt. # 169)].

25.     In support of their new motion to dismiss, defendants have proffered two Declarations stating that one of the five named plaintiffs was not terminated; that two have been rehired to positions in the State's work force similar to those they had when they were terminated; that one named plaintiff was rehired to a different position; and that one named plaintiff took early retirement.

26.     Plaintiffs are preparing their response to defendants' Motion to Dismiss, but the Motion is plainly without merit. Thus, with respect to named plaintiff Marcelle Pichanick Groves, although she was rehired by the State, she was rehired at a position three grades lower than the position she had when she was terminated. Plaintiff Groves seeks a position at least at the job level she had when she was terminated. Defendants' claims are similarly invalid with respect to three of the other individual plaintiffs, as well. With respect to plaintiff Dennis P.

10

Heffernan, although he opted for early retirement in February 2003, that was only <u>after</u> he was

terminated from his state position (in mid-January 2003), and he seeks reinstatement to an

appropriate position in the state work force.  Moreover, while plaintiff Geneva Hedgecock was

rehired to a position in the State work force similar to the one she had when she was terminated,

the position has different responsibilities and is geographically disadvantageous for Ms.

Hedgecock and she seeks reinstatement her prior position.  Similarly, plaintiff Denise A.

Bouffard has suffered a loss of competitive seniority due to the time she was out of work due to

her termination even though she was reinstated to a position similar to the one she had when she

was terminated.[13]

27.    Defendants' claim in their Motion to Dismiss that the plaintiff unions lack

standing to represent the class of terminated employees ignores that this Court previously

declined to dismiss the unions' claims on this very ground.  <u>See</u> Ruling at 15.  In its Ruling, the

Court indicated it did not believe there was merit to defendants' standing argument and that

defendants could raise it on summary judgment.  <u>Id</u>.  Defendants' bald reassertion of its standing

argument, which merely repeats the arguments already rejected by the Court, disregards the

Court's Ruling and is without merit.

28.    And plaintiffs and the plaintiff unions further seek injunctive relief barring

defendants from making termination decisions in the future based on plaintiffs' union status and

union activity and barring defendants from retaliating against plaintiffs because of their union

activity and support for opposing political candidates.  Although, in their Motion to Dismiss,

---

[13] Declarations from plaintiffs Groves, Heffernan, Hedgecock and Bouffard are attached to Golub Aff. as Exhibit N.  Plaintiffs note that Defendants' Declaration with respect to plaintiff Groves' rehiring deliberately fails to mention her lower pay grade.

11

defendants contend that plaintiffs are not entitled to such injunctive relief, the Second Circuit

expressly affirmed the importance of this aspect of plaintiffs' claims. As the Second Circuit

ruled in rejecting defendants' argument that plaintiffs' claims for such relief were barred:

> Defendants also argue that plaintiffs' other claims for injunctive relief
> including [their] claims for an injunction prohibiting retaliation against plaintiffs
> are barred by the Eleventh Amendment. Defendants contend that the additional
> forms of injunctive relief requested by plaintiffs also do not respond to any
> ongoing violation of federal law. We disagree. Plaintiffs seek other forms of
> injunctive relief as a remedy for defendants' alleged ongoing retaliation against
> the individual and union plaintiffs, as demonstrated by defendants' alleged failure
> to rehire the individual plaintiffs (or restore their positions). The prohibition
> against retaliation sought by plaintiffs, for example, would prevent this alleged
> ongoing injury from occurring again in the future. Thus, sovereign immunity does
> not bar the other forms of injunctive relief sought by plaintiffs.

494 F.3d at 98.

29.    Thus, defendants' asserted justifications for limiting discovery – the purportedly

dispositive nature of their legislative immunity defense and the grounds asserted in their new

Motion to Dismiss – are without basis.

### C.    Defendants Have Refused to Respond to Any of Plaintiffs' Pending Discovery, Even Those Aspects that They Acknowledge Are Appropriate.

30.    Defendants have, moreover, continued in their refusal to respond to plaintiffs'

pending discovery, including even the discovery requests directed to the factual disputes

surrounding their claimed entitlement to legislative immunity and to the factual issues presented

by their Motion to Dismiss.[14] Defendants have maintained this refusal even though their counsel

---

[14] Defendants have failed to serve provide sworn answers or objections to plaintiffs'
interrogatories, have failed to file responses or objections to plaintiffs' requests for production, and have
failed to respond at all to plaintiffs' Requests for Admissions. In late July 2008, defendants produced a
collection of unexplained spread sheets. Although defendants represented they would provide an
explanation of the spread sheets, they have failed to do so. [See Exhibit K (August 5, 2008 email from
Daniel J. Klau, Esq. to plaintiffs' counsel)].

represented to plaintiffs' counsel that defendants acknowledge their obligation to provide such discovery and represented they would be doing so, defendants' motion to stay notwithstanding.[15]

31.    Thus, defendants have failed to provide plaintiffs with discovery responses even as to those areas that they concede are appropriate in their stay Memorandum – i.e., the factual issues raised by defendants' legislative immunity defense and the factual issues presented by defendants' Motion to Dismiss.

32.    For example, plaintiffs' discovery directed to defendant Genuario and plaintiffs' Requests for Admission contain sections specifically directed to the factual merits of defendants' legislative immunity defense. The discovery directed to defendant Genuario requires information and documents directed to the alleged budgetary savings in FY 03 that defendants have asserted were the basis for the termination decisions at issue in this litigation [See Exhibit A, Int. 1f, i; 2a, 3; Req. for Prod. 5, 6, 7, 8, 14] and further seek documents pertaining to any purported exercise of the Governor's budgetary rescission authority pursuant to Conn. Gen. Stats. § 4-85(b). [Id., Req. for Prod. 12, 13].

33.    Plaintiffs' Requests for Admissions similarly seek to require defendants to admit or deny whether they complied with the mandatory procedures for modifying Connecticut's budget to alleviate a budget deficit – the requirements that the Second Circuit held must be met in order for defendants to establish that they acted in a "procedurally" legislative manner. [See

---

[15] See Exhibit K (August 5, 2008 email representing that defendants were "preparing a large document production early next week," that was never made); Exhibit L (July 22, 2008 email from Attorney Klau acknowledging "there are certain documents that you are clearly entitled to under the 2d Cir. decision. We're bates stamping a bunch of documents we owe you, with more to follow"); Exhibit M (July 22, 2008 email from Attorney Klau promising to provide plaintiffs "much of what was requested," notwithstanding defendants' motion for stay).

Exhibit C, Pl. Req. for Admissions, § D, ## 40-68]. The Requests further require defendants to

admit or deny whether terminated employees' positions were "eliminated" by the legislature. [id.

at ## 69-70] and whether or not the decision of which positions to create and fill in the State's

work force has been determined by the executive branch [id. at 71-73]. These Requests go

directly to the factual issues that the Second Circuit held must be established in order for

defendants to establish their entitlement to legislative immunity.

34.     The Requests further require defendants to admit or deny whether the terminations

at issue were, in fact, directed to resolving the FY 2003 budget deficit – as defendants have

asserted, without evidentiary support throughout this litigation – or, rather, were to pressure the

plaintiff unions to make collective bargaining concessions in future years, as plaintiffs assert, and

thus included terminations of employees without regard to the financial impact (or lack of

impact) of the terminations on FY 03 expenses. [See e.g., id. at § B, ## 20-33].

35.     These – and the other Requests for Admission propounded by plaintiffs – are

neither unduly burdensome nor time-consuming to answer; and answers consistent with

plaintiffs' understanding of the facts pertaining to defendants' conduct will factually establish the

elements of plaintiffs' constitutional claims and eliminate defendants' claim to legislative

immunity.

36.     Similarly, although defendants admit that plaintiffs are entitled to conduct

discovery relating to defendants' Motion to Dismiss, defendants have refused to respond to

aspects of plaintiffs' discovery directed to factual issues presented by that Motion. Thus, while

defendants argue that there is no basis for plaintiffs' prayer for injunctive relief because there is

no evidence that defendant Rell would, in the future, ever engage in conduct violative of the

unions' and union members' First Amendment rights, [Def. Mem. in Support of Motion to

Dismiss at 8-10], defendants refuse to respond to plaintiffs' interrogatories concerning the

current Governor's position on the existence of plaintiffs' First Amendment right to engage in

union activity [see e.g., Ex. B; Pl. First Set of Int. to Gov. Rell at Int. 1-7] and the propriety of

termination or lay-off decisions based on a state employee's union status. [Id. at 9-13].

      37.    For example, plaintiffs' contention interrogatories to the Governor, in her official

capacity, seek to establish whether it is or is not defendant's official position that the state may

make termination decisions based on state employees' union status and union activities:

> 9. State whether it is your position that where there is an economic necessity for layoffs in the State of Connecticut's work force, you and other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select which employees to lay off based on whether the employees are or are not members of state employee unions. If it is not your position, state under what circumstances you contend you or other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select employees for layoff based on whether the employees are or are not members of state employee unions.

> 10. State whether it is your position that where there is an economic necessity for lay-offs in the State of Connecticut's work force and where the state employee unions have failed to agree to collective bargaining agreement concessions sought by you as a means to avoid such lay offs, you and other state officials may, consistent with the First, Fifth and Fourteenth Amendments to the United States Constitution , lay off only members of state employee unions. If it is not your position, state under what circumstances you contend you or other state officials may, consistent with the First and Fourteenth Amendments to the United States Constitution, select union employees for layoff where the unions have declined requested financial concessions.

(Id. at Int. 9-10), and whether defendants will seek to do so in the future should there be a budget

deficit:

>13. State whether it is your position that should there be an
>economic necessity for layoffs in the State of Connecticut's work
>force in the future, defendants may, consistent with the First and
>Fourteenth Amendments to the United States Constitution, choose
>which employees to lay off based on whether the employees are or
>are not members of state employee unions.

>14. State whether it is your position that should there be an economic
>necessity for layoffs in the State of Connecticut's work force in the future, and
>should the state employee unions decline to agree to collective bargaining
>agreement concessions sought by defendants as a way to avoid such lay offs,
>defendants may, consistent with the First, Fifth and Fourteenth Amendments to
>the United States Constitution, choose which employees to lay off based on
>whether the employees are or are not members of state employee unions.

(Id. at Int. 13-14).

38.    This discovery – which is not at all burdensome to answer – is directly germane to

the factual assertions in defendants' Motion to Dismiss that there is no likelihood of the conduct

at issue ever being repeated and that this action is, therefore, moot as to plaintiffs' claims for

declaratory injunctive relief. [Def. Mem. in Support of Motion to Dismiss at 8-10].[16]

39.    Likewise, although asserting in support of their Motion to Stay that all of the

terminated employees have either been reinstated or declined reinstatement, defendants have

refused to provide interrogatory answers and documents in support of this contention. The

discovery defendants have ignored goes directly to defendants' factual claim that all members of

---

[16] Most recently, defendants have refused to produce defendants Rell and Genuario for duly-noticed depositions, even though their testimony is directly relevant to the factual claims in defendants' Motion to Dismiss that plaintiffs' claims for declaratory injunctive relief are moot because plaintiffs have no evidence that defendants will engage in the conduct violative of the unions' and union members' rights at issue in this litigation. Defendants have moved for a protective order to bar these deposition. Plaintiffs are preparing their response to defendants' motion.

the plaintiff class have been reinstated or offered reinstatement to their prior or equivalent positions in the State work force. [See e.g., Exhibit A, Ints. 1-3.] That is the discovery that defendants' counsel represented they were "diligently" compiling and that rolling production would enable them to provide without undue burden. Defendants have no proper justification for refusing that discovery now.

40.    Defendants have not moved for an extension of time to respond to plaintiffs' discovery pending a ruling on their Motion for Stay, even after plaintiffs advised defendants, in writing, of plaintiffs' position that the mere filing of an unruled-upon Motion for Stay does not relieve them of their obligations under Rule 37.[17]

> **D.    Defendants Have Undertaken Broad, Unlimited Discovery and Should Not, in Fairness, Be Allowed to Avoid Responding to Discovery of Similar Scope.**

41.    As discussed above, defendants' prior counsel entered into a Rule 26(f) scheduling agreement that provided for immediate discovery on all aspects of plaintiffs' claims and defendants' defenses and immediately undertook extensive discovery on all aspects of plaintiffs' claims.[18] Pursuant to plaintiffs' discovery agreements, plaintiffs have complied with that discovery. It is grossly inequitable for defendants, who have received the benefits of their prior counsel's discovery agreements, now to try to repudiate their counsel's prior agreements and conduct of the case.

---

[17] See Exhibit M (July 22, 2008 email from plaintiffs' counsel to Daniel Klau, Esq.), asserting "plaintiffs' position that the mere filing of a motion to stay, absent a ruling from the Court actually staying discovery, does not relieve defendants of any of their discovery obligations"); and defendants' response

[18] Plaintiffs have responded to defendants' 18 sets of discovery interrogatories and requests to produce. Defendants have not sought to go forward with any of the depositions they noticed.

41.    Similarly, defendants have offered no justification for their current counsel's breach of their express representations to plaintiffs' counsel and the Court that they "agreed to make rolling production in response to [plaintiffs'] discovery requests;" that they "diligently continue to compile information necessary to respond to said requests," [ Exhibit I (June 19, 2008 Joint Motion )at 1], and that such rolling responses would "decrease the burden of responding for the state officials ..." [Id. at 2].

### E.    Plaintiffs Have Attempted to Resolve This Discovery Dispute, Without Success.

42.    As required by Fed.R.Civ.Pro. 37a(1) and 37(d)(1)(B) and D. Conn. Local Rule 37(a), I have undertaken good faith efforts to resolve the discovery disputes described herein, including defendants' claim that they are entitled to limit the scope of discovery, with Daniel J. Klau, Esq., counsel for defendants.  I have been unsuccessful in these efforts.  Indeed, although (as reflected in the attached emails [Exhibits K, L & M]), Attorney Klau has acknowledged that defendants are obligated to provide discovery, defendants have failed to do so.

_____

DAVID S. GOLUB

Subscribed and sworn to, before me, this 5th day of September, 2008.

_____

NOTARY PUBLIC

**NATASHA E. GIOIELLI**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES OCT. 31, 2011

18

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2008, a copy of the foregoing Affidavit of

David S. Golub dated September 5, 2008 was filed electronically and served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the

Court's CM/ECF System.

/s/

DAVID S. GOLUB ct00145
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
Telephone:   203-325-4491
Fax: 203-325-3769
E-mail:   dgolub@sgtlaw.com